HUGHES HUBBARD & REED LLP
Christopher Paparella
John Fellas
Hagit Elul
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
paparella@hugheshubbard.com

*Attorneys for Defendants Technip Italy S.p.A. and Technip S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOVENSA L.L.C., <br><br>                                  Plaintiff, <br><br>             -vs- <br><br> TECHNIP ITALY S.P.A and <br> TECHNIP S.A., <br><br>                              Defendants. | Case No.: 08 CIV. 1221 <br><br> **DECLARATION OF** <br> **ETIENNE GORY** |

       Etienne Gory declares under penalty of perjury as follows:

       1.      I am Chief Executive Officer – Latin America of Defendant Technip Italy S.p.A. ("Technip Italy"). I am also President of TPVI, Ltd. (TPVI). I submit this Declaration to put before the Court certain facts and copies of certain documents with which I am fully familiar.

       2.      Annexed hereto as Exhibit 1 is a true and correct copy of the Construction Agreement between Hovensa and TPVI, dated March 10, 2005.

       3.      Annexed hereto as Exhibit 2 is true and correct copy of the Engineering and Procurement Agreement ("E&P Agreement") between Hovensa and Technip Italy, dated March 10, 2005.

4.    The E&P Agreement and Construction Agreement contain voluminous appendices and exhibits. I have not annexed these appendices hereto, except for Appendix Q and portions of Appendix A to the Construction Agreement, which are annexed hereto as Exhibits 3 and 4 respectively.

5.  ·  Hovensa sent TPVI letters raising claims under the Construction Agreement and invoking the dispute resolution provision in Article 27.2 thereof during the course of TPVI's performance under the Construction Agreement. For example, annexed hereto as Exhibit 5 are true and correct copies of letters from Hovensa to TPVI dated June 1, June 5, and June 26, 2007 raising claims under the Construction Agreement. Hovensa did not direct or copy these letters or any of the other claims letters it sent under the Construction Agreement to Technip S.A.

6.    Technip Italy and TPVI are willing to arbitrate all their disputes with Hovensa, including, but not limited to, the disputes raised in this action pursuant to the dispute resolution clauses contained in the E&P Agreement and the Construction Agreement.

7.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 17, 2008
       Rome, Italy

Etienne Gory

# EXHIBIT 1

## CONSTRUCTION AGREEMENT

AGREEMENT dated March 10th, 2005, between HOVENSA L.L.C., a U.S. Virgin Islands limited

liability company ("HOVENSA") and TPVI, a U.S. Virgin Islands corporation having an office at One

Hibiscus Alley, Charlotte Amalie, St. Thomas, U.S. Virgin Islands ("CONTRACTOR").

## EXPLANATORY STATEMENT:

A. HOVENSA wishes to retain CONTRACTOR to perform Work in connection with the

construction of a Low Sulfur Gasoline Hydrotreater and related facilities (the "Facilities") to be located at

HOVENSA's petroleum refinery in St. Croix, U.S. Virgin Islands (the "Refinery"), as described in

Appendix A attached.

B. CONTRACTOR is willing to perform the Work on a lump sum basis under the terms of this

Agreement.

THE PARTIES AGREE AS FOLLOWS:

I.    SCOPE

1.1    This Agreement consists of this document, the following documents which are attached

and any other document which is incorporated in this Agreement by reference:

      1.1.1   Appendix A:  Scope of Work

      1.1.2   Appendix B:  Coordination Procedures

      1.1.3   Appendix C:  Engineering Standards

      1.1.4   Appendix D:  Compensation and Terms of Payment

              Exhibit 1: Terms of Payment

              Exhibit 2: Cash Flow Curves



Exhibit 3: Earned Value Matrix

Exhibit 4: Project Cost Breakdown

Exhibit 5: Letter of Credit

Exhibit 6: Contract Change Orders

Exhibit 7: Contractor Affidavit: Liens

1.1.5   Appendix E:   Project Schedule

Exhibit 1: Master Project Schedule

Exhibit 2: Tentative Refinery Turnaround Schedule

Exhibit 3: Refinery Holiday Schedule

1.1.6   Appendix F:   FEED Package

Exhibit 1: Process Description

Exhibit 2: Process Interlocks & Compressor Controls Summary

Exhibit 3: Equipment List

Exhibit 4: Material Selection Diagrams

Exhibit 5: Reactor Specifications & Drawings

Exhibit 6: EMRE / KBR BDS Package (2 volumes)

Exhibit 7: EMRE / KBR DBS Package (1 volume)

Exhibit 8: EMRE Design Notes (1 volume)

Exhibit 9: EMRE Design Review Milestones

Exhibit 10: P&IDs

Exhibit 11: Auxiliary Equipment Datasheets

Exhibit 12: Preliminary Electrical Load List

Exhibit 13: HVAC Pressurized Buildings Standard

Exhibit 14: Plot Plans & B.L. Piping Sketch

Exhibit 15 - EMRE/KBR Process Simulations

1.1.7   Appendix G:   Technical Questions and Answers

1.1.8   Appendix H:   Commercial Questions and Answers

1.1.9   Appendix I:   Items Provided by HOVENSA

1.1.10  Appendix J:   Performance Guarantees

1.1.11  Appendix K:   Schedule and Performance Liquidated Damages

1.1.12  Appendix L:   Construction Workforce

1.1.13  Appendix M:   Ocean Transportation Information

        Exhibit 1: Hovensa RO RO Dock Information

        Exhibit 2: Title to Materials

        Exhibit 3: Ocean Shipping Support Design for Major Equipment

        Exhibit 4: Freight Forwarders

        *Exhibit 5: Marine & Terminal Regulations*

1.1.14  Appendix N:   Statement Regarding Site Conditions

        Exhibit 1: MEC Topographical Map

        *Exhibit 2: Preliminary Geotechnical Investigation Report - URS*

1.1.15  Appendix O:   Radio Information

1.1.16  Appendix P:   Use of Non-Domestic Materials

1.1.17  Appendix Q:   Parent Guarantee Letter

1.1.18  Appendix R:   Approved Vendors List

1.1.19  Appendix S:   Equipment and Instrument Data Sheet Forms

1.1.20  Appendix T:   Mechanical Integrity Forms

1.1.21  Appendix U:   Deleted

1.1.22  Appendix V:   ASD Manual Table of Contents

1.1.23  Appendix W:   I&C Responsibility Matrix

1.1.24  Appendix X:   Mechanical Completion Checklist

1.1.25  Appendix Y:   PHA Guidance – Guidelines of Deviation

1.1.26  Appendix Z:   BEDD Sheets

1.1.27  Appendix AA:  Intentionally Left Blank

1.1.28  Appendix AB:  HOVENSA Standard Contract Attachments





1.1.29 Appendix AC: Agency Agreement

1.1.30 Appendix AD: Organizational Chart and Key Personnel Resumes

1.1.31 Appendix AE: Unit Rates for Reimbursable Work due to Variation

1.1.32 Appendix AF: Equipment Lease Agreement

    Exhibit 1: Sample Equipment Lease

    Exhibit 2: General Procedures For Using Equipment Lease Agreement

1.1.33 Appendix AG: Deleted

1.1.34 Appendix AH: Federal Contractor Certificate of Compliance

1.2    The services generally to be performed by CONTRACTOR under this Agreement (the "Work") are set forth in Appendix A.

1.3    The items generally to be provided by HOVENSA and others under this Agreement are set forth in Appendix I.

1.4    For any work in addition to that defined in this Agreement, HOVENSA will advise CONTRACTOR in writing of the extent of Work required. HOVENSA may also direct CONTRACTOR in writing to perform sufficient conceptual engineering to define appropriately the scope of additional work.

1.5    If there is any conflict between the Articles of this Agreement and any of the Appendices, the Articles will control. If there is any conflict between Appendices, it will be brought to HOVENSA's attention promptly and the more stringent requirement on CONTRACTOR will control, unless otherwise agreed. If there is any conflict arising from any change in any Appendix, the Appendix of the latest date will control.

1.6    All parts of the Work reasonably inferred from and not expressly mentioned in Appendix A or included in Appendix I, will be performed as an obligation of CONTRACTOR under this Agreement and Appendix A.

## II. DEFINITION OF THE FACILITIES



2.1     The "Facility" or "Facilities" means the Low Sulfur Gasoline Hydrotreater and related facilities at HOVENSA's petroleum refining facility located at St. Croix, United States Virgin Islands (the "Refinery") as described in Appendix A

## III.     COORDINATION OF WORK

### 3.1     Administrative Procedures

3.1.1     CONTRACTOR acknowledges receipt of the HOVENSA Coordination Procedures, which are incorporated by reference, and the Table of Contents of which is attached as Appendix B, and CONTRACTOR will comply with the HOVENSA Coordination Procedures in performing the Work. If there is any conflict between any part of the Coordination Procedures and the Articles of this Agreement, the Articles will control. If there is any conflict within the Coordination Procedures or between the Coordination Procedures and any of the Appendices, it will be brought to HOVENSA's attention promptly and the more stringent requirement on CONTRACTOR will control, unless otherwise agreed. HOVENSA reserves the right to issue additions to, or revisions of, the HOVENSA Coordination Procedures in writing at any time during the course of the Work; provided that, if the additions or revisions would increase or decrease the cost of or time required for CONTRACTOR to perform the Work, this Agreement will be modified accordingly, pursuant to Article X.

### 3.2     Engineering Standards

3.2.1     CONTRACTOR acknowledges receipt of the HOVENSA Engineering Standards which are incorporated by reference, and the Table of Contents of which is attached as Appendix C (the "Standards"), which contain HOVENSA's design and construction criteria and CONTRACTOR will perform the Work in accordance with the Standards. If there is any conflict between any part of the Standards and the Articles of this Agreement, the Articles will control. If there is any conflict within the Standards or between the Standards and any of the Appendices, it will be brought to HOVENSA's attention promptly and the more stringent requirement on CONTRACTOR will control, unless otherwise agreed. HOVENSA reserves the right to issue additions to or revisions of the Standards during the





course of the Work, and will handle these additions or revisions in accordance with the HOVENSA Coordination Procedures, provided that if the additions or revisions would materially increase or decrease the cost of or time required for CONTRACTOR to perform the Work or otherwise materially affect CONTRACTOR'S obligations, this Agreement will be modified accordingly pursuant to Article X.

3.3    Proprietary Information

3.3.1  CONTRACTOR agrees that all information supplied to it by HOVENSA is proprietary and CONTRACTOR will not use or disclose to others any such information without HOVENSA's written consent except as may be necessary to perform the Work, provided that for purposes of use by CONTRACTOR proprietary information will not include the following:

3.3.1.1     information which, at the time of disclosure to CONTRACTOR is in the public domain;

3.3.1.2     information which, after disclosure to CONTRACTOR, enters the public domain;

3.3.1.3     information which, prior to disclosure to CONTRACTOR, was already in CONTRACTOR's possession and was not acquired from HOVENSA;

3.3.1.4     information that, subsequent to disclosure to CONTRACTOR is obtained by CONTRACTOR from a third party who has the right to disclose such information without binder of secrecy.

Notwithstanding the foregoing, no information supplied to CONTRACTOR by HOVENSA will be disclosed to others even if it falls within one of the exceptions to the definition of proprietary information listed above.

3.3.2     Any agreements or representations between CONTRACTOR and HOVENSA entered into prior to the effective date hereof relating to secrecy or confidentiality of information will survive the signing of this Agreement or any completion of the Work, or any other termination or cancellation of this Agreement, each in accordance with the terms of the other agreement or representation.

3.4    Personnel; Independent Contractor




3.4.1   CONTRACTOR warrants that it will employ properly qualified, and where appropriate, properly licensed or certified personnel necessary to perform the Work.

3.4.2   In performing the Work, CONTRACTOR is acting as an independent contractor and reserves the right to hire or discharge employees, designate the classification and hours of work for each employee and to supervise and control the manner of performance of the Work.

3.4.3   Prior to assigning personnel to the Work, CONTRACTOR will submit for HOVENSA's review the names and work experience of, and licenses or certificates held by, personnel nominated to fill key Work positions, including Construction Manager or HSE Manager. Personnel will not be assigned to or removed from these key positions without sufficient notification to HOVENSA. The fact that such notification is required will not affect CONTRACTOR's status as an independent contractor under this Agreement.

3.4.4   CONTRACTOR will furnish HOVENSA with an electronic and hard copy weekly manning curve by craft. The form of the breakdown will be acceptable to HOVENSA.

3.4.5   CONTRACTOR will employ a competent Construction Manager at the project site during the progress of the Work. The Construction Manager will at all times be satisfactory to HOVENSA.

3.4.6   CONTRACTOR will employ an ample work force of qualified personnel and properly schedule the Work to maintain the rate of progress required to meet the scheduled completion *dates in accordance with the Master Project Schedule Appendix E*. Each Monday, CONTRACTOR will provide a weekly progress report in a form acceptable to HOVENSA that relates to the prior week. If CONTRACTOR fails to maintain a rate of progress satisfactory to HOVENSA and that jeopardizes the achievement of the Mechanical Completion date as defined in Appendix E, CONTRACTOR will place additional personnel on the Work, *increase the work day or work week duration, expedite materials and equipment and / or* reorganize work methods in order that the progress of Work be brought up to and maintained at the required rate of progress, all without additional cost to HOVENSA.



3.4.7  CONTRACTOR will ensure that labor employed by it and its subcontractors on the premises of HOVENSA comply with HOVENSA's Workplace Violence Policy. To insure the safety of all those in the facility, CONTRACTOR must establish and enforce safety, security and personnel conduct regulations that are not inconsistent with HOVENSA's guidelines. CONTRACTOR will submit its policies to HOVENSA prior to the start of Work. CONTRACTOR must establish similar guidelines for its subcontractors and monitor their compliance. Further, CONTRACTOR and HOVENSA will use all reasonable efforts to prevent labor disputes that may interfere with construction of the Facilities and will promptly take all reasonable steps that may be available in connection with the resolution of violations of collective bargaining agreements and jurisdictional disputes, subject to Article 13. CONTRACTOR will promptly advise HOVENSA if there is any dispute.

3.4.8  In the performance of the Work, CONTRACTOR will, to the fullest extent practicable and consistent with applicable law, employ and promote qualified Virgin Islands residents for positions at all levels within CONTRACTOR's organization, regardless of age, race, creed, color, sex, national origin or ancestry. CONTRACTOR will comply with all laws requiring registration of job vacancies with the Virgin Islands Department of Labor. If CONTRACTOR reasonably determines that it is unable to locate sufficient qualified construction labor from the Virgin Islands and, as a result, if CONTRACTOR necessarily resorts to recruiting labor from off-island, from the continental United States or elsewhere, CONTRACTOR will so advise HOVENSA in writing. CONTRACTOR will ensure that these same obligations apply to its subcontractors.

3.5    Warranties

3.5.1  Workmanship.

3.5.1.1 CONTRACTOR warrants that the Facilities will be constructed in a competent, efficient and workerlike manner using new and first class materials following current state of the art, where practicable, petroleum refinery construction practice and in accordance with the plans and specifications provided by HOVENSA and in accordance with the standards of care and diligence normally practiced by recognized construction firms. CONTRACTOR recognizes that the soil conditions at the Facility site, as reflected in this Agreement, require special considerations and has



represented its Work will take into account and address these conditions. Accordingly, CONTRACTOR warrants that the foundation and structural work will be performed in accordance with the standards of care and diligence normally practiced by recognized construction firms in performing services of a similar nature and will be free of defects, except to the extent caused by force majeure or due to soil or subsoil conditions found to be different from those described in Appendix N, Exhibit 2, within the parameters set by the Engineering Standards in Appendix C ("Structural Warranty"). CONTRACTOR warrants the Work against defects and will promptly correct, repair or replace, at its expense, any field workmanship which is defective or does not conform to the final plans and specifications of the Work ("Defective Work") within twelve (12) months following **Final Acceptance of Performance Testing** (as defined in Article 11.0 of Appendix B) or eighteen (18) months after Mechanical Completion (as defined in Appendix A), whichever occurs first (the "Warranty Period"). If HOVENSA believes that Defective Work has arisen, HOVENSA will notify CONTRACTOR in writing of the Defective Work describing the non-conformance. Expenditures for construction labor and materials will be borne by CONTRACTOR. CONTRACTOR will not be obligated to perform remedial services for Work which becomes Defective Work as a result of (i) ordinary wear and tear, (ii) improper operation or maintenance of the Facilities by HOVENSA, (iii) normal wear and tear, (iv) normal corrosion or erosion, provided CONTRACTOR complies with all requirements of the Work, or (v) defective materials or equipment not supplied by CONTRACTOR or CONTRACTOR's subcontractors, vendors or suppliers, whether arising in contract, tort (including negligence) or otherwise. CONTRACTOR will be obligated to provide, as a remedial obligation, any additional miscellaneous bracing of piping, structures or equipment that may be required after start-up of the Facilities to control vibration.

3.5.1.2 If any of the warranties in Section 3.5 is breached, CONTRACTOR will repair, replace, and/or correct the applicable portion of the Work, as required, immediately or on an expedited basis such that it meets the requirements of this Agreement, at no cost to HOVENSA. CONTRACTOR will provide construction services to begin corrective action on the affected portion of the Work as soon as reasonably possible after receipt by CONTRACTOR of HOVENSA's notice referred to above, and will submit its plan of action to HOVENSA not later than thirty-six hours after receipt of the notice.

CONTRACTOR will, at its sole expense, disassemble, remove, replace and reinstall the Defective Work to the extent necessary, while minimizing the downtime to HOVENSA, for CONTRACTOR to perform its warranty obligations. CONTRACTOR will use all reasonable efforts to remedy any failure or breach so as to avoid disruption of HOVENSA's operations. HOVENSA will provide CONTRACTOR with access to the Facility to perform its warranty obligations under this Agreement, so long as such access does not unreasonably interfere with operation of the Facility. CONTRACTOR's obligations under this Article 3.5 are collectively called the "Repairs."

