HUGHES HUBBARD & REED LLP
Christopher Paparella
John Fellas
Hagit Elul
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
paparella@hugheshubbard.com

*Attorneys for Defendants Technip Italy S.p.A. and Technip S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOVENSA L.L.C., | |
| Plaintiff, | Case No.: 08 CIV. 1221 (NRB) |
| -vs- | |
| TECHNIP ITALY S.P.A and TECHNIP S.A., | **DECLARATION OF CHRISTOPHER PAPARELLA** |
| Defendants. | |

Christopher Paparella declares under penalty of perjury as follows:

1.    I am a partner in Hughes Hubbard & LLP, attorneys for Defendants Technip Italy S.p.A ("Technip Italy") and Technip S.A in this action. I am a member of the Bar of this Court.

2.    I submit this Declaration in support of Defendants' Motion to Dismiss the Complaint for Failure to Join an Indispensable Party, Failure to State a Claim and Lack of Personal Jurisdiction. The purpose of this Declaration is to put before the Court copies of documents that are cited in the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss.

3.    Annexed hereto as Exhibit 1 is true and correct copy of the Complaint filed by Hovensa L.L.C. ("Hovensa") in this action.

4.      Annexed hereto as Exhibit 2 is a true and correct copy of the Complaint filed by Technip Italy and TPVI Limited against Hovensa in New York State Supreme Court on April 17, 2008, styled *TPVI Ltd. and Technip Italy S.p.A. v. Hovensa L.L.C.*, Index No. 601158/2008.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      April 17, 2008

Christopher Paparella

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE BUCHWALD**

**08 CV 1221**

CIVIL ACTION NO. _____

| | |
|---|---|
| HOVENSA L.L.C., | § |
| | § |
| | § |
| VS. | § |
| | § |
| TECHNIP ITALY S.P.A. and | § |
| TECHNIP S.A. | § |
| | § |

**ORIGINAL COMPLAINT**

Plaintiff HOVENSA L.L.C. ("HOVENSA") files this original complaint against

Defendants Technip Italy S.p.A. and Technip S.A. (collectively "Defendants") and would show

the Court as follows:

### I. PARTIES

1.      HOVENSA L.L.C. ("HOVENSA") is, and at all times mentioned in this

complaint was, a United States Virgin Islands ("U.S.V.I.") limited liability company with its

principal place of business in Christiansted, St. Croix, U.S.V.I.  HOVENSA consists of two

members: Hess Oil Virgin Islands Corp. ("HOVIC") and PDVSA, V.I., Inc. ("PDVSA").

HOVIC is a U.S.V.I. corporation with its principal place of business in Christiansted, St. Croix,

U.S.V.I.    PDVSA is also a U.S.V.I. corporation with its principal place of business in

Christiansted, St. Croix, U.S.V.I.

2.      Technip Italy S.p.A. (hereafter either "Technip Italy" or "Technip") is an

Italian corporation (*Società per Azioni*) with its principal place of business at V.le Castello della

Magliana, 68, 00148, Rome, Italy.  Technip Italy is being served with process pursuant to the

Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters. Technip Italy is a subsidiary of Defendant Technip S.A.

3.    Defendant Technip S.A. ("Technip S.A.") is a French corporation having its principal place of business at La Défense 12, 92973 Paris, La Défense Cedex, France. Technip S.A. is being served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters.

## II. Jurisdiction and Venue

4.    Pursuant to 28 U.S.C. § 1332(a)(2), the Court has diversity jurisdiction over this action because the dispute is between a citizen of a State and citizens or subjects of foreign states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    This action involves various contractual disputes among the parties, and the parties have consented to the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York.   Thus, the Court has personal jurisdiction over all parties with respect to the claims asserted in this action and venue is appropriate in this District.

## III. Background

### A.    The Parties and The Project

6.    HOVENSA owns and operates an oil refinery in St Croix, U.S.V.I.  The facility is one of the most modern refineries in the United States and, with crude oil processing capacity of 495,000 barrels per day (BPD), it is one of the largest in the world.

7.    Around June 2004, HOVENSA began inviting contractors to bid on a lump-sum basis for the engineering, procurement, and construction of a Low Sulfur Gasoline Hydrotreater ("LSG") at the refinery.   HOVENSA's invitations to bid contemplated one contractor to perform all aspects of the LSG project. However, the invitation packages contained

2

two separate draft agreements—one for engineering and procurement ("E&P") and one for construction—in order to clearly distinguish, for local tax purposes, between the engineering and procurement work performed outside of the U.S.V.I. and the construction work performed within the U.S.V.I.

8.      One of the contractors responding to the invitation to bid was Technip Italy which, according to its website, "is a construction-oriented international engineering company."

9.      Technip Italy is part of the multinational engineering and construction group of companies known as the Technip Group and headed by Technip Italy's parent company, Technip S.A.    Headquartered in Paris, France, Technip S.A. has over 22,000 employees worldwide and touts itself as "among the top five corporations in the field of oil, gas and petrochemical engineering, construction and services."

10.     After Technip provided HOVENSA with several documents regarding its purported expertise and financial stability, the parties executed a confidentiality agreement in July 2004 for the purpose of conducting discussions about the LSG project.  Shortly thereafter, however, Technip notified HOVENSA that it needed to "propose [its] Paris operating center, Technip France, as potential bidder, instead of Technip Italy."  Like Technip Italy, Technip France is a subsidiary of Technip S.A. and a major operating center for the Technip Group.

11.     Technip apologized to HOVENSA for switching operating centers during the bidding process but explained "that Technip France w[ould] be more adapted to this project particularly for assuming construction risk."

12.     Consequently, HOVENSA began meeting with representatives of Technip France, as well as representatives of Technip Italy, to discuss the project and, in December 2004, Technip France submitted its proposal.

**B.      THE AGREEMENTS**

13.     On or about February 10, 2005, the parties signed Letters of Intent for the LSG project that were addressed to Technip S.A.

14.     Meanwhile, HOVENSA was notified that Technip France was returning control of the project back to Technip Italy, purportedly because of an increased workload for Technip France.

