HUGHES HUBBARD & REED LLP
Christopher Paparella
John Fellas
Hagit Elul
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
paparella@hugheshubbard.com

*Attorneys for Defendants Technip Italy S.p.A. and Technip S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HOVENSA L.L.C.,<br><br>Plaintiff,<br><br>-vs-<br><br>TECHNIP ITALY S.P.A and<br>TECHNIP S.A.,<br><br>Defendants. | Case No.: 08 CIV. 1221 (NRB)<br><br>**DECLARATION OF<br>CHRISTOPHER PAPARELLA** |

Christopher Paparella declares under penalty of perjury as follows:

1.      I am a partner in Hughes Hubbard & Reed LLP, attorneys for Defendants Technip Italy S.p.A ("Technip Italy") and Technip S.A in this action.  I am a member of the Bar of this Court.

2.      I submit this Declaration in support of Defendants' Motion to Dismiss the First Amended Complaint for Failure to Join an Indispensable Party, Failure to State a Claim and Lack of Personal Jurisdiction.  The purpose of this Declaration is to put before the Court copies of documents that are cited in the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss.

3.      Annexed hereto as Exhibit 1 is a true and correct copy of the First Amended Complaint filed by Hovensa L.L.C. ("Hovensa") in this action.

4.      Annexed hereto as Exhibit 2 is a true and correct copy of the original Complaint filed by Hovensa in this action.

5.      Annexed hereto as Exhibit 3 is a true and correct copy of the Complaint filed by TPVI Ltd. and Technip Italy against Hovensa in New York State Supreme Court on April 17, 2008, styled *TPVI Ltd. and Technip Italy S.p.A. v. Hovensa L.L.C.*, Index No. 601158/2008 (the "New York State Action").

6.      Annexed hereto as Exhibit 4 are true and correct copies of affidavits of service on Hovensa of the Summons and Complaint in the New York state court action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 4, 2008

_____
Christopher Paparella

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HOVENSA L.L.C., | § § § | |
| VS. | § § | JUDGE BUCHWALD |
| TECHNIP ITALY S.P.A. and TECHNIP S.A. | § § § § | CIVIL ACTION NO. 08-CV-12211 |

### FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, Plaintiff

HOVENSA L.L.C. ("HOVENSA") files this first amended complaint against Defendants

Technip Italy S.p.A. and Technip S.A. (collectively "Defendants") before being served with a

responsive pleading from Defendants. HOVENSA would show the Court as follows:

### I. PARTIES

1.      HOVENSA L.L.C. ("HOVENSA") is, and at all times mentioned in this

complaint was, a United States Virgin Islands ("U.S.V.I.") limited liability company with its

principal place of business in Christiansted, St. Croix, U.S.V.I.  HOVENSA consists of two

members: Hess Oil Virgin Islands Corp. ("HOVIC") and PDVSA, V.I., Inc. ("PDVSA").

HOVIC is a U.S.V.I. corporation with its principal place of business in Christiansted, St. Croix,

U.S.V.I.    PDVSA is also a U.S.V.I. corporation with its principal place of business in

Christiansted, St. Croix, U.S.V.I.

2.      Technip Italy S.p.A. (hereafter either "Technip Italy" or "Technip") is an

Italian corporation (*Società per Azioni*) with its principal place of business at V.le Castello della

Magliana, 68, 00148, Rome, Italy.  Technip Italy has appeared in this action and filed motions to dismiss.  Technip Italy is a subsidiary of Defendant Technip S.A.

   3.  Defendant Technip S.A. ("Technip S.A.") is a French corporation having its principal place of business at La Défense 12, 92973 Paris, La Défense Cedex, France. Technip S.A. has appeared in this action subject to its motions to dismiss.

**II.  JURISDICTION AND VENUE**

   4.  Pursuant to 28 U.S.C. § 1332(a)(2), the Court has diversity jurisdiction over this action because the dispute is between a citizen of a State and citizens or subjects of foreign states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

   5.  This action involves various contractual disputes among the parties, and the parties have consented to the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York.   Thus, the Court has personal jurisdiction over all parties with respect to the claims asserted in this action and venue is appropriate in this District.

**III.  BACKGROUND**

**A. THE PARTIES AND THE PROJECT**

   6.  HOVENSA owns and operates an oil refinery in St Croix, U.S.V.I.  The facility is one of the most modern refineries in the United States and, with crude oil processing capacity of 495,000 barrels per day (BPD), it is one of the largest in the world.

   7.  Around June 2004, HOVENSA began inviting contractors to bid on a lump-sum basis for the engineering, procurement, and construction of a Low Sulfur Gasoline Hydrotreater ("LSG") at the refinery.   HOVENSA's invitations to bid contemplated one contractor to perform all aspects of the LSG project.  However, the invitation packages contained two separate draft agreements—one for engineering and procurement ("E&P") and one for

2

construction—in order to clearly distinguish, for local tax purposes, between the engineering and procurement work performed outside of the U.S.V.I. and the construction work performed within the U.S.V.I.

8.      One of the contractors responding to the invitation to bid was Technip Italy which, according to its website, "is a construction-oriented international engineering company."

9.      Technip Italy is part of the multinational engineering and construction group of companies known as the Technip Group and headed by Technip Italy's parent company, Technip S.A.     Headquartered in Paris, France, Technip S.A. has over 22,000 employees worldwide and touts itself as "among the top five corporations in the field of oil, gas and petrochemical engineering, construction and services."

10.     After Technip provided HOVENSA with several documents regarding its purported expertise and financial stability, the parties executed a confidentiality agreement in July 2004 for the purpose of conducting discussions about the LSG project.  Shortly thereafter, however, Technip notified HOVENSA that it needed to "propose [its] Paris operating center, Technip France, as potential bidder, instead of Technip Italy."  Like Technip Italy, Technip France is a subsidiary of Technip S.A. and a major "operating center" for the Technip Group.

11.     Technip apologized to HOVENSA for switching operating centers during the bidding process but explained "that Technip France w[ould] be more adapted to this project particularly for assuming construction risk."

12.     Consequently, HOVENSA began meeting with representatives of Technip France, as well as representatives of Technip Italy, to discuss the project and, in December 2004, Technip France submitted its proposal.

3

**B.    THE AGREEMENTS**

13.    On or about February 10, 2005, the parties signed Letters of Intent for the LSG project that were addressed to Technip S.A.  Signing on behalf of Technip S.A. (or "Technip Corporation" as stated in the Letters of Intent) were Etienne Gory, CEO of Latin America for Technip Italy, and Nicola Greco, CEO of Technip Italy.

14.    Meanwhile, HOVENSA was notified that Technip France was returning control of the project back to Technip Italy, purportedly because of an increased workload for Technip France.

15.    A project kick-off meeting was scheduled for March 9-11, 2005 in Rome for the formal execution of the contract, segregated into an Engineering and Procurement Agreement ("E&P Agreement") and a Construction Agreement.  Each Agreement contains over 25 Appendices, which are explicitly incorporated into the Agreements.  The Appendices to each Agreement are virtually identical.

16.    During the March 2005 kick-off meeting, Technip Italy confirmed its responsibility for all aspects of the project, including all obligations under the Construction Agreement, stating in one presentation concerning the "Scope of Work Highlights (Construction and Precommissioning)" that "Technip Italy will provide labor, supervision, construction equipment, TCF, consumable and other required tools to perform the work."

17.    During the contract negotiations, HOVENSA had informed Technip that a U.S.V.I. business license was required to perform the work under the Construction Agreement.  Technip Italy, however, decided not to obtain a U.S.V.I. business license.  Instead, Technip Italy elected to create at the last minute an entity registered to conduct business in the U.S.V.I. to sign the Construction Agreement on its behalf.

4

18.    During the March 2005 meetings in Rome, Technip represented to HOVENSA that an entity registered to conduct business in the U.S.V.I.—which was referred to as "T.P.I.V."—would actually "sign" the Construction Agreement.

19.    Upon information and belief, Technip had created this Virgin Islands entity, actually named "TPVI Ltd.," on or about March 2, 2005.

20.    According to public filings by Technip S.A., both Technip Italy and TPVI Ltd. are wholly-owned subsidiaries of Technip S.A.

21.    Accordingly, on or about March 10, 2005, an entity referred to as "TPVI Ltd." signed the Construction Agreement as the corporate agent of Technip Italy. The Construction Agreement was signed by Etienne Gory, the Technip executive who had also signed the parties' February 10, 2005 Letters of Intent and the purported President of TPVI Ltd. At the same time, the E&P Agreement was signed by Nicola Greco, another Technip executive who had signed the parties' Letters of Intent.

22.    Although the Construction Agreement was signed nominally by TPVI so that Technip Italy could legally perform its construction services in the U.S.V.I., the parties understood and agreed that Technip Italy was the party responsible for performing the entire contract.

23.    This understanding and agreement is confirmed by Technip Italy's own representations to HOVENSA and the circumstances surrounding the negotiations and execution of the Agreements, as well as the Appendices to both of the Agreements. For example, Appendix A to the E&P Agreement, which is identical to Appendix A to the Construction Agreement, defined Technip Italy's Scope of Work as follows: "CONTRACTOR will design and supply a 50,000-barrel per stream (BPSD) LSG Unit. CONTRACTOR will be responsible

5

for the engineering, design, procurement of materials and equipment, transportation, fabrication, construction, pre-commissioning, start-up and initial operations support." Moreover, the personnel for the entire project, including the construction management team, consisted of Technip Italy employees, including the Project Director for both Technip Italy and TPVI, Vincenzo Lagana.