3.5.1.3 All responsibility for pursuing Contractor's subcontractors or sub-vendors for support will remain with Contractor, as well as providing whatever is needed in addition to the subcontractor's or sub-vendors' material/equipment warranty to ensure that the Repairs are made at no charge to HOVENSA.

3.5.1.4 HOVENSA will provide CONTRACTOR's representatives necessary access to the Facility for the purpose of observing the operation and maintenance thereof upon reasonable notice during times agreed by HOVENSA and CONTRACTOR.

3.5.2   Construction Mechanical Equipment and Material Warranty.

3.5.2.1        All construction equipment and construction material furnished by CONTRACTOR and incorporated in the Work will be new unless otherwise agreed to by HOVENSA in writing. CONTRACTOR will purchase construction material and construction equipment in accordance with approved specifications. CONTRACTOR will purchase all miscellaneous bulk items.

3.5.2.2 Deleted.

3.5.2.3 CONTRACTOR will pursue recourse against vendors and suppliers for faulty or defective material or equipment.

3.5.3   The warranties and remedies for breach of warranty in this Agreement are the exclusive warranties and remedies by CONTRACTOR applicable to the Work and are in lieu of any other warranties, express or implied, whether under this Agreement, at law or otherwise. HOVENSA expressly disclaims other guarantees or warranties of any kind or description, whether express or

implied, and whether arising under law or equity or trade custom, including warranties of merchantability and fitness for a particular purpose.

3.6    Inspection and Rejection of Materials and Workmanship.

3.6.1    The Work performed, including materials and workmanship, is subject to inspection and test by HOVENSA at any reasonable time, at any place where the manufacture or performance will be carried on. HOVENSA has the right to review the progress of CONTRACTOR's work. Advance notice of readiness for inspection will be given as specified in the Agreement or otherwise not fewer than two (2) or more than four (4) working days. HOVENSA's failure to make inspection or test or to discover defects or to object thereto will not prejudice or operate as a release or waiver of the rights of HOVENSA including the right to inspect or reject at a later time, nor will it release CONTRACTOR. Unless otherwise specified herein, CONTRACTOR will furnish at such facilities that which may be necessary for the making of the inspection and tests.

3.6.2    Surplus Materials, Tools and Equipment. Surplus materials, tools and equipment will be inventoried by CONTRACTOR at the completion of the Work and removed in accordance with HOVENSA's written instructions. All of CONTRACTOR's and its subcontractors' temporary construction buildings will be removed, as directed by HOVENSA in writing, by CONTRACTOR or its subcontractors upon completion of Work.

3.6.3    CONTRACTOR has inspected the Facilities' site and soil conditions, and it has the skills necessary to perform the Work hereunder, has reasonable knowledge of the labor and skilled craftspersons supply in the area, and will make all reasonable efforts to obtain sufficient labor to perform the Work within the schedule dates referred to herein. Initially, CONTRACTOR will be entitled to rely upon information and data on soil and subsoil communicated by HOVENSA in writing and contained in this Agreement. Contractor's price and schedule are based on this information. Subsequent to the signing of this Agreement, CONTRACTOR will perform its own soil and subsoil testing as soon as possible but not later than thirty (30) days from the date HOVENSA makes the area available, and will inform HOVENSA of the results of said testing and survey. If the results of said testing and survey reveal discrepancies or contradictions with information and data on soil and subsoil

11



as contained in this Agreement or show unexpected site conditions having an impact on either the price

or the schedule conditions as agreed under the Agreement, then CONTRACTOR will be entitled to a

Change Order for a corresponding adjustment in the compensation and/or the Project Schedule. At the

time of performing the Work on Facilities site, if CONTRACTOR encounters underground obstructions

or hindrances not shown on or inaccurately described in said drawings, plans or specifications, limited

to pipes, conduits, cables and sewers, CONTRACTOR will be entitled to a corresponding Change

Order as per Article XIII.

 3.6.4   CONTRACTOR's Organization.  Attached as Appendix AD are organization

charts showing lines of authority and communications for CONTRACTOR's employees who will be

engaged in the Work.

## IV.    OBLIGATIONS OF CONTRACTOR

### 4.1    General

 4.1.1  The Work will be executed as expeditiously as possible so that Mechanical

Completion is achieved in accordance with the Project Schedule.  HOVENSA will make the FACILITY

available to CONTRACTOR for performance of the WORK twenty four (24) hours a day; seven (7) days

a week.   CONTRACTOR will establish consistent work week; work day schedules and notify

HOVENSA forty eight (48) hours in advance of any necessary adjustments in CONTRACTOR's Work

schedule in order that the necessary support services may be provided.  Labor rates for stand-by time

when specifically ordered by Owner will be at the rate set forth in Appendix AE.  Work stoppages of

fewer than 60 minutes will not reimbursed.

 4.1.2  All construction will proceed in a neat and workerlike manner.  The premises will

be maintained by CONTRACTOR in a safe and orderly condition throughout the performance of the

Work and, at the completion thereof, will be left in a safe, neat and orderly condition.

 4.1.3  Subject to Appendix I, CONTRACTOR will furnish all labor, machinery, material,

consumables, equipment, tools (marked conspicuously), supplies, fuel, transportation, and do

everything necessary to complete the Work in accordance with this Agreement.

 4.1.4 Notwithstanding any plans or specifications, CONTRACTOR is responsible for joint

and timely inspection, together with HOVENSA, of any work at the site done by others which may affect

the Work or to which the Work must be joined  to reasonably ascertain its suitability for use in relation to




the Work and will immediately agree with HOVENSA on what measures should be taken for the purpose of correction of any deficiencies therein. HOVENSA will then have a reasonable time to have such deficiencies corrected, if the correction is HOVENSA's responsibility

4.1.5   CONTRACTOR's Project Completion schedule is attached as Appendix E CONTRACTOR may not change the Schedule without HOVENSA's written approval. CONTRACTOR will promptly advise HOVENSA, in writing, of any anticipated deviations from the Schedule. Changes in the Work that do not affect the critical path will not be the basis for a Change in the Project Schedule.

4.1.6   CONTRACTOR will perform the Work in accordance with the Project Schedule as per Appendix E to this Agreement and will be responsible for delays caused by CONTRACTOR to the sole extent of the remedies as provided for under Appendix K.

4.2     Special Conditions for Field Erection

4.2.1   CONTRACTOR will obtain HOVENSA's written approval for type, size and location of any temporary buildings, parking facilities and service storage areas. CONTRACTOR will remove all temporary construction buildings and equipment on completion of the Work unless otherwise instructed in writing by HOVENSA. CONTRACTOR will return the site areas occupied by those temporary facilities to the same condition as they were in when turned over to CONTRACTOR by HOVENSA.

4.2.2   Always subject to Article 3.6.3, CONTRACTOR will notify HOVENSA promptly in writing when it becomes aware of any latent physical conditions at the site differing materially from those in existence upon inspection of the site by CONTRACTOR.

4.2.3   No form of advertising not required by law will be permitted at the Work Site, nor will photographs of the Refinery or Work Site be permitted without written approval of HOVENSA.

4.2.4   CONTRACTOR will be responsible for requiring each employee to display identification as may be required by HOVENSA. All prescribed identification will be immediately delivered to HOVENSA for cancellation upon termination of any employee.

4.2.5   CONTRACTOR will provide HOVENSA with a daily list of personnel and equipment authorized to enter HOVENSA's property for Work reasons.



13

4.2.6 No visitors to the site will be permitted without written approval by HOVENSA.

4.2.7 If the HOVENSA Fire Department responds more than twice to an alarm which, in HOVENSA's reasonable judgment, was necessitated as a result of CONTRACTOR's negligence in the performance of the Work, CONTRACTOR will pay HOVENSA an Emergency Response Fee of $15,000.00. The fee will be imposed each time the HOVENSA Fire Department responds to such an alarm. The cost for any Emergency Response Fee will be either re-billed to CONTRACTOR or deducted from HOVENSA's payment to CONTRACTOR.

4.3 Compliance with Law, Permits and Regulations

4.3.1 CONTRACTOR will comply with all United States federal, state, U.S. Virgin Islands or other laws, regulations, ordinances or rules that pertain to the Work and HOVENSA will not be liable for, and CONTRACTOR will defend and indemnify HOVENSA against, any violation by CONTRACTOR of any laws, regulations, ordinances or rules. The Compensation and/or Project Schedule will be adjusted by a Change Order as per Article XIII as a result of the execution of any new law or regulation or of any change in existing laws and regulations as stated herein above or as a result of any binding change in the interpretation of any applicable said law or regulation of any United States federal, state or local U.S. Virgin Islands authority having jurisdiction over the Agreement and the Work, which occurs after December 9, 2004, (and which will be deemed to include any change in the interpretation or application, including how customs duties are handled, by competent authorities).

4.3.2 CONTRACTOR certifies compliance with the Fair Labor Standards Act of 1938, as amended, and all invoices will so certify. Except as otherwise specified, HOVENSA will secure and pay for the building permit and all licenses and easements for permanent structures. All other necessary permits required for prosecution of the Work will be obtained by CONTRACTOR and be in the name of HOVENSA, where possible.

4.4 Safety

4.4.1 CONTRACTOR will comply with all Federal OSHA, EPA, State, and Territorial laws and regulations as these pertain to CONTRACTOR's responsibilities (including OSHA Hazard Communication Standard, 29 C.F.R. §1910.1200; OSHA Process Safety Management Standard, 29




C.F.R. §1910.119, and EPA Risk Management Program, 40 C.F.R. §68), as well as with HOVENSA's Safety Guidelines and Requirements for Contractors (the "Guidelines"). Exhibit 12, for safety, health and fire protection. Prior to commencing the Work, CONTRACTOR is responsible for becoming acquainted with safety and health laws and regulations, HOVENSA's Guidelines, equipment manufacturers' guidelines for safe use and operation of equipment, and any additional safety requirements which may be necessary to complete the work safely. CONTRACTOR will take all necessary precautions to keep the Work Site free from recognized hazards that are likely to cause injury, death, illness, or damage to property. CONTRACTOR is responsible for preparation, administration, and compliance with its own safety procedures which must be designed to be in compliance with the above. It is a requirement that CONTRACTOR adhere to HOVENSA's established safe work practices, which require strict adherence to OSHA's PSM Standard and the EPA's Risk Management Program by all contractors.

4.4.2    In accordance with OSHA's PSM Standard and the EPA's Risk Management Program, to ensure that employees can perform their job tasks in a safe manner, CONTRACTOR must adhere to HOVENSA's written procedures, as received from HOVENSA on or about execution of the Agreement, to maintain the ongoing integrity of process equipment, and must train each employee in the work practices necessary to safely perform his/her job. CONTRACTOR must assure that employees are instructed in: (a) the known and potential hazards of the job, (b) the processes, (c) the known and potential hazards of the processes, (d) maintaining the ongoing integrity of the process equipment, and (e) the applicable provisions of the emergency action plan.

4.4.3    CONTRACTOR must document that each employee has received the required training, and must have evidence that the employee has understood it. This information must be maintained as a record, and must include the employee's name, date of training, and the means used to verify that the employee understood the training.

4.5    Services

4.5.1    As defined in Appendix A, CONTRACTOR will provide all construction services, including but not limited to project management services, field construction management, construction

planning and scheduling, construction cost monitoring and control, supply of direct hire field labor, supervision of direct hire and subcontract field labor, supply of construction equipment, small tools, consumables, temporary and field office facilities, first aid services, preparation of field purchase requisitions, coordination and integration with engineering, field inspection and testing, coordination with vendors' service representatives, cost estimating, receipt, storage, care, and inventory maintenance of project materials, all as necessary to perform the Work and as authorized by HOVENSA, and exclusive of those services and equipment defined as furnished by HOVENSA.

4.5.2   CONTRACTOR will provide subcontract administration services including bid package preparation, solicitation, analysis, conditioning, award, and supervision of those portions of the Work that are to be subcontracted.

4.6    Assessments

4.6.1   CONTRACTOR will pay all U. S. federal, state and locally imposed contributions, assessments and taxes that are based upon the wages or other remuneration paid to persons employed by CONTRACTOR on the Work.

4.7    Pollution Abatement and Noise

4.7.1   CONTRACTOR will perform the Work so it will comply with all environmental laws, orders, rules, regulations and permits currently in effect or proposed in an official register.

4.7.2.  CONTRACTOR's design and individual items of equipment, and piping connected to the equipment, will comply with United States federal noise intensity restrictions.

4.8    Engineering Services - HOVENSA will provide all engineering and procurement Work directly or through an engineer of its choice (the "Engineer"). CONTRACTOR will cooperate and coordinate with Engineer as required. CONTRACTOR and Engineer are affiliated companies and CONTRACTOR will not use any delays or any action or inaction by Engineer to excuse any breach or nonperformance, including delay, by CONTRACTOR under this Agreement. CONTRACTOR will be responsible for payment of any additional costs incurred by HOVENSA as a result of any delays caused by CONTRACTOR.





16

4.9    Cooperation in Financing. CONTRACTOR will furnish information, consents, certificates, opinions of counsel, and other documents or assistance related to CONTRACTOR's corporate authorization to undertake the obligations in this Agreement as may be reasonably requested by any lender for its sole use for the financing of the Facility and will be compensated by HOVENSA on a reimbursable basis for any related costs and expenses, if any, relating to such assistance. The parties agree to negotiate in good faith concerning any reasonable amendment or addition to this Agreement required by any lender.

4.10    Duty of Care and Custody in the Work and the Facilities.

CONTRACTOR will have care, custody and control of all materials and equipment furnished by it and for all materials and equipment delivered to it by HOVENSA which are to be incorporated in the Work and the Facilities and for all Work completed or in progress until the earlier of Mechanical Completion or delivery of the Facilities to Company pursuant to the terms of this Agreement, at which time risk of loss will pass to HOVENSA. In the event of loss or damage to the Work or the Facilities before such time and unless caused either by a Force Majeure event, HOVENSA or any HOVENSA's other contractor(s), CONTRACTOR will repair or replace the lost or damaged items at its sole cost.

## V.    Completion of Construction

5.1    The Work will be installed and will be mechanically completed in accordance with Appendix A, Appendix B and Appendix E and in compliance with the Process Safety Management requirements of Appendix Y.

## VI.    HOVENSA's OBLIGATIONS

6.1 HOVENSA's obligations are set out in Appendix I; Items Provided by HOVENSA.

## VII.    INDEMNITY; INSURANCE REQUIREMENTS

7.1.1    CONTRACTOR will defend, indemnify and release HOVENSA and its members, affiliates, successors and assigns and their parents, subsidiaries and affiliates (collectively called "Indemnified Parties"), up to the gross sum of the first $10,000,000 for each occurrence and a total of $20,000,000 in the aggregate, against all claims, causes of action, damages, liabilities, attorneys' fees and related expenses (herein "Claims") which the Indemnified Parties may suffer or for which the



17

Indemnified Parties may be liable, by reason of actual or claimed injury (including death) to any person, or actual or claimed physical damage to any property (including the Facilities), directly or indirectly caused or contributed to, or claimed to be caused or contributed to by reason of any act, omission or negligence, including strict liability, whether active or passive, of CONTRACTOR, its employees or its subcontractors, or of anyone for whose acts they are liable, or of anyone acting under their direction or control, or in connection with, or incident to, performance of this Contract, unless caused by the sole negligence or sole willful misconduct of the Indemnified Parties. CONTRACTOR will do this notwithstanding the Virgin Islands Comparative Negligence Statute, Title 5 V.I.C. Section 1451. In all cases covered hereunder, CONTRACTOR will initially defend the Indemnified Parties until it is judicially determined that any liability was caused by the sole negligence or sole willful misconduct of the Indemnified Parties exclusive of any fault of the plaintiff, plaintiff's employer, or any other party or non-party to the lawsuit. If it is so determined, HOVENSA will reimburse CONTRACTOR or its insurance carrier for all judgments and expenses incurred, including reasonable attorneys' fees and the reasonable costs incurred by CONTRACTOR or its insurer in defending any Claims arising from such liability.

7.1.2.1   To the extent any claims exceed the limits set forth in Article 7.1.1, CONTRACTOR will defend and indemnify the Indemnified Parties from any claim, liability, loss, cost or expense claimed by third parties for property damage or bodily injury, including death, to the extent caused by the negligence or willful misconduct of CONTRACTOR, its agents, employees or CONTRACTOR's affiliates, in connection with CONTRACTOR's performance of the Work.

7.1.2.2 To the extent any claims exceed the limits set forth in Article 7.1.1, HOVENSA will defend and indemnify CONTRACTOR from any claim, liability, loss, cost or expense claimed by third parties for property damage and bodily injury, including death, to the extent caused by the negligence or willful misconduct of the Indemnified Parties, its agents or employees in connection with CONTRACTOR's performance of the Work.

7.1.2.3 To the extent any claims exceed the limits set forth in Article 7.1.1, CONTRACTOR and HOVENSA agree that for claims of third parties attributable to the joint negligence

18



or willful misconduct of the parties, each will be liable to the third party to the extent of its negligence or willful misconduct.

7.1.3.1 CONTRACTOR will not be liable to HOVENSA for any actual or claimed injury (including death) to any person, or actual or claimed physical damage to any property, including the Work and the Facility, caused by HOVENSA's other contractors, other than the HOVENSA Contractors.