15.     A project kick-off meeting was scheduled for March 9-11, 2005 in Rome for the formal execution of both the Engineering and Procurement Agreement ("E&P Agreement") and the Construction Agreement.  Each Agreement contains over 25 Appendices, which are explicitly incorporated into the Agreements.  The Appendices to each Agreement are virtually identical.

16.     During the kick-off meeting in Rome, Technip informed HOVENSA that a Technip entity registered to conduct business in the U.S.V.I. would "sign" the Construction Agreement.

17.     Upon information and belief, in order to facilitate Technip's execution of the project, Technip created a Virgin Islands entity, referred to as "TPVI," on or about March 2, 2005.

18.     During the March 2005 kick-off meeting, Technip confirmed that it would provide all labor, supervision, and equipment for the construction and pre-commissioning phases of the lump-sum project.

4

19.     The E&P and Construction Agreements were formally executed on or about March 10, 2005. The total lump-sum price for the project was $127 million, allocating $77 million for the E&P Agreement and $50 million for the Construction Agreement.

20.     The E&P Agreement was signed by Nicola Greco, CEO of Technip Italy, who had also signed the parties' February 10, 2005 Letters of Intent. Acting on the behalf of Technip, the Construction Agreement was signed by Etienne Gory, President of the newly formed TPVI. Mr. Gory, who also signed the Letters of Intent, was also the CEO, Latin America, for Technip Italy.

21.     Technip's obligations, including its scheduled completion of the project in November 2006, were confirmed in its March 31, 2005 press release:

> Technip has been awarded, by Hovensa, a lump sum turnkey contract for a new hydrotreating unit to be located at its refinery in St. Croix, US Virgin Islands. . . .
>
> Technip's engineering center in Rome (Italy) will carry out the contract, which covers the front-end and detail engineering, procurement and supply of equipment and materials, construction, pre-commissioning, commissioning and assistance to start-up. The project is slated to be completed in November 2006.
>
> For Technip, this new award is a step towards further strengthening its presence in the Caribbean . . .

## C.   TECHNIP'S MISMANAGEMENT OF THE PROJECT

22.     As set forth in the Overall Project Schedule created by Technip, and attached to each of the Agreements as Appendix E, Mechanical Completion of the LSG project was to be achieved no later than November 10, 2006.

23.     Moreover, for each day that Mechanical Completion was delayed beyond November 10, 2006, the parties agreed that HOVENSA would be paid a set amount of liquidated damages ("Schedule Liquidated Damages"). The chart setting forth the length of delays and

corresponding amount of damages is contained in Appendix K to each Agreement. Further, pursuant to the Agreements, Technip posted letters of credit to insure payment of Schedule Liquidated Damages, among other potential financial obligations.

24.    Problems with Technip's performance began early in the project with its engineering and procurement deliverables and extended to its construction management.

25.    For example, around February 2005—before the parties' formal execution of the Agreements—Technip decided to use a subsidiary of Turner Industries Group, L.L.C., Tiger Construction St. Croix, L.L.C. ("Tiger"), to be the mechanical subcontractor in the construction phase.

26.    Technip, however, chose not to secure a contract with Tiger until later in the year.  Technip made this choice despite committing itself in March 2005 to a fixed, lump-sum price, and despite representing to HOVENSA during the summer of 2004 pre-bidding stage that "it will be necessary to finalize, from bidding stage, a subcontracting strategy which includes necessary pre-agreements with potential sub-contractors where construction risks are properly allocated."

27.    In September 2005, prior to Technip securing a contract with Tiger for the mechanical work, Hurricanes Katrina and Rita hit the Gulf Coast of the United States.  As an apparent result of lucrative opportunities along the Gulf Coast arising from the damage caused by these hurricanes, Tiger purportedly no longer would agree to perform the mechanical work on the LSG project on a "unit price" (or lump-sum) basis; instead, Tiger would contract only on a cost-plus reimbursable basis.

6

28.    Because this turn of events threatened Technip's profitability from the project, Technip claimed *force majeure* events had altered the scope of work and demanded that HOVENSA make changes to the Agreements.

29.    Technip and HOVENSA negotiated and executed a Settlement Agreement on March 31, 2006 in which Technip *again* committed to achieving Mechanical Completion by November 10, 2006.

30.    As part of the Settlement Agreement, however, HOVENSA effectively granted Technip's request for schedule relief, deferring the commencement date for the accrual of liquidated damages by 28 days (from 7 days after the scheduled November 10, 2006 date to 35 days after). Moreover, HOVENSA paid an additional $3 million on the Construction Agreement and committed to additional incentive payments for an early Mechanical Completion.

31.    In return, Technip agreed to release any and all claims for additional payment or schedule extensions as follows: "Technip releases HOVENSA from all claims and liabilities for Claims and potential claims under the Agreements, or otherwise, including all change orders (past, present, pending or contemplated), whether submitted, for events, including force majeure events, that have occurred, issues that have arisen or for Work that has been performed as of the date of this Settlement Agreement, including any 'impacts' or 'ripple' effects."

32.    Technip, however, proved unable to manage the costs of construction. In fact, shortly after execution of the Settlement Agreement, Technip requested contractual change orders that allowed it to shift $7 million from the price of the E&P Agreement to the Construction Agreement (thereby resulting in a Construction Agreement price of $60 million and an E&P Agreement price of $70 million). HOVENSA complied with Technip's request.

33.     Similarly, Technip proved unable to manage and execute the project schedule. As of October 2007—over ten months after the November 2006 date promised by Technip in the E&P and Construction Agreements—Mechanical Completion of the project had yet to be achieved.

34.     The delays in the project resulted from various breaches of Technip's contractual obligations, including but not limited to, failure to provide accurate and detailed project schedules, failure to adequately staff the project, failure to efficiently coordinate the work of subcontractors, and failure to supervise and insure the performance of conforming work.

35.     Moreover, as a result of Technip's performance, HOVENSA was forced to pay substantially more than the agreed-upon lump-sum price, in contravention of both the plain terms and clear purpose of the Agreements.