24.     Similarly, Appendices G and H to the Agreements contain Technip's representations and answers to questions concerning various technical and commercial questions affecting the entire project. In addition, Appendix AD to each Agreement contains the resumes of key personnel and organizational charts, both of which reflect Technip's employees as performing all aspects of the project.

25.     The total lump-sum price for the contract with Technip Italy was $127 million, allocating $77 million for the E&P Agreement and $50 million for the Construction Agreement.

26.     Technip Italy's obligations, including its construction obligations and its scheduled completion of the project in November 2006, were confirmed in a March 31, 2005 press release from Technip S.A.:

> Technip has been awarded, by Hovensa, a lump sum turnkey contract for a new hydrotreating unit to be located at its refinery in St. Croix, US Virgin Islands. . . .
>
> Technip's engineering center in Rome (Italy) will carry out the contract, which covers the front-end and detail engineering, procurement and supply of equipment and materials, construction, pre-commissioning, commissioning and assistance to start-up. The project is slated to be completed in November 2006.
>
> For Technip, this new award is a step towards further strengthening its presence in the Caribbean . . .

6

## C.   TECHNIP'S MISMANAGEMENT OF THE PROJECT

27.     As set forth in the Overall Project Schedule created by Technip, and attached to each of the Agreements as Appendix E, Mechanical Completion of the LSG project was to be achieved no later than November 10, 2006.

28.     Moreover, for each day that Mechanical Completion was delayed beyond November 10, 2006, the parties agreed that HOVENSA would be paid a set amount of liquidated damages ("Schedule Liquidated Damages"). The chart setting forth the length of delays and corresponding amount of damages is contained in Appendix K to each Agreement. Further, pursuant to the Agreements, Technip Italy posted letters of credit to insure payment of Schedule Liquidated Damages under both the E&P and Construction Agreements, among other potential financial obligations.

29.     Problems with Technip's performance began early in the project with its engineering and procurement deliverables and extended to its construction management.

30.     For example, around February 2005—before the parties' formal execution of the Agreements—Technip decided to use a subsidiary of Turner Industries Group, L.L.C., Tiger Construction St. Croix, L.L.C. ("Tiger"), to be the mechanical subcontractor in the construction phase.

31.     Technip, however, chose not to secure a contract with Tiger until later in the year. Technip made this choice despite committing itself in March 2005 to a fixed, lump-sum price, and despite representing to HOVENSA during the summer of 2004 pre-bidding stage that "it will be necessary to finalize, from bidding stage, a subcontracting strategy which includes necessary pre-agreements with potential sub-contractors where construction risks are properly allocated."

7

32. In September 2005, prior to Technip securing a contract with Tiger for the mechanical work, Hurricanes Katrina and Rita hit the Gulf Coast of the United States. As an apparent result of lucrative opportunities along the Gulf Coast arising from the damage caused by these hurricanes, Tiger purportedly no longer would agree to perform the mechanical work on the LSG project on a "unit price" (or lump-sum) basis; instead, Tiger would contract only on a cost-plus reimbursable basis.

33. Because this turn of events threatened Technip's profitability from the project, Technip claimed *force majeure* events had altered the scope of work and demanded that HOVENSA make changes to the Agreements.

34. Technip and HOVENSA negotiated and executed a Settlement Agreement on March 31, 2006 in which Technip *again* committed to achieving Mechanical Completion by November 10, 2006.

35. As part of the Settlement Agreement, however, HOVENSA effectively granted Technip's request for schedule relief, deferring the commencement date for the accrual of liquidated damages by 28 days (from 7 days after the scheduled November 10, 2006 date to 35 days after). Moreover, HOVENSA paid an additional $3 million on the Construction Agreement and committed to additional incentive payments for an early Mechanical Completion.

36. In return, Technip agreed to release any and all claims for additional payment or schedule extensions as follows: "Technip releases HOVENSA from all claims and liabilities for Claims and potential claims under the Agreements, or otherwise, including all change orders (past, present, pending or contemplated), whether submitted, for events, including force majeure events, that have occurred, issues that have arisen or for Work that has been

8

performed as of the date of this Settlement Agreement, including any 'impacts' or 'ripple' effects."

37.     Technip, however, proved unable to manage the costs of construction. In fact, shortly after execution of the Settlement Agreement, Technip requested contractual change orders that allowed it to shift $7 million from the price of the E&P Agreement to the Construction Agreement (thereby resulting in a Construction Agreement price of $60 million and an E&P Agreement price of $70 million). HOVENSA complied with Technip's request.

38.     Similarly, Technip proved unable to manage and execute the project schedule. As of October 2007—over ten months after the November 2006 date promised by Technip in the E&P and Construction Agreements—Mechanical Completion of the project had yet to be achieved.

39.     The delays in the project resulted from various breaches of Technip's contractual obligations, including but not limited to, failure to provide accurate and detailed project schedules, failure to adequately staff the project, failure to efficiently coordinate the work of subcontractors, and failure to supervise and insure the performance of conforming work.

40.     Moreover, as a result of Technip's performance, HOVENSA was forced to pay substantially more than the agreed-upon lump-sum price, in contravention of both the plain terms and clear purpose of the Agreements.

41.     In addition to Technip's mismanagement of construction activities, Technip's errors in fabrication and failures to adhere to the contractual engineering and construction standards further exacerbated schedule delays and project costs.

42.     For example, the Agreements explicitly require that "[a]ll aboveground piping will be on shoes to minimize pipe contact with supports and allow painting of lines

without lifting or shifting." Due to the tropical climate of St. Croix, HOVENSA's engineering standards require that shoes be welded onto the piping to preserve the integrity of the piping.

43.    Through either indifference or inattention, Technip had the piping manufactured without welding the shoes, thereby necessitating a substantial amount of man-hours to be devoted to welding at the project site after the piping had been installed.

44.    In addition, for its convenience, Technip simply decided to substitute unacceptable clamp-on shoes for the contractually required welded shoes on some of the piping systems.    After a site inspection by HOVENSA revealed Technip's nonconforming work in the fall of 2006, HOVENSA demanded that Technip replace the clamps with welded shoes in compliance with the Agreements.

45.    In response, and in direct contradiction to HOVENSA's explicit engineering standards, Technip claimed that the use of welded shoes in lieu of clamp-ons constituted a change in the scope of work which, in Technip's unsubstantiated and far-fetched opinion, would cost $20 million and result in over three months delay in the project.

46.    In addition, as a result of apparent design and/or manufacturing defects in the compressors procured by Technip, HOVENSA continues to be unable to effectively start-up and maintain operation of the LSG unit.  HOVENSA has repeatedly provided Technip with written notice of these defects but Technip has been either unwilling or unable to correct them.

**TECHNIP S.A.'S GUARANTY OF CONTRACTUAL OBLIGATIONS**

47.    From the beginning of the negotiations in 2004, HOVENSA requested, and Technip agreed to provide, a parent company guaranty of its contractual obligations.

48.    On January 21, 2005, Etienne Gory, who signed the Letters of Intent and the Construction Agreement, submitted Technip's proposed draft of various aspects of the

transaction, including the "Parent Guaranty Agreement" to be attached to the Agreements as Appendix Q.

49.    With the exception of the forum selection clause, the material terms of the draft of the Parent Guaranty Agreement proposed by Technip on January 21, 2005 are identical to the one ultimately attached as Appendix Q to, and incorporated into, the executed Agreements. As with the final Parent Guaranty Agreement attached to the executed Agreements, Technip's proposal contained no blanks for any individual signatures.

50.    In an e-mail dated January 24, 2005, HOVENSA responded by agreeing to the proposed guaranty with a couple of modifications, the only material one being the adoption of the exclusive forum selection clause from the Agreements, which provided for litigation exclusively in the United States District Court for the Southern District of New York, instead of the arbitration agreement proposed by Technip.

51.    On that same date, Stéphane Mespoulhes, another representative of Technip S.A. and/or Technip Italy negotiating the contracts, responded by e-mail to HOVENSA and agreed to HOVENSA's modifications.

52.    Accordingly, as part of the formal execution of the E&P and Construction Agreements, the Parent Guaranty Agreement—upon which the parties had reached agreement in January—was attached as Appendix Q to, and explicitly incorporated into, each Agreement.

53.    Among other terms, the Parent Guaranty Agreement provides as follows:

> Guarantor unconditionally and irrevocably guarantees to Owner that if Contractor fails to perform or observe the terms of the [E&P or Construction] Agreement, Guarantor will immediately upon first demand in writing by Owner notifying Guarantor of Contractor's breach under the Agreement, perform or take such steps as are necessary to achieve performance or observance of these terms and will indemnify Owner against all losses, damages, claims and costs arising from the failure to the extent of Contractor's liability under the Agreement.

. . .

> Guarantor will make any payment due hereunder on first written demand without set-off or counterclaim and without any legal formality such as protest or notice being necessary, and waives all privileges or rights which it may have as a guarantor, including any right to require Owner to claim payment or to exhaust remedies against Contractor or any other person, but always to the extent Contractor has not cured its breach under the Agreement.