7.1.3.2 Beginning twelve (12) months from Commencement of Operations, HOVENSA will defend and indemnify CONTRACTOR, its subcontractors and their respective affiliates against all liability, losses, claims, costs and expenses for injury or damage to any person or property (excluding the property of CONTRACTOR or its subcontractors or the personnel of either of them) that exceed Five Hundred Thousand United States Dollars ($500,000 USD) per occurrence or One Million Five Hundred Thousand United States Dollars ($1,500,000 USD) in the aggregate and to the extent resulting from pollution or contamination physically originating from the Facilities and caused by the discharge or escape of oil or of other pollutants or contaminants arising out of or in any way connected with the performance of the Work on the Work Site, whether caused in whole or in part by the negligence or strict liability of CONTRACTOR, its subcontractors or the personnel of either; provided, however, that CONTRACTOR assumes all liability for and will defend and indemnify HOVENSA for all liability, losses, claims and expenses incurred in the control and removal of any pollution or contamination arising directly from the performance of the Work up to Mechanical Completion and, up to a limit of Five Hundred Thousand United States Dollars ($500,000 USD) per occurrence or One Million Five Hundred Thousand United States Dollars ($1,500,000 USD) in the aggregate, from Mechanical Completion through the end of the Warranty Period, if due to a breach of warranty by CONTRACTOR.

7.2     Before CONTRACTOR starts any work, CONTRACTOR will, at its expense, maintain and require its subcontractors to maintain during the performance of the Work, insurance in form and with insurance companies satisfactory to HOVENSA and authorized to do business in the U.S. Virgin Islands as follows:




7.2.1 Worker's Compensation insurance covering CONTRACTOR's obligations under all applicable laws and Employer's Liability insurance in the amount of $1,000,000 per occurrence

7.2.2 General Liability insurance for the duration of the Work, including any maintenance period, including contractual liability and completed operations (for three years after completion of the Work), with limits of $10,000,000 combined single limit, per occurrence, bodily injury and property damage, with $20,000,000 aggregate. The policy and amounts of cover set out above are not intended to duplicate the policy or amounts of cover under the EP Agreement with Engineer and the aggregate will cover both this Agreement and the EP Agreement. HOVENSA will have the option to provide this insurance and if it elects to do so, the lump sum price will be reduced by the applicable amount from Appendix D, Exhibit 8, the indemnity in Article 7.1 will be reversed with HOVENSA providing CONTRACTOR with an indemnity to the same extent. CONTRACTOR will retain responsibility for the level of deductibles described in Appendix D, Exhibit 8. CONTRACTOR will be named as an additional insured on HOVENSA's policy and any other necessary changes will be made to reflect this arrangement.

7.2.3 To the fullest extent possible, CONTRACTOR's general liability insurance will cover the indemnity agreements and obligations in Articles 7.1.1, 7.1.2.1 and 7.1.2.3.

7.2.4 Automobile Liability insurance, with limits of $5,000,000 combined single limit per occurrence, bodily injury and property damage. The automobile insurance will apply to all vehicles used by CONTRACTOR.

7.2.5 CONTRACTOR will pay any contributions for unemployment insurance and disability benefits for the employees of CONTRACTOR required by the laws of the state or territory in which the Work is being performed.

7.2.6. CONTRACTOR will immediately notify HOVENSA's Safety Department either orally or by fax, of any incident occurring on or regarding HOVENSA's property, which results in property damage, personal injury, or death. CONTRACTOR will also furnish HOVENSA with two (2) copies of a written report of any such incident within three (3) days of its occurrence.

7.3 CONTRACTOR will provide "All Risk" Builders Risk Insurance which will include, but not be limited to all materials, equipment, supplies, civil works and machinery forming part of or intending to form part of the Work, including common facilities and facilities which are improvements, tie-ins, connections and additions to existing facilities, pipelines and all other real and personal property, collectively known as the Work, including testing of the Facilities and during their operation until the Facilities are operating to HOVENSA's satisfaction, and twelve (12) months' extended maintenance period thereafter. All insurance provided by CONTRACTOR under this Agreement will have limits and aggregates, if any, dedicated to this Agreement.

7.4    Except for Workers' Compensation and Automobile Liability insurance for vehicles used outside of the U.S. Virgin Islands, prior to the commencement of any Work, CONTRACTOR will furnish to HOVENSA sufficient certificates of all the insurance to be provided by CONTRACTOR, which certificates will provide that the insurance will not be canceled until at least thirty (30) days written notice is given to HOVENSA c/o Administrative Services. CONTRACTOR will promptly notify HOVENSA in writing of any changes to insurance policies that adversely affect the Indemnified Parties. All polices of insurance provided by CONTRACTOR will be primary to any other insurance available to the Indemnified Parties and will name HOVENSA and its members, affiliates, successors and assigns and their parents, subsidiaries and affiliates and all contractors and subcontractors as additional insureds (except worker's compensation) and provide for waiver of underwriters' rights of subrogation against the parties listed above, and any third party designated by HOVENSA. Insurance certificates must be identified with contract number. All insurance provided by CONTRACTOR under this Agreement will have limits and aggregates, if any, dedicated to this Agreement.

VIII.    CONSEQUENTIAL LOSS EXCLUSION

8.1 Notwithstanding anything to the contrary in this Agreement, neither party will be liable and no claim will be made to the other for any punitive, indirect, incidental or consequential damages, loss of profits, loss of product or business interruption however it be considered, direct or indirect, and no matter how caused, whether any such claim is based or claimed to be based on negligence, fault, breach of warranty, breach of agreement, statute, strict liability by either party or otherwise





## IX.  REPRESENTATIVES OF PARTIES

9.1     CONTRACTOR will appoint a Project Manager who will be authorized to act on behalf of CONTRACTOR and with whom HOVENSA may consult at all reasonable times concerning the Work, and whose instructions, requests and decisions will be binding upon CONTRACTOR, except that the individual will have no authority to amend or waive any of the terms of this Agreement.  The Project Manager will at all times be acceptable to HOVENSA.

9.2     HOVENSA will appoint one individual who will be authorized to act on behalf of HOVENSA and with whom CONTRACTOR may consult at all reasonable times concerning the Work and whose instructions, requests and decisions will be binding upon HOVENSA, except that the individual will have no authority to amend or waive any of the terms of this Agreement.

## X.  COMPENSATION

10.1    HOVENSA will compensate CONTRACTOR for the Lump Sum Price of USD$ as detailed in Appendix D.

10.2    Subject to written notice to CONTRACTOR and the cure provisions as stated in Article 14.3, HOVENSA may draw against any retained amounts or other security to cure any Breach by CONTRACTOR of this Agreement or any obligation arising under this Agreement.

10.3    CONTRACTOR will submit invoices during the performance of the Work in accordance with Appendix D "Compensation and Terms of Payment." CONTRACTOR will furnish an Affidavit of Release of Liens in the form attached as Appendix D-7 with all invoices.  CONTRACTOR will show any applicable Sales or Use Taxes separately on all invoices submitted to HOVENSA for payment. In order to ensure that the correct amount of tax is withheld, CONTRACTOR agrees to invoice HOVENSA separately for Services rendered in the U.S. Virgin Islands and outside the U.S. Virgin Islands.  Invoices not so designated will be subject to the income tax withholding, unless the required documentation has been provided to HOVENSA by CONTRACTOR.

## XI.  TAXES

11.1    CONTRACTOR will be responsible for all applicable Virgin Islands taxes.  The amount charged HOVENSA by CONTRACTOR will be presumed to include all taxes and CONTRACTOR will




not separately invoice HOVENSA for them. If any U.S.V.I. Gross Receipts Tax becomes due relating to the HOVENSA Contractors, through no action or fault of CONTRACTOR, HOVENSA will be responsible for payment of or reimbursement to CONTACTOR for this tax as well as all related items such as additional charges, penalties and fines.

11.2   CONTRACTOR will be required to obtain a St. Croix business license and is responsible for the payment of its Virgin Islands income tax liability.

11.3   Personal income taxes may be due to the Virgin Islands government by CONTRACTOR's employees and must be withheld by CONTRACTOR, as required by law.

11.4   CONTRACTOR will register with and contribute to the Virgin Islands Worker's Compensation Fund. This registration is in addition to any contributions CONTRACTOR may make to its home state Worker's Compensation fund.

11.5   CONTRACTOR will pay unemployment taxes to the Virgin Islands Employment Security Agency, as well as federal Unemployment Tax and FICA.

XII   SURPLUS MATERIALS

12.1   Upon completion of the Work, HOVENSA will review all "Surplus Materials" and will have the option to retain ownership of any surplus materials on terms to be agreed on by the parties. "Surplus Materials" will include commodities only and will exclude engineered equipment, tagged items, waste or scrap, surplus resulting from changes in the Work pursuant to Article XIII, or materials not requisitioned by CONTRACTOR.

XIII.   CHANGES IN THE WORK

13.1 Changes in the work will be handled in accordance with Appendix B and Appendix D.

XIV.   BREACH; TERMINATION OR SUSPENSION OF WORK

14.1 HOVENSA will have the right to terminate this Agreement or any specific work assignment given under this Agreement, at any time and for any reason, without cause, on seventy-two (72) hours' written notice to CONTRACTOR. If there is such a termination by HOVENSA, HOVENSA will compensate CONTRACTOR in accordance with Appendix D based on the percentage of the Work completed up to the date of termination and for the period required by HOVENSA for the orderly



cessation of the Work, including all reasonable costs incurred by CONTRACTOR to demobilize, remove its resources from the Project, terminate subcontracts and terminate purchase orders with vendors.

14.2   The occurrence of any of the following events is a Breach of this Agreement:

14.2.1  Any defect in the Work which HOVENSA, in its sole judgment, determines to be material;

14.2.2  Failure, after notice has been given to CONTRACTOR of any unsafe, unsound or defective work, to begin immediately, and diligently proceed with, steps necessary to correct such work;

14.2.3  Failure to proceed with or complete the Work in accordance with the Agreement;

14.2.4  HOVENSA has reasonable grounds to believe that CONTRACTOR is or may become bankrupt, insolvent or unable to pay its debts as they become due;

14.2.5  CONTRACTOR fails to maintain materials, equipment, and personnel of such kinds and in such places as in HOVENSA'S sole judgment are reasonably required for CONTRACTOR'S performance hereunder;

14.2.6  Breach of any warranty or representation of this Agreement; or

14.2.7  Contractor becomes involved in any labor difficulties not covered in Article XV which, in HOVENSA's sole judgment, may impede or slow down the Work.

14.2.8  Failure to comply with any provision of this Agreement, which failure HOVENSA, in its sole judgment, deems to be material.

14.3   If there is a Breach under Article 14.2, HOVENSA will give CONTRACTOR written notice of the Breach and CONTRACTOR will immediately begin and diligently pursue cure of the Breach. If CONTRACTOR does not immediately begin to cure the Breach and diligently pursue the cure, HOVENSA, in its discretion, will have the right on twenty-four (24) hours' written notice to CONTRACTOR to (a) terminate this Agreement or any Work assigned hereunder pursuant to Article 11.1, (b) invoke such other legal remedies as may be available to HOVENSA under the Agreement and (c) proceed with its personnel or those of others and take possession and use all equipment and materials at the site (all of which CONTRACTOR agrees to leave for that purpose)

14.4    Upon the occurrence of any event of Breach set forth above, CONTRACTOR will not be entitled to any further payment until CONTRACTOR has taken the necessary steps so that the Breach is remedied to the satisfaction of HOVENSA, whereupon CONTRACTOR will then be paid only the amount as is due for Work properly performed by CONTRACTOR less all reasonable additional expense suffered by HOVENSA as a result of the Breach.  If the additional expense exceeds the amount due to CONTRACTOR, the amount will be paid immediately to HOVENSA by CONTRACTOR. Subject to remedies as provided under law which will always be available to HOVENSA, all remedies afforded to HOVENSA under this Agreement will be deemed to be the sole rights or remedies available to HOVENSA whether at law, equity, trade customs or otherwise.

14.5    HOVENSA may at any time suspend performance of all or any part of the Work by giving twenty-four (24) hours' written notice to CONTRACTOR.  This suspension may be continued by HOVENSA for a period of up to forty-five (45) calendar days or one hundred eighty (180) calendar days if related to an event of force majeure (it being understood that in the case of a force majeure no notice from HOVENSA is required), during which time HOVENSA may at any time, by written notice, require CONTRACTOR to resume performance of the Work.  In any case, CONTRACTOR will always be compensated by HOVENSA for reasonable and justified costs or expenses either incurred or suffered as a result thereof from the seventh (7) day of said suspension or from the fifteenth (15th) day if due to force majeure.  Either party will have the right to terminate this Agreement as per conditions under Article 11.1 above, if any such suspension lasts for more than ninety (90) days in the aggregate (one hundred eighty (180) days if due to force majeure).  If there is such a termination, or if this Agreement is terminated for a force majeure, HOVENSA will compensate CONTRACTOR in accordance with Appendix D based on the percentage of the Work completed up to the date of termination for and for the period required by HOVENSA for the orderly cessation of the terminated Work, including all reasonable demobilization costs and reasonable costs linked to terminating subcontracts and purchase orders with vendors incurred by CONTRACTOR as a result thereof.

14.6    If there is a termination for any reason, CONTRACTOR will cooperate in keeping costs and losses to a minimum, including transfer of Work in progress to HOVENSA.  CONTRACTOR will





25

use all reasonable efforts to comply with HOVENSA's instructions concerning the time and manner of termination of the Work and will without additional charge execute such assignments or other documents as HOVENSA may require to vest in HOVENSA all or such part as HOVENSA may require, of such rights in subcontracts or purchase orders as CONTRACTOR may have placed in relation to this Agreement. If such termination occurs, HOVENSA reserves the right to perform the Work with its forces.

14.7.   Any termination of this Agreement will not affect the warranty, secrecy, confidentiality or other obligations of this Agreement which by their nature would survive.

14.8    If an invoice properly due remains unpaid in whole or in part for more than thirty (30) days, CONTRACTOR may give written notice to HOVENSA and if payment is not made within thirty (30) days of the notice, CONTRACTOR may suspend the Work until receipt from HOVENSA of the full, unpaid amount. If any such invoice remains unpaid in whole or in part for more than ninety (90) days, provided notice has been given as stated above, then CONTRACTOR will be entitled to terminate this Agreement and be compensated by HOVENSA pursuant to conditions as set out under Article 11.1.

## XV.   FORCE MAJEURE

15.1   Any delays in or failure of performance by either party under this Agreement will not constitute Breach hereunder or give rise to any claims for damages to the extent caused by occurrences beyond the foreseeable and reasonable control of the affected party, and which could not have been avoided by the affected party's reasonable best efforts, including but not limited to, acts of governmental authority, acts of God, named tropical storms where HOVENSA had advised its subcontractors to suspend work, strikes or other concerted acts of workers, fires, explosions, riots, wars, rebellions and sabotage, freight embargoes, fires, floods, acts of public enemy, civil disturbances, new or changed rules or regulations of any governmental authorities (civil or military) otherwise having jurisdiction over the Work and relating to import or export, and materially affecting performance under the Agreement.

15.2    Resumption of Work will be covered as under Article 14.5.




Case 1:08-cv-01221-NRB   Document 7-2   Filed 04/18/2008   Page 28 of 39

15.3   For events of Force Majeure lasting more than fifteen (15) continuous days, HOVENSA and CONTRACTOR will negotiate in good faith an adjustment to the Project Schedule (with associated relief for liquidated damages) and the Contract Price for the additional costs reasonably incurred by CONTRACTOR as a direct result of the event of Force Majeure.

## XVI.   PATENTS AND SIMILAR RIGHTS

16.1   Except for claims or suits based upon plans, drawings or specifications furnished by HOVENSA and subject to Article 16.2, CONTRACTOR will defend and indemnify HOVENSA against all claims, loss, damage and expense arising out of the infringement of any United States patent, copyright, trade secrets or other property rights and asserted against HOVENSA in connection with the performance of the Work or subsequent operation of the Facility, provided HOVENSA promptly notifies CONTRACTOR in writing of the threat or commencement of any suit or claim and permits CONTRACTOR to control its defense.  CONTRACTOR will pay any settlement, judgment and all court costs awarded against HOVENSA in any suit and all compensation and expenses of its own counsel and experts in connection with the suit or claim.  HOVENSA may be represented by counsel of its selection, at its expense.  HOVENSA will cooperate fully in the defense of any suit or proceeding, at CONTRACTOR's expense, to the extent of furnishing evidence which is within HOVENSA's control Upon notice from HOVENSA or from third parties, except HOVENSA's process licensors, of a claim arising from any property right, CONTRACTOR may procure for HOVENSA the paid-up right to continue using the designs, processes or other property, replace them with noninfringing substitutes, or avoid the infringement or claim thereof by modifications thereto, as long as the Facilities or production from them are not adversely affected.

16.2   HOVENSA will defend and indemnify CONTRACTOR under the same terms as set out under Article 16.1 above against all claims, loss, damage and expense arising out of the infringement of any patent, copyright, trade secrets or other property rights and asserted against CONTRACTOR or HOVENSA in connection with the performance of the Work or subsequent operation of the Facility, to the extent relating to HOVENSA's know-how Process Licensors.

## XVII.   ASSIGNMENT





17.1 The rights and obligations under this Agreement are not assignable by either party without the written consent of the other party (except that such rights and obligations may be assigned without consent to the successor of either party or to a person, firm or corporation acquiring all or substantially all of the business and assets of such party). No assignments of the rights and obligations of a party to this Agreement will be valid unless such rights and obligations are assumed by the assignee. When assigned in accordance with the foregoing, the rights and obligations of a party to this Agreement will be binding upon and be for the benefit of the assignee, but the assignor will remain liable to the other party for its obligations under this Agreement.

XVIII. AUDIT

18.1 CONTRACTOR and CONTRACTOR's subcontractor's will permit HOVENSA or its agents or representatives, without undue delay, to have access at reasonable times to review and audit all records and accounts, except where relating to lump sum prices and as necessary to ensure and validate CONTRACTOR's compliance with this Agreement. Reviews and audits may be made within two years of last invoice.

18.2 To the same extent as stated in Article 18.1, CONTRACTOR will require, in contracts with any subcontractors who perform services in connection with this Agreement, that HOVENSA or its agents or representatives, without undue delay, will have access to review and audit all subcontractor's records and accounts necessary to ensure and validate compliance with this Agreement. Subcontractor reviews and audits may be made within two years of last invoice.