36.     In addition to Technip's mismanagement of construction activities, Technip's errors in fabrication and failures to adhere to the contractual engineering and construction standards further exacerbated schedule delays and project costs.

37.     For example, the Agreements explicitly require that "[a]ll aboveground piping will be on shoes to minimize pipe contact with supports and allow painting of lines without lifting or shifting." Due to the tropical climate of St. Croix, HOVENSA's engineering standards require that shoes be welded onto the piping to preserve the integrity of the piping.

38.     Through either indifference or inattention, Technip had the piping manufactured without welding the shoes, thereby necessitating a substantial amount of man-hours to be devoted to welding at the project site after the piping had been installed.

39.     In addition, for its convenience, Technip simply decided to substitute unacceptable clamp-on shoes for the contractually required welded shoes on some of the piping

8

systems.    After a site inspection by HOVENSA revealed Technip's nonconforming work in the fall of 2006, HOVENSA demanded that Technip replace the clamps with welded shoes in compliance with the Agreements.

40.    In response, and in direct contradiction to HOVENSA's explicit engineering standards, Technip claimed that the use of welded shoes in lieu of clamp-ons constituted a change in the scope of work which, in Technip's unsubstantiated and far-fetched opinion, would cost $20 million and result in over three months delay in the project.

**TECHNIP S.A.'S GUARANTY OF CONTRACTUAL OBLIGATIONS**

41.    As discussed above, by the end of January 2005, the parties had agreed on most of the terms for the Agreements, including the terms of the "Parent Guaranty Agreement" ("Parent Guaranty") from Technip S.A.

42.    As part of the formal execution of the E&P and Construction Agreements, the Parent Guaranty was attached as Appendix Q to, and explicitly incorporated by reference into, each Agreement.

43.    Among other terms, the Parent Guaranty provides as follows:

> Guarantor unconditionally and irrevocably guarantees to Owner that if Contractor fails to perform or observe the terms of the [E&P or Construction] Agreement, Guarantor will immediately upon first demand in writing by Owner notifying Guarantor of Contractor's breach under the Agreement, perform or take such steps as are necessary to achieve performance or observance of these terms and will indemnify Owner against all losses, damages, claims and costs arising from the failure to the extent of Contractor's liability under the Agreement.
>
> . . .
>
> Guarantor will make any payment due hereunder on first written demand without set-off or counterclaim and without any legal formality such as protest or notice being necessary, and waives all privileges or rights which it may have as a guarantor, including any right to require Owner to claim payment or to exhaust remedies against Contractor or any other person,

9

but always to the extent Contractor has not cured its breach under the Agreement.

44.     The Parent Guaranty also expressly adopts the dispute resolution provision, including the exclusive forum selection clause, of the E&P and Construction Agreements.

45.     To date, Technip S.A. has refused to honor its obligations under the Parent Guaranty.

### IV.  CAUSES OF ACTION

**A.     COUNT ONE: BREACH OF CONTRACT—OVERPAYMENTS**

46.     Each of the allegations set forth in paragraphs 1 through 45 above are expressly incorporated herein by reference.

47.     The Construction Agreement, like the E&P Agreement, is a lump-sum contract. In other words, Technip may not receive, nor may HOVENSA be required to pay, any amounts under the Construction Agreement beyond the Construction Lump Sum Price, except for authorized amounts for additional work reflected in change orders.

48.     The Construction Lump Sum Price was originally $50 million but, as a result of the additional $3 million that HOVENSA agreed to pay as part of the Settlement Agreement, and Technip's aforementioned "shifting" of $7 million from the E&P Agreement to the Construction Agreement, the current Construction Lump Sum Price is approximately $60 million.

49.     To date, however, HOVENSA has been required to pay a total of over $91 million under the Construction Agreement, an amount exceeding the Construction Lump Sum Price by over $31 million.

10

50.    Under Article 23 and Appendix D, Exhibit 1 of the Construction Agreement, HOVENSA is entitled to reimbursement for amounts paid in excess of the Construction Lump Sum Price.   Moreover, Technip explicitly agreed that it would supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct the LSG unit.

51.    Technip has breached these agreements, however, by refusing to reimburse HOVENSA for the overpayments to Tiger and other contractors selected by Technip to perform the construction work.

52.    In addition, the construction overpayments themselves resulted from various breaches of the E&P and Construction Agreements by Technip, including engineering and fabrication errors that required additional man-hours to correct and the failure to properly schedule and manage the construction activities of Tiger and other contractors.

53.    As a result of the foregoing breaches, HOVENSA has been damaged in an amount exceeding $31 million.

54.    HOVENSA has demanded payment from Defendants, but Defendants have refused to pay.

55.    All conditions precedent to HOVENSA's enforcement of the Agreements and the Parent Guaranty have either been satisfied or waived.

**B.    COUNT TWO: BREACH OF CONTRACT—DEFECTIVE RECYCLE COMPRESSORS**

56.    Each of the allegations set forth in paragraphs 1 through 55 above are expressly incorporated herein by reference.

57.    In Section 3.5 of the E&P Agreement, Technip warranted, among other things, its design of the LSG unit and the performance of equipment systems purchased from its

11

vendors.  In the event of any design deficiency or other defect in the performance of the LSG unit and associated equipment, Technip agreed to "furnish, free of charge, new designs, other engineering services and other project management services required to remedy or correct" the defect.

58.     During attempts to start-up the LSG unit, HOVENSA experienced problems with starting up and operating the recycle compressors—a critical component of the LSG unit— at the necessary high speed conditions.

59.     HOVENSA provided Technip with written notice of these problems and requested Technip to take corrective action.

60.     In response, Technip adamantly insisted that the recycle compressors were suitable for their intended purposes and refused to take any remedial action.

61.     Technip's refusal to remedy the defects in the recycle compressors constitutes a breach of the E&P Agreement.  The amount of damages sustained by HOVENSA as a result of Technip's breach continue to accrue and has not been determined as of the date of the filing of this Complaint.