54.     To date, Technip S.A. has refused to honor its obligations under the Parent Guaranty Agreement and, indeed, has filed a motion to dismiss contending that no enforceable agreement exists.

## IV. CAUSES OF ACTION

### A. COUNT ONE: BREACH OF CONTRACT—OVERPAYMENTS

55.     Each of the allegations set forth in paragraphs 1 through 54 above are expressly incorporated herein by reference.

56.     Technip Italy is party to both the Construction Agreement, through its agent, TPVI, and the E&P Agreement.

57.     The Construction Agreement, like the E&P Agreement, is a lump-sum contract. In other words, Technip Italy may not receive, nor may HOVENSA be required to pay, any amounts under the Construction Agreement beyond the Construction Lump Sum Price, except for authorized amounts for additional work reflected in change orders.

58.     The Construction Lump Sum Price was originally $50 million but, as a result of the additional $3 million that HOVENSA agreed to pay as part of the Settlement Agreement, and Technip Italy's aforementioned "shifting" of $7 million from the E&P Agreement to the Construction Agreement, the current Construction Lump Sum Price is approximately $60 million.

59.    To date, however, HOVENSA has been required to pay a total of over $91 million under the Construction Agreement—an amount exceeding the Construction Lump Sum Price by over $31 million.

60.    Under Article 23 and Appendix D, Exhibit 1 of the Construction Agreement, HOVENSA is entitled to reimbursement for amounts paid in excess of the Construction Lump Sum Price.  Moreover, Technip explicitly agreed as part of both Agreements that it would supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct the LSG unit.

61.    Technip Italy has breached these agreements, however, by refusing to reimburse HOVENSA for the overpayments to Tiger and other contractors selected by Technip Italy to perform the construction work.

62.    In addition, the construction overpayments themselves resulted from various breaches of the E&P and Construction Agreements by Technip Italy, including engineering and fabrication errors that required additional man-hours to correct and the failure to properly schedule and manage the construction activities of Tiger and other contractors.

63.    As a result of the foregoing breaches, HOVENSA has been damaged in an amount exceeding $31 million.

64.    HOVENSA has demanded payment from Defendants, but Defendants have refused to pay.

65.    All conditions precedent to HOVENSA's enforcement of the Agreements and the Parent Guaranty Agreement have either been satisfied or waived.

13

**B.    COUNT TWO: BREACH OF CONTRACT—DEFECTIVE COMPRESSORS**

66.    Each of the allegations set forth in paragraphs 1 through 65 above are expressly incorporated herein by reference.

67.    In Section 3.5 of the E&P Agreement, Technip Italy warranted, among other things, its design of the LSG unit and the performance of equipment systems purchased from its vendors.  In the event of any design deficiency or other defect in the performance of the LSG unit and associated equipment, Technip Italy agreed to "furnish, free of charge, new designs, other engineering services and other project management services required to remedy or correct" the defect.

68.    During attempts to start-up the LSG unit, HOVENSA has experienced problems with starting up and operating both the recycle and the reciprocating compressors—critical components of the LSG unit.  Although a tentative resolution of the recycle compressors has enabled HOVENSA to continue with its efforts at start-up, the reciprocating compressors continue to fail and, to date, have prevented the effective start-up of the LSG unit.

69.    Despite being provided with notice of these continuing problems and apparent defects, Technip Italy has been unwilling or unable to provide any solutions for the apparent defects to enable the effective start-up and operation of the LSG unit.

70.    These defects, and Technip Italy's repeated failure to cure, constitute breaches of Technip Italy's obligations under the E&P Agreement.  Technip S.A. is liable as well under the Parent Guaranty Agreement.

71.    The amount of damages sustained by HOVENSA as a result of Technip's breaches continue to accrue and has not been determined as of the date of the filing of this First Amended Complaint.

14

C.   COUNT THREE: BREACH OF CONTRACT—FAILURE TO PROVIDE PARENT GUARANTY

72.    Each of the allegations set forth in paragraphs 1 through 71 above are expressly incorporated herein by reference.

73.    Technip Italy and Technip S.A. have taken the position in this lawsuit that no enforceable parent company guaranty ever existed.  Also, Technip Italy denies that it is a party to the Construction Agreement.

74.    Although HOVENSA disputes these positions, in the event that the Parent Guaranty Agreement is held to be unenforceable, and in the alternative to HOVENSA's claim under Count One of this First Amended Complaint, Technip Italy has further breached its contractual obligations, as reflected in the Agreements and other written representations and promises, by failing to provide an enforceable guaranty from Technip S.A.

75.    Moreover, as set forth in Appendix Q to the Agreements, Technip Italy knew that its agreement to provide a parent company guaranty was a condition to HOVENSA entering the Agreements, which were worth over $127 million to Technip Italy and Technip S.A.

76.    In the event it is held that Technip Italy did not secure an enforceable guaranty from its parent company, Technip Italy has breached its contractual obligations and must be held liable for all damages incurred by HOVENSA under both the E&P and Construction Agreements.

### V. JURY DEMAND

77.    HOVENSA demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VI. PRAYER FOR RELIEF

Based on the foregoing, HOVENSA respectfully prays that Technip Italy and Technip S.A. be cited to answer and that, on final trial, HOVENSA have judgment as follows:

a.     Actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon;

b.     All taxable costs incurred by HOVENSA in this action;

c.     Post-judgment interest; and

d.     All additional or alternative relief, in law or in equity, to which HOVENSA may be entitled.

16

Dated:    New York, New York          Respectfully submitted,
          May 5, 2008

                                       By:   *Gabriel Del Virginia / by permission*
                                             Gabriel Del Virginia
                                             LAW OFFICES OF GABRIEL DEL VIRGINIA
                                             641 Lexington Avenue, 21st Floor
                                             New York, NY 10022
                                             Telephone: (212) 371-5478
                                             Facsimile (212) 371-0460

                                       ATTORNEYS FOR PLAINTIFF
                                       HOVENSA L.L.C.

OF COUNSEL:

George T. Shipley
Texas Bar No. 18267100
Federal I.D. No. 2118
Jonathan B. Smith
Texas Bar No. 24013528
SHIPLEY SNELL MONTGOMERY LLP
4600 First City Tower
1001 Fannin
Houston, TX 77002
Telephone:  (713) 652-5920
Facsimile:  (713) 652-3057


To:    Christopher Paparella
       John Fellas
       Hagit Elul
       HUGHES HUBBARD & REED LLP
       One Battery Park Plaza
       New York, NY 10004-1482
       (212) 837-6000

       *Attorneys for Defendants*
       *Technip Italy S.p.A. and Technip S.A.*

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE BUCHWALD**

HOVENSA L.L.C.,

VS.

TECHNIP ITALY S.P.A. and
TECHNIP S.A.

§
§
§
§
§
§
§
§

**08 CV 1221**

CIVIL ACTION NO. _____

### ORIGINAL COMPLAINT

Plaintiff HOVENSA L.L.C. ("HOVENSA") files this original complaint against

Defendants Technip Italy S.p.A. and Technip S.A. (collectively "Defendants") and would show

the Court as follows:

### I. PARTIES

1.      HOVENSA L.L.C. ("HOVENSA") is, and at all times mentioned in this

complaint was, a United States Virgin Islands ("U.S.V.I.") limited liability company with its

principal place of business in Christiansted, St. Croix, U.S.V.I.  HOVENSA consists of two

members: Hess Oil Virgin Islands Corp. ("HOVIC") and PDVSA, V.I., Inc. ("PDVSA").

HOVIC is a U.S.V.I. corporation with its principal place of business in Christiansted, St. Croix,

U.S.V.I.    PDVSA is also a U.S.V.I. corporation with its principal place of business in

Christiansted, St. Croix, U.S.V.I.

2.      Technip Italy S.p.A. (hereafter either "Technip Italy" or "Technip") is an

Italian corporation (*Società per Azioni*) with its principal place of business at V.le Castello della

Magliana, 68, 00148, Rome, Italy.  Technip Italy is being served with process pursuant to the

Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters. Technip Italy is a subsidiary of Defendant Technip S.A.

3.      Defendant Technip S.A. ("Technip S.A.") is a French corporation having its principal place of business at La Défense 12, 92973 Paris, La Défense Cedex, France. Technip S.A. is being served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters.

## II. JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332(a)(2), the Court has diversity jurisdiction over this action because the dispute is between a citizen of a State and citizens or subjects of foreign states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This action involves various contractual disputes among the parties, and the parties have consented to the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York. Thus, the Court has personal jurisdiction over all parties with respect to the claims asserted in this action and venue is appropriate in this District.

## III. BACKGROUND

### A.    THE PARTIES AND THE PROJECT

6.      HOVENSA owns and operates an oil refinery in St Croix, U.S.V.I. The facility is one of the most modern refineries in the United States and, with crude oil processing capacity of 495,000 barrels per day (BPD), it is one of the largest in the world.

7.      Around June 2004, HOVENSA began inviting contractors to bid on a lump-sum basis for the engineering, procurement, and construction of a Low Sulfur Gasoline Hydrotreater ("LSG") at the refinery. HOVENSA's invitations to bid contemplated one contractor to perform all aspects of the LSG project. However, the invitation packages contained

2

two separate draft agreements—one for engineering and procurement ("E&P") and one for construction—in order to clearly distinguish, for local tax purposes, between the engineering and procurement work performed outside of the U.S.V.I. and the construction work performed within the U.S.V.I.