XIX. WAIVER

19.1    A waiver on the part of HOVENSA or CONTRACTOR of any term or breach of this Agreement will not constitute a precedent nor bind either party to a subsequent waiver of any succeeding term or breach.

XX.    ENTIRETY OF CONTRACT

20.1    This Agreement, including the Appendices and other documents incorporated by reference, is the entire agreement between HOVENSA and CONTRACTOR regarding the matters



covered herein and there are no other agreements, representations or obligations for the services described herein.

## XXI    SECRECY AND PUBLICITY

21.1  CONTRACTOR will not without written approval of HOVENSA give any publicity pertaining to the Facilities nor divulge to any third parties any details pertaining to the Work or any of HOVENSA's facilities except as necessary for the due performance of the Work.

## XXII.   CONFLICT OF INTEREST

22.1    CONTRACTOR acknowledges that HOVENSA has issued a policy relating to conflicts of interest between HOVENSA and its employees, attached as Appendix AB, Exhibit 27.  In order to assure compliance with the policy, CONTRACTOR will not, before, during or after performance of the Work, make, offer, provide or agree to make, offer or provide any payment, gift, fee, discount, commission, percentage, loan, service, entertainment, substantial favor or anything of value to (i) any employee, agent or representative of HOVENSA, (ii) any member of their immediate families, (iii) anyone claiming to act or acting for or in behalf of any such person, nor will CONTRACTOR permit any person described in (i), (ii) or (iii) above, to have any financial or economic interest in CONTRACTOR or any subsidiary or affiliate of CONTRACTOR.  If CONTRACTOR is requested to make or provide any payment, gift, fee, discount, commission, percentage, loan, service, entertainment, substantial favor or anything of value, by any person described in (i), (ii) or (iii) above, CONTRACTOR will report the request immediately to HOVENSA in the manner provided for the giving of notice under this Agreement.  The failure by CONTRACTOR to strictly adhere to the provisions of this Article will be deemed by CONTRACTOR and HOVENSA to be a material breach of this Agreement, and at HOVENSA's sole option will be grounds for immediate suspension or termination, by reason of default, of this Agreement.  All subcontracts or material supply contracts permitted or required in connection with performance of the Work will contain provisions in substantially the same form and substance as this Article binding subcontractors or material suppliers to the same obligations hereunder as CONTRACTOR.

## XXIII   SUBCONTRACTS AND DELEGATION





23.1    CONTRACTOR will not subcontract or delegate any of its obligations under this
Agreement without the written consent of HOVENSA. HOVENSA's approval of any subcontract will not
relieve CONTRACTOR of any of its obligations under this Agreement. CONTRACTOR will, for the
protection of HOVENSA, make all reasonable efforts to obtain warranties from all subcontractors with
respect to services performed   These warranties will be made available to CONTRACTOR and
assigned to HOVENSA in case of termination or assignment of this Agreement under Article XIV or
XVII, to the full extent of the terms thereof and will extend for twelve (12) months after services have
been performed and accepted or for such other period of time as may be obtained from such
subcontractors.  This provision will not affect CONTRACTOR's other obligations hereunder.

23.2    For any subcontractor approved by HOVENSA under this Agreement, HOVENSA will
have the option to contract directly with that subcontractor for services to be provided in connection with
the Work using the Form set out in Appendix AC.  For any equipment lessor approved by HOVENSA
under this Agreement, HOVENSA will have the option to contract directly with that subcontractor for
equipment or services to be provided in connection with the Work using the Form set out in Appendix
AF-Exhibit 1 (such subcontractors and equipment lessors are referred to as the "HOVENSA
Contractor"). If this occurs, CONTRACTOR will manage the contract for HOVENSA and will defend
and indemnify HOVENSA, subject to the limitations on liability provided in this Agreement, in all
circumstances in which CONTRACTOR would have had to indemnify HOVENSA under this Agreement
if CONTRACTOR had subcontracted directly with the relevant HOVENSA Contractor, as well as for the
condition and maintenance of all covered leased equipment.  In addition, CONTRACTOR will defend
and indemnify HOVENSA from all claims based on vicarious liability, respondeat superior, or other
similar theories of liability asserted against HOVENSA arising solely out of HOVENSA's passive
contractual relationship with the HOVENSA Contractor; provided, however, that CONTRACTOR will
have no indemnity obligation or liability for claims, damages (including, without limitation, Liquidated
Damages) or actions resulting from, or arising out of, HOVENSA's failure to pay any HOVENSA
Contractor any money owed under the governing contract if CONTRACTOR notifies HOVENSA that in
CONTRACTOR's reasonable judgment, the HOVENSA Contractor should be paid any amount in

dispute. CONTRACTOR will defend and indemnify HOVENSA if HOVENSA, merely because of the
fact that it is the signatory to any such contract, is found by a trier of fact to have been grossly negligent
in the actual approval or decision to contract with a HOVENSA Contractor selected by CONTRACTOR
to perform a particular scope of service.

    23.3    HOVENSA and CONTRACTOR will agree upon the general terms to be incorporated
into all contracts to be entered into by HOVENSA pursuant to Article 23.2. CONTRACTOR will use
reasonable commercial efforts so that the terms to be incorporated into all such contracts will be based
upon, and incorporate the principles set forth in this Agreement on a corresponding basis to establish to
obligations which flow through to the HOVENSA Contractor, including, without limitation, indemnity
provisions consistent with those undertaken by CONTRACTOR under this Agreement, to protect both
HOVENSA and CONTRACTOR. After HOVENSA's approval of a particular HOVENSA Contractor,
CONTRACTOR will use its best efforts to obtain the HOVENSA Contractor's acceptance of such terms
or to obtain such other terms as are reasonably obtainable. CONTRACTOR will forward copies of the
executed contract to HOVENSA. As part of the Work, CONTRACTOR will manage and supervise the
performance of the HOVENSA Contractor's obligations and enforce the terms of the contract. In the
performance of its obligations pursuant to this Article 23.3, CONTRACTOR will act as HOVENSA's
agent in the supervision and administration of the contracts entered into with the HOVENSA
Contractors, and each contract will so notify the HOVENSA Contractor of CONTRACTOR's
authorization to so act for and on behalf of HOVENSA.

    23.4    Any money received by HOVENSA from the HOVENSA Contractors in the nature of
damages, including Liquidated Damages or enforcement of bank guarantees, will be paid by
HOVENSA to CONTRACTOR.

XXIV.  AS-BUILT DRAWINGS

    24.1    CONTRACTOR will provide all information required to allow the original drawings to be
updated to "as-built."

XXV    NOTICES



25.1    All notices will be sent by facsimile and by Certified Mail, Return Receipt Requested or recognized overnight carrier.

25.2    All notices and communications required to be given CONTRACTOR will be in duplicate, the
original addressed to:

TPVI

One Hibiscus Alley

Charlotte Amalie, St. Thomas, U.S. Virgin Islands

25.3 All notices and communications required to be given to HOVENSA will be addressed to:

Project Director-[PROJECT NAME]

1 Estate Hope

Christiansted, U.S. Virgin Islands 00820-5652

Facsimile No.

and a copy to:

Vice President and Chief Administrative Officer

1 Estate Hope

Christiansted, U.S. Virgin Islands 00820-5652

Facsimile No.:

and a copy to:

Director, Administrative Services

1 Estate Hope

Christiansted. U.S. Virgin Islands 00820-5652

Facsimile No.:

and a copy to:

PDVSA V.I., Inc.

1A Frederiksberg Gade

St. Thomas, U.S. Virgin Islands, 00802

Facsimile No.

XXVI.  LIENS

26.1    CONTRACTOR will defend and indemnify HOVENSA against the attachment of liens or encumbrances of any vendor or subcontractor relating to the Work.

## XXVII. GOVERNING LAW/DISPUTE RESOLUTION

27.1 Governing Law - This agreement will be governed by and construed under the laws of the State of New York, U.S.A., without regard to its conflict of law rules.

27.2 Dispute Resolution.

27.2.1 If there is a dispute between HOVENSA and CONTRACTOR on the application or interpretation of this Agreement, the aggrieved Party will notify the other Party of its intent to invoke this dispute resolution procedure within ten (10) business days after the dispute arises. If the Parties fail to resolve the dispute within the ten (10) business days after delivery of the Notice, each Party will, within five (5) business days thereafter, nominate an officer of its management to meet at the Facility, or at any other agreed location, to resolve the dispute. If the Parties are unable to resolve the dispute to their satisfaction within ten (10) business days after the nomination, either Party has the right to commence litigation on the dispute. Any such litigation must be brought exclusively in the U.S. District Court, Southern District of New York, United States of America and the parties hereby submit to the jurisdiction of such courts and waive any objection to venue or jurisdiction in such courts. The dispute resolution procedures set forth in this Section will be the sole and exclusive dispute resolution procedures available to the Parties under this Agreement.

27.2.2 The Parties may agree to resolve the dispute by arbitration. Any arbitration will be conducted in the City of New York, State of New York, United States of America, in the English language in accordance with the rules of procedure of the American Arbitration Association (the "AAA"). Each party will nominate within thirty (30) days of the commencement of proceedings, one arbitrator. If any Party fails to nominate an arbitrator within the stated time period, the AAA will appoint an arbitrator for the Party. The two arbitrators nominated by the Parties or appointed by the AAA for any Party will jointly nominate a third arbitrator, who will chair the arbitration panel. If the arbitrators nominated by the Parties do not succeed in nominating a third arbitrator within ten (10) days, the arbitrator will be appointed by the AAA. The award of the arbitral tribunal will be final and binding upon the Parties.

### XXVIII. NON-COLLUSIVE BIDDING

28.1    If this Agreement was awarded on the basis of competitive bidding, CONTRACTOR warrants that it has not consulted with any other contractor or person who has bid on the Work and that its bid was arrived at independently of any discussions or collusion with others.

### XXIX. EQUAL OPPORTUNITY

29.1    Non-Discrimination in Employment - CONTRACTOR will comply with the Equal Opportunity clause published in the regulations of the U.S. Department of Labor implementing Executive Order 11245, which is incorporated in this Agreement by reference.

29.2    Affirmative Action for Handicapped Workers - CONTRACTOR will comply with the affirmative action clause and regulations published by the U.S. Department of Labor implementing Section 503 of the Rehabilitation Act of 1973, Public Law 93-112m as amended, which are incorporated in this Agreement by reference.

29.3    Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era - CONTRACTOR will comply with the affirmative action clause and regulations published by the U.S. Department of Labor implementing Section 503, Title V of the Vietnam Era Veteran's Readjustment Assistance Act of 1972, Public Law 92-540, as amended, and Executive Order 11701, which are incorporated in this Agreement by reference.

29.4    Certification of Nonsegregated Facilities - CONTRACTOR certifies that it does not and will not maintain any facilities it provides for its employees in a manner which will result in segregation on the basis of race, color, religion, sex or national origin, or permit its employees to perform their services at any location, under its control, where segregated facilities are maintained; and that it will obtain a similar certification prior to the award of any nonexempt subcontract.

29.5    Minority Business Enterprises - CONTRACTOR will comply with the minority business enterprise clauses and regulations published by the U.S. Department of Commerce implementing Executive Order 11625, which are incorporated in this Agreement by reference.

### XXX. AMENDMENTS



No amendments to the Agreement will be enforceable against either party unless in writing and signed by the parties.

## XXXI  TAX WITHHOLDING

31.     The laws of the U.S. Virgin Islands require HOVENSA to withhold from contractors who are foreign (non-USVI) corporations, an income tax of 11% from all payments made by HOVENSA for services performed by CONTRACTOR in the USVI. For all other foreign (non-USVI) entities and non-resident aliens, the withholding tax rate is 10%. Payments made to U. S. citizens or for services rendered outside the USVI, are not subject to withholding. Unless CONTRACTOR has provided HOVENSA with a copy of CONTRACTOR's USVI business license, and an IRS form W-8ECI, as proof that CONTRACTOR is exempt from the income tax withholding for payments otherwise subject to withholding, HOVENSA will withhold and pay the requisite amounts to the USVI Bureau of Internal Revenue.

## XXXII. LIMIT ON CONTRACTOR'S LIABILITY.

32.1    CONTRACTOR'S overall limit of liability for obligations, liabilities, guarantees, warranties and indemnification, whether expressed or implied, howsoever arising under or relating to this Agreement and the performance of the Work will be limited as set forth in Appendix D, as it may be revised, and the foregoing limitation will apply whether the liability arises in contract, breach of warranty or tort, including but not limited to negligence and strict liability or otherwise.

32.2    Notwithstanding the above, the following are excluded from this limit of liability:

    32.2.1  All sums recovered by CONTRACTOR from the insurance under this Agreement.

    32.2.2  CONTRACTOR's obligation to achieve Mechanical Completion as defined in Appendix A.

    32.2.3  CONTRACTOR's warranty obligations under this Agreement during the Warranty Period.

    32.2.4  Intellectual Property indemnification under Article 16.1.

    32.2.5  Maintaining the Work, the Facilities and the site free of any lien.

    32.2.6  CONTRACTOR's obligations under Articles 7.1.2.1 and 7.1.2.3.



32.2.7  Fraud by CONTRACTOR or its agents, subcontractors, affiliates or the

HOVENSA Contractors.

32.2.8  Compliance with laws.

32.2.9  Breach of confidentiality.

32.2.10        The following Performance Guarantees as per Appendices G, H, J:

32.2.10.1        Throughput guarantee of 50,000 bpsd.

32.2.10.2        $H_2S$ content of stripper effluent.

32.2.10.3        Reactor outlet pressure.

32.2.10.4        NOX guarantees.

32.2.10.5        Unit turndown.

32.3        For the purpose of computing Agreement Price under this Article, Article 33 or in connection with any required retainage, bank guaranty or letter of credit, any amounts paid by HOVENSA to the HOVENSA Contractors or Lessors, as defined in Appendix AF, will be added to the Agreement Price paid to CONTRACTOR.

32.4        If, solely as a result of this Article, any portion of the amounts paid to CONTRACTOR become subject to U.S. Virgin Islands taxation, through no fault of CONTRACTOR, HOVENSA will be responsible for those taxes.

## XXXIII. LIMIT ON HOVENSA'S LIABILITY.

33.1        HOVENSA's overall limit of liability for obligations, liabilities, guarantees, warranties and indemnification, whether expressed or implied, howsoever arising under or relating to this Agreement and the Work will be limited as set forth in Appendix D, as it may be revised, and the foregoing limitation will apply whether the liability arises in contract, breach of warranty or tort, including but not limited to negligence and strict liability or otherwise.

33.2        Notwithstanding the above, the following are excluded from this limit of liability:

33.2.1  HOVENSA's obligation to pay the Compensation due under this Agreement,

including any Change Orders.

33.2.2 Intellectual Property indemnification under Article 4.6.3.

33.2.3 HOVENSA's obligations under Articles 7.1.2 and 7.1.3.

33.2.4 Fraud by HOVENSA or its agents, subcontractors or affiliates, except the

HOVENSA Contractors.

33.2.5 Compliance with laws.

33.2.6 Breach of confidentiality.

33.2.7 Any arbitral award in the nature of compensation for Work performed.

33.2.8 Any payments due CONTRACTOR under Articles 11.1, 11.4 or 11.5.

33.3     If, solely as a result of this Article, any portion of the amounts paid to CONTRACTOR

become subject to U.S. Virgin Islands taxation, through no fault of CONTRACTOR, HOVENSA will be

responsible for those taxes.

IN WITNESS WHEREOF, this Agreement and the attached Appendices have been reviewed by

agents of both parties and this Agreement is executed, stamped with Corporate Seals and delivered, by

the authorized officials of each corporation.

ATTEST:                                        HOVENSA L.L.C.

ATTEST

Georges SARGIANNIS

BY:

TPVI

BY: ETIENNE GORY
PRESIDENT

# EXHIBIT 2

## ENGINEERING AND PROCUREMENT AGREEMENT

AGREEMENT dated March 10th, 2005, between HOVENSA L.L.C., a U.S. Virgin Islands limited liability company ("HOVENSA") and TECHNIP ITALY S.p.A., organized under the laws of Italy ("CONTRACTOR").

### EXPLANATORY STATEMENT:

A.      HOVENSA wishes to retain CONTRACTOR to perform engineering design, procurement and project management in connection with construction of a Low Sulfur Gasoline Hydrotreater and related facilities at HOVENSA's petroleum refining facility located at St. Croix, United States Virgin Islands (the "Refinery").