C.     COUNT THREE: PROMISSORY ESTOPPEL—FAILURE TO REIMBURSE OVERPAYMENTS

62.     Each of the allegations set forth in paragraphs 1 through 61 above are expressly incorporated herein by reference.

63.     In the alternative to HOVENSA's claims under Count One, Defendants are liable for the construction overpayments on promissory estoppel grounds.

64.     Defendants consistently and unambiguously promised to supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct of the LSG unit.

65.     Reasonably relying upon these promises, HOVENSA continued to pay Tiger and other contractors selected and managed by Technip substantial amounts in order to complete construction of the LSG unit.

66.     As a result of Defendants' failure to fulfill these promises, HOVENSA has sustained damages in excess of $31 million.   The injustice and unconscionability of Defendants' conduct can be avoided only by enforcement of Defendants' unambiguous promises.

**D.     COUNT FOUR: UNJUST ENRICHMENT/QUASI-CONTRACT—FAILURE TO REIMBURSE OVERPAYMENTS**

67.     Each of the allegations set forth in paragraphs 1 through 66 above are expressly incorporated herein by reference.

68.     In the alternative to HOVENSA's claims under Count One, Defendants are liable for the construction overpayments on quasi-contractual grounds.

69.     Defendants consistently and unambiguously promised HOVENSA that Technip would supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct of the LSG unit.   Moreover, control over the work of Tiger and other construction contractors rested with Technip.

70.     In addition, Defendants represented to the public and potential clients that Technip would perform the LSG project—which Technip represented as "strengthening its presence in the Caribbean"—on a lump-sum basis. As result of Technip's conduct, however, HOVENSA has effectively been forced to pay for the project on a reimbursable cost basis, even though HOVENSA had no control over the execution of the construction work by Tiger and other contractors.   Moreover, Technip's conduct has caused most, if not all, of the overruns in time and cost associated with the construction of the LSG Unit.

71.     HOVENSA has paid more than $10 million directly to Technip relating to the construction of the LSG unit, as well as more than $70 million to Technip relating to the engineering and procurement activities.

72.     As a result of Technip's conduct, HOVENSA has paid more than $31 million in excess of the price that Technip represented as the total lump-sum price. Moreover, HOVENSA's payments to Tiger and others prevented work stoppages on the project which, otherwise, would have resulted in adverse publicity for the Technip Group and additional liabilities to Defendants.

73.     Consequently, Defendants have been unjustly enriched as a result of HOVENSA's payments under the Construction Agreement and, in equity and good conscience, the amounts paid by HOVENSA rightfully belong to HOVENSA and should be repaid.

## V.  JURY DEMAND

74.     HOVENSA demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VI.  PRAYER FOR RELIEF

Based on the foregoing, HOVENSA respectfully prays that Technip Italy and Technip S.A. be cited to appear and answer and that, on final trial, HOVENSA have judgment as follows:

a.      Actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon;

b.      All taxable costs incurred by HOVENSA in this action;

c.      Post-judgment interest; and

14

d.     All additional or alternative relief, in law or in equity, to which

HOVENSA may be entitled.

Respectfully submitted,

By: _____

Gabriel Del Virginia
New York Bar No. ᶠᵒᵘ ʸᴾˢ /
LAW OFFICES OF GABRIEL DEL VIRGINIA
641 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 371-5478
Facsimile (212) 371-0460

ATTORNEYS FOR PLAINTIFF
HOVENSA L.L.C.

OF COUNSEL:

George T. Shipley
Texas Bar No. 18267100
Federal I.D. No. 2118
Jonathan B. Smith
Texas Bar No. 24013528
SHIPLEY SNELL MONTGOMERY LLP
4600 First City Tower
1001 Fannin
Houston, TX 77002
Telephone:  (713) 652-5920
Facsimile:  (713) 652-3057

15

# EXHIBIT 2



B199— Summons without notice, Supreme Court.
personal or substituted service. 12 pt. type, 4-94

© 1993 JULIUS BLUMBERG, INC.,
PUBLISHER, NYC 10013

*Supreme Court of the State of New York*

*County of* _____

NEW YORK
COUNTY CLERKS OFFICE
APR 17 2008
NOT COMPARED
WITH COPY FILE

Index No. 6 01158 2008

Date purchased April 17, 2008

Plaintiff(s) designate(s) New York

County as the place of trial.

The basis of the venue is CPLR 503(a)

TPVI LIMITED and TECHNIP ITALY S.p.A.,

*Plaintiff(s)*

*against*

HOVENSA L.L.C.,

*Summons*

Plaintiff(s) reside(s) at

County of

*Defendant(s)*

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within    20    days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated,  April 17, 2008

Attorney(s) for Plaintiff

Office and Post Office Address

Hughes Hubbard & Reed LLP

By: _____

Christopher Paparella
John Fellas
Hagit Elul
One Battery Park Plaza
New York, New York  10004
(212) 837-6000

Defendant's address:

Hovensa L.L.C.
c/o Gabriel Del Virginia
Law Offices of Gabriel Del Virginia
641 Lexington Avenue, 21st Floor
New York, New York  10022
(212) 371-5478

- and -

One Estate Hope
Christiansted
St. Croix, VI  00802

Index No.

Supreme Court of the State of New York
County of

TPVI LIMITED and
TECHNIP ITALY S.p.A.,

Plaintiff(s)

against

HOVENSA L.L.C.,

Defendant(s)

## Summons
### ACTION NOT BASED UPON A
### CONSUMER CREDIT TRANSACTION

Attorney(s) for Plaintiff(s)

Office, Post Office Address and Tel. No.

Christopher Paparella
John Fellas
Hagit Elul

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

---

STATE OF NEW YORK, COUNTY OF ___ SS:

The undersigned, being duly sworn, deposes and says: deponent is not a party herein, is over 18 years of age and resides at

That on ___ M., at ___ at

deponent served the within summons, on

___ defendant,

☐ 1  **INDIVIDUAL** said defendant therein.

☐ 2  **CORPORATION** a corporation, by delivering thereto a true copy of each to personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be thereof.