       8.     One of the contractors responding to the invitation to bid was Technip Italy which, according to its website, "is a construction-oriented international engineering company."

       9.     Technip Italy is part of the multinational engineering and construction group of companies known as the Technip Group and headed by Technip Italy's parent company, Technip S.A.  Headquartered in Paris, France, Technip S.A. has over 22,000 employees worldwide and touts itself as "among the top five corporations in the field of oil, gas and petrochemical engineering, construction and services."

      10.    After Technip provided HOVENSA with several documents regarding its purported expertise and financial stability, the parties executed a confidentiality agreement in July 2004 for the purpose of conducting discussions about the LSG project.  Shortly thereafter, however, Technip notified HOVENSA that it needed to "propose [its] Paris operating center, Technip France, as potential bidder, instead of Technip Italy."  Like Technip Italy, Technip France is a subsidiary of Technip S.A. and a major operating center for the Technip Group.

      11.    Technip apologized to HOVENSA for switching operating centers during the bidding process but explained "that Technip France w[ould] be more adapted to this project particularly for assuming construction risk."

12.     Consequently, HOVENSA began meeting with representatives of Technip France, as well as representatives of Technip Italy, to discuss the project and, in December 2004, Technip France submitted its proposal.

**B.    THE AGREEMENTS**

13.     On or about February 10, 2005, the parties signed Letters of Intent for the LSG project that were addressed to Technip S.A.

14.     Meanwhile, HOVENSA was notified that Technip France was returning control of the project back to Technip Italy, purportedly because of an increased workload for Technip France.

15.     A project kick-off meeting was scheduled for March 9-11, 2005 in Rome for the formal execution of both the Engineering and Procurement Agreement ("E&P Agreement") and the Construction Agreement. Each Agreement contains over 25 Appendices, which are explicitly incorporated into the Agreements. The Appendices to each Agreement are virtually identical.

16.     During the kick-off meeting in Rome, Technip informed HOVENSA that a Technip entity registered to conduct business in the U.S.V.I. would "sign" the Construction Agreement.

17.     Upon information and belief, in order to facilitate Technip's execution of the project, Technip created a Virgin Islands entity, referred to as "TPVI," on or about March 2, 2005.

18.     During the March 2005 kick-off meeting, Technip confirmed that it would provide all labor, supervision, and equipment for the construction and pre-commissioning phases of the lump-sum project.

4

19.     The E&P and Construction Agreements were formally executed on or about March 10, 2005. The total lump-sum price for the project was $127 million, allocating $77 million for the E&P Agreement and $50 million for the Construction Agreement.

20.     The E&P Agreement was signed by Nicola Greco, CEO of Technip Italy, who had also signed the parties' February 10, 2005 Letters of Intent. Acting on the behalf of Technip, the Construction Agreement was signed by Etienne Gory, President of the newly formed TPVI. Mr. Gory, who also signed the Letters of Intent, was also the CEO, Latin America, for Technip Italy.

21.     Technip's obligations, including its scheduled completion of the project in November 2006, were confirmed in its March 31, 2005 press release:

> Technip has been awarded, by Hovensa, a lump sum turnkey contract for a new hydrotreating unit to be located at its refinery in St. Croix, US Virgin Islands. . . .
>
> Technip's engineering center in Rome (Italy) will carry out the contract, which covers the front-end and detail engineering, procurement and supply of equipment and materials, construction, pre-commissioning, commissioning and assistance to start-up. The project is slated to be completed in November 2006.
>
> For Technip, this new award is a step towards further strengthening its presence in the Caribbean . . .

## C.     TECHNIP'S MISMANAGEMENT OF THE PROJECT

22.     As set forth in the Overall Project Schedule created by Technip, and attached to each of the Agreements as Appendix E, Mechanical Completion of the LSG project was to be achieved no later than November 10, 2006.

23.     Moreover, for each day that Mechanical Completion was delayed beyond November 10, 2006, the parties agreed that HOVENSA would be paid a set amount of liquidated damages ("Schedule Liquidated Damages"). The chart setting forth the length of delays and

corresponding amount of damages is contained in Appendix K to each Agreement.  Further, pursuant to the Agreements, Technip posted letters of credit to insure payment of Schedule Liquidated Damages, among other potential financial obligations.

24.    Problems with Technip's performance began early in the project with its engineering and procurement deliverables and extended to its construction management.

25.    For example, around February 2005—before the parties' formal execution of the Agreements—Technip decided to use a subsidiary of Turner Industries Group, L.L.C., Tiger Construction St. Croix, L.L.C. ("Tiger"), to be the mechanical subcontractor in the construction phase.

26.    Technip, however, chose not to secure a contract with Tiger until later in the year.  Technip made this choice despite committing itself in March 2005 to a fixed, lump-sum price, and despite representing to HOVENSA during the summer of 2004 pre-bidding stage that "it will be necessary to finalize, from bidding stage, a subcontracting strategy which includes necessary pre-agreements with potential sub-contractors where construction risks are properly allocated."

27.    In September 2005, prior to Technip securing a contract with Tiger for the mechanical work, Hurricanes Katrina and Rita hit the Gulf Coast of the United States.  As an apparent result of lucrative opportunities along the Gulf Coast arising from the damage caused by these hurricanes, Tiger purportedly no longer would agree to perform the mechanical work on the LSG project on a "unit price" (or lump-sum) basis; instead, Tiger would contract only on a cost-plus reimbursable basis.

6

28.    Because this turn of events threatened Technip's profitability from the project, Technip claimed *force majeure* events had altered the scope of work and demanded that HOVENSA make changes to the Agreements.

29.    Technip and HOVENSA negotiated and executed a Settlement Agreement on March 31, 2006 in which Technip *again* committed to achieving Mechanical Completion by November 10, 2006.

30.    As part of the Settlement Agreement, however, HOVENSA effectively granted Technip's request for schedule relief, deferring the commencement date for the accrual of liquidated damages by 28 days (from 7 days after the scheduled November 10, 2006 date to 35 days after). Moreover, HOVENSA paid an additional $3 million on the Construction Agreement and committed to additional incentive payments for an early Mechanical Completion.

31.    In return, Technip agreed to release any and all claims for additional payment or schedule extensions as follows: "Technip releases HOVENSA from all claims and liabilities for Claims and potential claims under the Agreements, or otherwise, including all change orders (past, present, pending or contemplated), whether submitted, for events, including force majeure events, that have occurred, issues that have arisen or for Work that has been performed as of the date of this Settlement Agreement, including any 'impacts' or 'ripple' effects."

32.    Technip, however, proved unable to manage the costs of construction. In fact, shortly after execution of the Settlement Agreement, Technip requested contractual change orders that allowed it to shift $7 million from the price of the E&P Agreement to the Construction Agreement (thereby resulting in a Construction Agreement price of $60 million and an E&P Agreement price of $70 million). HOVENSA complied with Technip's request.

7

33.     Similarly, Technip proved unable to manage and execute the project schedule. As of October 2007—over ten months after the November 2006 date promised by Technip in the E&P and Construction Agreements—Mechanical Completion of the project had yet to be achieved.

34.     The delays in the project resulted from various breaches of Technip's contractual obligations, including but not limited to, failure to provide accurate and detailed project schedules, failure to adequately staff the project, failure to efficiently coordinate the work of subcontractors, and failure to supervise and insure the performance of conforming work.

35.     Moreover, as a result of Technip's performance, HOVENSA was forced to pay substantially more than the agreed-upon lump-sum price, in contravention of both the plain terms and clear purpose of the Agreements.

36.     In addition to Technip's mismanagement of construction activities, Technip's errors in fabrication and failures to adhere to the contractual engineering and construction standards further exacerbated schedule delays and project costs.

37.     For example, the Agreements explicitly require that "[a]ll aboveground piping will be on shoes to minimize pipe contact with supports and allow painting of lines without lifting or shifting." Due to the tropical climate of St. Croix, HOVENSA's engineering standards require that shoes be welded onto the piping to preserve the integrity of the piping.

38.     Through either indifference or inattention, Technip had the piping manufactured without welding the shoes, thereby necessitating a substantial amount of man-hours to be devoted to welding at the project site after the piping had been installed.

39.     In addition, for its convenience, Technip simply decided to substitute unacceptable clamp-on shoes for the contractually required welded shoes on some of the piping

8

systems. After a site inspection by HOVENSA revealed Technip's nonconforming work in the fall of 2006, HOVENSA demanded that Technip replace the clamps with welded shoes in compliance with the Agreements.

40.    In response, and in direct contradiction to HOVENSA's explicit engineering standards, Technip claimed that the use of welded shoes in lieu of clamp-ons constituted a change in the scope of work which, in Technip's unsubstantiated and far-fetched opinion, would cost $20 million and result in over three months delay in the project.

**TECHNIP S.A.'S GUARANTY OF CONTRACTUAL OBLIGATIONS**

41.    As discussed above, by the end of January 2005, the parties had agreed on most of the terms for the Agreements, including the terms of the "Parent Guaranty Agreement" ("Parent Guaranty") from Technip S.A.