B.      CONTRACTOR is willing to perform the Work (as defined) on a lump sum basis under the terms of this Agreement.

THE PARTIES AGREE AS FOLLOWS:

I.    SCOPE

1.1     This Agreement consists of this document, the following documents which are attached and any other document which is incorporated in this Agreement by reference:

    1.1.1   Appendix A:   Scope of Work

    1.1.2   Appendix B:   Coordination Procedures

    1.1.3   Appendix C:   Engineering Standards

    1.1.4   Appendix D:   Compensation and Terms of Payment

        Exhibit 1: Terms of Payment

        Exhibit 2: Cash Flow Curves

        Exhibit 3: Earned Value Matrix





Exhibit 4: Project Cost Breakdown

Exhibit 5: Letter of Credit

Exhibit 6: Contract Change Orders

Exhibit 7: Contractor Affidavit: Liens

1.1.5  Appendix E:  Project Schedule

Exhibit 1: Deleted

Exhibit 2: Technip LSG Project Schedule

Exhibit 3: Refinery Holiday Schedule

1.1.6  Appendix F:  FEED Package

Exhibit 1:  Process Description

Exhibit 2:  Process Interlocks & Compressor Controls Summary

Exhibit 3:  Equipment List

Exhibit 4:  Material Selection Diagrams

Exhibit 5:  Reactor Specifications & Drawings

Exhibit 6:  EMRE / KBR BDS Package (2 volumes)

Exhibit 7:  EMRE / KBR DBS Package (1 volume)

Exhibit 8:  EMRE Design Notes (1 volume)

Exhibit 9:  EMRE Design Review Milestones

Exhibit 10: P&IDs

Exhibit 11: Auxiliary Equipment Datasheets

Exhibit 12: Preliminary Electrical Load List

Exhibit 13: HVAC Pressurized Buildings Standard

Exhibit 14: Plot Plans & B.L. Piping Sketch

Exhibit 15 - EMRE/KBR Process Simulations

1.1.7  Appendix G:  Technical Questions and Answers

1.1.8  Appendix H:  Commercial Questions and Answers

2

1.1.9  Appendix I:    Items Provided by HOVENSA

1.1.10 Appendix J:    Performance Guarantees

1.1.11 Appendix K:    Schedule and Performance Liquidated Damages

1.1.12 Appendix L:    Construction Workforce

1.1.13 Appendix M:    Ocean Transportation Information

    Exhibit 1: Hovensa RO RO Dock Information

    Exhibit 2: Title to Materials

    Exhibit 3: Ocean Shipping Support Design for Major Equipment

    Exhibit 4: Freight Forwarders

    *Exhibit 5: Marine & Terminal Regulations*

1.1.14 Appendix N:    Statement Regarding Site Conditions

    Exhibit 1: MEC Topographical Map

    *Exhibit 2: Preliminary Geotechnical Investigation Report - URS*

1.1.15 Appendix O:    Radio Information

1.1.16 Appendix P:    Use of Non-Domestic Materials

1.1.17 Appendix Q:    Parent Guarantee Letter

1.1.18 Appendix R:    Approved Vendors List

1.1.19 Appendix S:    Equipment and Instrument Data Sheet Forms

1.1.20 Appendix T:    Mechanical Integrity Forms

1.1.21 Appendix U:    Deleted

1.1.22 Appendix V:    ASD Manual Table of Contents

1.1.23 Appendix W:    I&C Responsibility Matrix

1.1.24 Appendix X:    Mechanical Completion Checklist

1.1.25 Appendix Y:    PHA Guidance – Guidelines of Deviation

1.1.26 Appendix Z:    BEDD Sheets

1.1.27 Appendix AA:   Intentionally Left Blank



1.1.28 Appendix AB: HOVENSA Standard Contract Attachments

1.1.29 Appendix AC: Agency Agreement

1.1.30 Appendix AD: Organizational Chart and Key Personnel Resumes

1.1.31 Appendix AE: Unit Rates for Reimbursable Work due to Variation

1.1.32 Appendix AF: Equipment Lease Agreement

      Exhibit 1: Sample Equipment Lease

      Exhibit 2: General Procedures For Using Equipment Lease Agreement

1.1.33 Appendix AG: Deleted

1.1.34 Appendix AH: Federal Contractor Certificate of Compliance

1.2     The work generally to be performed by CONTRACTOR under this Agreement (the "Work") is set forth in Appendix A.

1.3     The items generally to be provided by HOVENSA and others under this Agreement are set forth in Appendix I.

1.4     For any work in addition to that defined in this Agreement, HOVENSA will advise CONTRACTOR in writing of the extent of work required. HOVENSA may also direct CONTRACTOR in writing to perform sufficient conceptual engineering to define appropriately the scope of additional Work.

1.5     If there is any conflict between the Articles of this Agreement and any of the Appendices, the Articles will control. If there is any conflict between appendices, it will be brought to HOVENSA's attention promptly and the more stringent requirement on CONTRACTOR will control, unless otherwise agreed. If there is any conflict arising from any change in any Appendix, the Appendix of the latest date will control.

1.6     All parts of the Work reasonably inferred from and not expressly mentioned in Appendix A or included in Appendix I, will be performed as an obligation of CONTRACTOR under this Agreement and Appendix A.

II.    <u>DEFINITION OF THE FACILITIES</u>



4



2.1    The "Facility" or "Facilities" means the Low Sulfur Gasoline Hydrotreater and related facilities to be constructed at the Refinery as described in Appendix A.

III.    COORDINATION OF WORK

3.1    Administrative Procedures

CONTRACTOR acknowledges receipt of the HOVENSA Coordination Procedures, which are incorporated by reference, and the Table of Contents of which is attached as Appendix B, and CONTRACTOR will comply with the HOVENSA Coordination Procedures in performing the Work. If there is any conflict between any part of the Coordination Procedures and the Articles of this Agreement, the Articles will control. If there is any conflict within the Coordination Procedures or between the Coordination Procedures and any of the Appendices, it will be brought to HOVENSA's attention promptly and the more stringent requirement on CONTRACTOR will control, unless otherwise agreed. HOVENSA reserves the right to issue additions to, or revisions of, the HOVENSA Coordination Procedures in writing at any time during the course of the Work; provided that, if the additions or revisions would increase or decrease the cost of or time required for CONTRACTOR to perform the Work, this Agreement will be modified accordingly, pursuant to Article X.

3.2    Engineering Standards

CONTRACTOR acknowledges receipt of the HOVENSA Engineering Standards which are incorporated by reference, and the Table of Contents of which is attached as Appendix C (the "Standards"), which contain HOVENSA's design and construction criteria and CONTRACTOR will perform the Work in accordance with the Standards. If there is any conflict between any part of the Standards and the Articles of this Agreement, the Articles will control. If there is any conflict within the Standards or between the Standards and any of the Appendices, it will be brought to HOVENSA's attention promptly and the more stringent requirement on CONTRACTOR will control,



5

unless otherwise agreed. HOVENSA reserves the right to issue additions to or revisions of the Standards during the course of the Work, and will handle these additions or revisions in accordance with the HOVENSA Coordination Procedures, provided that if the additions or revisions would materially increase or decrease the cost of or time required for CONTRACTOR to perform the Work or otherwise materially affect CONTRACTOR'S obligations, this Agreement will be modified accordingly pursuant to Article X.

3.3    Proprietary Information

3.3.1 All drawings, specifications, bills of material, material specifications, calculations, operating instructions, design data and other engineering design information produced by CONTRACTOR, the cost or expense of which is included in CONTRACTOR's compensation, will become the property of HOVENSA, and the originals will be provided to HOVENSA within two (2) weeks after successful completion of performance acceptance testing as set forth in Appendix B. HOVENSA will have the right to use any engineering design, process studies and other technical services in the construction or reconstruction, duplication (provided it is limited to one duplicate and CONTRACTOR's confidential information is kept confidential and not disclosed to its competitors except it may be disclosed under an appropriate confidentiality agreement as necessary for the duplication of the Facility, operation and maintenance of any HOVENSA facility and any facilities of its members, subsidiaries or affiliates and their parents, subsidiaries and affiliates or to transfer these rights to any successor owner of the Facility.

3.3.2    All information supplied to CONTRACTOR by HOVENSA, its members or affiliates of its members, provided that any use or disclosure to others as may be necessary to perform the Work will be made under a binder of secrecy substantively the same as the one that binds the parties hereto, is proprietary and



6



CONTRACTOR will not use or disclose to others any such information without HOVENSA's written consent, except as may be necessary to perform the Work; provided that for purposes of use by CONTRACTOR, proprietary information will not include the following:

        3.3.2.1      information which, at the time of disclosure to CONTRACTOR, is in the public domain;

        3.3.2.2      information which, after disclosure to CONTRACTOR, enters the public domain;

        3.3.2.3      information which, prior to disclosure to CONTRACTOR, was already in CONTRACTOR's possession and was not acquired from HOVENSA;

        3.3.2.4      information which, subsequent to disclosure to CONTRACTOR, is obtained by CONTRACTOR from a third party who has the right to disclose such information without binder of secrecy.

        Notwithstanding the foregoing, no information supplied to CONTRACTOR by HOVENSA will be disclosed to others even if it falls within one of the exceptions to the definition of proprietary information listed above.

        3.3.3  Any agreements or representations between CONTRACTOR and HOVENSA entered into prior to the effective date of this Agreement relating to secrecy or confidentiality of information will survive the signing of this Agreement or any completion of the Work, or any other termination or cancellation of this Agreement, each in accordance with the terms of the other agreement or representation.

    3.4    <u>Personnel; Independent Contractor</u>

        3.4.1  CONTRACTOR warrants that it will employ properly qualified, and where appropriate, properly licensed or certified personnel necessary to perform the Work.



7



3.4.2   In performing the Work, CONTRACTOR is acting as an independent contractor and reserves the right to hire or discharge employees, designate the classification and hours of work for each employee and to supervise and control the manner of performance of the Work.

3.4.3   Prior to assigning personnel to the Work, CONTRACTOR will submit for HOVENSA's review the names and work experience of, and licenses or certificates held by, personnel nominated to fill key work positions, such as Project Manager, Procurement Manager, Engineering Manager, Project Control Manager and Process Leader.  Personnel will not be assigned to or removed from these key positions without sufficient notification to HOVENSA.  The fact that this notification is required will not affect CONTRACTOR's status as an independent contractor hereunder.

3.5.   Warranties

3.5.1   *CONTRACTOR warrants for twelve (12) months following **Final Acceptance of Performance Testing** (as defined in Article 3.5.8) or eighteen (18) months after Mechanical Completion (as defined in Appendix A), whichever occurs first (the "Warranty Period"):*

3.5.1.1 The design of the Facility furnished by it and its performance of the Work will be in accordance with the Standards and any special job specifications or requirements and other data and engineering criteria developed and provided by HOVENSA, its process know-how Licensors or its equipment suppliers, as set out in this Agreement.

3.5.1.2 The Work will be executed in a competent, efficient manner following current state of the art, where practicable, petroleum refinery engineering practice and in accordance with the standards of care and diligence normally practiced by recognized engineering firms.



8



3.5.1.3 CONTRACTOR will be responsible for mechanical guarantees on purchased equipment systems to meet the requirements of Article 3.5.8.

3.5.1.4 CONTRACTOR will be responsible for individual mechanical guarantees on equipment purchased from third parties and for inspection of, and workmanship on, equipment purchased from third parties.

3.5.1.5 Deleted.

3.5.1.6 CONTRACTOR will perform the Work in accordance with Appendix A.

3.5.1.7 Any breach of the above warranties will constitute a "Defect." If HOVENSA believes there is a Defect, HOVENSA will notify CONTRACTOR of the Defect in writing describing the nature of the Defect.

3.5.2 CONTRACTOR recognizes that the soil conditions at the Facility site, as reflected in this Agreement, require special engineering considerations and has represented its design will take into account and address these conditions. Accordingly, CONTRACTOR warrants the foundation and structural designs will be performed in accordance with the standards of care and diligence normally practiced by recognized engineering firms in performing work of a similar nature and will be free of defects within the parameters set by the Engineering Standards in Appendix C ("Structural Warranty"). If (a) within the one (1) year period following termination of CONTRACTOR's Work as set forth in Article XI, or (b) within ten (10) years from Mechanical Completion, any foundation or structural design is found to be defective ("Structural Defects"), CONTRACTOR will furnish, free of charge, new designs, other engineering services and other project management services required to remedy or correct the Structural Defects, except to the extent due to force majeure, provided HOVENSA has notified CONTRACTOR in writing, within a reasonable time, but not later than thirty (30) days



9



after discovery of the deficiencies and within thirty (30) days after the expiration of the warranty period, describing the nature of the Structural Defect.

3.5.3.1 If any of the warranties set forth in 3.5.1 or 3.5.2 is breached, CONTRACTOR will furnish, free of charge, new designs, other engineering services and other project management services required to remedy or correct any Defects or Structural Defects. CONTRACTOR will use all reasonable efforts to remedy any Structural Defect so as to avoid disruption of HOVENSA's operations. CONTRACTOR's obligations under this Article 3.5.3.1 are collectively called the "Repairs." For a Repair performed during the first 6 months of the Warranty Period, the Warranty Period will be deemed extended for the balance of the initial 12 months as stated under Article 3.5.1. For a Repair performed after the first 6 months of the Warranty Period, for the remedied Defect only, the Warranty Period will be extended for the balance of the initial 12 months as stated under Article 3.5.1 and an additional period of 6 months.

3.5.3.2 All responsibility for pursuing Contractor's subcontractors or sub-vendors for support will remain with Contractor, as well as providing whatever is needed in addition to the subcontractor's or sub-vendors' material/equipment warranty to ensure that the Repairs are made at no cost to HOVENSA.

3.5.3.3 If Defects or Structural Defects in CONTRACTOR's Work or equipment procurement result in additional field construction costs to remedy the deficiencies or defects caused, CONTRACTOR will bear the cost of the additional construction labor, materials and equipment required for the correction of the defects or deficiencies.

3.5.4   CONTRACTOR'S warranty does not extend to and CONTRACTOR will never be liable for defects or damages to the extent due to (i) improper operation or maintenance of the Plant by HOVENSA, (ii) normal wear and tear, (iii) normal corrosion





or erosion, provided CONTRACTOR complies with all requirements of the Work, (iv) defective materials or equipment not supplied by CONTRACTOR or CONTRACTOR's subcontractors, vendors or suppliers, or (v) deficient engineering and design work not furnished by CONTRACTOR or its subcontractors, whether arising in contract, tort (including negligence) or otherwise.

3.5.5    HOVENSA will provide CONTRACTOR's representatives reasonable access to the Facility for the purpose of observing its operation and maintenance on reasonable notice during times agreed by HOVENSA and CONTRACTOR. CONTRACTOR acknowledges that warranty Work must be coordinated with the ongoing operations of the Refinery.

3.5.6    CONTRACTOR will review all data provided to it by HOVENSA, its process know-how Licensors or its equipment suppliers and notify HOVENSA in writing of inconsistencies or questions that require resolution in order to keep possible remedial work to a minimum.

3.5.7    The warranties and remedies for breach of warranty in this Agreement are the exclusive warranties and remedies by CONTRACTOR applicable to the Work and are in lieu of any other warranties, express or implied, whether under this Agreement, at law or otherwise.  CONTRACTOR expressly disclaims other guarantees or warranties of any kind or description, whether express or implied, and whether arising under law or equity or trade custom, including warranties of merchantability and fitness for a particular purpose.

3.5.8    Performance Guarantees - CONTRACTOR guarantees that the Facility will be capable of performing as defined under Appendix J.  CONTRACTOR's responsibility will extend until a successful completion of *performance* test runs of the Facility in accordance with Appendix B, Article 11.2.  If for reasons not attributable to CONTRACTOR, the Acceptance Test is not performed within sixty (60) days from



11



Mechanical Completion, performance guarantees will be deemed met solely for the purpose calculating time periods under the warranties and for payment obligations. If for reasons not attributable to CONTRACTOR, the Acceptance Test is not performed within two hundred forty (240) days from Mechanical Completion, performance guarantees will be deemed met for all purposes.

3.5.9   <u>Materials and Equipment</u> - CONTRACTOR will pursue recourse against vendors and suppliers for faulty or defective material or equipment, with the support of HOVENSA, if required.

3.6    <u>HOVENSA's review of CONTRACTOR's work</u> - HOVENSA will have the right to review the progress of CONTRACTOR's Work as it proceeds.

3.7  <u>HOVENSA's Acceptance of CONTRACTOR's Work</u> - Upon completion of CONTRACTOR's design for any part of the Facilities and prior to commencing work on the final detailed design of that part, CONTRACTOR will submit key drawings and documents for HOVENSA's written acceptance in accordance with Appendix B; the key drawings and documents will consist of general specifications and standards, foundation design, welding procedures, plot plans, process flow diagrams, piping and instrumentation diagrams, electrical one-line drawings, electrical area classification drawings, underground conceptual drawings, building layouts and any other drawings as agreed upon in writing by HOVENSA and CONTRACTOR. Subject to Appendix B, Section 8.3, HOVENSA will have the right to require modifications to the drawings and documents and HOVENSA will notify CONTRACTOR in writing of its acceptance or of any modifications within ten (10) working days, except for critical items (heater, Texas tower exchanger, reactor, compressor and exchangers) where the response time will be ten (10) calendar days, after HOVENSA's receipt of them.

3.8    Deleted.

3.9    Vendor Equipment



12



3.9.1   Where new equipment is to be purchased for the Facilities, CONTRACTOR warrants the accuracy and adequacy of its specifications and requisitions for the equipment. CONTRACTOR will, for the protection of HOVENSA, demand warranties from all vendors for machinery, equipment and materials used and installed in the Work, which will be no less favorable than the standard warranty available in the industry. These warranties will be made available to HOVENSA to the full extent of their terms and will be in CONTRACTOR's and HOVENSA's names. HOVENSA will attempt to secure enforcement in its name only if CONTRACTOR is in breach of its warranties obligations to HOVENSA and has not properly and timely enforced any related vendor's warranties. These warranties will extend for twelve (12) months after the machinery, equipment or materials have been placed in operation or after services have been performed, and accepted. Title to all equipment and materials will pass to HOVENSA, if shipped by water, on the high seas outside the territorial limits of any jurisdiction on board the vessel, or, if shipped by air, in international airspace, outside the territorial limits of any jurisdiction, on the aircraft, transporting them to the Virgin Islands. Risk of loss will pass from CONTRACTOR to Construction Contractor at the time the equipment or materials are first unloaded on St. Croix from the vessel or aircraft.

3.10   Initially, CONTRACTOR will be entitled to rely upon information and data on soil and subsoil communicated by HOVENSA in writing and contained in Appendix N, Exhibit 2. Contractor's price and schedule are based on this information. HOVENSA will make the Work Site available to CONTRACTOR for testing not later than April 30, 2005. CONTRACTOR will perform any soil and subsoil testing within thirty (30) days of the site being made available. The results of CONTRACTOR's testing will be sent to an independent laboratory for review. CONTRACTOR will notify HOVENSA in writing of the results and any requested Change Order within four (4) to six (6) weeks. If the results of the testing and survey reveal discrepancies or contradictions with information and data on soil and subsoil as contained in this Agreement or show unexpected site conditions having an impact on either the price or the schedule conditions, as agreed under this Agreement, then CONTRACTOR will be entitled to a



13

Change Order for a corresponding adjustment in the compensation and/or the project schedule.. Once CONTRACTOR has performed its testing or elected not to do so, it will have sole responsibility for the soil and subsoil conditions.