☐ 3  **SUITABLE AGE PERSON** a person of suitable age by delivering thereat a true copy of each to and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

☐ 4  **AFFIXING TO DOOR, ETC.** by affixing a true copy of each to the door of said premises, which is defendant's—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age and discretion thereat, having called there

☐ 5A  **MAILING TO RESIDENCE USE WITH 3 OR 4** Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

☐ 5B  **MAILING TO BUSINESS USE WITH 3 OR 4** Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to defendant at defendant's actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

☐ **DESCRIPTION USE WITH 1, 2, OR 3**
☐ Male  ☐ White Skin  ☐ Black Hair  ☐ White Hair  ☐ 14-20 Yrs.  ☐ Under 5'  ☐ Under 100 Lbs.
☐ Female  ☐ Black Skin  ☐ Brown Hair  ☐ Balding  ☐ 21-35 Yrs.  ☐ 5'0"-5'3"  ☐ 100-130 Lbs.
☐ Brown Skin  ☐ Blonde Hair  ☐ Mustache  ☐ 36-50 Yrs.  ☐ 5'4"-5'8"  ☐ 131-160 Lbs.
☐ Yellow Skin  ☐ Gray Hair  ☐ Beard  ☐ 51-65 Yrs.  ☐ 5'9"-6'0"  ☐ 161-200 Lbs.
☐ Red Skin  ☐ Red Hair  ☐ Glasses  ☐ Over 65 Yrs.  ☐ Over 6'  ☐ Over 200 Lbs.

Other identifying features:

Sworn to before me on

Print name beneath signature.

LICENSE NO. ___

**AFFIDAVIT OF SERVICE**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TPVI LTD. and
TECHNIP ITALY S.P.A.,

                              Plaintiffs,

        -against-

HOVENSA L.L.C.,

                              Defendant.

Date purchased: April 17, 2008

Index No.: 601158/08

**COMPLAINT**

**NEW YORK
COUNTY CLERK'S OFFICE**

**APR 17 2008**

NOT COMPARED
WITH COPY FILE

        Plaintiffs TPVI Ltd. ("TPVI") and Technip Italy S.p.A. allege as follows

by and through their undersigned attorneys for their complaint against Defendant

Hovensa L.L.C. ("Hovensa"):

## NATURE OF THE ACTION

        1.      This is an action for breach of contract and declaratory relief arising out of

TPVI's contract with Hovensa to perform certain construction services (the "Construction

Agreement") and Technip Italy's contract with Hovensa to perform certain engineering

and procurement services (the "E&P Agreement").  Both contracts were entered into in

connection with the engineering, procurement and construction of a low-sulfur gasoline

hydrotreater unit at Hovensa's oil refinery in St. Croix, U.S. Virgin Islands (the "LSG

Project").

        2.      Hovensa caused TPVI to incur significant delays and additional costs

under the Construction Agreement.  Among other things, Hovensa refused to approve

more than one potential bidder for the mechanical erection contract, thus eliminating

competition for this work.  Hovensa insisted on contracting for such work on a cost

reimbursable basis with a contractor it preferred.  Hovensa's preferred contractor proved

incapable of performing properly and timely and caused TPVI to sustain significant delays, disruptions and damages. TPVI suffered further delays, disruptions and damages by Hovensa's additions and changes to its work under the Construction Agreement and by unforeseen stoppages and other interruptions to TPVI's work that were attributable to Hovensa.

3.      Hovensa refused to reimburse TPVI for its additional costs and other damages and refused to grant TPVI an extension of time to account for the delays and additional costs caused by and attributable to Hovensa. Instead, Hovensa claimed liquidated damages from TPVI and Technip Italy for the delays Hovensa had caused and which were attributable to Hovensa. Hovensa also misrepresented to TPVI's and Technip Italy's bank that they had breached their agreements with Hovensa and drew down more than $13,000,000 under letters of credit posted by them in Hovensa's favor under the Construction Agreement and E&P Agreement.

4.      Accordingly, TPVI seeks recovery of: (i) the additional costs and damages it has sustained by reason of the delays and disruptions caused to it by Hovensa's wrongful refusal to permit TPVI to contract for the mechanical erection work with its preferred contractor and Hovensa's wrongful requirement that such work be awarded to its preferred contractor and by the additional and changed work Hovensa required TPVI to perform and the unforeseen stoppages and other interruptions to TPVI's work that were attributable to Hovensa; and (ii) the amounts wrongfully drawn down by Hovensa under the letter of credit TPVI posted under the Construction Agreement.

5.      Technip Italy seeks recovery of the amounts wrongfully drawn down by Hovensa under the letter of credit it posted under the E&P Agreement.

6.      TPVI and Technip Italy seek a declaratory judgment that: (i) Technip Italy has not breached the E&P Agreement; (ii) TPVI has not breached the Construction Agreement; (iii) the delays in the LSG Project completion were caused by Hovensa and not Technip Italy or TPVI; (iv) TPVI and Technip Italy are entitled to an extension of time to complete their obligations under their agreements with Hovensa; (v) Hovensa is not entitled to any liquidated damages for delay or otherwise against either TPVI or Technip Italy; and (vi) TPVI and Technip Italy are not jointly and severally liable under each other's agreements with Hovensa and that Hovensa cannot recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

## PARTIES

7.      Plaintiff Technip Italy is a corporation organized and existing under the laws of Italy, with a principal place of business at Viale Castello della Magliana, No. 68, 00148, Rome, Italy.

8.      Plaintiff TPVI is a corporation organized and existing under the laws of the United States Virgin Islands, with a principal place of business at One Hibiscus Alley, Charlotte Amalie, St. Thomas, VI 00802.  TPVI is a wholly-owned subsidiary of Technip Italy.

9.      Hovensa is a limited liability company organized and existing under the laws of the United States Virgin Islands, with a principal place of business at One Estate Hope, Christiansted, St. Croix, VI 00820.