42.    As part of the formal execution of the E&P and Construction Agreements, the Parent Guaranty was attached as Appendix Q to, and explicitly incorporated by reference into, each Agreement.

43.    Among other terms, the Parent Guaranty provides as follows:

> Guarantor unconditionally and irrevocably guarantees to Owner that if Contractor fails to perform or observe the terms of the [E&P or Construction] Agreement, Guarantor will immediately upon first demand in writing by Owner notifying Guarantor of Contractor's breach under the Agreement, perform or take such steps as are necessary to achieve performance or observance of these terms and will indemnify Owner against all losses, damages, claims and costs arising from the failure to the extent of Contractor's liability under the Agreement.
>
> . . .
>
> Guarantor will make any payment due hereunder on first written demand without set-off or counterclaim and without any legal formality such as protest or notice being necessary, and waives all privileges or rights which it may have as a guarantor, including any right to require Owner to claim payment or to exhaust remedies against Contractor or any other person,

9

but always to the extent Contractor has not cured its breach under the Agreement.

44.     The Parent Guaranty also expressly adopts the dispute resolution provision, including the exclusive forum selection clause, of the E&P and Construction Agreements.

45.     To date, Technip S.A. has refused to honor its obligations under the Parent Guaranty.

## IV.  CAUSES OF ACTION

### A.     COUNT ONE: BREACH OF CONTRACT—OVERPAYMENTS

46.     Each of the allegations set forth in paragraphs 1 through 45 above are expressly incorporated herein by reference.

47.     The Construction Agreement, like the E&P Agreement, is a lump-sum contract.  In other words, Technip may not receive, nor may HOVENSA be required to pay, any amounts under the Construction Agreement beyond the Construction Lump Sum Price, except for authorized amounts for additional work reflected in change orders.

48.     The Construction Lump Sum Price was originally $50 million but, as a result of the additional $3 million that HOVENSA agreed to pay as part of the Settlement Agreement, and Technip's aforementioned "shifting" of $7 million from the E&P Agreement to the Construction Agreement, the current Construction Lump Sum Price is approximately $60 million.

49.     To date, however, HOVENSA has been required to pay a total of over $91 million under the Construction Agreement, an amount exceeding the Construction Lump Sum Price by over $31 million.

10

50.     Under Article 23 and Appendix D, Exhibit 1 of the Construction Agreement, HOVENSA is entitled to reimbursement for amounts paid in excess of the Construction Lump Sum Price.   Moreover, Technip explicitly agreed that it would supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct the LSG unit.

51.     Technip has breached these agreements, however, by refusing to reimburse HOVENSA for the overpayments to Tiger and other contractors selected by Technip to perform the construction work.

52.     In addition, the construction overpayments themselves resulted from various breaches of the E&P and Construction Agreements by Technip, including engineering and fabrication errors that required additional man-hours to correct and the failure to properly schedule and manage the construction activities of Tiger and other contractors.

53.     As a result of the foregoing breaches, HOVENSA has been damaged in an amount exceeding $31 million.

54.     HOVENSA has demanded payment from Defendants, but Defendants have refused to pay.

55.     All conditions precedent to HOVENSA's enforcement of the Agreements and the Parent Guaranty have either been satisfied or waived.

**B.     COUNT TWO: BREACH OF CONTRACT—DEFECTIVE RECYCLE COMPRESSORS**

56.     Each of the allegations set forth in paragraphs 1 through 55 above are expressly incorporated herein by reference.

57.     In Section 3.5 of the E&P Agreement, Technip warranted, among other things, its design of the LSG unit and the performance of equipment systems purchased from its

11

vendors.  In the event of any design deficiency or other defect in the performance of the LSG unit and associated equipment, Technip agreed to "furnish, free of charge, new designs, other engineering services and other project management services required to remedy or correct" the defect.

58.     During attempts to start-up the LSG unit, HOVENSA experienced problems with starting up and operating the recycle compressors—a critical component of the LSG unit— at the necessary high speed conditions.

59.     HOVENSA provided Technip with written notice of these problems and requested Technip to take corrective action.

60.     In response, Technip adamantly insisted that the recycle compressors were suitable for their intended purposes and refused to take any remedial action.

61.     Technip's refusal to remedy the defects in the recycle compressors constitutes a breach of the E&P Agreement.  The amount of damages sustained by HOVENSA as a result of Technip's breach continue to accrue and has not been determined as of the date of the filing of this Complaint.

C.     **COUNT THREE: PROMISSORY ESTOPPEL—FAILURE TO REIMBURSE OVERPAYMENTS**

62.     Each of the allegations set forth in paragraphs 1 through 61 above are expressly incorporated herein by reference.

63.     In the alternative to HOVENSA's claims under Count One, Defendants are liable for the construction overpayments on promissory estoppel grounds.

64.     Defendants consistently and unambiguously promised to supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct of the LSG unit.

65.     Reasonably relying upon these promises, HOVENSA continued to pay Tiger and other contractors selected and managed by Technip substantial amounts in order to complete construction of the LSG unit.

66.     As a result of Defendants' failure to fulfill these promises, HOVENSA has sustained damages in excess of $31 million.   The injustice and unconscionability of Defendants' conduct can be avoided only by enforcement of Defendants' unambiguous promises.

**D.      COUNT FOUR: UNJUST ENRICHMENT/QUASI-CONTRACT—FAILURE TO REIMBURSE OVERPAYMENTS**

67.     Each of the allegations set forth in paragraphs 1 through 66 above are expressly incorporated herein by reference.

68.     In the alternative to HOVENSA's claims under Count One, Defendants are liable for the construction overpayments on quasi-contractual grounds.

69.     Defendants consistently and unambiguously promised HOVENSA that Technip would supply on a lump-sum basis all of the labor, supervision, and other resources necessary to construct of the LSG unit.   Moreover, control over the work of Tiger and other construction contractors rested with Technip.

70.     In addition, Defendants represented to the public and potential clients that Technip would perform the LSG project—which Technip represented as "strengthening its presence in the Caribbean"—on a lump-sum basis.   As result of Technip's conduct, however, HOVENSA has effectively been forced to pay for the project on a reimbursable cost basis, even though HOVENSA had no control over the execution of the construction work by Tiger and other contractors.   Moreover, Technip's conduct has caused most, if not all, of the overruns in time and cost associated with the construction of the LSG Unit.

13

71.    HOVENSA has paid more than $10 million directly to Technip relating to the construction of the LSG unit, as well as more than $70 million to Technip relating to the engineering and procurement activities.

72.    As a result of Technip's conduct, HOVENSA has paid more than $31 million in excess of the price that Technip represented as the total lump-sum price. Moreover, HOVENSA's payments to Tiger and others prevented work stoppages on the project which, otherwise, would have resulted in adverse publicity for the Technip Group and additional liabilities to Defendants.

73.    Consequently, Defendants have been unjustly enriched as a result of HOVENSA's payments under the Construction Agreement and, in equity and good conscience, the amounts paid by HOVENSA rightfully belong to HOVENSA and should be repaid.

## V. Jury Demand

74.    HOVENSA demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VI. Prayer for Relief

Based on the foregoing, HOVENSA respectfully prays that Technip Italy and Technip S.A. be cited to appear and answer and that, on final trial, HOVENSA have judgment as follows:

a.    Actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon;

b.    All taxable costs incurred by HOVENSA in this action;

c.    Post-judgment interest; and

14

d. All additional or alternative relief, in law or in equity, to which HOVENSA may be entitled.

Respectfully submitted,

By: _____
Gabriel Del Virginia
New York Bar No. ~~~~~ /
LAW OFFICES OF GABRIEL DEL VIRGINIA
641 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 371-5478
Facsimile (212) 371-0460

ATTORNEYS FOR PLAINTIFF
HOVENSA L.L.C.

OF COUNSEL:

George T. Shipley
Texas Bar No. 18267100
Federal I.D. No. 2118
Jonathan B. Smith
Texas Bar No. 24013528
SHIPLEY SNELL MONTGOMERY LLP
4600 First City Tower
1001 Fannin
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057

15

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TPVI LTD. and
TECHNIP ITALY S.P.A.,

                              Plaintiffs,

          -against-

HOVENSA L.L.C.,

                              Defendant.

Date purchased: April 17, 2008

Index No.: 601158/08

**COMPLAINT**

**NEW YORK
COUNTY CLERK'S OFFICE**

**APR 17 2008**

NOT COMPARED
WITH COPY FILE

Plaintiffs TPVI Ltd. ("TPVI") and Technip Italy S.p.A. allege as follows by and through their undersigned attorneys for their complaint against Defendant Hovensa L.L.C. ("Hovensa"):

## NATURE OF THE ACTION

1.     This is an action for breach of contract and declaratory relief arising out of TPVI's contract with Hovensa to perform certain construction services (the "Construction Agreement") and Technip Italy's contract with Hovensa to perform certain engineering and procurement services (the "E&P Agreement"). Both contracts were entered into in connection with the engineering, procurement and construction of a low-sulfur gasoline hydrotreater unit at Hovensa's oil refinery in St. Croix, U.S. Virgin Islands (the "LSG Project").