IV.    OBLIGATIONS OF CONTRACTOR

4.1    The Work will be executed as expeditiously as possible, in accordance with HOVENSA- approved schedules. The Project Schedule is attached as Appendix E. The procurement and delivery dates of operating equipment and materials are listed on Appendix E. Changes in the Work that do not affect the critical path will not be the basis for a Change in the Project Schedule.

4.2    Compliance With Laws, Permits and Regulations

4.2.1    CONTRACTOR will comply with all United States federal, state, U.S. Virgin Islands or other laws, regulations, ordinances or rules that pertain to the Work and HOVENSA will not be liable for, and CONTRACTOR will indemnify HOVENSA against, any violation by CONTRACTOR of any laws, regulations, ordinances or rules.

4.2.2    The Compensation and/or Project Schedule will be adjusted by a Change Order as a result of the execution of any new law or regulation or of any change in existing laws and regulations as stated under 4.2.1. above or as a result of any binding change in the interpretation of any applicable said law or regulation of any United States federal, state or local U.S. Virgin Islands authority having jurisdiction over the Agreement and the Work, which occurs after December 9, 2004, (and which will be deemed to include any change in the interpretation or application, including how customs duties are handled, by competent authorities).

4.3    Pollution Abatement, Noise and Safety



14



4.3.1   CONTRACTOR will design the Work so it complies with all environmental laws, orders, rules, regulations and permits in effect or proposed in an official register.

4.3.2   CONTRACTOR will design the Work so it will comply with all rules, regulations, orders, standards and interpretations promulgated under the Occupational Safety and Health Act (1970), as amended, and any state or territorial laws.

4.4   Permits

Where appropriate, all permits and licenses required for the Work and which will be obtained by CONTRACTOR will be in the name of HOVENSA.

4.5   Assessments

CONTRACTOR will pay all U.S. federal, state and locally imposed contributions, assessments and taxes which are based upon the wages or other remuneration paid to persons employed by CONTRACTOR on the Work. CONTRACTOR will insure that no state or local sales tax is imposed on items purchased for the Facilities. CONTRACTOR will provide export certificates to the vendors and otherwise comply with the law of the applicable state to insure no sales tax is either charged or due.

4.6   Patents

4.6.1 CONTRACTOR will defend and indemnify HOVENSA against all claims, loss, damage and expense arising out of the infringement of any United States patent, copyright, trade secrets or other property rights and asserted against HOVENSA in connection with the performance of the Work or subsequent operation of the Facility, provided HOVENSA promptly notifies CONTRACTOR in writing of the threat or commencement of any suit or claim and permits CONTRACTOR to control its defense. CONTRACTOR will pay any settlement, judgment and all court costs awarded against



15



HOVENSA in any suit and all compensation and expenses of its own counsel and experts in connection with the suit or claim. HOVENSA may be represented by counsel of its selection, at its expense. HOVENSA will cooperate fully in the defense of any suit or proceeding, at CONTRACTOR's expense, to the extent of furnishing evidence which is within HOVENSA's control. Upon notice from HOVENSA or from third parties of a claim arising from any property right, CONTRACTOR may procure for HOVENSA the paid-up right to continue using the designs, processes or other property, replace them with noninfringing substitutes, or avoid the infringement or claim thereof by modifications thereto, as long as the Facilities or production from them are not adversely affected.

4.6.2    For any equipment, materials and accessories which are purchased by CONTRACTOR in the performance of the Work, CONTRACTOR will exert all reasonable efforts to obtain from the suppliers thereof statements agreeing to hold HOVENSA harmless against any and all United States patent infringements. If indemnification is not available, CONTRACTOR will notify HOVENSA prior to purchase of the equipment, materials and accessories. CONTRACTOR will not have any liability to HOVENSA for patent infringement by vendors or subcontractors providing materials or equipment of their design.

4.6.3    HOVENSA will defend and indemnify CONTRACTOR under the same terms as set out under Article 4.6.1 above against all claims, loss, damage and expense arising out of the infringement of any patent, copyright, trade secrets or other property rights and asserted against CONTRACTOR or HOVENSA in connection with the performance of the Work or subsequent operation of the Facility, to the extent relating to HOVENSA's know-how Process Licensors or plans, drawings or specifications furnished by HOVENSA to CONTRACTOR.



4.7    Inspection, Expediting and Traffic. CONTRACTOR will provide all inspection, expediting and traffic control (including marshalling yard and freight forwarding) services for all operating equipment and materials required for the Facilities.

4.8    Cooperation in Financing. CONTRACTOR will furnish information, consents, certificates, opinions of counsel, and other documents or assistance-related to CONTRACTOR's corporate authorization to undertake the obligations in this Agreement as may be reasonably requested by any lender for its sole use for the financing of the Facility and will be compensated by HOVENSA on a reimbursable basis for any related reasonable costs and expenses, if any, relating to such assistance. The parties agree to negotiate in good faith concerning any reasonable amendment or addition to this Agreement required by any lender.

**V.    *Deleted***

**VI.    HOVENSA's WORK AND SERVICES**

6.1 Materials and Services - HOVENSA will provide, at its expense, land, materials, equipment and services as listed in Appendix I.

6.2    Construction Services - HOVENSA will provide all construction services directly or through a construction contractor of its choice (the "Construction Contractor"). CONTRACTOR will cooperate and coordinate with Construction Contractor as required. CONTRACTOR and Construction Contractor are affiliated companies and CONTRACTOR will not use any delays or any action or inaction by Construction Contractor to excuse any breach or nonperformance, including delay, by CONTRACTOR under this Agreement.

6.3    CONTRACTOR will perform the Work in accordance with the Project Schedule as per Appendix E to this Agreement and will be responsible for delays caused by CONTRACTOR to the sole extent of the remedies as provided for under Appendix K.



17



6.4     Start-Up Services - HOVENSA will be responsible for all start-up services with support of CONTRACTOR.

VII.    INDEMNITY, INSURANCE REQUIREMENTS

7.1     CONTRACTOR will defend, indemnify and release HOVENSA and its members, affiliates, successors and assigns and their parents, subsidiaries and affiliates (collectively called "Indemnified Parties"), up to the gross sum of the first $10,000,000 for each occurrence and a total of $20,000,000 in the aggregate, against all claims, causes of action, damages, liabilities, attorneys' fees and related expenses (herein "Claims") which the Indemnified Parties may suffer or for which the Indemnified Parties may be liable, by reason of actual or claimed injury (including death) to any person, or actual or claimed physical damage to any property (including the Facilities), directly or indirectly caused or contributed to, or claimed to be caused or contributed to by reason of any act, omission or negligence, including strict liability, whether active or passive, of CONTRACTOR, its employees or its subcontractors, or of anyone for whose acts they are liable, or of anyone acting under their direction or control, or in connection with, or incident to, performance of this Contract, unless caused by the sole negligence or sole willful misconduct of the Indemnified Parties. CONTRACTOR will do this notwithstanding the Virgin Islands Comparative Negligence Statute, Title 5 V.I.C. Section 1451. In all cases covered hereunder, CONTRACTOR will initially defend the Indemnified Parties until it is judicially determined that any liability was caused by the sole negligence or sole willful misconduct of the Indemnified Parties exclusive of any fault of the plaintiff, plaintiff's employer, or any other party or non-party to the lawsuit. If it is so determined, HOVENSA will reimburse CONTRACTOR or its insurance carrier for all judgments and expenses incurred, including reasonable attorneys' fees and the reasonable costs incurred by CONTRACTOR or its insurer in defending any Claims arising from such liability.



18



7.1.1    To the extent any claims exceed the limits set forth in Article 7.1, CONTRACTOR will defend and indemnify the Indemnified Parties from any claim, liability, loss, cost or expense claimed by third parties for property damage or bodily injury, including death, to the extent caused by the negligence or willful misconduct of CONTRACTOR, its agents, employees or CONTRACTOR's affiliates, in connection with CONTRACTOR's performance of the Work.

7.1.2    To the extent any claims exceed the limits set forth in Article 7.1, HOVENSA will defend and indemnify CONTRACTOR from any claim, liability, loss, cost or expense claimed by third parties for property damage and bodily injury, including death, to the extent caused by the negligence or willful misconduct of the Indemnified Parties, its agents or employees in connection with CONTRACTOR's performance of the Work.

7.1.3    To the extent any claims exceed the limits set forth in Article 7.1, for claims of third parties attributable to the joint negligence or willful misconduct of CONTRACTOR and the Indemnified Parties, each will be liable to the third party to the extent of its negligence or willful misconduct.

7.2      Before CONTRACTOR starts any work, CONTRACTOR will, at its expense, maintain and require its subcontractors to maintain during the performance of the Work, to the sole extent of Work performed in the US Virgin Islands and except for Worker's /Employer's liability, insurance in form and with insurance companies satisfactory to HOVENSA and authorized to do business in the U.S. Virgin Islands as follows:

7.2.1.1 Worker's Compensation insurance covering CONTRACTOR's obligations under all applicable laws and Employer's Liability insurance in the amount of $1,000,000 per occurrence.

7.2.2 General Liability insurance, including contractual liability and completed operations, with limits of $10,000,000 combined single limit, per occurrence, bodily injury and property damage, with a total of $20,000,000 in the aggregate.  The policy



19

and amounts of cover set out above are not intended to duplicate the policy or amounts of cover under the Construction Agreement with Construction Contractor and the aggregate will cover both this Agreement and the Construction Agreement. HOVENSA will have the option to provide this insurance and if it elects to do so, the lump sum price will be reduced by the applicable amount from Appendix D, Exhibit 8, the indemnity in Article 7.1 will be reversed with HOVENSA providing CONTRACTOR with an indemnity to the same extent. CONTRACTOR will retain responsibility for the level of deductibles described in Appendix D, Exhibit 8. CONTRACTOR will be named as an additional insured on HOVENSA's policy and any other necessary changes will be made to reflect this arrangement.

7.2.3 To the fullest extent possible, CONTRACTOR's general liability insurance will cover the indemnity agreements and obligations in Articles 7.1.1, 7.1.2.1 and 7.1.2.3.

7.2.4 Automobile Liability insurance, with limits of $5,000,000 combined single limit per occurrence, bodily injury and property damage. The automobile insurance will apply to all vehicles used by CONTRACTOR.

7.2.5   Deleted.

7.2.6 CONTRACTOR will pay any contributions for unemployment insurance and disability benefits for the employees of CONTRACTOR required by the laws of the state or territory in which the Work is being performed.

7.2.7 Except for Workers' Compensation and Automobile Liability insurance for vehicles used outside of the U.S. Virgin Islands, prior to the commencement of any work, CONTRACTOR will furnish to HOVENSA sufficient certificates of all the insurance to be provided by CONTRACTOR, which certificates will provide that the insurance will not be canceled until at least thirty (30) days written notice is given to HOVENSA c/o Administrative Services. CONTRACTOR will promptly notify HOVENSA in writing of any changes to insurance policies which adversely affect HOVENSA. All polices of insurance



20



provided by CONTRACTOR will be primary to any other insurance available to the Indemnified Parties and will name HOVENSA and its members, affiliates, successors and assigns and their parents, subsidiaries and affiliates and HOVENSA's designated representative as additional insureds (except for worker's compensation) and provide for waiver of underwriters' rights of subrogation against the Indemnified Parties and any third party designated by HOVENSA.  Insurance certificates must be identified with contract number.  All insurance provided by CONTRACTOR under this Agreement will have limits and aggregates, if any, dedicated to this Agreement.

7.2.8 CONTRACTOR will immediately notify HOVENSA's Safety Department either orally or by fax, of any incident occurring on or regarding HOVENSA's property, which results in property damage, personal injury, or death. CONTRACTOR will also furnish HOVENSA with two (2) copies of a written report of any such incident within three (3) days of its occurrence.

7.3  CONTRACTOR will arrange for "All Risk" Cargo Insurance covering all materials, supplies, equipment and components forming part of or used in the Work via any conveyance.  The insurance will be placed on the basis of worldwide to worldwide to ultimate destination in St. Croix, U.S. Virgin Islands, where coverage will cease at first place of rest at the Work site after discharge from vessel.  HOVENSA and Construction Contractor will be named as additional insureds and underwriters' rights of subrogation will be waived against HOVENSA, the Joint Venture members, their parents, subsidiaries and affiliates and subcontractors and Construction Contractor.

7.4  HOVENSA may place other insurance for its own interest. CONTRACTOR will cooperate with HOVENSA and HOVENSA's insurance representatives in placement of these coverages and, if requested by HOVENSA, coordinate placement of these insurances with the insurances arranged by CONTRACTOR.



21



7.5  Notwithstanding anything to the contrary in this Agreement, neither party will be liable and no claim will be made to the other for any punitive, indirect, incidental or consequential damages, loss of profits, loss of product or business interruption however it be considered, direct or indirect, and no matter how caused, whether any such claim is based or claimed to be based on negligence, fault, breach of warranty, breach of agreement, statute, strict liability by either party or otherwise.

VIII.   REPRESENTATIVES OF PARTIES

8.1  CONTRACTOR will appoint a Project Manager who will be authorized to act on behalf of CONTRACTOR and with whom HOVENSA may consult at all reasonable times concerning the Work, and whose instructions, requests and decisions will be binding upon CONTRACTOR, except that the individual will have no authority to amend or waive any of the terms of this Agreement.  The Project Manager will at all times be acceptable to HOVENSA.

8.2  HOVENSA will appoint one individual who will be authorized to act on behalf of HOVENSA and with whom CONTRACTOR may consult at all reasonable times concerning the Work and whose instructions, requests and decisions will be binding upon HOVENSA, except that the individual will have no authority to amend or waive any of the terms of this Agreement.

IX.    COMPENSATION

9.1     HOVENSA will compensate CONTRACTOR for the Lump Sum Price of USD $, as detailed in Appendix D.

9.2     Subject to written notice to CONTRACTOR and the cure provisions as stated in Article 11.3, HOVENSA may draw against any retained amounts or other security to cure any Breach by CONTRACTOR of this Agreement or any obligation arising under this Agreement.



22

9.3    CONTRACTOR will submit invoices during the performance of the Work in accordance with Appendix D.  CONTRACTOR will furnish an Affidavit of Release of Liens in the form attached as Appendix D-7 with all invoices.  CONTRACTOR will show any applicable Sales or Use Taxes separately on all invoices submitted to HOVENSA for payment. In order to ensure that the correct amount of tax is withheld, CONTRACTOR agrees to invoice HOVENSA separately for Work rendered in the U.S. Virgin Islands and outside the U.S. Virgin Islands.  Invoices not so designated will be subject to the income tax withholding, unless the required documentation has been provided to HOVENSA by CONTRACTOR.

X.    CHANGES IN THE WORK

10.1 Changes in the Work are addressed in *Coordination Procedure Appendix B and Compensation & Terms of Payment appendix D.*

*10.2    Deleted*

XI.    BREACH, TERMINATION OR SUSPENSION OF WORK

11.1    HOVENSA will have the right to terminate this Agreement or any specific work assignment given under this Agreement, at any time and for any reason, without cause, on seventy-two (72) hours' written notice to CONTRACTOR.  If there is such a termination by HOVENSA, HOVENSA will compensate CONTRACTOR in accordance with Appendix D based on the percentage of the Work completed up to the date of termination and for the period required by HOVENSA for the orderly cessation of the Work, including all reasonable costs incurred by CONTRACTOR to demobilize, remove its resources from the Project, terminate subcontracts and terminate purchase orders with vendors.

11.2 The occurrence of any of the following events is a Breach of this Agreement:

11.2.1  Any defect in the Work which HOVENSA, in its sole judgment, determines to be material;



23



11.2.2  Failure, after notice has been given to CONTRACTOR of any unsafe, unsound or defective work, to begin immediately, and diligently proceed with, steps necessary to correct such work;

11.2.3  Failure to proceed with or complete the Work in accordance with the Agreement;

11.2.4  HOVENSA has reasonable grounds to believe that CONTRACTOR is or may become bankrupt, insolvent or unable to pay its debts as they become due;

11.2.5  CONTRACTOR fails to maintain materials, equipment, and personnel of such kinds and in such places as in HOVENSA'S sole judgment are reasonably required for CONTRACTOR'S performance hereunder;

11.2.6  Breach of any warranty or representation of this Agreement; or

11.2.7  Contractor becomes involved in any labor difficulties not covered in Article XII which, in HOVENSA's sole judgment, may impede or slow down the Work.

11.2.8  Failure to comply with any provision of this Agreement, which failure HOVENSA, in its sole judgment, deems to be material.

11.3     If there is a Breach under Article 11.2, HOVENSA will give CONTRACTOR written notice of the Breach and CONTRACTOR will immediately begin and diligently pursue cure of the Breach.  If CONTRACTOR does not immediately begin to cure the Breach and diligently pursue the cure, HOVENSA, in its discretion, will have the right on twenty-four (24) hours' written notice to CONTRACTOR to (a) terminate this Agreement or any Work assigned hereunder pursuant to Article 11.1, and (b) invoke such other legal remedies as may be available to HOVENSA under the Agreement.

11.4     Upon the occurrence of any event of Breach set forth above, CONTRACTOR will not be entitled to any further payment until CONTRACTOR has taken the necessary steps so that the Breach is remedied to the satisfaction of HOVENSA, whereupon CONTRACTOR will then be paid only the amount as is due for

24



Work properly performed by CONTRACTOR less all reasonable additional expense suffered by HOVENSA as a result of the Breach. If the additional expense exceeds the amount due to CONTRACTOR, the amount will be paid immediately to HOVENSA by CONTRACTOR. Subject to remedies as provided under mandatory law which will always be available to HOVENSA, all remedies afforded to HOVENSA under this Agreement will be deemed to be the sole rights or remedies available to HOVENSA whether at law, equity, trade customs or otherwise.