3

## JURISDICTION AND VENUE

10.     This court has jurisdiction over Hovensa in this action pursuant to C.P.L.R. § 301 because Hovensa does business in New York on regular basis.  In the alternative, this Court has jurisdiction over Hovensa pursuant to C.P.L.R. § 303 because Hovensa is the plaintiff in an action against Defendant Technip Italy and its parent company Technip S.A., which is currently pending in the United States District Court for the Southern District of New York, *Hovensa L.L.C. v. Technip Italy S.p.A., et al.*, No. 08-CV-12211 (S.D.N.Y.) (the "Federal Action").  All of the claims asserted herein could have been asserted as counterclaims in the Federal Action had that action been brought in the New York Supreme Court.

11.     Plaintiffs have properly designated New York County as the venue for this action pursuant to CPLR § 503(a).

## FACTUAL ALLEGATIONS

### The E&P Agreement and Construction Agreement

12.     Hovensa owns and operates an oil refinery in St. Croix, U.S Virgin Islands.

13.     Hovensa began soliciting bids in June 2004 for the engineering, procurement and construction of a low-sulfur gasoline hydrotreater unit at its oil refinery.

14.     Hovensa divided the engineering, procurement and construction work needed to realize the LSG Project into two separate agreements in order to exploit local tax benefits: a contract for engineering and procurement services, the E&P Agreement, to be performed outside the U.S. Virgin Islands and a contract for construction services, the Construction Agreement, to be performed in St. Croix.

4

15.     Hovensa entered into the E&P Agreement with Technip Italy and the Construction Agreement with TPVI on March 10, 2005.

16.     The E&P and Construction Agreements are separate contracts.  TPVI and Technip Italy are not jointly and severally liable under the Agreements.  Among other things, TPVI is not liable for Technip Italy's obligations and breaches under the E&P Agreement, including but not limited to the obligation to pay liquidated damages thereunder.  Technip Italy is not liable for TPVI's obligations and breaches under the Construction Agreement, including but not limited to the obligation to pay liquidated damages thereunder.

17.     Technip Italy and TPVI each posted separate Irrevocable Stand-By Letters of Credit in Hovensa's favor pursuant to the E&P Agreement (the "E&P LOC") and the Construction Agreement (the "Construction LOC").  The E&P Agreement, the Construction Agreement, and the LOCs only permitted Hovensa to draw down the LOCs if Technip Italy or TPVI, as the case might be, had breached or otherwise failed to perform their respective agreements with Hovensa.  Hovensa was not permitted to draw under the E&P LOC for claims under the Construction Agreement.  Hovensa was not permitted to draw under the Construction LOC for claims under the E&P Agreement.

18.     The E&P Agreement originally provided that mechanical completion of the LSG Project would be achieved by November 10, 2006, and that liquidated damages would accrue in a progressively higher amount for each day that mechanical completion was delayed beyond that date, so long as those delays were "caused by" Technip Italy under that Agreement.

19.    Similarly, the Construction Agreement originally provided that mechanical completion of the LSG Project would be achieved by November 10, 2006 and that liquidated damages would accrue in a progressively higher amount for each day that mechanical completion was delayed beyond that date, so long as those delays were "caused by" TPVI under that Agreement.

20.    The Construction Agreement provides that TPVI is only responsible for delays caused by TPVI itself and is not liable for, among other things, delays caused by Hovensa. The E&P Agreement contained an identical provision with respect to Technip Italy. Hence, Technip Italy is not liable for liquidated damages that may be due under the Construction Agreement and TPVI is not liable for liquidated damages that may be due under the E&P Agreement.

**Hovensa's Mechanical Erection Contract With Tiger**

21.    The Construction Agreement contemplated that TPVI would engage subcontractors to perform certain parts of the LSG Project work. Article 23.1 of the Construction Agreement provided that TPVI would "not subcontract or delegate any of its obligations under this [Construction] Agreement without the written consent of HOVENSA."

22.    Article 23.2 of the Construction Agreement permitted Hovensa to contract directly with any of TPVI's proposed subcontractors. Upon information and belief, the purpose of this right was to allow Hovensa to gain certain U.S. Virgin Islands tax advantages.

23.    TPVI solicited quotes from three different companies to perform mechanical erection work on the LSG Project — Turner Industries Group, which

6

designated Tiger Construction Inc. ("Tiger"), its U.S. Virgin Islands subsidiary, to carry out mechanical erection work; SUN Constructors ("Sun"); and JV Companies ("JV").

24.    JV's bid was too high, and thus TPVI was left to choose between Sun and Tiger for the Mechanical erection work subcontract.

25.    In August and September 2005, before TPVI could reach a final agreement with a subcontractor, Hurricanes Katrina and Rita occurred. The storms disrupted the construction industry, causing increases in the price of construction materials and labor, as well as a reduction in their availability. Subsequent to the hurricanes, Tiger advised TPVI that it wished to perform the mechanical work on a cost reimbursable basis rather than a unit price basis. Sun maintained its willingness to perform the mechanical work on a unit price basis. A unit price basis was more compatible than a cost reimbursable price basis with the fixed price Construction Agreement.

26.    TPVI requested that Hovensa approve Sun as a bidder for the mechanical erection contract so that, among other things, there would be competition for the mechanical erection contract between Sun and Tiger with a consequent improvement in the price and other terms being offered by both contractors.

27.    Hovensa refused to approve Sun as a bidder for the mechanical erection contract. Hovensa knew or should have known that its refusal to approve Sun would leave Tiger as the only possible mechanical erection contractor, would result in Tiger offering a far less competitive price and other terms, and would force TPVI to contract with Tiger.

28.    In March 2006, Hovensa and Technip Italy and TPVI entered into an agreement amending the E&P Agreement and the Construction Agreement (the "Settlement Agreement"). Among other things, Hovensa agreed to increase the lump sum amounts payable to Technip Italy and TPVI under the agreements and to extend the time thereunder to complete the LSG Project.

29.    Hovensa insisted that the Settlement Agreement contain a clause providing that the mechanical erection work would be awarded to Tiger.