2.     Hovensa caused TPVI to incur significant delays and additional costs under the Construction Agreement. Among other things, Hovensa refused to approve more than one potential bidder for the mechanical erection contract, thus eliminating competition for this work. Hovensa insisted on contracting for such work on a cost reimbursable basis with a contractor it preferred. Hovensa's preferred contractor proved

incapable of performing properly and timely and caused TPVI to sustain significant delays, disruptions and damages. TPVI suffered further delays, disruptions and damages by Hovensa's additions and changes to its work under the Construction Agreement and by unforeseen stoppages and other interruptions to TPVI's work that were attributable to Hovensa.

3.    Hovensa refused to reimburse TPVI for its additional costs and other damages and refused to grant TPVI an extension of time to account for the delays and additional costs caused by and attributable to Hovensa. Instead, Hovensa claimed liquidated damages from TPVI and Technip Italy for the delays Hovensa had caused and which were attributable to Hovensa. Hovensa also misrepresented to TPVI's and Technip Italy's bank that they had breached their agreements with Hovensa and drew down more than $13,000,000 under letters of credit posted by them in Hovensa's favor under the Construction Agreement and E&P Agreement.

4.    Accordingly, TPVI seeks recovery of: (i) the additional costs and damages it has sustained by reason of the delays and disruptions caused to it by Hovensa's wrongful refusal to permit TPVI to contract for the mechanical erection work with its preferred contractor and Hovensa's wrongful requirement that such work be awarded to its preferred contractor and by the additional and changed work Hovensa required TPVI to perform and the unforeseen stoppages and other interruptions to TPVI's work that were attributable to Hovensa; and (ii) the amounts wrongfully drawn down by Hovensa under the letter of credit TPVI posted under the Construction Agreement.

5.    Technip Italy seeks recovery of the amounts wrongfully drawn down by Hovensa under the letter of credit it posted under the E&P Agreement.

6.    TPVI and Technip Italy seek a declaratory judgment that: (i) Technip Italy has not breached the E&P Agreement; (ii) TPVI has not breached the Construction Agreement; (iii) the delays in the LSG Project completion were caused by Hovensa and not Technip Italy or TPVI; (iv) TPVI and Technip Italy are entitled to an extension of time to complete their obligations under their agreements with Hovensa; (v) Hovensa is not entitled to any liquidated damages for delay or otherwise against either TPVI or Technip Italy; and (vi) TPVI and Technip Italy are not jointly and severally liable under each other's agreements with Hovensa and that Hovensa cannot recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

## PARTIES

7.    Plaintiff Technip Italy is a corporation organized and existing under the laws of Italy, with a principal place of business at Viale Castello della Magliana, No. 68, 00148, Rome, Italy.

8.    Plaintiff TPVI is a corporation organized and existing under the laws of the United States Virgin Islands, with a principal place of business at One Hibiscus Alley, Charlotte Amalie, St. Thomas, VI 00802.  TPVI is a wholly-owned subsidiary of Technip Italy.

9.    Hovensa is a limited liability company organized and existing under the laws of the United States Virgin Islands, with a principal place of business at One Estate Hope, Christiansted, St. Croix, VI 00820.

3

**JURISDICTION AND VENUE**

10.    This court has jurisdiction over Hovensa in this action pursuant to

C.P.L.R. § 301 because Hovensa does business in New York on regular basis. In the

alternative, this Court has jurisdiction over Hovensa pursuant to C.P.L.R. § 303 because

Hovensa is the plaintiff in an action against Defendant Technip Italy and its parent

company Technip S.A., which is currently pending in the United States District Court for

the Southern District of New York, *Hovensa L.L.C. v. Technip Italy S.p.A., et al.*, No. 08-

CV-12211 (S.D.N.Y.) (the "Federal Action"). All of the claims asserted herein could

have been asserted as counterclaims in the Federal Action had that action been brought in

the New York Supreme Court.

11.    Plaintiffs have properly designated New York County as the venue for this

action pursuant to CPLR § 503(a).

**FACTUAL ALLEGATIONS**

**The E&P Agreement and Construction Agreement**

12.    Hovensa owns and operates an oil refinery in St. Croix, U.S Virgin

Islands.

13.    Hovensa began soliciting bids in June 2004 for the engineering,

procurement and construction of a low-sulfur gasoline hydrotreater unit at its oil refinery.

14.    Hovensa divided the engineering, procurement and construction work

needed to realize the LSG Project into two separate agreements in order to exploit local

tax benefits: a contract for engineering and procurement services, the E&P Agreement, to

be performed outside the U.S. Virgin Islands and a contract for construction services, the

Construction Agreement, to be performed in St. Croix.

4

15.    Hovensa entered into the E&P Agreement with Technip Italy and the Construction Agreement with TPVI on March 10, 2005.

16.    The E&P and Construction Agreements are separate contracts. TPVI and Technip Italy are not jointly and severally liable under the Agreements. Among other things, TPVI is not liable for Technip Italy's obligations and breaches under the E&P Agreement, including but not limited to the obligation to pay liquidated damages thereunder. Technip Italy is not liable for TPVI's obligations and breaches under the Construction Agreement, including but not limited to the obligation to pay liquidated damages thereunder.

17.    Technip Italy and TPVI each posted separate Irrevocable Stand-By Letters of Credit in Hovensa's favor pursuant to the E&P Agreement (the "E&P LOC") and the Construction Agreement (the "Construction LOC"). The E&P Agreement, the Construction Agreement, and the LOCs only permitted Hovensa to draw down the LOCs if Technip Italy or TPVI, as the case might be, had breached or otherwise failed to perform their respective agreements with Hovensa. Hovensa was not permitted to draw under the E&P LOC for claims under the Construction Agreement. Hovensa was not permitted to draw under the Construction LOC for claims under the E&P Agreement.

18.    The E&P Agreement originally provided that mechanical completion of the LSG Project would be achieved by November 10, 2006, and that liquidated damages would accrue in a progressively higher amount for each day that mechanical completion was delayed beyond that date, so long as those delays were "caused by" Technip Italy under that Agreement.

19.    Similarly, the Construction Agreement originally provided that mechanical completion of the LSG Project would be achieved by November 10, 2006 and that liquidated damages would accrue in a progressively higher amount for each day that mechanical completion was delayed beyond that date, so long as those delays were "caused by" TPVI under that Agreement.

20.    The Construction Agreement provides that TPVI is only responsible for delays caused by TPVI itself and is not liable for, among other things, delays caused by Hovensa.  The E&P Agreement contained an identical provision with respect to Technip Italy.  Hence, Technip Italy is not liable for liquidated damages that may be due under the Construction Agreement and TPVI is not liable for liquidated damages that may be due under the E&P Agreement.

**Hovensa's Mechanical Erection Contract With Tiger**

21.    The Construction Agreement contemplated that TPVI would engage subcontractors to perform certain parts of the LSG Project work.  Article 23.1 of the Construction Agreement provided that TPVI would "not subcontract or delegate any of its obligations under this [Construction] Agreement without the written consent of HOVENSA."

22.    Article 23.2 of the Construction Agreement permitted Hovensa to contract directly with any of TPVI's proposed subcontractors.  Upon information and belief, the purpose of this right was to allow Hovensa to gain certain U.S. Virgin Islands tax advantages.

23.    TPVI solicited quotes from three different companies to perform mechanical erection work on the LSG Project — Turner Industries Group, which

6

designated Tiger Construction Inc. ("Tiger"), its U.S. Virgin Islands subsidiary, to carry
out mechanical erection work; SUN Constructors ("Sun"); and JV Companies ("JV").

24.    JV's bid was too high, and thus TPVI was left to choose between Sun and
Tiger for the Mechanical erection work subcontract.

25.    In August and September 2005, before TPVI could reach a final
agreement with a subcontractor, Hurricanes Katrina and Rita occurred. The storms
disrupted the construction industry, causing increases in the price of construction
materials and labor, as well as a reduction in their availability. Subsequent to the
hurricanes, Tiger advised TPVI that it wished to perform the mechanical work on a cost
reimbursable basis rather than a unit price basis. Sun maintained its willingness to
perform the mechanical work on a unit price basis. A unit price basis was more
compatible than a cost reimbursable price basis with the fixed price Construction
Agreement.

26.    TPVI requested that Hovensa approve Sun as a bidder for the mechanical
erection contract so that, among other things, there would be competition for the
mechanical erection contract between Sun and Tiger with a consequent improvement in
the price and other terms being offered by both contractors.

27.    Hovensa refused to approve Sun as a bidder for the mechanical erection
contract. Hovensa knew or should have known that its refusal to approve Sun would
leave Tiger as the only possible mechanical erection contractor, would result in Tiger
offering a far less competitive price and other terms, and would force TPVI to contract
with Tiger.

7

28.    In March 2006, Hovensa and Technip Italy and TPVI entered into an agreement amending the E&P Agreement and the Construction Agreement (the "Settlement Agreement"). Among other things, Hovensa agreed to increase the lump sum amounts payable to Technip Italy and TPVI under the agreements and to extend the time thereunder to complete the LSG Project.

29.    Hovensa insisted that the Settlement Agreement contain a clause providing that the mechanical erection work would be awarded to Tiger.

30.    Subsequently, Hovensa, as permitted under Section 23.2 of the Construction Agreement, elected to enter into a direct mechanical erection contract with Tiger on a cost reimbursable basis.