11.5    HOVENSA may at any time suspend performance of all or any part of the Work by giving twenty-four (24) hours' written notice to CONTRACTOR. This suspension may be continued by HOVENSA for a period of up to forty-five (45) calendar days or one hundred eighty (180) calendar days if related to an event of force majeure (it being understood that in the case of a force majeure no notice from HOVENSA is required), during which time HOVENSA may at any time, by written notice, require CONTRACTOR to resume performance of the Work. In any case, CONTRACTOR will always be compensated by HOVENSA for reasonable and justified costs or expenses either incurred or suffered as a result thereof, from the seventh (7) day of said suspension or from the fifteenth (15th) day if due to force majeure. Either party will have the right to terminate this Agreement as per conditions under Article 11.1 above, if any such suspension lasts for more than ninety (90) days in the aggregate (one hundred eighty (180) days if due to force majeure). If there is such a termination, or if this Agreement is terminated for a force majeure, HOVENSA will compensate CONTRACTOR in accordance with Appendix D based on the percentage of the Work completed up to the date of termination for and for the period required by HOVENSA for the orderly cessation of the terminated Work, including all reasonable demobilization costs and reasonable costs linked to terminating subcontracts and purchase orders with vendors incurred by CONTRACTOR as a result thereof.





25

11.6    If there is a termination for any reason, CONTRACTOR will cooperate in keeping costs and losses to a minimum, including transfer of Work in progress to HOVENSA. CONTRACTOR will use all reasonable efforts to comply with HOVENSA's instructions concerning the time and manner of termination of the Work and will without additional charge execute such assignments or other documents as HOVENSA may require to vest in HOVENSA all, or such part as HOVENSA may require, of such rights in subcontracts or purchase orders as CONTRACTOR may have placed in relation to this Agreement. If such termination occurs, HOVENSA reserves the right to perform the Work with its forces.

11.7    Any termination of this Agreement will not affect the warranty, secrecy, confidentiality or other obligations under this Agreement which by their nature would survive.

11.8    If an invoice properly due remains unpaid in whole or in part for more than thirty (30) days, CONTRACTOR may give written notice to HOVENSA and if payment is not made within thirty (30) days of the notice, CONTRACTOR may suspend the Work until receipt from HOVENSA of the full, unpaid amount. If any such invoice remains unpaid in whole or in part for more than ninety (90) days, provided notice has been given as stated above, then CONTRACTOR will be entitled to terminate this Agreement and be compensated by HOVENSA pursuant to conditions as set out under Article 11.1.

XII.    FORCE MAJEURE

12.1 Any delays in or failure of performance by either party under this Agreement will not constitute Breach hereunder or give rise to any claims for damages to the extent caused by occurrences beyond the foreseeable and reasonable control of the affected party, and which could not have been avoided by the affected party's reasonable best efforts, including but not limited to, acts of governmental authority, acts



26



of God, named tropical storms where HOVENSA had advised its subcontractors to suspend work, strikes or other concerted acts of workers, fires, explosions, riots, wars, rebellions and sabotage, freight embargoes, fires, floods, acts of public enemy, civil disturbances, new or changed rules or regulations of any governmental authorities (civil or military) otherwise having jurisdiction over the Work and relating to import or export, and materially affecting performance under the Agreement.

   12.2    Resumption of Work will be covered as under Article 11.5.

   12.3    For events of Force Majeure lasting more than fifteen (15) continuous days, HOVENSA and CONTRACTOR will negotiate in good faith an adjustment to the Project Schedule (with associated relief for liquidated damages) and the E&P Agreement Price for the additional costs reasonably incurred by CONTRACTOR as a direct result of the event of Force Majeure.

XIII.    Deleted.

XIV.    <u>ASSIGNMENT</u>

   14.1  The rights and obligations under this Agreement are not assignable by either party without the written consent of the other party (except that such rights and obligations may be assigned without such consent to the successor of either party or to a person, firm or corporation acquiring all or substantially all of the business and assets of such party).  No assignments of the rights and obligation of a party to this Agreement will be valid unless such rights and obligations are assumed by the assignee.  When assigned in accordance with the foregoing, the rights and obligations of a party to this Agreement will be binding upon and be for the benefit of the assignee, but the assignor will remain liable to the other party for its obligations under this Agreement.

XV.    <u>AUDIT</u>

   15.1  CONTRACTOR and CONTRACTOR's subcontractor's will permit HOVENSA or its agents or representatives, without undue delay, to have access at





27

reasonable times to review and audit all records and accounts, except where relating to lump sum prices and as necessary to ensure and validate CONTRACTOR's compliance with this Agreement. Reviews and audits may be made within two years of last invoice.

15.2 To the same extent as stated in Article 15.1, CONTRACTOR will require, in contracts with any subcontractors who perform services in connection with this Agreement, that HOVENSA or its agents or representatives, without undue delay, will have access to review and audit all subcontractor's records and accounts necessary to ensure and validate compliance with this Agreement. Subcontractor reviews and audits may be made within two years of last invoice.

XVI.    WAIVER

16.1 A waiver on the part of HOVENSA or CONTRACTOR of any term or breach of this Agreement will not constitute a precedent nor bind either party to a subsequent waiver of any succeeding term or breach.

XVII.    ENTIRETY OF AGREEMENT

17.1 This Agreement, including the Appendices and other documents incorporated by reference is the entire agreement between HOVENSA and CONTRACTOR regarding the matters covered herein and there are no other agreements, representations or obligations for the Work.

XVIII.    SECRECY AND PUBLICITY

18.1 CONTRACTOR will not, without written approval of HOVENSA, give any publicity pertaining to the Facilities nor divulge to any third parties any details pertaining to the Work or any of HOVENSA's facilities except as absolutely necessary for the due performance of the Work.

XIX.    CONFLICT OF INTEREST

19.1 CONTRACTOR acknowledges that HOVENSA has issued a policy relating to conflicts of interest between HOVENSA and its employees, a copy of which is



28

attached as Appendix AB, Exhibit 27. In order to assure compliance with this policy, CONTRACTOR will not, before, during or after performance of the Work, make, offer, provide or agree to make, offer or provide any payment, gift, fee, discount, commission, percentage, loan, service, entertainment, substantial favor or anything of value to (i) any employee, agent or representative of HOVENSA, (ii) any member of their immediate families, or (iii) anyone claiming to act or acting for or in behalf of any such person, nor will CONTRACTOR permit any person described in (i), (ii) or (iii) above, to have any financial or economic interest in CONTRACTOR or any subsidiary or affiliate of CONTRACTOR. If CONTRACTOR is requested to make or provide any payment, gift, fee, discount, commission, percentage, loan, service, entertainment, substantial favor or anything of value, by any person described in (i), (ii) or (iii) above, CONTRACTOR will report the request immediately to HOVENSA in the manner provided for the giving of notice under this Agreement. The failure by CONTRACTOR to adhere strictly to the provisions of this Article will be deemed by CONTRACTOR and HOVENSA to be a substantial and material breach of this Agreement, and at HOVENSA's sole option will be grounds for immediate suspension or termination, by reason of Breach, of this Agreement. All subcontracts or material supply contracts permitted or required in connection with performance of the Work will contain provisions in substantially the same form and substance as this Article binding the subcontractors or material suppliers to the same obligations hereunder as CONTRACTOR.

XX.    SUBCONTRACTS AND DELEGATION

20.1 CONTRACTOR will not subcontract or delegate any of its obligations under this Agreement without the written consent of HOVENSA. HOVENSA's approval of any subcontract will not relieve CONTRACTOR of any of its obligations under this Agreement. CONTRACTOR will, for the protection of HOVENSA, make all reasonable efforts to obtain warranties from all subcontractors with respect to services performed.



29



These warranties will be made available to CONTRACTOR and assigned to HOVENSA in case of termination or assignment of this Agreement under Article XI or XIV, to the full extent of the terms thereof and will extend for twelve (12) months after services have been performed and accepted or for such other period of time as may be obtainable from such subcontractors.   This provision will not affect CONTRACTOR's other obligations hereunder.

XXI.    AS-BUILT DRAWINGS

21.1 CONTRACTOR will, during the course of construction of the Facilities, produce originals of "as-built" drawings to show the condition of the Facilities after the completion of the Work.  The "as-built" drawings required by HOVENSA are listed in Appendix A.

XXII.   NOTICES

22.1 All notices will be sent by facsimile and by Certified Mail, Return Receipt Requested or recognized overnight carrier.

22.2 All notices and communications required to be given CONTRACTOR will be in duplicate, the original addressed to:

(CONTRACTOR TO ADVISE)





22.3  All notices and communications required to be given to HOVENSA will be addressed to:

Project Manager – (PROJECT NAME)

    1 Estate Hope

    Christiansted, U.S. Virgin Islands 00820-5652

    Facsimile No.

and a copy to:

    Vice President and Chief Administrative Officer

    1 Estate Hope

    Christiansted, U.S. Virgin Islands 00820-5652

    Facsimile No.:

and a copy to:

    Director, Administrative Services

    1 Estate Hope

    Christiansted, U.S. Virgin Islands 00820-5652

    Facsimile No.:

and a copy to:

    PDVSA V.I., Inc.

    1A Frederiksberg Gade

    St. Thomas, U.S. Virgin Islands, 00802

    Facsimile No.

XXIII.  <u>LIENS</u>

23.1  CONTRACTOR will indemnify HOVENSA against the attachment of liens or encumbrances where CONTRACTOR has wrongfully failed to pay a vendor or subcontractor.





31

XXIV. GOVERNING LAW: DISPUTE RESOLUTION

24.1 Governing Law - This agreement will be governed by and construed under the laws of the State of New York, U.S.A., without regard to its conflict of law rules.

24.2 Dispute Resolution.

24.2.1 If there is a dispute between HOVENSA and CONTRACTOR on the application or interpretation of this Agreement, the aggrieved Party will notify the other Party of its intent to invoke this dispute resolution procedure within ten (10) business days after the dispute arises. If the Parties fail to resolve the dispute within the ten (10) business days after delivery of the Notice, each Party will, within five (5) business days thereafter, nominate an officer of its management to meet at the Facility, or at any other agreed location, to resolve the dispute. If the Parties are unable to resolve the dispute to their satisfaction within ten (10) business days after the nomination, either Party has the right to commence litigation on the dispute. Any such litigation must be brought exclusively in the U.S. District Court, Southern District of New York, United States of America and the parties hereby submit to the jurisdiction of such courts and waive any objection to venue or jurisdiction in such courts. The dispute resolution procedures set forth in this Section will be the sole and exclusive dispute resolution procedures available to the Parties under this Agreement.

24.2.2 The Parties may agree to resolve the dispute by arbitration. Any arbitration will be conducted in the City of New York, State of New York, United States of America, in the English language in accordance with the rules of procedure of the American Arbitration Association (the "AAA"). Each party will nominate within thirty (30) days of the commencement of proceedings, one arbitrator. If any Party fails to nominate an arbitrator within the stated time period, the AAA will appoint an arbitrator for the Party. The two arbitrators nominated by the Parties or appointed by the AAA for any Party will jointly nominate a third arbitrator, who will chair the arbitration panel. If the arbitrators

nominated by the Parties do not succeed in nominating a third arbitrator within ten (10) days, the arbitrator will be appointed by the AAA. The award of the arbitral tribunal will be final and binding upon the Parties.

24.2.3  CONTRACTOR will cause a provision substantively the same as this Section 24.2 to be included in any contract between CONTRACTOR and any subcontractor to ensure that all disputes arising out of the performance of the Work, or any portion thereof, are subject, to the fullest extent possible, to the dispute resolution procedures set forth in Section 24.2.1 and 24.2.2.

XXV. NON-COLLUSIVE BIDDING

25.1 If this Agreement was awarded on the basis of competitive bidding, CONTRACTOR warrants that it has not consulted with any other contractor or person who has bid on the Work and that its bid was arrived at independently of any discussions or collusion with others.

XXVI. EQUAL OPPORTUNITY

26.1.  Non-Discrimination in Employment - CONTRACTOR will comply with the equal opportunity clause published in the regulations of the U.S. Department of Labor implementing Executive Order 11246, which is incorporated in this Agreement by reference.

26.2.  Affirmative Action for Handicapped Workers - CONTRACTOR will comply with the affirmative action clause and regulations published by the U.S. Department of Labor implementing Section 503 of the Rehabilitation Act of 1973, Public Law 93-112, as amended, which are incorporated in this Agreement by reference.

26.3  Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era - CONTRACTOR will comply with the affirmative action clause and regulations published by the U.S. Department of Labor implementing Section 503, Title V of the Vietnam Era





Veteran's Readjustment Assistance Act of 1972, Public Law 92-540, as amended, and Executive Order 11701, which are incorporated in this Agreement by reference.

26.4.  Certification of Nonsegregated Facilities - CONTRACTOR certifies that it does not and will not maintain any facilities it provides for its employees in a manner which will result in segregation on the basis of race, color, religion, sex or national origin, or permit its employees to perform their services at any location, under its control, where segregated facilities are maintained; and that it will obtain a similar certification prior to the award of any non-exempt subcontract.

26.5.  Minority Business Enterprises - CONTRACTOR will comply with the minority business enterprise clauses and regulations published by the U.S. Department of Commerce implementing Executive Order 11625, which are incorporated in this Agreement by reference.

XXVII.  AMENDMENTS

27.  No amendments to this Agreement will be enforceable against either party unless in writing and signed by the parties

XXVIII.  WITHHOLDING TAX.

28.  The laws of the U.S. Virgin Islands require HOVENSA to withhold from contractors who are foreign (non USVI) corporations, an income tax of 11% from all payments made by HOVENSA for services performed by CONTRACTOR in the USVI. For all other foreign (non-USVI) entities and non-resident aliens, the withholding tax rate is 10%. Payments made to U. S. citizens or for services rendered outside the USVI, are not subject to withholding. Unless CONTRACTOR has provided HOVENSA with a copy of CONTRACTOR's USVI business license, and an IRS form W-8ECI, as proof that CONTRACTOR is exempt from the income tax withholding for payments otherwise subject to withholding, HOVENSA will withhold and pay the requisite amounts to the USVI Bureau of Internal Revenue.





XXIX. LIMIT ON CONTRACTOR'S LIABILITY.

29.1     CONTRACTOR'S overall limit of liability for obligations, liabilities, guarantees, warranties and indemnification, whether expressed or implied, howsoever arising under or relating to this Agreement and the performance of the Work will be limited as set forth in Appendix D, as it may be revised, and the foregoing limitation will apply whether the liability arises in contract, breach of warranty or tort, including but not limited to negligence and strict liability or otherwise.

29.2     Notwithstanding the above, the following are excluded from this limit of liability:

      29.2.1 All sums recovered by CONTRACTOR from the insurance under this Agreement.

      29.2.2 CONTRACTOR's obligation to achieve Mechanical Completion as defined in Appendix A.

      29.2.3 CONTRACTOR's warranty obligations under this Agreement during the Warranty Period.

      29.2.4 Intellectual Property indemnification under Article 4.6.1.

      29.2.5 Maintaining the Work, the Facilities and the site free of any lien.

      29.2.6 CONTRACTOR's obligations under Articles 7.1.1 and 7.1.3.

      29.2.7 Fraud by CONTRACTOR or its agents, subcontractors or affiliates.

      29.2.8 Compliance with laws.

      29.2.9 Breach of confidentiality.

      29.2.10     The following Performance Guarantees as per Appendices G, H, J:

            29.2.10.1     Throughput guarantee of 50,000 bpsd.

            29.2.10.2     $H_2S$ content of stripper effluent.





29.2.10.3    Reactor outlet pressure.

29.2.10.4    NOX guarantees.

29.2.10.5    Unit turndown.

29.3    For the purpose of computing Agreement Price under this Article, Article 30.1 or in connection with any required retainage, bank guaranty or letter of credit, any amounts paid by HOVENSA to the HOVENSA Contractors or Lessors, as defined in Appendix AF, will be added to the Agreement Price paid to CONTRACTOR.

29.4    If, solely as a result of this Article, any portion of the amounts paid to CONTRACTOR become subject to U.S. Virgin Islands taxation, through no fault of CONTRACTOR, HOVENSA will be responsible for those taxes.

## XXX.    LIMIT ON HOVENSA'S LIABILITY.

30.1    HOVENSA's overall limit of liability for obligations, liabilities, guarantees, warranties and indemnification, whether expressed or implied, howsoever arising under or relating to this Agreement and the Work will be limited as set forth in Appendix D, as it may be revised, and the foregoing limitation will apply whether the liability arises in contract, breach of warranty or tort, including but not limited to negligence and strict liability or otherwise.

30.2    Notwithstanding the above, the following are excluded from this limit of liability:

30.2.1  All sums recovered by HOVENSA from the insurance under this Agreement.

30.2.2  HOVENSA's obligation to pay the Compensation due under this Agreement, including any Change Orders.

30.2.3  Intellectual Property indemnification under Article 4.6.3.

30.2.4  HOVENSA's obligations under Articles 7.1.2 and 7.1.3.

30.2.5  Fraud by HOVENSA or its agents, subcontractors or affiliates.





30.2.6  Compliance with laws.

30.2.7  Breach of confidentiality.

30.2.8  Any arbitral award in the nature of compensation for Work
performed.

30.2.9  Any payments due CONTRACTOR under Articles 11.1, 11.4 or
11.5.

30.3    If, solely as a result of this Article, any portion of the amounts paid to
CONTRACTOR become subject to U.S. Virgin Islands taxation, through no fault of
CONTRACTOR, HOVENSA will be responsible for those taxes.

IN WITNESS WHEREOF, this Agreement and the attached appendices
have been reviewed by agents of both parties and this Agreement is executed, stamped
with Corporate Seals and delivered, by the authorized officials of each corporation.

ATTEST:                                   HOVENSA L.L.C.

MARCO CROVES.                    By  _____
V.P. & DEP. G.O.O.                      LESLEY KUPFER
                                                   PRESIDENT

ATTEST:                                   TECHNIP ITALY S.p.A.