30.    Subsequently, Hovensa, as permitted under Section 23.2 of the Construction Agreement, elected to enter into a direct mechanical erection contract with Tiger on a cost reimbursable basis.

31.    Tiger did not properly perform its work under its mechanical erection contract with Hovensa. Tiger's performance was plagued by delays and disruptions. There was, among other things, an unusually high degree of turnover among Tiger's workforce. Tiger's work force lacked efficiency and skill and suffered from other problems. Tiger failed to provide adequate numbers of skilled laborers to carry out its obligations, failed to perform work efficiently, and failed to maintain control over its labor costs.

32.    TPVI worked diligently to mitigate the effects of Tiger's delays and failure to control costs. TPVI's efforts included, but were not limited to (1) increasing the manpower Tiger was required to devote to the mechanical erection work; (2) requiring Tiger to institute a night shift; (3) implementing an "action plan," whereby additional subcontractors were brought in to supplement and/or replace Tiger's work on

8

certain portions of the mechanical erection work; and (4) integrating TPVI's staff with that of Tiger in order to improve supervision of Tiger.

33.     Tiger's various failures to properly perform the mechanical erection work caused TPVI to incur an extensive delay in completing its work under the Construction Agreement. Tiger's failures also caused TPVI to incur significant increased costs and other damages under the Construction Agreement.

34.     Hovensa caused TPVI to incur further delays, disruptions and increased costs and other damages by adding to and changing TPVI's work under the Construction Agreement and by unforeseen stoppages and other interruptions to TPVI's work that were attributable to Hovensa, including but not limited to: (1) testing of fillet welds on pipe supports not required by the Construction Agreement; (2) significant rework substituting welded pipe shoes for the clamp on pipe shoes that had been previously approved by Hovensa and procured by TPVI; and (3) additional and inefficient labor caused by frequent unforeseen stoppages and other interruptions to TPVI's work due to gas releases and other safety issues at the Project site attributable to Hovensa. The damages and costs owed by Hovensa to TPVI for the foregoing delays and disruptions include, but are not limited to, approximately $20,000,000 in mitigation and related costs and extended supervision fees and costs.

35.     Hovensa refused to extend TPVI's time to complete its work under the Construction Agreement and refused to compensate TPVI for the increased costs and other damages due to TPVI on account of such delays and disruptions.

36.     Hovensa engaged in a further breach of the Construction Agreement and a breach of and E&P Agreement which caused TPVI and Technip Italy to suffer damages.

9

37.    On May 30, 2007, Hovensa wrongfully drew down $6,074,490.00 on the Construction LOC based on its misrepresentations that TPVI had breached the Construction Agreement. That same day Hovensa drew down $7,080,683.88 on the E&P LOC based on its misrepresentations that Technip Italy had breached the E&P Agreement, even though Hovensa had never previously made a claim for breach of the E&P Agreement. Hovensa has wrongfully retained and refused to reimburse these amounts to TPVI and Technip Italy.

## CAUSES OF ACTION

## COUNT I: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37, above, as if fully set forth herein.

39.    Hovensa was obligated under the implied covenant of good faith and fair dealing to exercise its rights under the Construction Agreement in a manner so as not to deprive TPVI of its benefits under the Agreement.

40.    Among other things, Hovensa was required to exercise its discretion to approve or disapprove proposed TPVI subcontractors and vendors in a reasonable and good faith manner.

41.    Hovensa was further obligated to permit TPVI to enter into a mechanical erection contract that was consistent with the price and other terms of the Construction Agreement and that provided TPVI and Hovensa with adequate protection on cost and other matters.

42.    Hovensa's refusal to approve Sun as a potential mechanical erection contractor, which left Tiger as the sole bidder for such work, and Hovensa's requirement

that such work be awarded to Tiger was a breach of the implied covenant of good faith and fair dealing and of Hovensa's obligation to permit TPVI to enter into a mechanical erection contract that was consistent with the price and other terms of the Construction Agreement and that provided TPVI and Hovensa with adequate protection on cost and other matters. It was done in bad faith and with reckless disregard for TPVI's rights under the Construction Agreement.

43.     Hovensa's breach of the implied covenant of good faith and fair dealing and breach of its obligation to permit TPVI to enter into a mechanical erection contract that was consistent with the price and other terms of the Construction Agreement and that provided TPVI and Hovensa with adequate protection on cost and other matters was a breach of the Construction Agreement that deprived TPVI of its benefits under the Construction Agreement, and caused TPVI to incur damages in an amount to be proven at trial but believed to exceed $20,000,000.

## COUNT II: BREACH OF IMPLIED WARRANTY

44.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 43, above, as if fully set forth herein.

45.     In the alternative to Count I, Hovensa's requirement that the mechanical erection contract be awarded to Tiger instead of to Sun was an implied warranty under the Construction Agreement that Tiger would perform such work properly.

46.     Tiger did not perform such work properly.

47.     Hovensa is obligated to TPVI under this implied warranty to pay TPVI its damages caused by Tiger's failures to perform properly and in accordance with

11

Hovensa's warranty. Hovensa's failure to pay these damages to TPVI constitutes a breach of the implied warranty under the Construction Agreement.

48.     Tiger's failures to perform properly and in accordance with Hovensa's warranty under the Construction Agreement have caused TPVI to incur damages in an amount to be proven at trial but believed to exceed $20,000,000, which damages are owed but have not been paid by Hovensa to TPVI.

### COUNT III: BREACH OF THE CONSTRUCTION AGREEMENT (WRONGFUL DRAW UNDER LETTER OF CREDIT AS TO TPVI)

49.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48, above, as if fully set forth herein.

50.     At all times TPVI fully performed its obligations under the Construction Agreement and was not in breach of the Construction Agreement.

51.     Hovensa was permitted to draw down the Construction Agreement LOC only in the event of a breach of the Construction Agreement by TPVI.

52.     On May 30, 2007, Hovensa drew under the Construction Agreement LOC in the amount of $6,074,490.00. The issuing bank paid Hovensa the requested amount and TPVI reimbursed the issuing bank.