31.    Tiger did not properly perform its work under its mechanical erection contract with Hovensa. Tiger's performance was plagued by delays and disruptions. There was, among other things, an unusually high degree of turnover among Tiger's workforce. Tiger's work force lacked efficiency and skill and suffered from other problems. Tiger failed to provide adequate numbers of skilled laborers to carry out its obligations, failed to perform work efficiently, and failed to maintain control over its labor costs.

32.    TPVI worked diligently to mitigate the effects of Tiger's delays and failure to control costs. TPVI's efforts included, but were not limited to (1) increasing the manpower Tiger was required to devote to the mechanical erection work; (2) requiring Tiger to institute a night shift; (3) implementing an "action plan," whereby additional subcontractors were brought in to supplement and/or replace Tiger's work on

8

certain portions of the mechanical erection work; and (4) integrating TPVI's staff with that of Tiger in order to improve supervision of Tiger.

33.    Tiger's various failures to properly perform the mechanical erection work caused TPVI to incur an extensive delay in completing its work under the Construction Agreement. Tiger's failures also caused TPVI to incur significant increased costs and other damages under the Construction Agreement.

34.    Hovensa caused TPVI to incur further delays, disruptions and increased costs and other damages by adding to and changing TPVI's work under the Construction Agreement and by unforeseen stoppages and other interruptions to TPVI's work that were attributable to Hovensa, including but not limited to: (1) testing of fillet welds on pipe supports not required by the Construction Agreement; (2) significant rework substituting welded pipe shoes for the clamp on pipe shoes that had been previously approved by Hovensa and procured by TPVI; and (3) additional and inefficient labor caused by frequent unforeseen stoppages and other interruptions to TPVI's work due to gas releases and other safety issues at the Project site attributable to Hovensa. The damages and costs owed by Hovensa to TPVI for the foregoing delays and disruptions include, but are not limited to, approximately $20,000,000 in mitigation and related costs and extended supervision fees and costs.

35.    Hovensa refused to extend TPVI's time to complete its work under the Construction Agreement and refused to compensate TPVI for the increased costs and other damages due to TPVI on account of such delays and disruptions.

36.    Hovensa engaged in a further breach of the Construction Agreement and a breach of and E&P Agreement which caused TPVI and Technip Italy to suffer damages.

9

37.     On May 30, 2007, Hovensa wrongfully drew down $6,074,490.00 on the Construction LOC based on its misrepresentations that TPVI had breached the Construction Agreement.  That same day Hovensa drew down $7,080,683.88 on the E&P LOC based on its misrepresentations that Technip Italy had breached the E&P Agreement, even though Hovensa had never previously made a claim for breach of the E&P Agreement.  Hovensa has wrongfully retained and refused to reimburse these amounts to TPVI and Technip Italy.

## CAUSES OF ACTION

## COUNT I: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37, above, as if fully set forth herein.

39.     Hovensa was obligated under the implied covenant of good faith and fair dealing to exercise its rights under the Construction Agreement in a manner so as not to deprive TPVI of its benefits under the Agreement.

40.     Among other things, Hovensa was required to exercise its discretion to approve or disapprove proposed TPVI subcontractors and vendors in a reasonable and good faith manner.

41.     Hovensa was further obligated to permit TPVI to enter into a mechanical erection contract that was consistent with the price and other terms of the Construction Agreement and that provided TPVI and Hovensa with adequate protection on cost and other matters.

42.     Hovensa's refusal to approve Sun as a potential mechanical erection contractor, which left Tiger as the sole bidder for such work, and Hovensa's requirement

10

that such work be awarded to Tiger was a breach of the implied covenant of good faith and fair dealing and of Hovensa's obligation to permit TPVI to enter into a mechanical erection contract that was consistent with the price and other terms of the Construction Agreement and that provided TPVI and Hovensa with adequate protection on cost and other matters. It was done in bad faith and with reckless disregard for TPVI's rights under the Construction Agreement.

43.    Hovensa's breach of the implied covenant of good faith and fair dealing and breach of its obligation to permit TPVI to enter into a mechanical erection contract that was consistent with the price and other terms of the Construction Agreement and that provided TPVI and Hovensa with adequate protection on cost and other matters was a breach of the Construction Agreement that deprived TPVI of its benefits under the Construction Agreement, and caused TPVI to incur damages in an amount to be proven at trial but believed to exceed $20,000,000.

## COUNT II: BREACH OF IMPLIED WARRANTY

44.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 43, above, as if fully set forth herein.

45.    In the alternative to Count I, Hovensa's requirement that the mechanical erection contract be awarded to Tiger instead of to Sun was an implied warranty under the Construction Agreement that Tiger would perform such work properly.

46.    Tiger did not perform such work properly.

47.    Hovensa is obligated to TPVI under this implied warranty to pay TPVI its damages caused by Tiger's failures to perform properly and in accordance with

11

Hovensa's warranty. Hovensa's failure to pay these damages to TPVI constitutes a breach of the implied warranty under the Construction Agreement.

48.    Tiger's failures to perform properly and in accordance with Hovensa's warranty under the Construction Agreement have caused TPVI to incur damages in an amount to be proven at trial but believed to exceed $20,000,000, which damages are owed but have not been paid by Hovensa to TPVI.

### COUNT III: BREACH OF THE CONSTRUCTION AGREEMENT (WRONGFUL DRAW UNDER LETTER OF CREDIT AS TO TPVI)

49.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48, above, as if fully set forth herein.

50.    At all times TPVI fully performed its obligations under the Construction Agreement and was not in breach of the Construction Agreement.

51.    Hovensa was permitted to draw down the Construction Agreement LOC only in the event of a breach of the Construction Agreement by TPVI.

52.    On May 30, 2007, Hovensa drew under the Construction Agreement LOC in the amount of $6,074,490.00.   The issuing bank paid Hovensa the requested amount and TPVI reimbursed the issuing bank.

53.    Hovensa's draw down under the Construction LOC was wrongful and a breach of both the LOC and the Construction Agreement.

54.    As a result of Hovensa's breach of the Construction Agreement and the Construction Agreement LOC, TPVI suffered damages in the amount of $6,074,490.00 plus interest.

## COUNT IV:  BREACH OF THE E&P AGREEMENT
## (WRONGFUL DRAW UNDER LETTER OF CREDIT AS TO TECHNIP ITALY)

55.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 54, above, as if fully set forth herein.

56.    At all times Technip Italy fully performed its obligations under the E&P Agreement and was not in breach of the E&P Agreement.

57.    Hovensa was permitted to draw down the E&P Agreement LOC only in the event of breach of the E&P Agreement by Technip Italy.

58.    On May 30, 2007, Hovensa drew under the E&P Agreement LOC in the amount of $7,080,683.88.  The issuing bank paid Hovensa the requested amount and Technip Italy reimbursed the issuing bank.

59.    Hovensa's draw down under the E&P Agreement LOC was a breach of the E&P Agreement and the E&P Agreement LOC.

60.    As a result of Hovensa's breach of the E&P Agreement and the E&P Agreement LOC, Technip Italy suffered damages in the amount of $7,080,683.88 plus interest.

### COUNT V: DECLARATORY RELIEF

61.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 60, above, as if fully set forth herein.

62.    Hovensa has claimed that TPVI and Technip Italy are responsible for delays in completion of work under the Construction Agreement and the E&P Agreement and owe Hovensa liquidated and other damages under those agreements.  Hovensa contends that it was entitled to draw down the Construction Agreement LOC and the E&P LOC to recover such damages.  Hovensa also contends that TPVI and Technip Italy

13

are jointly and severally liable under each other's agreements with Hovensa and that Hovensa can recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

63.    TPVI and Technip Italy deny that they caused the delays claimed by Hovensa, that they owe Hovensa liquidated or any other damages, and that Hovensa had the right to draw down the Construction Agreement LOC or the E&P LOC. TPVI and Technip Italy contend that the delays claimed by Hovensa were caused by Hovensa and that TPVI and Technip Italy are entitled to an extension of time to complete work under the Construction Agreement and the E&P Agreement.

64.    TPVI and Technip Italy also deny that they are jointly and severally liable under each other's agreements with Hovensa and that Hovensa can recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

65.    As a result of the foregoing, a substantial controversy exists between the parties warranting the issuance of declaratory relief.

66.    Plaintiffs, accordingly, seek a declaratory judgment that (i) Technip Italy has not breached the E&P Agreement; (ii) TPVI has not breached the Construction Agreement; (iii) the delays in the LSG Project completion were caused by Hovensa and not Technip Italy or TPVI; (iv) TPVI and Technip Italy are entitled to an extension of time to complete their obligations under their agreements with Hovensa; (v) Hovensa is not entitled to any liquidated damages for delay or otherwise against either TPVI or Technip Italy; and (vi) TPVI and Technip Italy are not jointly and severally liable under each other's agreements with Hovensa and that Hovensa cannot recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement.