Georges SARIGIAMNIS           By  NICOLA GRECO
                                                   CEO

# EXHIBIT 3

*Construction*
*Contract*

# APPENDIX Q
## PARENT GUARANTY AGREEMENT

### GUARANTY AGREEMENT

**GUARANTY AGREEMENT** (the "Guaranty") dated [Month, Date], 2004, by CONTRACTOR PARENT, a _____ corporation, with an office at _____, ("Guarantor"), for the benefit of HOVENSA L.L.C., a U.S. Virgin Islands limited liability company, with an office at #1 Estate Hope Christiansted, VI 00820 ("Owner").

### RECITALS:

A.     Guarantor is the parent company of _____ ("Contractor").

B.     Owner has entered into an agreement with Contractor dated _____ ("Agreement") for _____ at Owner's Refinery in St. Croix, USVI.

C.     As a condition to entering into the Agreement with Contractor, Owner requested Guarantor to provide a parent company guarantee of Contractor's performance under the Agreement.

D.     Guarantor is willing to enter into this Guaranty to satisfy Owner's request.

### THE PARTIES AGREE AS FOLLOWS:

1. Guarantor unconditionally and irrevocably guarantees to Owner that if Contractor fails to perform or observe the terms of the Agreement, Guarantor will immediately upon first demand in writing by Owner notifying Guarantor of Contractor's breach under the Agreement, perform or take such steps as are necessary to achieve performance or observance of these terms and will indemnify Owner against all losses, damages, claims and costs arising from the failure to the extent of Contractor's liability under the Agreement.

2. The liability of Guarantor will not be reduced or discharged by any alteration in the relationship between Contractor and Owner which has been consented to by Contractor in writing (with or without the knowledge or consent of Guarantor), or by any forbearance or indulgence by Owner towards Contractor or Guarantor whether as to payment, time, performance or otherwise.

3. Guarantor will make any payment due hereunder on first written demand without set-off or counterclaim and without any legal formality such as protest or notice being necessary, and waives all privileges or rights which it may have as a guarantor, including any right to require Owner to claim payment or to exhaust remedies against Contractor or any other person, but always to the extent Contractor has not cured its breach under the Agreement. Notwithstanding the above, Guarantor will have available to it, in any action or proceeding by Owner seeking performance of this Guaranty, or

Based upon GEPS Master Form APPX Q - PARENT GUARANTEE VER 2 JAN 30-05.DOC

Page 1 of 2

Rev 31 January, 2005

C:\Documents and Settings\cpatterson\Local Settings\Temporary Internet Files\OLK17\Appx Q - Parent Guarantee Ver 2 Jan 30-05.doc

damages for its non-performance, all defenses that Contractor would be able to raise in any action by Owner against Contractor seeking performance or damages for non-performance under the Agreement..

4. The obligations of Guarantor will continue in effect after termination of the Agreement until all Contractor's obligations and liabilities under the Agreement have been discharged or have expired.

5. This Guaranty will be binding on the successors and assigns of Guarantor and will extend to and inure for the benefit of the successors and permitted assignees of Owner. Owner may assign or transfer all or any of its right, title and interest in this Guaranty upon such terms as Owner may think fit to any agent for any syndicate of banks and financial institutions providing credit and guaranty facilities to Owner in connection with the Agreement. No person other than Owner or any permitted assignees is intended as a beneficiary of this Guaranty nor will any such person have any rights hereunder. Guarantor may not otherwise assign or otherwise transfer any of its rights or obligations hereunder.

6. If there is any claim under this Guaranty, Guarantor will be entitled to assert any defense, set-off or counterclaim that Contractor could assert had such claim been made directly against any person under the Agreement.

7. This Guaranty will be governed by and construed in accordance with the laws of the State of New York, U.S.A. Any dispute arising out of or in connection with this Guaranty will be settled in the same manner as in Article 24 [EP]/27 [C] of the [EP/C] Agreement."

   **IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed by their respective authorized representatives as of the date first written above.

Based upon GEPS Master Form APPX Q - PARENT GUARANTEE VER 2 JAN 30-05.DOC
Page 2 of 2
Rev 31 January, 2005

C:\Documents and Settings\cpatterson\Local Settings\Temporary Internet Files\OLK17\Appx Q - Parent Guarantee Ver 2 Jan 30-05.doc



# EXHIBIT 4

buildings, including crane girders, and crane rails, miscellaneous pipe and electrical supports in accordance with Engineering Standards 470 series.

b. Grout all pipe racks, columns, structural steel, stairs and ladder pads, and instrument stands.

c. Furnish all galvanized construction for ladders, stairs, stair landings, handrail, miscellaneous platforms and minor structures.

d. Furnish all hot dip galvanized construction for major structures including compressor shelter(s) in lieu of painting.

5.6 BUILDINGS

5.6.1 CONTRACTOR will furnish materials and construct the following buildings and equipment shelters as complete, turnkey, fully operational and functional facilities. Refer to section 3.2.2.1, Engineering Standards 440-480, and Appendix F, Exhibit 10 for design details.

a. ISBL Electrical Substation Building sized to house all major electrical equipment and provide power for the new LSG Unit. Pre-fabricated steel building is acceptable.

b. ISBL Satellite Building sized to house control equipment, marshalling panels, I/O cabinets, etc., for the new LSG Unit. Pre-fabricated steel building is acceptable.

c. Compressor Shelter(s) sized to house all centrifugal and reciprocating compressors. Will have elevated platforms for top and bottom equipment access, open sides with 8 foot partial siding, and maintenance bridge crane.

d. CEMS & Analyzer Shelter(s) sized to house all CEMS and analyzer equipment.

5.7 MECHANICAL

5.7.1 CONTRACTOR will:

a. Furnish and install equipment (vessels, exchangers, pumps, heater, compressors, etc.) as shown on the Equipment List, and in accordance with equipment specifications in Appendix F and Engineering Standards 500-700 series.

b. Remove all spiders, shipping braces, lifting lugs and tailing lugs after vessel erection. Maintain any equipment purges until piping or internals work starts to prevent internal corrosion. Install internals and any shipped loose items from fabricators.

c. Perform field stress relieving of any equipment as required including temporary burners and temperature monitoring equipment as necessary..

d. Rough align all rotating equipment. Grout all equipment to the foundation. Make cold final alignment to the manufacturer's tolerances.



HOVENSA                     Low Sulfur Gasoline Unit                    Rev. 6
St. Croix, U.S.V.I.                                                    03/01/05

**Appendix A**
**Scope Of Work**

    e.  Install initial charge of all lubricants, connect oil mist, and connect any space heaters required for rotating equipment prior to commissioning. Refer to Mechanical Completion checklist in Appendix X.

    f.  Check rotating machinery for correct direction of rotation and for freedom of moving parts before connecting driver. Electrically connect and run-in driver for a minimum of four (4) hours before reconnecting to driven machine to make final cold alignment. HOVENSA will operate motor for run-in. Refer to Appendix X.

    g.  API 686 Vibration criteria will prevail for all mechanical rotating equipment, unless Engineering Standards are more restrictive. Final acceptance requires fully coupled and operating run test of complete assemblies.

    h.  Provide maintenance to equipment as recommended by manufacturer from the time of arrival onWork Site until commissioning. Refer to Appendix X.

    i.  Seal oil piping will be sized to the API or HOVENSA's Engineering Standards, per direction of HOVENSA.

    j.  HOVENSA will furnish and load catalyst. Reactor vessel opening and closing will be by CONTRACTOR.

    k.  Open vessels including tray manways, install internals not completed in vendor shop if any, provide final inspection, and close vessels upon final acceptance by HOVENSA.

5.8    PIPING

    5.8.1    CONTRACTOR will:

        a.  Furnish and install all IBSL process, utility, and sewer piping systems for the new LSG Unit including shop fabricated piping, valves, shoes, guides, supports, spring hangers, anchors, base ells, etc in accordance with P&IDs in Appendix F and Engineering Standards, *800 series.*

        b.  Furnish and install safety showers and eyewash stations using potable water.

        c.  Provide all weld procedures, WPS's and PQR's to HOVENSA for approval prior to start of Work. Provide all testing and certification for welders at time of hire to HOVENSA.

        d.  All temporary supports used during piping erection will be of sufficient strength *as to prevent any undue stress or strain on equipment, instruments, or other piping components.* All temporary supports are to be removed when permanent supports are installed. In no case will CONTRACTOR be allowed to utilize *vessels, or other equipment connections as temporary supports.*

HOVENSA                    Low Sulfur Gasoline Unit                    Rev. 6
St. Croix, U.S.V.I.                                                    03/01/05

### Appendix A
### Scope Of Work

6.4      To facilitate both Mechanical Completion and Commissioning planning and scheduling, the Work turnover boundaries will be determined during Engineering. Each line item in the respective Equipment list, Motor list, Instrument list, Piping Line list, etc, will include a reference (Turnover Number) to which system it is assigned. Assignment of Turnover Numbers is a requirement of issuing these documents for construction (IFC) and receiving the corresponding earned value credit.

7.0    COMMISSIONING

A commissioning team, under the direction and responsibility of Hovensa, shall be formed to Commission, Start-up, and Performance Test the work.

The commissioning team shall be responsible for the following activities:

- Commissioning
- Start – up
- Achievement of Stable operation
- Performance Acceptance Testing
- Interim Operation and Maintenance

The contractor shall provide services required to assist HOVENSA in the performance of the above activities as requested by Hovensa.

Activities associated with Pre-commissioning and Performance Acceptance Testing will be performed with the assistance of HOVENSA and are considered part of this Contractors Lump Sum Scope of Work. All other assistance (work) requested by Hovensa shall be performed Cost Reimbursable in accordance with the unit rates contained within this agreement.

Under the direction of Hovensa the areas of responsibility of the Commissioning Team are as follows:

a.      Develop commissioning and start-up plans, systems and procedures and coordinate the review and approval of such with HOVENSA's Project Team and appropriate Department management.

b.      Ensure that the commissioning and start-up plans, systems and procedures incorporate comprehensive consideration of safety, health and risk for personnel, the Facilities and the environment.

c.      Conduct orientation/review seminars with all pertinent team members to ensure a clear understanding of the responsibilities, procedures, and lines of communication to be used in executing commissioning and start-up activities.

d.      Pre-commission all equipment. This includes motor running tests to confirm direction before coupling driver to driven equipment, CONTRACTOR and

HOVENSA                        Low Sulfur Gasoline Unit                    Rev. 6
St. Croix, U.S.V.I.                                                        03/01/05

## Appendix A
## Scope Of Work

HOVENSA witnessed run tests with equipment fully coupled to confirm vibration, bearing temperatures, motor stator temperatures, etc.  CONTRACTOR to: conduct instrument checks for continuity and functional equipment operation, Tower spray tests and tray tests, on-Work Site final calibration of PSV's.

f.  Routinely (weekly and monthly) prepare and present necessary reports to HOVENSA during startup and early operations.

g.  Coordinate and monitor the day-to-day progress of the commissioning and start-up activities versus the adopted schedule and plans.

h.  Verify that safety and protection systems are in place, functionally operative and that all pre-commissioning test and checks have been successfully performed.

i.  Plan, witness, and verify performance acceptance testing.

8.0    EXHIBITS

1.    General Refinery Plot Plan

2.    Preliminary LSG Unit Arrangement Plan - Removed

3.    Preliminary KBR Process Flow Diagrams - Removed

4.    Preliminary KBR Equipment List - Removed

5.    EMRE / KBR Responsibility Matrix

6.    Work Site Laydown Areas

7.    EMRE / KBR Preliminary Major Equipment Datasheets - Removed

8.    Lifting Loads Permit Procedure #3582

# EXHIBIT 5



**PEOPLE FUELING A BRIGHTER FUTURE**
1 Estate Hope
Christiansted, St. Croix, USVI 00820

June 1, 2007

Mr.Vincenzo Lagana
Project Director
TPVI Ltd.
PMO 115 – 4093 Diamond Ruby Suite 7
Christiansted, USVI 00820

Mr.Vincenzo Lagana
Project Director
One Hibiscus Alley
Charlotte Amalie, USVI  00802


Subject:       Low Sulfur Gasoline Unit
               Project 2229 LOW SULPHUR GASOLINE UNIT
               HVS-0664

Reference No: HL-T-0664-0078

Dear Vincenzo:

Technip has failed to immediately begin to cure the breaches detailed in Hovensa's May 29, 2007 letter (HL-T-0664-0077).

Therefore, Technip is hereby notified that Hovensa will consider and pursue all legal remedies available to it under the Construction Agreement and/or other applicable law, including but not limited to invocation of the dispute resolution procedure set forth in Article 27 of the Agreement.

Very truly yours,

John George
Manager / Projects

jwg / jwg
Attachments - none

cc:    M. Crovesi    M Fennessy    N.V. Wood    K. Dunphy
       LSG Project File 13.1.3



**PEOPLE FUELING A BRIGHTER FUTURE**
1 Estate Hope
Christiansted, St. Croix, USVI 00820

June 5, 2007

Mr.Vincenzo Lagana
Project Director
TPVI Ltd.
PMO 115 – 4093 Diamond Ruby Suite 7
Christiansted, USVI 00820

Mr.Vincenzo Lagana
Project Director
One Hibiscus Alley
Charlotte Amalie, USVI 00802

> Subject:    Low Sulfur Gasoline Unit
> Project 2229 LOW SULPHUR GASOLINE UNIT
> HVS-0664

Reference No: HL-T-0664-0079

Dear Vincenzo:

I am writing in response to Technip's letter (SLH-0664-0170) which, although dated June 4, 2007, was delivered to Hovensa on June 1, 2007, apparently in response to Hovensa's letter of the same date (HLT-0664-0078).    Without waiving or limiting Hovensa's rights and claims under the Construction Agreement, I am writing to address some of the more glaring misstatements in Technip's letter.

As discussed in previous correspondence between the parties, Technip's suggestion that Hovensa interfered with Technip's selection of a mechanical subcontractor is incorrect. (See, e.g., HLT-0664-0057). Moreover, Technip cannot now avoid its clear contractual obligations through allegations that Tiger has failed "to perform properly." Under the lump-sum Construction Agreement, Technip is obligated to achieve a timely and successful completion of the project, which includes the obligation under Article 23 to properly manage and supervise the work of third party contractors, including Tiger.

As you are well aware, Appendix E requires that Mechanical Completion be achieved by November 10, 2006 (modified to November 15, 2006, by Change Order HVS-0664-09), and in Appendix K (amended by Section 1 of the Settlement Agreement dated March 31, 2006), Technip agreed to pay Schedule Liquidated Damages for "each day that Mechanical Completion is delayed beyond November 10, 2006." Technip's failure to achieve Mechanical Completion *to this day* is beyond dispute. To the extent that Tiger's performance has contributed to Technip's failure to perform its contractual obligations, Technip has assumed this responsibility under the plain terms of the Construction Agreement.

Finally, the statement in your letter that "HOVENSA has not previously complained about the absence of lien waivers" is also demonstrably false. As evidenced by our extensive e-mail exchange in December 2006, Hovensa has explicitly and repeatedly requested that Technip

HL-T-0664-0079
6/5/2007

provide, in accordance with Article 10.3, lien waivers with all invoices.  Technip, however, has repeatedly refused to do so.

Very truly yours,

John George
Manager - Projects

jwg / jwg
Attachments - none

cc:    M. Crovesi     M Fennessy     N.V. Wood     K. Dunphy
       LSG Project File 13.1.3



**PEOPLE FUELING A BRIGHTER FUTURE**
1 Estate Hope
Christiansted, St. Croix, USVI 00820

**June 26, 2007**

Mr. Vincenzo Lagana
Project Director
TPVI Ltd.
PMO 115-4093 Diamond Ruby Suite 7
Christiansted, USVI 00820

Mr. Vincenzo Lagana
Project Director
One Hibiscus Alley
Charlotte Amalie, USVI 00802

**Subject:**     Low Sulfur Gasoline Unit
Project 2229 LOW SULFUR GASOLINE UNIT
Suspension of Payments Until Breach is Resolved
HLT-0664-0077, HLT-0664-0078

**Reference No: HL-T-0664-0082**

Dear Vincenzo:

Due to Technip's refusal to cure the material breaches of the Construction Agreement detailed in Hovensa's previous correspondence (HLT-0664-0077, HLT-0664-0078), Hovensa hereby invokes its right under Article 14.4 of the Construction Agreement to withhold further payment to Technip.

If and when Technip decides to take the necessary steps to remedy these breaches to the satisfaction of Hovensa, as provided by Article 14.4, Technip will promptly be paid the amount outstanding for work properly performed by Technip, less all reasonable additional expenses incurred by Hovensa as a result of Technip's breaches.

Very truly yours,

John W. George
Manager - Projects
jwg / jbs

cc:  L Kupfer        M. Crovesi        M. Fennesy        N.V. Wood

<u>CERTIFICATE OF SERVICE</u>

           I, William J. Sanchez, am over the age of eighteen (18) years, not a party to this action, so caused a true and correct copy of the foregoing Notice of Motion, dated April 18, 2008, Defendant's Memorandum of Law in Support of Their Motion to Dismiss dated April 18, 2008, Declaration of Patrick Picard, dated April 17, 2008, Declaration of Etienne Gory, dated April 17, 2008, the Declaration of Christopher Paparella, dated April 17, 2008, and Defendant's Corporate Disclosure Statement to be served on this 18th day of April, 2008, to the following:

           VIA ELECTRONIC FILING & FEDEX:

           Gabriel Del Virginia
           Law Offices of Gabriel Del Virginia
           641 Lexington Avenue, 21st floor
           New York, NY 10022

           VIA E-MAIL:

           George T. Shipley
           Jonathan Smith
           Shipley Snell Montgomery LLP
           4600 First City Tower
           1001 Fannin
           Houston, TX 77002

           ATTORNEYS FOR PLAINTIFF HOVENSA

           I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2008
      New York, New York

                                  _/s/ William J. Sanchez
                                    William J. Sanchez