53.     Hovensa's draw down under the Construction LOC was wrongful and a breach of both the LOC and the Construction Agreement.

54.     As a result of Hovensa's breach of the Construction Agreement and the Construction Agreement LOC, TPVI suffered damages in the amount of $6,074,490.00 plus interest.

12

## COUNT IV: BREACH OF THE E&P AGREEMENT
## (WRONGFUL DRAW UNDER LETTER OF CREDIT AS TO TECHNIP ITALY)

55.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 54, above, as if fully set forth herein.

56.    At all times Technip Italy fully performed its obligations under the E&P Agreement and was not in breach of the E&P Agreement.

57.    Hovensa was permitted to draw down the E&P Agreement LOC only in the event of breach of the E&P Agreement by Technip Italy.

58.    On May 30, 2007, Hovensa drew under the E&P Agreement LOC in the amount of $7,080,683.88.   The issuing bank paid Hovensa the requested amount and Technip Italy reimbursed the issuing bank.

59.    Hovensa's draw down under the E&P Agreement LOC was a breach of the E&P Agreement and the E&P Agreement LOC.

60.    As a result of Hovensa's breach of the E&P Agreement and the E&P Agreement LOC, Technip Italy suffered damages in the amount of $7,080,683.88 plus interest.

### COUNT V: DECLARATORY RELIEF

61.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 60, above, as if fully set forth herein.

62.    Hovensa has claimed that TPVI and Technip Italy are responsible for delays in completion of work under the Construction Agreement and the E&P Agreement and owe Hovensa liquidated and other damages under those agreements. Hovensa contends that it was entitled to draw down the Construction Agreement LOC and the E&P LOC to recover such damages. Hovensa also contends that TPVI and Technip Italy

13

are jointly and severally liable under each other's agreements with Hovensa and that Hovensa can recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

63.    TPVI and Technip Italy deny that they caused the delays claimed by Hovensa, that they owe Hovensa liquidated or any other damages, and that Hovensa had the right to draw down the Construction Agreement LOC or the E&P LOC. TPVI and Technip Italy contend that the delays claimed by Hovensa were caused by Hovensa and that TPVI and Technip Italy are entitled to an extension of time to complete work under the Construction Agreement and the E&P Agreement.

64.    TPVI and Technip Italy also deny that they are jointly and severally liable under each other's agreements with Hovensa and that Hovensa can recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

65.    As a result of the foregoing, a substantial controversy exists between the parties warranting the issuance of declaratory relief.

66.    Plaintiffs, accordingly, seek a declaratory judgment that (i) Technip Italy has not breached the E&P Agreement; (ii) TPVI has not breached the Construction Agreement; (iii) the delays in the LSG Project completion were caused by Hovensa and not Technip Italy or TPVI; (iv) TPVI and Technip Italy are entitled to an extension of time to complete their obligations under their agreements with Hovensa; (v) Hovensa is not entitled to any liquidated damages for delay or otherwise against either TPVI or Technip Italy; and (vi) TPVI and Technip Italy are not jointly and severally liable under each other's agreements with Hovensa and that Hovensa cannot recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

14

**PRAYER FOR RELIEF**

Based on the foregoing, Plaintiffs respectfully request judgment on their complaint as follows:

a.      On Counts I and II: Judgment for TPVI of actual damages in a sum to be determined at trial of this action, but believed to exceed $20,000,000, together with prejudgment interest thereon;

b.      On Count III: Judgment for TPVI of actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon, but believed to be in excess of $6,074,490.00;

c.      On Count IV: Judgment for Technip Italy of actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon, but believed to be in excess of $7,080,683.88;

d.      On Count V: Judgment for TPVI and Technip Italy declaring that (i) Technip Italy has not breached the E&P Agreement; (ii) TPVI has not breached the Construction Agreement; (iii) the delays in achieving completion of the LSG Project were caused by Hovensa and not Technip Italy or TPVI; (iv) TPVI and Technip Italy are entitled to an extension of time to complete their obligations under their agreements with Hovensa; (v) Hovensa is not entitled to any liquidated damages for delay or otherwise against either TPVI or Technip Italy; and (vi) TPVI and Technip Italy are not jointly and severally liable under each other's agreements with Hovensa and that Hovensa cannot recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement;

e.      On all Counts: All costs incurred by Plaintiffs in this action;

15

    f.      On all Counts: Post judgment interest;

    g.     On all Counts: Such other and further relief, in law or equity, to

which plaintiffs may be entitled.

Dated:  New York, New York
        April 17, 2008

HUGHES HUBBARD & REED LLP

By:_____

     Christopher Paparella
     John Fellas
     Hagit Elul
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Attorneys for Plaintiffs*

To:    Hovensa L.L.C.
      c/o Gabriel Del Virginia
      Law Offices of Gabriel Del Virginia
      641 Lexington Avenue, 21st Floor
      New York, NY 10022
      (212) 371-5478

      -and-

      One Estate Hope
      Christiansted, St. Croix, VI 00820

16

<u>CERTIFICATE OF SERVICE</u>

I, William J. Sanchez, am over the age of eighteen (18) years, not a party to this action, so caused a true and correct copy of the foregoing Notice of Motion, dated April 18, 2008, Defendant's Memorandum of Law in Support of Their Motion to Dismiss dated April 18, 2008, Declaration of Patrick Picard, dated April 17, 2008, Declaration of Etienne Gory, dated April 17, 2008, the Declaration of Christopher Paparella, dated April 17, 2008, and Defendant's Corporate Disclosure Statement to be served on this 18th day of April, 2008, to the following:

VIA ELECTRONIC FILING & FEDEX:

Gabriel Del Virginia
Law Offices of Gabriel Del Virginia
641 Lexington Avenue, 21st floor
New York, NY 10022

VIA E-MAIL:

George T. Shipley
Jonathan Smith
Shipley Snell Montgomery LLP
4600 First City Tower
1001 Fannin
Houston, TX 77002

ATTORNEYS FOR PLAINTIFF HOVENSA

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2008
       New York, New York

_/s/ William J. Sanchez
William J. Sanchez