14

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs respectfully request judgment on their complaint as follows:

a.    On Counts I and II: Judgment for TPVI of actual damages in a sum to be determined at trial of this action, but believed to exceed $20,000,000, together with prejudgment interest thereon;

b.    On Count III: Judgment for TPVI of actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon, but believed to be in excess of $6,074,490.00;

c.    On Count IV: Judgment for Technip Italy of actual damages in a sum to be determined at trial of this action, together with prejudgment interest thereon, but believed to be in excess of $7,080,683.88;

d.    On Count V: Judgment for TPVI and Technip Italy declaring that (i) Technip Italy has not breached the E&P Agreement; (ii) TPVI has not breached the Construction Agreement; (iii) the delays in achieving completion of the LSG Project were caused by Hovensa and not Technip Italy or TPVI; (iv) TPVI and Technip Italy are entitled to an extension of time to complete their obligations under their agreements with Hovensa; (v) Hovensa is not entitled to any liquidated damages for delay or otherwise against either TPVI or Technip Italy; and (vi) TPVI and Technip Italy are not jointly and severally liable under each other's agreements with Hovensa and that Hovensa cannot recover liquidated and other damages from Technip Italy for delays by TPVI under the Construction Agreement;

e.    On all Counts: All costs incurred by Plaintiffs in this action;

15

f.    On all Counts: Post judgment interest;

g.    On all Counts: Such other and further relief, in law or equity, to

which plaintiffs may be entitled.

Dated:    New York, New York
          April 17, 2008

                                          HUGHES HUBBARD & REED LLP

                                          By: _____
                                              Christopher Paparella
                                              John Fellas
                                              Hagit Elul
                                          One Battery Park Plaza
                                          New York, New York 10004
                                          (212) 837-6000

                                          *Attorneys for Plaintiffs*

To:    Hovensa L.L.C.
       c/o Gabriel Del Virginia
       Law Offices of Gabriel Del Virginia
       641 Lexington Avenue, 21st Floor
       New York, NY 10022
       (212) 371-5478

       -and-

       One Estate Hope
       Christiansted, St. Croix, VI 00820

16

EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TPVI LIMITED and TECHNIP ITALY S.P.A.,          :

                                    Plaintiffs,    :

                        -against-                 :          Index No.: 601158/2008

                                                  :

HOVENSA, L.L.C.,                                  :          **AFFIDAVIT OF SERVICE**

                                    Defendant.    :                  NEW YORK
                                                  :          COUNTY CLERK'S OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x              MAY 1 2 2008

STATE OF NEW YORK.......)
                                    ss.:                              NOT COMPARED
COUNTY OF NEW YORK....)                                    WITH COPY FILE

        Margaret Murphy, being duly sworn, deposes and says that I am over the age of
eighteen years, not a party to this action, and am in the employ of Hughes Hubbard & Reed LLP.

        That on April 18, 2008, at approximately 2:40 p.m., deponent served **SUMMONS**
and **COMPLAINT** by hand upon:

        Law Offices of Gabriel Del Virginia
        641 Lexington Avenue, 21st Floor
        New York, New York 10022

That on the 29th day of April, 2008, deponent served **SUMMONS** and **COMPLAINT** by First
Class mail, true copies being in a securely enclosed, post-paid wrapper, properly addressed as
indicated below:

        Law Offices of Gabriel Del Virginia
        641 Lexington Avenue, 21st Floor
        New York, New York 10022

And bearing the legend "PERSONAL & CONFIDENTIAL", and not indicating on the outside
thereof, by return address or otherwise, that the communication was from an attorney or
concerned an action against the person to be served, and by placing the mailing in a depository
under the exclusive care and control of the United States government, within the city, county and
state of New York.

                            *Margaret Murphy*
                        MARGARET MURPHY
Sworn to before me this                              License No: 1267699
_?__ day of May, 2008

      _____
Notary Public                                                    DOCKETED
                                                        HUGHES HUBBARD & REED LLP
PATRICIA E. SMITH                      Served/Received
Notary Public, State of New York
No. 1SM4796951                          _30455. CCC2 5/3 ps
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires March 30, 20__/ /

**Supreme Court of the State of New York, County of New York**

-----------------------------------------------------------------

TPVI LIMITED and TECHNIP ITALY S.p.A.,          ) Index No.: 601158/2008
                                                )
                                                )
                                                )
                              **Plaintiff**      ) **AFFIDAVIT OF SERVICE**
                        **v.**                   )
HOVENSA L.L.C.,                                  )
                                                )
                                                )
                              **Defendant**      )
-----------------------------------------------------------------
TERRITORY OF THE VIRGIN ISLANDS
DIVISION OF SAINT CROIX

I, Pierre G. Tepie, being duly sworn depose and say deponent is not a party to this action and is over the age of eighteen years and resides in the U.S VIRGIN ISLANDS.   That on MAY 06, 2008 at 3:00 P.M at 60 QUEENS STREET, F'STED ST. CROIX, V.I., deponent served the within SUMMONS AND COMPLAINT on HOVENSA L.L.C. therein named.

**CORPORATION/BUSINESS:** by delivering thereat a true copy of each to ALEX MOOREHEAD personally, deponent knew said corporation/business so served to be that described in legal papers and knew said individual to be the EXECUTIVE DIRECTOR thereof.

**DESCRIPTION:**  Deponent further states that the description of the person actually served is as follows:
Gender: Male       Race/Skin: Brown       Hair: Black       Glasses: No     Approx.  Age: 51-65     Height: Over 6'
Weight: 131-160

**COMMENTS:** Recipient represented to me that he is authorized to accept service of process on behalf of Hovensa L.L.C.

I declare under penalties of perjury that the information contained herein is correct to the best of my knowledge.

Pierre G. Tepie
Target Research LLC
20 Vesey Street, PH
New York, NY 10007
(212) 227-9600

Subscribed and sworn to before me, a notary public, on this _____ 14 TH _____ day of __ MAY _____ , 2008.

_____  My Commission Expires:
Notary Public

**TIFFANY E. MOORHEAD**
St. Croix, U.S. Virgin Islands
NOTARY PUBLIC NP 024-08
Commission Expires February 19, 2012

DOCKETED ✓
HUGHES HUBBARD & REED LLP
Served/Received _____     Target Research LLC   •   20 Vesey Street, PH, New York, NY 10007   •   (212) 227-9600
30455 : 0002    5/20/08.

## Supreme Court of the State of New York, County of New York

-----------------------------------------------------------------

TPVI LIMITED and TECHNIP ITALY S.p.A.,

) Index No.: 601158/2008
)
)
)
**Plaintiff**    ) **AFFIDAVIT OF SERVICE**
v.    )
HOVENSA L.L.C.,    )
)
)
**Defendant**    )

-----------------------------------------------------------------

TERRITORY OF THE VIRGIN ISLANDS
DIVISION OF ST.THOMAS- ST.JOHN

I, Michael A. Richardson, being duly sworn depose and say deponent is not a party to this action and is over the age of eighteen years and resides in the U.S VIRGIN ISLANDS. That on MAY 07, 2008 at 11:30 AM at 1000 Frederiksberg Gade, St. Thomas, USVI deponent served the within SUMMONS AND COMPLAINT on HOVENSA L.L.C. therein named.

**CORPORATION/BUSINESS:** by delivering thereat a true copy of each to GEORGE H.T. DUDLEY personally, deponent knew said corporation/business so served to be that described in legal papers and knew said individual to be the REGISTERED AGENT thereof.

**DESCRIPTION:** Deponent further states that the description of the person actually served is as follows:
Gender: Male    Race/Skin: AFRICAN AMER- BLK    Hair:    Glasses: YES    Approx. Age: 60    Height: 6'2"    Weight: 160

**COMMENTS:** Recipient represented to me that he is authorized to accept service of process on behalf of Hovensa L.L.C.

I declare under penalties of perjury that the information contained herein is correct to the best of my knowledge.

_Michael A. Richardson_
Michael A. Richardson
Target Research LLC
20 Vesey Street, PH
New York, NY 10007
(212) 227-9600

Subscribed and sworn to before me, a notary public, on this ___14th___ day of ___May___, 2008.
_____    My Commission Expires:
Notary Public

Sheila M. Connor, Notary Public
My Commission Expires:
February 23, 2012
My Notary Public #: NP-025-08

DOCKETED ✓

HUGHES HUBBARD & REED LL

Served/Received _____    Target Research LLC • 20 Vesey Street, PH, New York, NY 10007 • (212) 227-9600

30455:0002  5 po ps.

<u>CERTIFICATE OF SERVICE</u>

   I, Beatriz Biscardi, am over the age of eighteen (18) years, not a party to

this action, caused a true and correct copy of the foregoing Notice of Motion, dated June

4, 2008, Defendant's Memorandum of Law in Support of Their Motion to Dismiss the

First Amended Complaint, dated June 4, 2008, Declaration of Patrick Picard, dated June

4, 2008, Declaration of Etienne Gory, dated June 3, 2008, and Declaration of Christopher

Paparella, dated June 4, 2008, to be served on this 4th day of June, 2008, to the following:

     VIA ELECTRONIC FILING & FEDEX
     Gabriel Del Virginia
     Law Offices of Gabriel Del Virginia
     641 Lexington Avenue, 21st floor
     New York, NY 10022

     VIA E-MAIL
     George T. Shipley
     Jonathan Smith
     Shipley Snell Montgomery LLP
     4600 First City Tower
     1001 Fannin
     Houston, TX 77002

     ATTORNEYS FOR PLAINTIFF HOVENSA

   I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 4, 2008
   New York, New York

         /s/ Beatriz Biscardi
          Beatriz Biscardi