UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HOVENSA L.L.C., | § § § | |
| VS. | § § | JUDGE BUCHWALD |
| TECHNIP ITALY S.P.A. and TECHNIP S.A. | § § § § | CIVIL ACTION NO. 08-CV-12211 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE
TO JOIN A REQUIRED PARTY, FAILURE TO STATE
CLAIM AND LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

    A.    Technip Italy successfully bids on an engineering,
        procurement, and construction contract for the LSG unit. ................... 1

    B.    A few days before formal execution of the contract,
        Technip Italy decides to create a new entity to sign the
        Construction Agreement on its behalf. .......................................... 2

    C.    Technip S.A. agrees to terms of the Parent Guaranty Agreement. .......... 3

    D.    The project is delayed and over budget. ........................................ 4

    E.    Technip Italy tries for the first time, unsuccessfully, to
        avoid liability relating to the Construction Agreement. ....................... 5

    F.    Pursuant to the exclusive forum selection clauses in the
        Agreements and the Parent Guaranty, HOVENSA files this lawsuit. ....... 5

III.  ARGUMENT AND AUTHORITIES ................................................... 6

    A.    Technip's Rule 12(b)(7) motion should be denied because
        the absence of a nominal, likely insolvent, Technip-related
        entity does not preclude resolution of the dispute. ........................... 6

        1.    TPVI, an agent and nominal party to a contract,
            is not a necessary party. ................................................... 7

            a.    Complete relief can be accorded without TPVI. ...................... 7

            b.    TPVI has no interest that might be impeded or put at risk. ........ 10

            c.    There is no threat of inconsistent obligations. ....................... 11

        2.    The "equity and good conscience" standard does not
            compel dismissal of this suit, but rather adherence to the
            exclusive forum selection clause. ........................................ 12

    B.    Technip's Rule 12(b)(6) motion should be denied
        because HOVENSA has pleaded viable claims against
        Technip Italy and Technip S.A. ................................................. 15

1.  HOVENSA has pleaded a viable claim against Technip S.A.
    pursuant to the Parent Guaranty. ........................................... 16

    a.  The Statute of Frauds is satisfied. ...................................... 16

    b.  Technip S.A. is estopped to deny the Parent Guaranty's
        enforceability. ............................................................. 20

2.  HOVENSA's well-founded allegations demonstrate
    Technip Italy's liability for breaches of both the E&P and the
    Construction Agreements. ................................................... 21

3.  HOVENSA has stated a valid claim against Technip Italy
    for failure to provide an enforceable parent guaranty. .................. 23

C.  Technip S.A.'s Rule 12(b)(2) motion to dismiss should be
    denied because, at a minimum, there is prima facie evidence of
    Technip S.A.'s consent to jurisdiction. ........................................ 23

IV.  CONCLUSION ................................................................... 25

D3C329AD97B7F700: 0005

TABLE OF AUTHORITIES

**Cases:**

*A.W. Fiur Co. v. Ataka & Co.*,
    422 N.Y.S.2d 419 (App. Div. 1979) ............................................................ 8

*Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*,
    140 B.R. 56 (S.D.N.Y. 1992) ................................................................11

*AG Ltd. v. Liquid Realty Partners, LLC*,
    448 F. Supp. 2d 583 (S.D.N.Y. 2006) ......................................................16

*Alpi USA, Inc. v. D&F Fashion Int'l Gemelli*,
    2007 WL 942096 (S.D.N.Y. 2007) ........................................................24

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
    170 F.3d 349 (2d Cir. 1999) ............................................................... 8

*Arol Dev. Corp. v. Whitman & Ransom*,
    626 N.Y.S.2d 118 (App. Div. 1995) ........................................................17

*Bazak Int'l Corp. v. Tarrant Apparel Group*,
    378 F. Supp. 2d 377 (S.D.N.Y. 2005) ......................................................18

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ...................................................................15

*Bitúmenes Orinoco, S.A. v. N.B. Power Holding Corp.*,
    2007 WL 485617 (S.D.N.Y. 2007) ........................................................24

*Buddman Distribs., Inc. v. Labatt Importers, Inc.*,
    458 N.Y.S.2d 395 (App. Div. 1982) ........................................................21

*Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l*,
    758 F. Supp. 908 (S.D.N.Y. 1991) ........................................................22

*Coastal Aviation, Inc. v. Commander Aircraft Co.*,
    903 F. Supp. 591 (S.D.N.Y. 1995) ........................................................18

*Cohen v. Heussinger*,
    1994 WL 240378 (S.D.N.Y. 1994) ........................................................14

*Corsi v. Eagle Publ'g, Inc.*,
    2008 WL 239581 (D.D.C. 2008) ..........................................................15

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
    47 F.3d 39 (2d Cir. 1995) ...............................................................20

*Dean Witter Reynolds, Inc. v. Cont'l Cas. Co.*,
    897 F. Supp. 142 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 683 (2d Cir. 1996) ................ 21

D3C329AD97B7F700: 0005

*Dennis v. Wachovia Sec., LLC,*
    429 F. Supp. 2d 281 (D. Mass. 2006) ........................................................ 13

*Direct Inv. Partners AG v. Cerberus Global Invs., LLC,*
    2008 WL 355467 (S.D.N.Y. 2008) .................................................... 15, 19

*DiStefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001) ....................................................................23

*Durable, Inc. v. Twin County Grocers Corp.,*
    839 F. Supp. 257 (S.D.N.Y. 1993) ......................................................... 16

*Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.,*
    744 F. Supp. 450 (S.D.N.Y. 1990) ......................................................... 15

*Envirotech Corp. v. Bethlehem Steel Corp.,*
    729 F.2d 70 (2d Cir. 1984) ...................................................................... 8

*Evergreen Marine Corp. v. Welgrow Int'l Inc.,*
    942 F. Supp. 201 (S.D.N.Y. 1996) ......................................................... 11

*Farago Adver., Inc. v. Hollinger Int'l, Inc.,*
    157 F. Supp. 2d 252 (S.D.N.Y. 2001) .................................................... 16

*Fid. & Cas. Co. of N.Y. v. Tillman Corp.,*
    112 F.3d 302 (7th Cir. 1997) ................................................................. 14

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.,*
    802 N.Y.S.2d 17, 21 (App. Div. 2005) ...................................................23

*Gerald Syndicate, Inc. v. Negev Home Made Foods, Inc.,*
    603 N.Y.S.2d 843 (App. Div. 1993) ....................................................... 17

*Giaguara S.p.A. v. Amiglio,*
    257 F. Supp. 2d 529 (E.D.N.Y. 2003) ...............................................11, 12

*Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,*
    960 F. Supp. 701 (S.D.N.Y. 1997) ........................................................... 8

*Glyfada Seafaring Corp. v. Fillmore Shipping Ltd.,*
    685 F. Supp. 40 (S.D.N.Y. 1987) ........................................................... 18

*Great White Bear, LLC v. Mervyns, LLC,*
    2007 WL 1295747 (S.D.N.Y. 2007) ....................................................... 19

*Gruppo, Levey & Co. v. ICOM Info. & Commc'ns,*
    2003 WL 22283812 (S.D.N.Y. 2003) ..................................................... 19

*Hall v. Nat'l Serv. Indus., Inc.,*
    172 F.R.D. 157 (E.D. Pa. 1997) ............................................................. 13

*Hawley Fuel Coalmart, Inc. v. Steag Handel GmbH,*
    796 F.2d 29 (2d Cir. 1986) ...............................................................18, 19

D3C329AD97B7F700: 0005

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
   11 F.3d 399 (3d Cir. 1993) ............................................................... 7

*Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*,
   815 F.2d 240, 242 (2d Cir. 1987) ..................................................... 7

*Kane v. Rodgers*,
   250 N.Y.S.2d 674 (App. Div.), *aff'd*, 15 N.Y.2d 544 (1964) .........................22

*Kramer v. Time Warner Inc.*,
   937 F2d 767 (2d Cir. 1991) ...............................................................16

*Kunica v. St. Jean Fin., Inc.*,
   63 F. Supp. 2d 342 (S.D.N.Y. 1999) ................................................. 7, 13

*LaSalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.*,
   2003 WL 21671812 (S.D.N.Y. 2003) .......................................................21

*Leonard Holzer Assocs., Inc. v. Orta*,
   672 N.Y.S.2d 915 (App. Div. 1998) ...................................................... 7

*Lone Star Indus., Inc. v. Nelstad Material Corp.*,
   811 F. Supp. 147 (S.D.N.Y. 1993) .......................................................17

*Martin Roofing, Inc. v. Goldstein*,
   60 N.Y.2d 262 (1983) ...................................................................20

*Matcon, Inc. v. Canron Constr. Corp.*,
   1998 WL 28068 (S.D.N.Y. 1998) .....................................................16, 20

*Mattera v. Clear Channel Commc'ns, Inc.*,
   239 F.R.D. 70 (S.D.N.Y. 2006) ..........................................................10

*Michael Kors Co. v. Compagnia Internazionale Abbigliamento S.p.A*,
   1996 WL 509725 (S.D.N.Y. 1996) .......................................................20

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*,
   476 F. Supp. 2d 414 (S.D.N.Y. 2007),
   *aff'd as modified*, 7 N.Y.3d 96 (2006) ................................................ 22

*Nanopierce Techs., Inc. v. Southridge Cap. Mgmt., LLC*,
   2003 WL 22882137 (S.D.N.Y. 2003) .......................................................24

*Oswald v. Allen*,
   417 F.2d 43 (2d Cir. 1969) ..............................................................16

*Oy Noresin AB v. ICC Indus., Inc.*,
   1991 WL 161367 (S.D.N.Y. 1991) .........................................................22

*Parma Tile Mosaic & Marble Co. v. Estate of Short*,
   640 N.Y.S.2d 477 (1996) ........................................................16, 18, 19

D3C329AD97B7F700: 0005

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968) ................................................................ 12

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*,
   924 F.2d 1114 (D.C. Cir. 1991) ............................................ 14

*Renel Constr. Inc. v. Brooklyn Coop. Meat Dist. Ctr. Inc.*,
   399 N.Y.S.2d 429 (App. Div. 1977), *aff'd*, 46 N.Y.2d 859 (1979) ...................... 22

*Ricoh Corp. v. M/V "Ming Plenty"*,
   2002 WL 109576 (S.D.N.Y. 2002) ........................................ 15

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ............................................... 14

*Rosenfeld v. Zerneck*,
   776 N.Y.S.2d 458 (Sup. Ct. 2004) .................................. 16, 19

*Rosewood Apts. Corp. v. Perpignano*,
   200 F. Supp. 2d 269 (S.D.N.Y. 2002) .................................. 11

*Royal Indus. Ltd. v. Kraft Foods, Inc.*,
   926 F. Supp. 407  (S.D.N.Y. 1996) ............................... 8, 13, 22

*Rubler v. Unum Provident Corp.*,
   2007 WL 188024 (S.D.N.Y. 2007) ........................................ 8

*RUS, Inc. v. Bay Indus., Inc.*,
   2004 WL 1240578 (S.D.N.Y. 2004),
   *aff'd sub nom. Recticel Foam Corp. v. Bay Indus., Inc.*,
   128 Fed. Appx. 798 (2d Cir. 2005) ...................................... 22

*Ryan v. Volpone Stemp Co.*,
   107 F. Supp. 2d 369 (S.D.N.Y. 2000) .................................... 8

*St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*,
   664 F. Supp. 824 (S.D.N.Y. 1987) .................................... 8, 13

*Stevens v. Publicis, S.A.*,
   854 N.Y.S.2d 690 (App. Div. 2008) .................................. 18, 19

*Teevee Toons, Inc. v. Gerhard Schubert GMBH*,
   2002 WL 498627 (S.D.N.Y. 2002) ............................... 8, 13, 22

*WPP Group USA, Inc. v. Interpublic Group of Cos., Inc.*,
   644 N.Y.S.2d 205 (App. Div. 1996) ...................................... 25

*ZPC 2000, Inc. v. SCA Group, Inc.*,
   86 F. Supp. 2d 274 (S.D.N.Y. 2000) .................................... 24

*Zucker v. Katz*,
   708 F. Supp. 525 (S.D.N.Y. 1989) ...................................... 18

D3C329AD97B7F700: 0005

**Federal Rules:**

Fed. R. Civ. P. 19 ............................................................................ 7

FED. R. CIV. P. 19(a)(1)(A) ............................................................... 7

FED. R. CIV. P. 19(a)(1)(B) ............................................................. 10

FED. R. CIV. P. 19(a)(B)(ii) ............................................................ 11


**Statutes:**

N.Y. GEN. OBLIG. LAW § 5-701 ....................................................... 16


**Treatises:**

7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1608 (3d ed.) ................. 13

RESTATEMENT (SECOND) OF THE LAW OF AGENCY § 149 (1958) .................................... 22

D3C329AD97B7F700: 0005

## I. INTRODUCTION

HOVENSA awarded Technip Italy S.p.A. ("Technip Italy") a $127 million contract for delivery of a Low Sulfur Gasoline ("LSG") Hydrotreater Unit. To obtain this lucrative contract, Technip Italy, and its parent company, Technip S.A. (collectively "Technip") agreed that Technip S.A. would guarantee Technip Italy's contractual obligations. Despite HOVENSA's grants of schedule relief and additional payments, Technip Italy failed to mechanically complete the LSG unit until almost one year after the promised date, forced HOVENSA to pay over $30 million above the contract price, and delivered a facility with significant defects in critical components that have prevented successful operation of the Unit.

HOVENSA filed suit in this Court, the exclusive forum agreed to by the parties. Two months later, Technip Italy and its subsidiary, TPVI, filed a duplicative lawsuit in New York state court—a forum in which HOVENSA is not subject to jurisdiction. Technip then filed various motions to dismiss in this Court, both in response to HOVENSA's original complaint and, now, in response to HOVENSA's amended complaint. Technip's motions find no basis in law or equity and should be denied in their entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Technip Italy successfully bids on an engineering, procurement, and construction contract for the LSG unit.

HOVENSA owns and operates an oil refinery in St. Croix, U.S.V.I. In June 2004, HOVENSA invited contractors to bid to provide engineering, procurement, and construction services for an LSG unit on a "lump sum" price basis. HOVENSA's invitations to bid contained two draft agreements—one for engineering and procurement ("E&P") and one for construction—to distinguish, for local tax purposes, between the E&P work performed outside of the U.S.V.I. and the construction work performed within it. (1st Am. Cplt. ¶¶ 6-7.) Technip Italy responded to the invitation to bid, but shortly thereafter notified HOVENSA that it needed to "propose [its] Paris operating center, Technip France, as potential bidder, instead of Technip Italy," explaining that "Technip France [would] be more adapted to this project parti-

cularly for assuming construction risk." (*Id.* ¶¶ 10-11.)[1]

After HOVENSA awarded the project to Technip, however, Technip Italy notified HOVENSA that it would resume control of the project. The parties agreed on the material terms, including the terms of the Parent Guaranty, *see infra* Part II.C, and signed formal Letters of Intent on February 10, 2005. The Letters of Intent were addressed to Technip S.A. and signed by representatives on behalf of "Technip Corporation." (*Id.* ¶¶ 13-14; Ex. C.) Subsequently, in late February 2005, Technip Italy gave a PowerPoint presentation at HOVENSA's offices in St. Croix outlining how it would execute the project. (Ex. D at 2-5.)

**B.    A few days before formal execution of the contract, Technip Italy decides to create a new entity to sign the Construction Agreement on its behalf.**

A project kick-off meeting was scheduled for March 9-11, 2005 in Rome for the formal execution of the contract by HOVENSA and Technip Italy, which was divided into an E&P Agreement and a Construction Agreement. Each Agreement contains over 25 virtually identical Appendices setting out the scope of work, project schedule, coordination procedures, and other obligations of the parties. The total lump-sum price for the project was $127 million; Technip Italy allocated $77 million for the E&P Agreement and $50 million for the Construction Agreement. (*See* 1st Am. Cplt. ¶¶ 15, 25.)

While in Rome, Technip Italy informed HOVENSA that an entity registered to conduct business in the U.S.V.I.—which it referred to as "T.P.I.V."—would actually sign the Construction Agreement.[2]    (1st Am. Cplt. ¶ 18; Ex. D at 113.)    But during a detailed PowerPoint presentation, Technip Italy made clear to HOVENSA that it retained responsibility

---

[1] Technip Italy and Technip France are "major operating centers" of the multinational engineering and construction group of companies headed by the parent company, Technip S.A. According to public filings, Technip S.A. is parent to over 200 wholly-owned or other subsidiaries and its primary purpose is to hold interests in these entities and provide financial support, including parent guaranties for the contractual performance of its affiliates. (Ex. A at 77; Ex. B at 45; *see also id.* at 25.)

[2] Upon information and belief, Technip Italy created this entity, actually named "TPVI Ltd.," on or about March 2, 2005. (1st Am. Cplt. ¶ 19.) During contract negotiations, HOVENSA had informed Technip Italy that a U.S.V.I. business license was required to perform construction work on the island and had provided Technip Italy assistance regarding how to obtain such a license for itself. Instead, Technip Italy decided to create an entity to hold the license and act as signatory for the Construction Agreement. (*Id.* ¶ 17.) According to Technip's public filings, TPVI was "created to support" the contract with HOVENSA. (Ex. A at 17.)

for executing the entire project, including all construction activities. (Ex. D. at 21, 113.)

On March 10, 2005, the same Technip Italy representatives who signed the Letters of Intent on behalf of Technip S.A. signed the executed Agreements. Nicola Greco, Technip Italy CEO, signed the E&P Agreement. (1st Am. Cplt. ¶ 21; Technip Mem. Gory Ex. 6.) Etienne Gory, Technip Italy CEO of Latin America and TPVI's "President," signed the Construction Agreement. (1st Am. Cplt. ¶ 21; Technip Mem. Gory Ex. 5.) While "TPVI" is listed in the introductory paragraph as the nominal party, various Appendices to the Construction Agreement, as well as Technip's public representations, identify Technip Italy as the party responsible for performing all obligations under the Agreements, including providing the personnel for all phases of the project. (1st Am. Cplt. ¶¶ 23-24, 26; *see also* Ex. F.) Accordingly, on information and belief, the entire project team, including the construction management team, consisted solely of Technip Italy employees. (1st Am. Cplt. ¶¶ 23-24.)

## C.    Technip S.A. agrees to terms of the Parent Guaranty Agreement.

Attached as Appendix Q to, and expressly made part of, the executed Agreements is a "Parent Guaranty Agreement." The parties agreed to the terms of the Parent Guaranty in January. (*Id.* ¶¶ 47-52.) Specifically, on January 21, 2005, Etienne Gory submitted Technip's proposed draft of various aspects of the transaction, including the Parent Guaranty to be attached to the Agreements as Appendix Q. (Ex. G.) Except for the forum selection clause, the material terms of this draft Parent Guaranty are *identical* to the one ultimately attached to and incorporated into the executed E&P and Construction Agreements. (1st Am. Cplt. ¶¶ 49-52; Exs. G, I.) In a January 24, 2005 e-mail, HOVENSA responded by agreeing to the proposed guaranty with one material modification: the adoption of the exclusive forum selection clause from the Agreements instead of the arbitration agreement proposed by Technip. (Ex. H.) On that same date, Stéphane Mespoulhes responded by e-mail to HOVENSA that Technip agreed to that modification. (*Id.*) As a result, this final, agreed-upon version of Appendix Q was made a part of the E&P and Construction Agreements executed by the parties in March 2005. (*See*

3

Ex. I; 1st Am. Cplt. ¶¶ 47-52.)[3]

**D.    The project is delayed and over budget.**

As set forth in Technip Italy's "Overall Project Schedule" in the Agreements, "Mechanical Completion" of the LSG project was to be achieved no later than November 10, 2006. (Ex. F, App. E.)  Problems with Technip Italy's performance under the Agreements began early in the project with its E&P deliverables and extended to its construction management.  (*See* 1st Am. Cplt. ¶¶ 28-46.)    During discussions about these problems, including Technip Italy's difficulties in securing a contract with the mechanical subcontractor it had selected prior to the March 2005 execution of the Agreements, both HOVENSA and Technip Italy treated Technip Italy, not TPVI, as the entity responsible for performance of the entire project.  (*See, e.g.*, Ex. J.)  Technip Italy eventually claimed *force majeure* on the project, which ultimately resulted in a Settlement Agreement.    In exchange for an additional payment of $3 million and deferring commencement of liquidated damages, HOVENSA was released from any claims under the Agreements, including claims relating to "force majeure events, that have occurred, issues that have arisen or for Work that has been performed as of the date of this Settlement Agreement, including any 'impacts' or 'ripple' effects."  (1st Am. Cplt. ¶¶ 33-36.)

Even after the Settlement Agreement, Technip Italy proved unable to manage the costs of construction.  As a result, Technip Italy later shifted $7 million from the price allocated to the E&P Agreement to the price allocated to the Construction Agreement.  Along with these escalating project costs, Technip Italy failed to manage the project schedule, and Mechanical Completion was not achieved until late fall of 2007, almost one year after the promised date.  The project delays and cost overruns resulted from Technip Italy's performance in all phases of the project.  (*Id.* ¶¶ 37-46.)

---

[3] According to Technip S.A., "[p]arent guarantees are given in the normal course of the Group's businesses by Technip S.A. . . . to customers to cover the good performance of a contract awarded to one of our subsidiaries." (Ex. B at 68; *see also id.* at F-67.)

4

**E.    Technip Italy tries for the first time, unsuccessfully, to avoid liability relating to the Construction Agreement.**

By the end of May 2007—with Mechanical Completion still several months away—liquidated damages owed to HOVENSA as a result of the ongoing delay in achieving Mechanical Completion exceeded $13 million.  Accordingly, HOVENSA exercised its right to draw on two Letters of Credit ("LOCs") that Technip Italy, in accordance wit the Agreements, had procured from an Italian bank.  (Ex. K at 15.) The LOCs had been divided into one corresponding to the E&P Agreement (approximately $7 million) and one corresponding to the Construction Agreement (approximately $6 million).

Both LOCs had been procured by Technip Italy.  Technip Italy filed suit in Rome to enjoin its bank from paying on the LOCs.  (*Id.*)  Similar to its argument in this Court, Technip Italy argued to the Italian court that HOVENSA's claim related to construction delays and that only TPVI, the signatory of the Construction Agreement, could be held liable for such delays.  Technip Italy contended that the E&P and Construction Agreements were independent and autonomous and thus that HOVENSA could draw only on the LOC that Technip Italy had posted in the name of TPVI. (*See* Ex. K at 2, 10-11.)  Rejecting Technip Italy's fanciful separation of the two Agreements, the Italian court recognized the indisputable "unitary nature" of the Agreements:

> Once again it must be held that the arguments put forward by [Technip Italy], according to which the two aforementioned contracts are autonomous and distinct and that, therefore the draw down of the guarantees should be limited only to the "Construction Agreement"[] are also unfounded.  The *unitary nature of the relationship in question* has been reiterated by the respondent Hovensa *and confirmed by various documentary elements*, not validly refuted by the formal aspect relied on by the petitioners . . .

(Ex. L at 3-4).  Accordingly, the Italian court refused to enjoin payment on the LOCs.

**F.    Pursuant to the exclusive forum selection clauses in the Agreements and the Parent Guaranty, HOVENSA files this lawsuit.**

Despite overcoming Technip Italy's interference with the LOCs, HOVENSA's damages still exceed $31 million, a number that continues to increase due to apparent defects in the design and/or fabrication of critical parts of the LSG Unit.   In July 2007, pursuant to dispute

resolution procedures in the Agreements, HOVENSA met in St. Croix with Technip Italy's representative Etienne Gory but was unable to resolve the disputes. During other conversations with Technip representatives, HOVENSA was informed that Technip S.A. unequivocally refused to provide additional money to the project.

On February 6, 2008, pursuant to the parties' agreement to litigate exclusively in this Court, HOVENSA filed this suit against Technip Italy and Technip S.A. Two months later, despite the exclusive forum selection clause, Technip Italy and its subsidiary TPVI filed a duplicative lawsuit in New York state court. One day later, Technip filed various motions to dismiss this suit. HOVENSA responded and also amended its complaint due to Technip's professed inability to discern the basis for Technip Italy's liability under the Construction Agreement—despite the fact that HOVENSA's original complaint had stated that Technip Italy was wholly responsible for the construction work and pleaded that TPVI signed the Construction Agreement "on the behalf of" Technip Italy. (Cplt. ¶ 20.) After HOVENSA filed its amended complaint, Technip filed largely identical motions to dismiss that complaint.

In the fifty pages of briefing from Technip's two motions to dismiss the case from this Court, Technip never acknowledges that this Court is the exclusive forum agreed to by the parties. Technip's attempts to disregard the exclusive forum selection clause (1) ignore the undisputed circumstances surrounding the negotiation, execution, and performance of the E&P and Construction Agreements; (2) arise from Technip's self-serving characterization of selected facts; and (3) rely on general legal principles that have no connection to the facts and claims in this case. Technip's motions should be denied.

### III. ARGUMENT AND AUTHORITIES

**A.** **Technip's Rule 12(b)(7) motion should be denied because the absence of a nominal, likely insolvent, Technip-related entity does not preclude resolution of the dispute.**

Technip seeks dismissal of this suit—and nullification of the parties' exclusive forum selection clause—based on the absence of TPVI, a nondiverse, nominal party to the Construction Agreement. In all of its briefing, Technip has never denied HOVENSA's assertions that TPVI

is nothing more than a temporary entity with no assets, employees or business activities independent of Technip Italy.

To warrant the extraordinary relief of dismissal, Technip must show that (1) TPVI is "required to be joined if feasible" (a "necessary" party under prior nomenclature), and (2) "in equity and good conscience," the action should not proceed without TPVI's participation. FED. R. CIV. P. 19. "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987). This "reasoned determination" requires a fact-intensive and pragmatic inquiry into the parties and nature of the dispute. *See Kunica v. St. Jean Fin., Inc.*, 63 F. Supp. 2d 342, 350 (S.D.N.Y. 1999). Such a pragmatic inquiry leads to the conclusion that Technip's motion is nothing more than an attempt to use a completely dispensable entity to avoid liability and undo its explicit agreement to litigate in this Court.

### 1.   TPVI, an agent and nominal party to a contract, is not a necessary party.

### a.   Complete relief can be accorded without TPVI.

The first prong of Rule 19(a) requires a determination that without the absent person's participation "the court cannot accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A); *see also Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). HOVENSA's allegation—amply supported by the Agreements and the circumstances surrounding their negotiation and execution—is that Technip Italy created TPVI at the last minute to sign the Construction Agreement on its behalf. (*See* 1st Am. Cplt. ¶¶ 16-26, 56.) As a result, to the extent that TPVI "acted" at all, it did so as the agent of Technip Italy, who bid on the project, negotiated the Agreements, planned and managed the project, and provided all materials and personnel for execution of the project. (*See* 1st Am. Cplt. ¶¶ 8-16, 23-24.)   If HOVENSA prevails on its claim, Technip Italy—not its agent, TPVI—is liable for any breach of the Construction Agreement, and complete relief can be granted to HOVENSA. *See, e.g., Leonard Holzer Assocs., Inc. v. Orta*, 672 N.Y.S.2d 915, 916 (App. Div. 1998) (holding that

D3C329AD97B7F700: 0005

even when agent signs in its own name without agency designation, principal, not agent, is bound on the contract when the parties are aware that agent is acting on behalf of its principal). In this situation, courts repeatedly have refused to find the defendant's purported agent to be a necessary, much less indispensable, party to the action. *See, e.g., Teevee Toons, Inc. v. Gerhard Schubert GMBH,* 2002 WL 498627, *at *5 (S.D.N.Y. 2002)* ("[C]omplete relief can be accorded to the present parties because TVT claims no independent wrongdoing on the part of Rodico; rather, the Complaint alleges that Rodico merely executed the contract as Schubert's agent and that Schubert breached its own contractual obligations . . . ."); *Royal Indus. Ltd. v. Kraft Foods, Inc.,* 926 F. Supp. 407, 415 (S.D.N.Y. 1996) ("[I]f plaintiff establishes an agency relationship and ultimately prevails at trial, it can obtain complete relief whether or not Suchard is a party defendant."); *see also St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.,* 664 F. Supp. 824, 830 (S.D.N.Y. 1987).

The above-cited cases are in contrast to those cited by Technip, in which the agents had obligations or rights separate and apart from those of their principal. *See Ryan v. Volpone Stemp Co.,* 107 F. Supp. 2d 369, 389 (S.D.N.Y. 2000) (principal's agent, who signed licensing agreements in addition to principal himself, was necessary party because under terms of agreement agent had undertaken obligations in addition to those undertaken by principal); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (2d Cir. 1999) (agent shipyard derived benefit for itself from contract and that principal exercised no control over shipyard).[4] Moreover, these cases involved truly independent agents, not temporary, assetless affiliates created to sign a contract for tax or other regulatory purposes. *See, e.g., A.W. Fiur Co. v. Ataka & Co.,* 422 N.Y.S.2d 419, 421-22 (App. Div. 1979) (holding that Japanese parent corporation could be liable on contract even though American subsidiary signed contract because of Japanese currency and American tax laws: "A subsidiary corporation over which

---

[4] The rest of the cases Technip cites do not address agency. *Rubler v. Unum Provident Corp.,* 2007 WL 188024 (S.D.N.Y. 2007); *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,* 960 F. Supp. 701 (S.D.N.Y. 1997); *see also Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 75 & n.7 (2d Cir. 1984) (mentioning type of agency theory, but deciding case on other grounds).

D3C329AD97B7F700: 0005

the parent corporation exercises control in every day operations may be deemed an instrumentality or agent of the parent.")

Moreover, contrary to the self-serving statements offered by Technip, the overwhelming evidence demonstrates that both Technip and HOVENSA considered Technip Italy to be responsible for *all* aspects of this project, *including construction*:

> TPVI has no employees independent of Technip Italy. Technip Italy's February 2005 PowerPoint presentation describes in detail "Project Execution by Technip Italy" and lists the construction manager—and all directors and managers for the project—as being from Technip Italy. (Ex. D at 2-5.)

> The kickoff meeting in March 2005, which was held in Rome, the location of Technip Italy, included a PowerPoint presentation presented by Vincenzo Laganà, the project director for the entire project. The presentation stated that "Technip Italy will provide labor, supervision, construction equipment, consumable and other required tools to perform the work" on the "Construction" aspect of the project. (Ex. E at 1-2, 6, 11-12, 16-17, 21.)

> Even though HOVENSA was informed at the March 2005 meeting (for the first time) that a Technip U.S.V.I. "registered" entity would "sign" the Construction Agreement, at the same time Technip Italy stated that "[t]he execution of the Construction Contract" would be "under the general management of the EPC Project Director," Vincenzo Laganà of Technip Italy. (*Id.* at 113.)

> Pursuant to representations at the March 2005 meeting, the executed Construction Agreement lists TPVI in the introduction and signature, but Technip Italy, not TPVI, is repeatedly identified throughout the Appendices. (*See* Ex. F.)

> The LOCs for the E&P Agreement and the Construction Agreement were both issued at the request of Technip Italy. (Ex. K at 15.)

> Technip Italy controlled all of the payments received under the Agreements. Technip Italy decided how much of the $127 million project price to allocate to each of the Agreements and, after difficulties with the project arose, Technip Italy shifted $7 million of that price from the E&P Agreement to the Construction Agreement. (1st Am. Cplt. ¶ 37.) The invoices submitted by "TPVI" came from Technip Italy's headquarters in Rome. (Technip Mem. Gory Ex. 8.)

> Technip Italy—not TPVI—negotiated with and selected subcontractors on the construction aspect of the project. (Exs. M, N.)

> During the project, the project execution summaries, including a summary of construction work, were submitted by Technip Italy in Rome. (Ex. O.) An August 2006 project review PowerPoint presentation that attempted to explain construction delays was presented by Technip Italy. (Ex. P.)

9

> When Etienne Gory sent HOVENSA a letter regarding "Technip's" responsibilities and work with HOVENSA under the Construction Agreement, although he sent it on "TPVI" letterhead, the letter was sent from Rome and signed by Gory in his capacity as an officer of Technip Italy (namely, CEO Latin America). (Ex. J.)

Even without the benefit of any discovery, there is overwhelming evidence that Technip Italy is the real party in interest to the Construction Agreement and that TPVI is merely a temporary U.S.V.I. entity created for the purpose of signing the Construction Agreement on behalf of Technip Italy, in lieu of Technip Italy obtaining its own local business license. As recognized by the parties when they agreed to this Court as the exclusive forum for litigation, complete relief can be accorded without the "participation" of TPVI.[5]

### b.    TPVI has no interest that might be impeded or put at risk.

Rule 19(a)'s second prong requires Technip to show that TPVI claims an interest in the subject matter of the lawsuit *and* is so situated that proceeding without it may (i) "as a practical matter impair or impede [TPVI's] ability to protect the interest" or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1)(B). Technip never identifies what practical or realistic interest TPVI—a last-minute creation of Technip Italy to allow it to perform construction and related services in the U.S.V.I.—has in this suit, much less how such an interest will be "impaired or impeded" unless the parties' agreement to resolve disputes in this forum is negated and this suit dismissed. *See Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 74 (S.D.N.Y. 2006) (movant bears burden of producing evidence showing nature of interest and how such interest will be impaired). Technip does not contend, much less produce evidence, that TPVI is a lasting, financially viable business or that it has any significant assets, business activities, or employees distinct from those of Technip Italy. In contrast, the undisputed evidence is that Technip Italy controlled the entire project, supplying all personnel, negotiating with subcontractors, and unilaterally "shifting" $7 million from the price of the E&P Agreement to the Construction Agreement as construction-related costs continued to escalate.

---

[5] The fact that TPVI cannot be sued in the exclusive forum chosen after extensive negotiations by sophisticated

Indeed, in the Italian proceeding, Technip Italy itself dismissed the significance of TPVI to the dispute, urging the court to apply Italian legal principles to enjoin payment of the two LOCs as they "have both been issued in Italy upon request of the ordering party, that in both cases is the same company, Technip Italy—incorporated under the laws of Italy." (Ex. K at 15.)

Moreover, even if TPVI's theoretical interest as the signatory on the Construction Agreement required protection, this interest is consistent with, if not identical to, the interests of Technip in defending the execution of the LSG project. A nonparty is not necessary when its interests are closely aligned with an existing party who can adequately protect those interests. *See Rosewood Apts. Corp. v. Perpignano*, 200 F. Supp. 2d 269, 277 (S.D.N.Y. 2002); *accord Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 61 (S.D.N.Y. 1992) (corporation was not necessary party where it was doubtful that joinder of corporation "will result in any arguments being raised in the defense that have not already been raised by the present parties"); *cf. Giaguara S.p.A. v. Amiglio*, 257 F. Supp. 2d 529, 541 (E.D.N.Y. 2003) ("[A] party is not necessary even if the defendant would have to defend the absent party's actions at trial.").

> ### c.    There is no threat of inconsistent obligations.

As for the remaining Rule 19(a) consideration, there is no plausible, much less significant, threat of "inconsistent obligations" being imposed upon any party to this action. FED. R. CIV. P. 19(a)(B)(ii). In an effort to manufacture a potential threat, Technip Italy—one day before it was required to respond to HOVENSA's complaint in this suit, and in complete disregard of its agreement to the exclusive jurisdiction of this Court—sued HOVENSA in New York state court. Even putting aside the inequity of rewarding Technip's gamesmanship by dismissing this suit, the potential for inconsistent adjudications in parallel proceedings does render a nonparty "necessary" under Rule 19(a). *See Evergreen Marine Corp. v. Welgrow Int'l Inc.,* 942 F. Supp. 201, 206 (S.D.N.Y. 1996) ("If this litigation proceeds concurrently with the litigation in Antwerp, there is a possibility that the two tribunals could come to opposite conclusions concerning Welgrow's liability for the disputed detention charges. However, Rule 19 does not pro-

---

corporations indicates that no one considered TPVI to be a necessary or real party in interest to the contract.

D3C329AD97B7F700: 0005

tect a party from logically inconsistent results, only inconsistent obligations.  Here, an inconsistency in holdings will not impose multiple damage awards or inconsistent equitable obligations, such as would result from the issuance of conflicting injunctions."); *accord Giaguara S.p.A.,* 257 F. Supp. 2d at 541 ("[A] party is not necessary to an action merely because a parallel action is being brought against an absent party that may result in different outcomes.")

The state court suit also presents no significant risk of imposing inconsistent obligations on Technip Italy or Technip S.A. (who, notably, did not join in the state court suit).  HOVENSA has filed a motion to dismiss in the state court suit for lack of personal and subject matter jurisdiction[6] and, alternatively, a motion to stay pending resolution of this action.  (Ex. Q.)  But even if the state court suit were to proceed, reach trial before this action, *and* result in a finding that Technip Italy (or TPVI) did not breach the Agreements, Technip Italy could defensively assert the collateral estoppel effect of that judgment in this suit.  Technip simply cannot show under Rule 19(a) that TPVI is a "necessary" party to this suit.

**2.  The "equity and good conscience" standard does not compel dismissal of this suit, but rather adherence to the exclusive forum selection clause.**

The "equity and good conscience" standard does not come into play unless the Court finds that TPVI is a necessary party, which it is not.  But even if TPVI were a necessary party, its joinder—and the dismissal of this suit for lack of diversity jurisdiction—is not required because TPVI is not an "indispensable" party in light of the issues and largely undisputed facts of this case. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968) (determination of indispensability "can only be determined in the context of particular litigation" and "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests").  To determine whether a party is indispensable, a court considers a nonexclusive list of factors: "(1) to what extent a judgment rendered in the person's

---

[6] First, HOVENSA—a Virgin Islands LLC that does not conduct business in the State of New York—has not consented, nor is it otherwise subject, to the personal jurisdiction of New York state courts.  Second, the forum selection clause places exclusive jurisdiction in this Court, thus depriving the state court of subject matter jurisdiction. (*See* Ex. Q.)

D3C329AD97B7F700: 0005

absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *See Kunica*, 63 F. Supp. 2d at 350.

Technip dispenses with the fact-intensive, pragmatic analysis of prejudice required by Rule 19(b) and suggests a *per se* rule that any entity named in a contract is indispensable to a dispute relating to that contract. In contrast to the inapposite authority cited by Technip, federal courts repeatedly have refused to treat a corporate affiliate of a defendant as a necessary, much less indispensable, party to a breach of contract action based on the affiliate's acts as the alleged agent of the defendant. *See Teevee Toons, Inc.*, 2002 WL 498627 at *5; *Royal Indus. Ltd.*, 926 F. Supp. at 414-15; *St. Charles Cable TV, Inc.*, 664 F. Supp. at 830.[7] It is the alleged wrong-doing of Technip Italy—not TPVI—that is at the heart of this case. Not only is it HOVENSA's allegation that TPVI served as agent of Technip Italy, many of the events contributing to the project delays and cost overruns occurred *before TPVI even existed*, including Technip Italy's creation of a misleading and inadequate project schedule (*see* Ex. F, App. E), its designation of construction and project management personnel (*see id.*, App. AD), and its selection of the mechanical contractor, whose performance Technip Italy now contends was the cause of most of the project delays and cost overruns. Moreover, even assuming that TPVI ever employed persons or created documents independent of Technip Italy, Technip wholly owns and controls TPVI and would have ready access to all relevant evidence.

With respect to the threat of multiple litigation resulting from TPVI not being named in this suit, Technip again proffers an argument more appealing in theory than in the undisputed facts surrounding this dispute. *See* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1608 (3d ed.) ("[C]ourts must look to the practical likelihood of prejudice and

---

[7] *See generally Dennis v. Wachovia Sec., LLC*, 429 F. Supp. 2d 281, 290 (D. Mass. 2006) ("Courts have consistently concluded that Rule 19 does not require joinder of principal and agent."); *Hall v. Nat'l Serv. Indus., Inc.*, 172 F.R.D.

D3C329AD97B7F700: 0005

subsequent litigation, rather than the theoretical possibility that they may occur."). Technip contends that, should HOVENSA not prevail on its claims against Technip Italy, HOVENSA might subsequently pursue the same claims against TPVI. Given TPVI's status as a limited-purpose entity without significant assets or ongoing business activities, HOVENSA has no incentive to pursue claims against TPVI. *See, e.g., Cohen v. Heussinger*, 1994 WL 240378, at *2 (S.D.N.Y. 1994) (explaining that a "defunct and assetless" entity "can not be deemed an indispensable party to this litigation, since for practical purposes, it is not a real party in interest to this dispute").[8] But more importantly, the collateral estoppel risk associated with this suit is borne by HOVENSA, not TPVI. If HOVENSA does not prevail on the merits of its claims— *i.e.*, breach of the Construction Agreement—it will be collaterally estopped from relitigating those claims against TPVI. Conversely, Technip Italy will be held liable in this action only if it is found—in accordance with the facts surrounding the negotiation and execution of the Agreements—that it is the real party in interest to the Construction Agreement, as well as the E&P Agreement. Consequently, there is no plausible risk of prejudice to any party from proceeding with this suit. *See generally Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1120-21 (D.C. Cir. 1991).

Finally, with regard to whether HOVENSA would have an adequate remedy if dismissal occurred, HOVENSA notes that the Agreements governing this dispute—the E&P Agreement, Construction Agreement, and Parent Guaranty—all provide for resolution of disputes *exclusively* in this Court. (Technip Mem. Gory Ex. 5 ¶ 27.2.1, Ex. 6 ¶ 24.2.1; Ex. I ¶ 7.) Exclusive forum selection clauses are a common and critical component of international business contracts and, accordingly, federal policy warrants their strict enforcement. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) ("[T]he [Supreme] Court has noted that contracts entered into freely generally should be enforced because the financial effect of forum selection

---

157, 159 (E.D. Pa. 1997) ("It is well established that Rule 19 does not require the joinder of principal and agent.").

[8] *Accord Fid. & Cas. Co. of N.Y. v. Tillman Corp.*, 112 F.3d 302, 304 (7th Cir. 1997) (holding nondiverse nonparty was not indispensable party due to threat of subsequent litigation against him, explaining that the nonparty "lacks the assets to pay a judgment and is not apt to acquire them later . . . so as a practical matter no one is going to sue him").

14

and choice of law clauses likely will be reflected in the value of the contract as a whole."); *Ricoh Corp. v. M/V "Ming Plenty"*, 2002 WL 109576, at *2 (S.D.N.Y. 2002) (denying motion to transfer, explaining that "while the potential for duplicative litigation is a real one, the fact does not outweigh the strong policy favoring enforcement of forum selection clauses"). Even after the contractual disputes arose in this case, Technip Italy (and TPVI) acknowledged in the Italian court proceeding that the proper forum for resolution of the underlying contractual disputes was this Court. (Ex. K at 19.)[9] But even more importantly, this Court is the only forum to which all of the real parties in interest are subject to jurisdiction. HOVENSA is not subject to the jurisdiction of the state courts of New York. (*See* Ex. Q.) Also, while there is at least a fact issue as to whether Technip S.A. has consented to the jurisdiction of this Court, *see infra* Part III.B.1, Technip S.A. will certainly argue that it cannot be subject to the jurisdiction of New York *state courts* based on its consent to the forum selection clause in the Parent Guaranty. Moreover, Technip's complaint about the lack of jurisdiction over TPVI in the parties' agreed-upon forum is a problem of its own making, having unilaterally created a non-diverse entity at the last minute to sign the Construction Agreement on its behalf.

**B.    Technip's Rule 12(b)(6) motion should be denied because HOVENSA has pleaded viable claims against Technip Italy and Technip S.A.**

To avoid dismissal under Rule 12(b)(6), plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The plaintiff's factual allegations are accepted as true and all reasonable inferences drawn in favor of the plaintiff. *Direct Inv. Partners AG v. Cerberus Global Invs., LLC*, 2008 WL 355467, at *3 (S.D.N.Y. 2008).

---

[9] Technip's request that the forum selection clause be nullified in favor of a mandated arbitration is both legally and factually disingenuous. The cases that Technip cites involve either an ongoing arbitration or a mandatory arbitration clause. *See Corsi v. Eagle Publ'g, Inc.*, 2008 WL 239581 (D.D.C. 2008); *Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*, 744 F. Supp. 450 (S.D.N.Y. 1990). Technip proposed mandatory arbitration during contract negotiations, but the parties could not agree on the terms and instead agreed on a clause mandating litigation exclusively in this Court.

1.    **HOVENSA has pleaded a viable claim against Technip S.A. pursuant to the Parent Guaranty.**

The Rule 12(b)(6) motion with regard to Technip S.A. is premised on the argument that it is "implausible" that Technip S.A. issued a guaranty because, as characterized by Technip, the Parent Guaranty is merely an "unsigned guaranty form." Technip submits a self-serving affidavit from an interested witness and argues that—despite Technip S.A.'s regular practice of issuing such guaranties, multiple communications establishing Technip personnel's agreement to the guaranty, Technip's initialing of the guaranty, and the parties' express inclusion of and reference to the guaranty in the agreements themselves—Technip S.A. never intended to be bound by the Parent Guaranty Agreement. In the face of such evidence, it is Technip's post-lawsuit denial of the guaranty that is "implausible." Regardless of what sort of factual dispute Technip wants to raise on this issue, HOVENSA has more than met its burden under Rule 12(b)(6) of demonstrating a viable claim under the Parent Guaranty. [10]

a.    **The Statute of Frauds is satisfied.**

A promise to guarantee the obligations of another satisfies the Statute of Frauds if the promise "or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent." *See* N.Y. GEN. OBLIG. LAW § 5-701; *accord Matcon, Inc. v. Canron Constr. Corp.*, 1998 WL 28068, at *5 (S.D.N.Y. 1998) ("Section 5-701 requires nothing more than that the existence of an agreement be evidenced by a writing subscribed by the party to be charged.") The writings alleged by HOVENSA readily satisfy this evidentiary hurdle. The parties attached the Parent Guaranty and explicitly made it part of the E&P and Construction Agreements signed by the parties' representatives. Technip repeated-

---

[10] *See Kramer v. Time Warner Inc.*, 937 F2d 767, 773 (2d Cir. 1991) (when considering a Rule 12(b)(6) motion to dismiss, court must limit itself to facts stated in complaint or documents attached thereto; consideration of additional material requires court to treat the motion as one for summary judgment and give the opposing party an opportunity to conduct discovery). Notably, every case cited by Technip in support of its Rule 12(b)(6) motion on HOVENSA's claim against Technip S.A. under the Parent Guaranty was resolved not on the pleadings, but on summary judgment or after a trial. *See Oswald v. Allen*, 417 F.2d 43 (2d Cir. 1969) (findings of fact from trial); *AG Ltd. v. Liquid Realty Partners, LLC*, 448 F. Supp. 2d 583 (S.D.N.Y. 2006) (summary judgment); *Farago Adver., Inc. v. Hollinger Int'l, Inc.*, 157 F. Supp. 2d 252 (S.D.N.Y. 2001) (same); *Durable, Inc. v. Twin County Grocers Corp.*, 839 F. Supp. 257 (S.D.N.Y. 1993) (same); *Parma Tile Mosaic & Marble Co. v. Estate of Short*, 640 N.Y.S.2d 477 (1996) (same); *Rosenfeld v. Zerneck*, 776 N.Y.S.2d 458 (Sup. Ct. 2004) (same).

D3C329AD97B7F700: 0005

ly refers to the Parent Guaranty as being an unsigned and undated form, but the guaranty *contains no signature block*.  (Ex I.)  Indeed, nowhere does the Parent Guaranty state that it requires a signature separate and apart from that of the Agreements themselves.  A reasonable inference from the parties' omission of a signature block is that they understood that Appendix Q—like other obligations contained in the Appendices—became binding when their representatives signed the E&P and Construction Agreements.  *See Lone Star Indus., Inc. v. Nelstad Material Corp.*, 811 F. Supp. 147, 149-50 (S.D.N.Y. 1993) (denying motion to dismiss on Statute of Frauds based on unfilled blank in guaranty agreement regarding the maximum amount of guarantor's liability: "The interpretation urged by [the guarantor]—that the intention of the parties might have been that the guarantee was nugatory—does not make sense in view of the background against which this contention must be judged.  This is a business, not a consumer transaction.  There is no contention that this is a contract of adhesion between unmatched parties or that a take-it-or-leave-it provision was foisted on a less sophisticated trading partner.")

What is more, a Technip representative initialed each Appendix to the Construction Agreement, including the Parent Guaranty, thereby evidencing assent to its terms.  (Ex. I.)  *See, e.g., Gerald Syndicate, Inc. v. Negev Home Made Foods, Inc.*, 603 N.Y.S.2d 843, 843 (App. Div. 1993) (defendant's initialing of rider pages, including page naming him as guarantor, raised fact issue of whether he intended to personally guaranty the contractual obligations even though he did not sign the signature blank on the page containing the guaranty).  Technip now claims, based on a declaration by a different individual, that the representative who initialed the Parent Guaranty did so only for the purpose of "compiling" the appendices and that he had no intent or authority to bind Technip S.A.  Putting aside the obvious question of why the parties were knowingly including the Parent Guaranty when compiling the appendices if they did not intend that it be enforceable, the issue of the Technip representative's intent and authority when initialing the guaranty is clearly a fact question to be resolved after discovery is conducted.  *See generally Arol Dev. Corp. v. Whitman & Ransom*, 626 N.Y.S.2d 118, 120 (App. Div. 1995) ("The issue of apparent authority presents what is inherently a fact determination."); *see also*

17

*Glyfada Seafaring Corp. v. Fillmore Shipping Ltd.*, 685 F. Supp. 40, 43 (S.D.N.Y. 1987) (concluding that corporate treasurer had either actual or apparent authority to execute guaranty on behalf of another corporation).

Other signed writings also satisfy the Statute of Frauds. "Under New York law the writing necessary to satisfy the statute of frauds may be embodied in several documents, only one of which need be signed by the party to be charged." *Hawley Fuel Coalmart, Inc. v. Steag Handel GmbH*, 796 F.2d 29, 33 (2d Cir. 1986); *accord Zucker v. Katz*, 708 F. Supp. 525, 531 (S.D.N.Y. 1989). The parties' written communications show their agreement on the terms of the Parent Guaranty. Technip submitted its version of the Parent Guaranty to HOVENSA on January 21, 2005. (Ex. G.) The only material difference between Technip's proposal and the final Parent Guaranty explicitly made part of the E&P and Construction Agreements was the dispute resolution procedure.[11] (Exs. G, I.) On January 24, 2005, the parties agreed on that provision. As evidenced by the January 24, 2005 e-mail "signed" by Stéphane Mespoulhes,[12] (Ex. H), they agreed that the Parent Guaranty would adopt the exclusive forum selection clause from the Agreements, which designated this Court. *See Coastal Aviation, Inc. v. Commander Aircraft Co.*, 903 F. Supp. 591, 594 (S.D.N.Y. 1995) (defendant's response letter satisfied the Statute of Frauds under the Uniform Commercial Code, because defendant's "agreement to change only one aspect of the Dealership Agreement evidences his intent to be bound by other terms of that agreement").

Technip states that *Parma Tile Mosaic & Marble Co. v. Short*, 640 N.Y.S.2d 477 (1996), is "directly on point" regarding whether this exchange can satisfy the Statute of Frauds.

---

[11] Technip's argument that the Parent Guaranty agreed to in January was only a draft is belied by the fact that it is identical, save a few clerical revisions, to the Parent Guaranty that the parties specifically included and referenced when the Agreements were executed.

[12] *See Stevens v. Publicis, S.A.*, 854 N.Y.S.2d 690, 692 (App. Div. 2008) ("The e-mails from plaintiff constitute 'signed writings' within the meaning of the statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the contents."); *see also Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 386 (S.D.N.Y. 2005) (holding in case under UCC that e-mail was a "writing" under the Statute of Frauds and that defendant's typed signature on attached letter satisfied signature requirement).

D3C329AD97B7F700: 0005

But New York courts have distinguished the situation in *Parma Tile*, in which a facsimile stamp *automatically* imprinted the company's name on a fax header, from a situation in which a party types his name at the bottom of an email, which is what occurred here.  In the latter case, the Statute of Frauds is satisfied.  *See, e.g.*, *Rosenfeld*, 776 N.Y.S.2d at 460; *Stevens*, 854 N.Y.S.2d at 692.  Thus, even if the Parent Guaranty in the executed E&P and Construction Agreements itself did not satisfy the Statute of Frauds, Technip's unequivocal written agreement to its terms does, particularly for purposes of the Rule 12(b)(6) standard.  *See Direct Inv. Partners AG*, 2008 WL 355467, at *7 (denying motion to dismiss, holding that e-mail exchange, unsigned contracts, and letter "taken together, contain the material terms of the agreement and satisfy the Statute of Frauds"); *Great White Bear, LLC v. Mervyns, LLC*, 2007 WL 1295747, at *3 (S.D.N.Y. 2007) (denying motion to dismiss on Statute of Frauds, explaining that the defendant's "[e]-mail 'afford[s] a basis for believing that [it] reflects a real transaction between the parties' at this stage of the case").[13]

Technip S.A. cannot use the fact that it is not identified by name in the Parent Guaranty—due to Technip's intentional or neglectful disregard of its ministerial task to fill in the appropriate blank—to render it unenforceable.  To satisfy the statute, a writing must supply the material terms of an agreement "expressly or by reasonable implication."  *Hawley Fuel*, 796 F.2d at 33.  As would be expected, the Parent Guaranty explicitly and reasonably identifies the Guarantor as "the parent company" of the "Contractor" identified in the E&P Agreement and Construction Agreement.  (Ex. I.)  Moreover, the parties clearly viewed Technip S.A.—the party to the Letters of Intent and the *only* "parent company" of Technip Italy—as the guarantor.  This is the only reasonable interpretation of the identification of the "Guarantor" given that, when the parties agreed to the terms of the Parent Guaranty in January of 2005, TPVI did not

---

[13] *See also Gruppo, Levey & Co. v. ICOM Info. & Commc'ns*, 2003 WL 22283812, at *2 (S.D.N.Y. 2003) ("Although there is some dispute between the parties as to the meaning and purpose of the memorandum calculating fees, if the memorandum has the meaning and purpose suggested by [the plaintiff], it would satisfy the statute of frauds when combined with [the defendant's e-mail] response.  Whether or not the memorandum has the meaning proposed by [the plaintiff] is a question of fact for the jury to decide."), *aff'd*, 126 Fed. Appx. 45 (2d Cir. 2005) (summary order).

even exist. Accordingly, there could only have been one parent company: Technip S.A. *See Matcon, Inc.*, 1998 WL 28068, at *5 (citing decision from Justice Cardozo explaining that "the sufficiency of the writing or writings must be determined with reference to the surrounding circumstances and facts"); *see also Michael Kors Co. v. Compagnia Internazionale Abbigliamento S.p.A.*, 1996 WL 509725, at *5-6 (S.D.N.Y. 1996) (denying the defendant-guarantor's motion for summary judgment, holding that the scope of the obligations guaranteed could be reasonably inferred from handwritten notation).[14]

In sum, the only argument that is implausible—and certainly inappropriate for 12(b)(6) resolution—is Technip's post-lawsuit contention that contrary to its written representations to HOVENSA, its execution of the Agreements containing the Parent Guaranty, and its customary business practice, it never agreed to or intended to be bound by the Parent Guaranty. Technip S.A.'s motion to dismiss should be denied.

> ### b.    Technip S.A. is estopped to deny the Parent Guaranty's enforceability.

Under New York law, promissory estoppel as a defense to the Statute of Frauds has three elements: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an unconscionable injury sustained by the party asserting estoppel. *See, e.g., Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995). Facts supporting each of these elements have been pleaded.

HOVENSA pleaded that Technip S.A. not only promised to provide the Parent

---

[14] Technip also argues that HOVENSA's failure to send a separate demand letter to Technip S.A. suggests that HOVENSA did not believe that Technip S.A. had guaranteed the contractual obligations. Technip S.A. was, in fact, involved in the parties' presuit dispute resolution discussions. The unsuccessful dispute resolution meeting in July 2007 was attended by Etienne Gory, the Technip Italy executive who signed the Letters of Intent *on behalf of Technip S.A.* Further, HOVENSA understood that any demand on Technip S.A. was futile, having been told during other discussions that the issues had been escalated to Technip S.A.'s headquarters and that Technip S.A. would not commit any additional money to insure performance of the project. Moreover, Technip's reliance on *Martin Roofing, Inc. v. Goldstein*, 60 N.Y.2d 262, 265-66 (1983) to criticize the lack of a separate demand on Technip S.A. is disingenuous. In that case, the plaintiff obtained a default judgment against its obligor and, afterwards, sued the defendant as alleged guarantor based on a verbal promise. *See id.* at 264. The court did not suggest that the plaintiff's failure to previously assert a claim against the defendant undermined its guaranty claim but, instead, that it contravened the plaintiff's argument on appeal that the defendant was actually a primary obligor to the plaintiff, and thus, that the Statute of Frauds was inapplicable. *See id.* at 265-66.

D3C329AD97B7F700: 0005

Guaranty, but agreed to its specific terms. *See supra* Part III.B.1.a. HOVENSA also pleaded facts demonstrating that it was foreseeable that HOVENSA would reasonably rely on the promise to provide a Parent Guaranty. Not only is Technip S.A.'s guaranty an express condition of the Agreements, (*see* Ex. I, Recital C), it is inconceivable that HOVENSA would go forward with a $127 million dollar deal if it believed that Technip S.A. had backed out of the Parent Guaranty at the last minute—especially under Technip's theory that HOVENSA was contracting with a temporary, likely insolvent, entity. Finally, HOVENSA has pleaded facts demonstrating an unconscionable injury. Despite Hovensa's being owed millions under the Construction Agreement, both Technip Italy and Technip S.A. are trying to shirk their responsibilities under that Agreement and leave HOVENSA with only a claim against a judgment-proof defendant. *See Dean Witter Reynolds, Inc. v. Cont'l Cas. Co.*, 897 F. Supp. 142, 143 (S.D.N.Y. 1995) (evidence supported jury's promissory estoppel finding when it showed that defendant made a commitment to buy bonds for plaintiff, plaintiff reasonably relied on the promise, and plaintiff spent $7 million which was an unconscionable loss), *aff'd*, 101 F.3d 683 (2d Cir. 1996). The facts pleaded more than raise the defense of promissory estoppel. *See LaSalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.*, 2003 WL 21671812, *7 (S.D.N.Y. 2003) (holding that complaint could not be dismissed without allowing party the opportunity to develop facts showing elements of promissory estoppel); *Buddman Distribs., Inc. v. Labatt Importers, Inc.*, 458 N.Y.S.2d 395, 397 (App. Div. 1982) ("[W]hether the circumstances are so egregious as to render it unconscionable to permit the defendant to invoke the statute of frauds . . . should not be determined on the pleadings, but should await a full determination of the facts upon the trial.").

**2.    HOVENSA's well-founded allegations demonstrate Technip Italy's liability for breaches of both the E&P and the Construction Agreements.**

HOVENSA has pleaded that Technip Italy is liable under the Construction Agreement, which was signed by TPVI as Technip Italy's agent. (Technip Italy does not dispute that it can be liable for its breaches of the E&P Agreement.) Under well established New York law, one

21

corporation may bind another to a contract under traditional principles of agency, even though the signatory is not identified in the contract as an agent. *See Kane v. Rodgers*, 250 N.Y.S.2d 674, 674 (App. Div.), *aff'd*, 15 N.Y.2d 544 (1964); *Teevee Toons, Inc.*, 2002 WL 498627 at *5; *Royal Indus. Ltd.*, 926 F. Supp. at 413; *accord* RESTATEMENT (SECOND) OF THE LAW OF AGENCY § 149 (1958) ("A disclosed or partially disclosed principal is subject to liability upon an authorized contract in writing . . . although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties.")[15]

The cases cited by Technip—none of which are Rule 12(b)(6) cases—are not to the contrary. None involve a principal that negotiated and retained complete responsibility for a contract and an agent that is merely a temporary, assetless, last-minute creation.[16] Nor do the integration clauses preclude HOVENSA's claim as Technip alleges. The integration clauses merely bar any substantive obligations inconsistent with those under the Agreements, not claims against the real party in interest. Here, the Agreements' unitary nature and references in the Appendices to Technip Italy demonstrate Technip Italy's responsibilities for the entire project. Thus, HOVENSA has adequately pleaded that TPVI signed the Construction Agreement as agent of Technip Italy.[17]

---

[15] *See also Oy Noresin AB v. ICC Indus., Inc.*, 1991 WL 161367, at *1-2 (S.D.N.Y. 1991) (denying Rule 12(b)(6) motion to dismiss breach of contract claim against non-signatory defendant, explaining that "a parent corporation may become a party to its subsidiary's contract under an agency theory if the parent's conduct manifests an intent to be bound by the contract"); *RUS, Inc. v. Bay Indus., Inc.*, 2004 WL 1240578, at *12-14, 20-21 (S.D.N.Y. 2004) (entering judgment based on jury verdict under similar agency theory), *aff'd sub nom. Recticel Foam Corp. v. Bay Indus., Inc.*, 128 Fed. Appx. 798 (2d Cir. 2005).

[16] *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l*, 758 F. Supp. 908, 919-20 (S.D.N.Y. 1991) (alleged agent operated international franchise network); *Renel Constr. Inc. v. Brooklyn Coop. Meat Dist. Ctr. Inc.*, 399 N.Y.S.2d 429, 430-31 (App. Div. 1977) (alleged agent was lessee of property from city), *aff'd*, 46 N.Y.2d 859 (1979); *see also Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414 (S.D.N.Y. 2007) (agent not acting for principal who did not own diamond at issue).

[17] Characteristic of Technip's arguments in this regard, Technip focuses on a single clause in the Agreements and argues that because each Agreement refers to "affiliated companies," two companies were always envisioned so HOVENSA always knew that Technip Italy would not perform the construction work. While the Agreements contain such a reference, and other companies sometimes had affiliates (U.S.V.I.-based or not) perform work, other portions of the Agreements and the facts surrounding their execution demonstrate without a doubt that Technip Italy would be responsible for the entire project, including construction. *See supra* Part III.A. Indeed, Technip Italy had specifically

### 3. HOVENSA has stated a valid claim against Technip Italy for failure to provide an enforceable parent guaranty.

Based on Technip S.A.'s current denial that it agreed to the Parent Guaranty, HOVENSA has pleaded an alternative claim against Technip Italy for breach of its agreement to provide a guaranty from its parent company. (1st Am. Cplt. ¶¶ 47, 72-76.) HOVENSA awarded a $127 million contract to Technip Italy based upon, among other things, Technip Italy's agreement to provide a parent company guaranty. This agreement is evidenced in the Parent Guaranty itself. (Ex. I, Recital C.) In a blatant game of "gotcha," Technip Italy now argues that its own failure to fill in certain blanks constitutes a waiver by HOVENSA of the requirement that Technip Italy provide an enforceable Parent Guaranty. However, Technip Italy has not produced any evidence that HOVENSA ever intended to relinquish its right to a Parent Guaranty, and even if it had, whether waiver occurred would be a question for the jury, not one to be resolved on a Rule 12(b)(6) motion to dismiss. *See, e.g., Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 802 N.Y.S.2d 17, 21 (App. Div. 2005) ("Waiver is the intentional relinquishment of a known right . . . . Whether or not the intent existed is generally a question of fact."), *aff'd as modified*, 7 N.Y.3d 96 (2006).

### C. Technip S.A.'s Rule 12(b)(2) motion to dismiss should be denied because, at a minimum, there is prima facie evidence of Technip S.A.'s consent to jurisdiction.

When responding to a pre-discovery Rule 12(b)(2) motion on the basis of the pleadings and documents submitted by the parties, rather than a complete evidentiary hearing, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The sole basis for Technip S.A.'s pre-discovery challenge to personal jurisdiction is its contention that blanks in the Parent Guaranty render it—and Technip S.A.'s corresponding consent to jurisdiction through the exclusive forum selection clause—unenforceable as a matter of law. This contention is foreclosed by multiple writings, signed by persons with actual or apparent

---

inquired whether U.S.V.I. law required it to create a U.S.V.I. entity and was informed that it could simply acquire a U.S.V.I. business license.

D3C329AD97B7F700: 0005

authority to bind Technip S.A., that evidence its assent to the terms of the Parent Guaranty. *See supra* Part III.B.1.a. Moreover, to the extent that Technip S.A. contends that it did not intend to be bound by the Parent Guaranty despite its written representations to the contrary, this contention both raises an issue of fact and likely entitles HOVENSA to amend its pleadings to assert a claim for fraudulent inducement.

The Court need not resolve the Parent Guaranty's enforceability in order to exercise jurisdiction over Technip S.A. The January 24, 2005 e-mail alone shows that Technip S.A. agreed to resolve disputes over the Parent Guaranty in this Court. *Cf. Bitúmenes Orinoco, S.A. v. N.B. Power Holding Corp.*, 2007 WL 485617, at *11 n.10 (S.D.N.Y. 2007) (addressing similar e-mail exchange involving arbitration clause and holding it was sufficient written agreement to arbitrate). And even without this explicit agreement, Technip S.A. should be bound by the forum selection clauses of the E&P and Construction Agreements because it is so "closely related" to the dispute that it was readily foreseeable to Technip S.A. that it would be bound by its subsidiary's agreed-upon forum. *See, e.g., Nanopierce Techs., Inc. v. Southridge Cap. Mgmt., LLC*, 2003 WL 22882137, at *5-6 (S.D.N.Y. 2003). Unlike the two cases cited by Technip that involved actual "unsigned" contracts, this case involves far more than a plaintiff's "bald allegation that defendants consented to this forum selection provision." *Alpi USA, Inc. v. D&F Fashion Int'l Gemelli*, 2007 WL 942096, at *3 (S.D.N.Y. 2007); *cf. ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F. Supp. 2d 274, 277 (S.D.N.Y. 2000). Here there is (1) an explicit, written agreement to the forum selection clause by a representative of Technip; (2) inclusion of the Parent Guaranty Agreement in both the E&P and Construction Agreements executed by the same Technip representatives who had executed the Letters of Intent on behalf of Technip S.A. and/or "Technip Corporation"; (3) initialing of the Parent Guaranty Agreement to the Construction Agreement by a representative of Technip; and (4) Technip S.A.'s unequivocal admission that it routinely provides such parent company guarantees in the "normal course of the Group's business."

In the alternative, given the intertwining of the ultimate issue against Technip S.A. and

the issue of jurisdiction, resolution of the Rule 12(b)(2) motion should be deferred until discovery is conducted.    At a minimum, the current evidence provides a credible basis to believe that Technip S.A. entered into an enforceable contract to guarantee the performance and obligations of the E&P and Construction Agreements.    HOVENSA should be permitted to conduct discovery on the jurisdictional issues, including whether any internal Technip memoranda satisfy the Statute of Frauds, *see, e.g., WPP Group USA, Inc. v. Interpublic Group of Cos., Inc.*, 644 N.Y.S.2d 205, 206 (App. Div. 1996), and the authority of Technip representatives such as Gory, Greco, and Mespoulhes.

## IV. CONCLUSION

For the foregoing reasons, HOVENSA respectfully requests that Technip's motions to dismiss pursuant to Rule 12(b)(7), 12(b)(6), and 12(b)(2) be denied.    HOVENSA respectfully requests such further relief to which it may be entitled.

D3C329AD97B7F700: 0005

Dated:    New York, New York          Respectfully submitted,
          July 1, 2008

                                      By:  *Gabriel Del Virginia / by permission*  *GBS*
                                      _____
                                      Gabriel Del Virginia
                                      LAW OFFICES OF GABRIEL DEL VIRGINIA
                                      641 Lexington Avenue, 21st Floor
                                      New York, NY 10022
                                      Telephone: (212) 371-5478
                                      Facsimile (212) 371-0460

                                      ATTORNEYS FOR PLAINTIFF
                                      HOVENSA L.L.C.

OF COUNSEL:

GEORGE T. SHIPLEY
TEXAS BAR NO. 18267100
FEDERAL I.D. NO. 2118
JONATHAN B. SMITH
TEXAS BAR NO. 24013528
Shipley Snell Montgomery LLP
4600 FIRST CITY TOWER
1001 FANNIN
HOUSTON, TX 77002
TELEPHONE:  (713) 652-5920
FACSIMILE:  (713) 652-3057


To:    Christopher Paparella
       John Fellas
       Hagit Elul
       HUGHES HUBBARD & REED LLP
       One Battery Park Plaza
       New York, NY 10004-1482
       (212) 837-6000

       *Attorneys for Defendants*
       *Technip Italy S.p.A. and Technip S.A.*

D3C329AD97B7F700: 0005

# EXHIBIT A

# Annual and
# Sustainable Development Report
# 2005



Technip



# 2005 in Review

## January

■ Technip is awarded the Ticonderoga subsea flowline installation contract by Kerr-McGee Oil & Gas Corp., a wholly-owned affiliate of Kerr-McGee Corp. The Ticonderoga production will be tied back to the Constitution Spar.

■ Technip, leader in a joint venture with Zachry Construction Corporation and Saipem, is awarded by Freeport LNG Development an engineering, procurement and construction (EPC) contract for a new Liquefied Natural Gas receiving terminal to be located in Quintana Island near Freeport, Texas (USA).

## February

■ Technip is awarded an engineering, procurement, installation and commissioning (EPCI) contract by Caledonia E.U. Limited for the development of the Johnston field in the Southern part of the North Sea. The contract, valued at around £7 million (€10 million) requires the J4 production well to be tied back to the existing Johnston subsea manifold, which is located 400km South East of Aberdeen.

■ Technip is awarded a contract by Murphy Oil Corporation, for the engineering, construction and installation of a Spar floating production platform complete with topsides facilities, hull, mooring system and riser/wellhead systems for the Kikeh Area Development located in 1,330m water depth offshore Sabah, Malaysia. Kikeh will be the first deepwater development in Malaysia.

■ Technip is awarded by Canadian Natural Resources Limited (Canadian Natural) two contracts worth approximately CAD 1,070 million (€700 million) for upgrading facilities and a hydrogen unit for the Horizon Oil Sands Project located 75km northwest of Fort McMurray, in Northern Alberta, Canada.

## March

■ Technip is awarded by NAFTEC, Algeria's National Oil Refining Company, an engineering consultancy contract worth approximately €14 million for the revamping and expansion of their refinery in Arzew (Algeria). Refinery modernization covers the overall instrumentation and electrical systems. The expansion aims at improving fuel specification in line with 2009 European regulations.

■ Technip, in association with Subsea 7, is awarded by Petroleo Brasileiro SA (Petrobras) an engineering, procurement, installation and construction contract worth around US $500 million (Technip share: approximately US $350 million). The contract is for the deepwater Roncador subsea field development offshore Brazil.

■ Saudi Aramco awards a contract to the consortium of Technip and Bechtel for a grassroots gas plant as part of the Khursaniyah, Fadhli and Abu Hadiyah hydrocarbon field development program located in Saudi Arabia.

■ Technip is awarded, by Hovensa, a lump sum turnkey contract for a new hydrotreating unit to be located at its refinery in St. Croix, US Virgin Islands.

## April

■ Technip is awarded by Norsk Hydro two engineering, procurement, installation and commissioning (EPIC) contracts worth around €147 million (NOK 1.2 billion) combined, for tie-ins from Fram East field to Troll C and from Vilje to Alvheim, on the Norwegian Continental Shelf. The contracts include engineering, fabrication, installation and pre-commissioning of subsea umbilicals, risers and flowlines, tie-ins, manifold installation and subsea equipment protection work.

CONSOLIDATED FINANCIAL STATEMENTS ❮

### Note 2 – Changes in Scope of Consolidation

*Year Ended December 31, 2005*
In 2005, no significant change in scope of consolidation has occurred. Only three entities entered the consolidation scope, Technip South Africa (subsidiary controlled at 51%), Technip Marine Sdn. Bhd (subsidiary controlled at 90%) and Technipetrol Hellas (subsidiary controlled at 99%). 2005 has also been characterized by the closure of pharmaceutical activities in U.S.A. through the liquidation in progress of Technip BioPharm at the end of July 2005, the disposal of Technip Engineering Brunei on September 30, 2005 and the sale of Technip Portugal to its management at the end of December 2005, without any significant impact on net income from continuing operations.

Over the year 2005, new legal entities have been created to support contracts in joint ventures: CTJV and CTEP (Qatargas 2) in Qatar, CTJV and CTEP (Rasgas 3) also in Qatar, Yemgas FZCO in Yemen, Technip Consortium (Dung Quat) in Vietnam, HT JV (Koniambo) in New Caledonia and TPVI (Hovensa) in the U.S. Virgin Islands.

*Year Ended December 31, 2004*
The following events occurred in 2004:
· The disposals of EHR and IG Spa. The German company, EHR, was sold on April 7, 2004 for € 12.2 million. The net consolidated gain on EHR disposal was of € 2.3 million. The Italian company, IG Spa, was sold on April 3,

2004 for € 2.0 million. The net consolidated gain on IG Spa disposal was of € 0.7 million. As per each disposal agreement, the companies EHR and IG Spa have been considered as sold as of January 1, 2004.
· The disposal of 75% of KTI Spa shares to KTI employees in November 2004, with a retrospective effect as of January 1, 2004. No gain has been generated by this transaction. Following this part disposal, the remaining 25% still under Company control is consolidated using the equity method for the year ended December 31, 2004.
· As the Group transferred its unstrategic operations, it also sold assets of Technip Offshore Moorings Inc. Company at their book value, at the end of the year 2004.

### Note 3 – Segment Information

The primary segment-reporting format of the Group Technip is determined to be business segment. Secondary information is reported geographically.

*(a) Information by Business Segment*
Business Segments
In order to improve the follow-up of its operating performances, the Group organized the reporting of its operations into five segments:
· The SURF segment (Subsea Umbilicals, Risers and Flowlines), which includes the manufacturing, the supply and the installation of sub-marine equipments.

· The Facilities segment, which includes the fabrication of floaters, fixed platforms and topsides.
· The Onshore Downstream segment, which comprises all business units in charge of engineering and construction of petrochemical and refining units as well as upstream facilities, including gas treatment units LNG facilities and onshore pipelines.
· The Industries segment, which is devoted to engineering and construction of non-oil related facilities, such as pharmaceutical or chemical units, power plants, cement factories, industrial buildings and infrastructures.
· The Corporate segment, which comprises the Holding activities, the reinvoicing of group services, management fees, EDP services and reinsurance activities.
The segment result disclosed by Technip in its business segment information is the "Income / (loss) from Operations".

Consequently, the segment result does not include financial income and expenses (except financial result on contracts), income tax expense and the share of income / (loss) of associates accounted for using the equity method. Segment assets do not include asset items related to the latter, such as income tax assets. Similarly, segment liabilities do not include liability items that are not connected to segment result, such as current and deferred income tax liabilities.



**CONSOLIDATED FINANCIAL STATEMENTS** ‹

**Note 35 – Main Consolidated Companies and Equity Associates**

Consolidated affiliates close their accounts as of December 31, excepting the following entities: Technip KT India, Technip India, and Nargan with a closing date on March 31 and Technip South Africa on June 30. These previous subsidiaries perform a complete and audited closing on December 31.

The following tables summarize the main consolidated companies included in the consolidation scope of Technip as of December 31, 2005, their location and their percentage of control:

| Fully Consolidated Companies | Country | December 31, 2005 % Control |
|---|---|---|
| Technip | France | Consolidating company |
| Technip France | France | 100% |
| Technip Eurocash | France | 100% |
| Technip Italy | Italy | 100% |
| TPL-Tecnologie Progetti Lavori Spa | Italy | 100% |
| TPG U.K. | United Kingdom | 100% |
| Technip TPS | France | 100% |
| Technip Iberia | Spain | 100% |
| S.C.I. CB3 Défense | France | 100% |
| Technip Overseas | Panama | 100% |
| Technip Benelux NV | Belgium | 100% |
| Technip Capital | Belgium | 100% |
| ABAY Engineering | Belgium | 100% |
| Technip Far East | Malaysia | 100% |
| Technip International AG | Switzerland | 100% |
| TTIL SNC (MIDOR) | France | 100% |
| Technip KT India | India | 100% |
| Technip Upstream Management Inc. / Technip Upstream Services Inc. / Technip Upstream Houston Inc. | U.S.A. | 100% |
| Technip U.S.A. | U.S.A. | 100% |
| Technip Benelux BV | Netherlands | 100% |
| Technip Americas | U.S.A. | 100% |
| Technip Holding Benelux BV | Netherlands | 100% |
| Technip Germany | Germany | 100% |
| Technip Seiffert | Germany | 100% |
| Technip Singapore | Singapore | 100% |
| Technip Middle East | United Arab Emirates | 100% |
| Technip Engenharia | Brazil | 100% |
| Citex | France | 100% |
| Eurobatch | France | 100% |
| SNPE Ingénierie Défense | France | 100% |
| Seal Engineering | France | 100% |
| Cofri | France | 100% |
| Clecel | France | 100% |
| Technipnet BV | Netherlands | 100% |
| Technip Nouvelle-Calédonie | New Caledonia | 100% |
| Engineering Re | Switzerland | 100% |
| Technip Bolivar | Venezuela | 100% |
| Technip Oil & Gas BV | Netherlands | 100% |



| Fully Consolidated Companies | Country | December 31, 2005 % Control |
|---|---|---|
| Technip-Coflexip Engineering Consultant (Shanghai) | China | 100% |
| Technipetrol Hellas S.A. | Greece | 99% |
| Technip Marine (M) Sdn. Bhd. | Malaysia | 90.40% |
| PT Technip Indonesia | Indonesia | 90% |
| Technip BioPharm | U.S.A. | 85% |
| Technip CIS | Russia | 70% |
| Technip Tianchen | China | 60% |
| Technip Engineering (Thailand) | Thailand | 49% |
| TPG (M) | Malaysia | 44.10% |
| Technip Angola | Angola | 60% |
| Technip Saudi Arabia | Saudi Arabia | 40% |
| Inversiones Dinsa / DITECH | Venezuela | 20% |
| Technip Offshore International | France | 100% |
| Flexi France | France | 100% |
| Middle East Projects International (Technip MEPI ex-Cofleximmo) | France | 100% |
| Technip Marine | France | 100% |
| Angoflex | France | 100% |
| Coflexip Développement | France | 100% |
| Technip Offshore N.V. | Netherlands | 100% |
| Technip Offshore Contracting BV | Netherlands | 100% |
| Technip Offshore Holdings Ltd. | United Kingdom | 100% |
| Technip Offshore U.K. Ltd. | United Kingdom | 100% |
| Technip Ships One Ltd. | United Kingdom | 100% |
| Technip Ships Three Ltd. | United Kingdom | 100% |
| Technip-Coflexip U.K. Holdings Ltd. | United Kingdom | 100% |
| Coflexip U.K. Ltd. | United Kingdom | 100% |
| Perry Slingsby Systems Ltd. | United Kingdom | 100% |
| DUCO Ltd. | United Kingdom | 100% |
| Genesis Oil and Gas Consultants Ltd. | United Kingdom | 100% |
| Technip Offshore Norge AS | Norway | 100% |
| Technip-Coflexip Norge AS | Norway | 100% |
| Coflexip Stena Offshore AS | Norway | 100% |
| Technip-Coflexip U.S.A. Holdings Inc. | U.S.A. | 100% |
| R.J. Brown Deepwater Inc. | U.S.A. | 100% |
| DUCO Inc. | U.S.A. | 100% |
| Coflexip Maritime Inc. | U.S.A. | 100% |
| Technip Offshore Inc. | U.S.A. | 100% |
| Technip Offshore Moorings Inc. | U.S.A. | 100% |
| Genesis Oil and Gas Consultants Inc. | U.S.A. | 100% |
| Gulf Marine Fabricators Inc. | U.S.A. | 100% |
| Perry Slingsby Systems Inc. | U.S.A. | 100% |
| Technip Offshore Canada Limited | Canada | 100% |
| Stena Offshore Jersey Ltd. | Jersey | 100% |
| Coflexip Stena Offshore Mauritius Ltd. | Mauritius | 100% |
| Technip Offshore Nigeria Ltd. | Nigeria | 100% |
| Angoflex Ltda | Angola | 70% |
| Technip Maritime Overseas Ltd. (TMOL) | Bahamas | 100% |
| Flexservice N.V. | Dutch Antilles | 100% |

**CONSOLIDATED FINANCIAL STATEMENTS** ❮

| Fully Consolidated Companies | Country | December 31, 2005 % Control |
|---|---|---|
| Sunflex Offshore N.V. | Dutch Antilles | 100% |
| Brasflex Tubos Flexiveis Ltda | Brazil | 100% |
| Brasflex Overseas Inc. | Virgin Islands | 100% |
| TPVI Ltd. (Hovensa) | Virgin Islands, U.S.A. | 100% |
| Sea Oil Marine Services Inc. | Cayman Islands, British Antilles | 100% |
| Flexibras Tubos Flexiveis Ltda | Brazil | 100% |
| Technip Oceania Pty Ltd. | Australia | 100% |
| Technip CSO Australia Pty Ltd. | Australia | 100% |
| Technip CSO Oceania Pty Ltd. | Australia | 100% |
| Technip CSO Oil and Gas Pty Ltd. | Australia | 100% |
| Genesis Oil and Gas Consultants Pty Ltd. | Australia | 100% |
| South East Asia Marine Engineering & Construction Ltd. | India | 78.20% |
| Technip Offshore Finland OY | Finland | 100% |
| Coflexip Singapore Pte Ltd. | Singapore | 100% |

| Consolidated Companies Under Proportionate Method | Country | December 31, 2005 % Control |
|---|---|---|
| TSS Dalia SNC | France | 55% |
| Technip South Africa (Pty) Ltd. | South Africa | 51% |
| Bechtel Technip Goro LLC | U.S.A. | 50% |
| BRI-Technip (Q-CHEM) | Qatar | 50% |
| CTME FZCO (Qatargaz) | United Arab Emirates | 50% |
| SPF–TKP Ornifpro SNC / SP–TKP Fertilizer | France / Italy | 50% |
| ProTek Germany GmbH (ex Technip Anlagenbau) | Germany | 50% |
| Technip India | India | 50% |
| UCI FZC (Amenam) | United Arab Emirates | 50% |
| Dalia Floater Angola | France | 55% |
| Tipiel | Colombia | 44.10% |
| Technip Zachry Saipem LNG LP (Freeport) | U.S.A. | 43% |
| CTEP FZCO (Qatargaz II) | United Arab Emirates | 40% |
| Consorcio Contrina SNC/CC(S)V | France / Venezuela | 34.40% |
| Saibos Akogep SNC | France | 30% |
| TSKJ / TSKJ II / LNG (Madecos) | Portugal | 25% |
| FSTP PTE Ltd. (P51/P52) | Singapore | 25% |
| FSTP Brasil Ltda (P51/P52) | Brazil | 25% |
| Yemgas FZCO | United Arab Emirates | 33.33% |
| Yemen Coordination Services | France | 33.33% |
| CTEP FZCO (Rasgaz III) | United Arab Emirates | 40% |
| Deep Oil Technology Inc. | U.S.A. | 50% |
| Spars International Inc. | U.S.A. | 50% |
| PI Rauma OY | Finland | 50% |

| Consolidated Companies Under Equity Method | Country | December 31, 2005 % Control |
|---|---|---|
| Technip KTI SpA | Italy | 25% |
| Nargan | Iran | 20% |



Part II

# PARENT COMPANY FINANCIAL STATEMENTS AS OF DECEMBER 31, 2005

## 1. PRELIMINARY NOTE

The statutory financial statements of the parent company Technip hereafter summarized disclose the main points of the financial statement and the operating results.

The main activity of Technip consists in holding interests in affiliates, receiving dividends, centralizing and reinvoicing both management fees and other organizational costs, such as insurance, information systems costs and financing costs and guarantees.

Following are the key events in 2005:
· The 4-for-1 share split and consequently, the multiplication by 4 of the number of shares on the decision of the Combined Shareholders' Meeting of April 29, 2005.
· The reclassification of a part of the special reserve on long-term profits in ordinary reserve for €200 million, with an additional tax expense amounting to 2.5% of the total transfer.
· The disposal of the affiliate Technip Portugal for €1.8 million, resulting in a €3.7 million net loss before reversal of the investment depreciation for €2.9 million accrued over the previous years.

· Technip has maintained its repurchasing program on OCEANE convertible bonds issued in January 2002. The total nominal amount repurchased on this bond loan decreased from €632.2 million as of January 1, 2005 to €612.2 million as of December 31, 2005. The redemption premium standed at €72.3 million as of December 31, 2005, versus €74.7 million as of December 31, 2004.

The complete version of the parent company financial statements is available at the Company's headquarters.

# EXHIBIT B

As filed with the Securities and Exchange Commission on June 20, 2007

# SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 20-F

☐ REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF
THE SECURITIES EXCHANGE ACT OF 1934

OR

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934**
**For the fiscal year ended December 31, 2006**

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from            to

☐ SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934

Date of event requiring this shell company report _____

Commission file number: 1-15234

# TECHNIP

*(Exact name of registrant as specified in its charter)*

| Not Applicable | France |
|---|---|
| *(Translation of registrant's name into English)* | *(Jurisdiction of incorporation or organization)* |

**6-8 allée de l'Arche,
Faubourg de l'Arche — ZAC Danton, 92400 Courbevoie
(telephone: +33-1-4778-2121)**
*(Address of principal executive offices)*

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of each class: | Name of each exchange on which registered: |
|---|---|
| American Depositary Shares, each representing one Ordinary Share[1][2] | New York Stock Exchange |
| Ordinary Shares[1][2] | New York Stock Exchange |

(1) Listed, not for trading or quotation purposes, but only in connection with the registration of the American Depositary Shares pursuant to the requirements of the Securities and Exchange Commission.

(2) On April 29, 2005, Technip's extraordinary meeting of shareholders approved a one-for-four share split with the corresponding division of the nominal share value, effective May 13, 2005. As of May 13, 2005, the number of outstanding shares was 96,522,328 with a nominal value of €0.7625. Simultaneously with the share split, our ADS-to-share ratio changed from four-to-one to one-to-one.

Securities registered or to be registered pursuant to Section 12(g) of the Act:
None

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act:
None

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report:

**Ordinary Shares, nominal value €0.7625 per share: 106,117,174[2]**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
Yes ☑          No ☐

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.
Yes ☐          **No ☑**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days:
Yes ☑          No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):
Large accelerated filer ☑          Accelerated filer ☐          Non-accelerated filer ☐

Indicate by check mark which financial statement item the registrant has elected to follow:
Item 17 ☐          **Item 18 ☑**

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes ☐          No ☑

### Description of Our Operations

#### Contract Project Management

Our project contractor activities expose us contractually to significant construction and cash flow risks. To mitigate these risks, we have developed stringent risk controls, including selectivity as to the projects we bid on, and implemented a disciplined management of cash flows, both on a contract-by-contract and on a global basis. We believe that our past ability to manage these risks has been a key factor in our ability to successfully provide turnkey solutions for our clients.

#### Turnkey Projects

Our clients are generally not specialized in construction and are primarily interested in obtaining the timely delivery of a completed and operational industrial complex without significant involvement on their part. Turnkey projects allow our clients to achieve this result by delegating to the turnkey contractor the responsibility for designing and executing major facilities of an industrial complex within an agreed budget and timetable. An increasing number of companies offering turnkey services competing for one project have become involved in the offshore production area where the unit size of contracts has grown significantly. The 1995 N'Kossa field development project in Congo's territorial waters, for example, generated 50 separate turnkey contracts. In recent calls to bid, it has become commonplace for Offshore developments to divide a project into drastically fewer contracts, such as in the case of the Yemen LNG project, awarded to our Yemgas JV with KBR and JGC in 2005, or even to award the project in its entirety to only one contractor or joint venture.

As the contractor of a turnkey project, we are responsible for all aspects of the project. We start with the design of the facility, then procure all equipment and oversee all stages of construction. We complete our engagement by delivery of the facility to our client in a "ready to use" state. We usually guarantee completion by a scheduled acceptance date and/or achievement of some acceptance and performance testing levels. The client usually retains responsibility for obtaining all necessary construction and operating permits and for operating the facility after delivery.

Substantially all of our turnkey projects are under "lump-sum" contracts that fix an all inclusive lump-sum price for the project. Lump-sum contracts have several advantages for our clients: the delivery price is known in advance and in most cases cost overruns are absorbed by the project contractors and the typical penalty structure encourages timely delivery. From our point of view, while lump-sum contracts entail business and financial risks, notably by requiring us to absorb some of the cost overruns, they also allow us to appropriate any of the three types of cost savings that we generate during the life of the project: technical studies, the procurement of equipment and the management of worksites. Because of these business and financial risks, generally, we cannot estimate the margins of our lump-sum turnkey contracts accurately until a substantial portion of the work has been completed.

#### Progressive Lump-Sum Turnkey Contract

In today's volatile raw material cost environment, we are introducing innovative contractual methods designed to reduce risk and costs both for ourselves and our clients. The progressive lump-sum turnkey contract ("LSTK") is a case in point: during the engineering and procurement phases of a project, we work on an open book basis with our clients and apply pre-agreed mark-ups to the costs incurred. This allows us to mitigate price rise risks associated with these project phases and reduce cost contingencies which our client would have to bear. Promptly after the completion of these phases, we close our books and promise to complete the project at a fixed cost at a specified time.

#### "Cost Plus Fee" Contracting

Another type of contractual arrangement common in our industry is "cost plus fee" contracting, or service contracting. Under cost plus fee contracts, the project contractor passes the design, equipment and construction costs on to the customer after adding a predetermined percentage profit margin. Contrary to turnkey projects, the equipment, materials and construction are not paid for through a lump-sum fee. While cost plus fee contracts often contain performance bonuses and penalties, much of the bid negotiation is focused on the percentage profit margin, with relatively little reward to the contractor for efficient project management and relatively little guarantee for its client

such as the risk of equipment failure, work accidents, fire or explosion. These hazards can cause personal injury and loss of life, business interruptions, property and equipment damage, pollution and environmental damage. We may be subject to claims as a result of these hazards. We may also be subject to claims resulting from the subsequent operations of facilities we have designed and/or delivered. Our policy of covering these risks through contractual limitations of liability and indemnities and through insurance may not always be effective. In some of the jurisdictions in which we operate, environmental and workers' compensation liability may be assigned to us as a matter of law. Clients and subcontractors may not have adequate financial resources to meet their indemnity obligations to us. Losses may derive from risks not addressed in our indemnity agreements or insurance policies, or it may no longer be possible to obtain adequate insurance against some risks on commercially reasonable terms. Failure to effectively cover ourselves against engineering and construction industry risks for any of these reasons could expose us to substantial costs and potentially lead to material losses. Additionally, the occurrence of any of these risks could damage our reputation.

We operate in a number of different jurisdictions that have various types of governmental laws and regulations relating to the holding, the discharge and the release of oil, wastes or hazardous substances and to the protection of the environment. Pursuant to these laws and regulations, we could be held liable for remediation of some types of pollution, including the release of oil, hazardous substances and debris or wastes from production, refining or industrial facilities, as well as other assets we own or operate or which are owned or operated by either our customers or our subcontractors. Environmental remediation costs could be significant and cause us to incur a substantial loss.

We could potentially be held liable for releases of fuel oil, hazardous materials and wastes from offshore oil platforms, pipelines, storage tanks and other installations that we have engineered, constructed or installed, or are in the process of so doing.

For all projects, we seek to negotiate our contracts to include a cap for potential environmental damages and we require indemnity agreements from our customers and subcontractors above.

In 2003, we joined the Global Compact program launched by the United Nations, in which businesses commit to respect a set of core values regarding human rights, labor standards, the environment and anti-corruption. At the same time, and within the framework of our business segments, we underscored our determination to contribute to the quest for concrete answers to today's pressing issues of sustainable development, corporate social and civic responsibility, and globalization.

The Group's commitment to sustainable development is an integral part of its strategic orientation and a cornerstone of its corporate mission for the years to come. It expresses itself in our values, giving them substance with the aim of promoting them within our sphere of influence.

*Corporate History*

We were incorporated under French law in 1958 by IFP to develop expertise in engineering and construction services. In 1994, we became a publicly traded company in France when our shareholders conducted a French public and international institutional offering of our shares. In 1999, we carried out a corporate restructuring which transformed us into a pure holding company through the transfer of all of our engineering and construction operations to Technip France, a wholly owned subsidiary. In October 2001, we acquired directly and indirectly 98.36% of the share capital of the offshore engineering and construction group, Coflexip. At the same time, we listed American Depositary Shares on the New York Stock Exchange under the symbol TKP. In July 2003, within the context of the reorganization of the French subsidiaries of the Group, the shareholders of Technip and Coflexip approved the merger of Coflexip into Technip which already held more than 98% of Coflexip's capital following the public offerings launched in July 2001. The shareholders of Coflexip received nine Technip shares for eight Coflexip shares.

The Technip Group is made up of 111 wholly owned subsidiaries and 93 other subsidiaries and affiliates in some 48 countries. Our registered and executive offices are located at 6-8 Allée de l'Arche, Faubourg de l'Arche — ZAC Danton, 92400 Courbevoie, France (telephone: (011-33-1) 4778 2121). For purposes of receiving process in the United States solely with respect to our obligations under the United States Securities Exchange Act of 1934, as

amended, our agent is CT Corporation System, 111 Eighth Avenue, New York, NY, 10011, and the telephone number is (+1-212) 894-8500.

We are organized as a *société anonyme* under French law. Under our articles of association *(statuts)*, our corporate existence expires on April 20, 2057. The duration of our corporate existence may, however, be extended by our shareholders at an extraordinary shareholders' meeting.

We are a multinational group of companies. We own, directly or indirectly, 100% of most of our significant operating subsidiaries' shares and voting rights, which have their own organization and management bodies, and are operated independently in compliance with the laws of their country of incorporation. For a list of our main consolidated subsidiaries, see Note 35 to our Consolidated Financial Statements.

As of December 31, 2006, our organizational chart was as follows:



Following the Board Meeting of April 27, 2007, our organizational chart is as follows:



**Item 4A.   Unresolved Staff Comments**

Not applicable.

**Off-Balance Sheet Financing Arrangements**

In addition to the above-referenced contractual obligations, we have additional contractual and other commitments not necessarily reflected on our consolidated balance sheet, which are summarized in the table below as of December 31, 2006.

| | Total as of year end 2006 | Maturity | | | |
|---|---|---|---|---|---|
| | | 2007 | 2008-2009 | 2010-2011 | Thereafter |
| | | (in millions of Euros) | | | |
| Parent company guarantees . . . . . . . . . . . | 25,766.7 | 5,844.3 | 9,728.8 | 9,312.4 | 881.2 |
| Others commitments given . . . . . . . . . . . | 2,904.4 | 1,131.7 | 856.4 | 901.4 | 14.9 |
| Total commitments given. . . . . . . . . . . . . | 28,671.1 | 6,976.0 | 10,585.2 | 10,213.8 | 896.1 |
| Total commitments received . . . . . . . . . . | 945.8 | 457.4 | 202.4 | 264.8 | 21.2 |

**Guarantees Related to Contracts**

Guarantees related to contracts are mainly made up of bonds which are related to the contract execution issued to the benefit of clients and which are usually not for the full amount of the maximum theoretical contractual liability but are subject to individual negotiation. Bonds issued to the benefit of clients would usually be released partially upon contract payment and delivery of the contract (provisional acceptance by the customer), the remainder being released at the final acceptance by the customer.

When circumstances arise that result in the threat of calling a bond, then we seek to negotiate acceptable alternative arrangements. Bonds are typically called when there is no other remedy acceptable to our customer. Our experience to date has been that bonds are very rarely called. In general, we establish provisions to cover any anticipated loss that could arise from our contractual obligations.

**Parent Guarantees to Clients**

Parent guarantees are given in the normal course of the Group's businesses by Technip SA, Technip Offshore International, Technip Offshore Holdings Ltd. or Technip USA Holdings Inc. to customers to cover the good performance of a contract awarded to one of our subsidiaries. They are generally released at the end of the contract. To date, no parent company guarantee has ever been called. The amount includes the contract part allocated to the Group's joint venture partners and is not reduced according to the project's percentage-of-completion. They are not substracted from the amount of parent company guarantees received from Technip's partners within these joint ventures, whereas Technip issues parent company guarantees in their favor.

**Other Material Financial Elements**

Policies of the Organization of Petroleum Exporting Countries ("OPEC") could affect the investments by our shareholders, and as a consequence some of our operations. Petroleum industry operations and profitability are influenced by many factors some of which our clients cannot control. Prices for crude oil and natural gas, petroleum products and petrochemicals are determined by supply and demand for these commodities. OPEC member countries are typically the world's swing producers of crude oil, and their production levels are a major factor in determining worldwide supply. For example, OPEC's implementation of production cutbacks to eliminate excess supply of crude oil for world markets results in price increases of crude oil.

For information on how ISA may affect our operations or the investments by our shareholders, please see "Item 4. Information on Technip — Segment and Geographical Breakdown of Revenues and Backlog — Special Geographic Considerations".

## NOTES TO THE CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

*B. Bank and Commercial Guarantees*

Commitments given and received are summarized hereafter:

| | 2006 | 2005 | 2004 |
|---|---|---|---|
| | In millions of Euros | | |
| Parent Company Guarantees | 25,766.7 | 23,234.9 | 13,789.9 |
| Other Commitments Given | 2,904.4 | 2,817.0 | 1,418.6 |
| **Total Commitments Given** | **28,671.1** | **26,051.9** | **15,208.5** |
| **Total Commitments Received** | **945.8** | **675.1** | **539.4** |

Parent company guarantees given by Technip SA or its affiliates to clients cover the due and proper performance of the specified construction contracts for which the average expiration period until the release of the commitment guarantees is about five years. The amounts disclosed in the parent company guarantees, which stand at €25.767 billion, also include the contract part allocated to the Group's partners in joint venture and are not reduced according to the projects' percentage of completion. They are not subtracted from the amount of parent company guarantees received from Technip's partners within these joint ventures, whereas Technip issues parent company guarantees in their favor.

The parent company guarantees issued by Technip for contracts outside of a joint-venture framework amount to €9.595 billion as of December 31, 2006.

The following table illustrates the breakdown of these €16.171 billion of parent company guarantees issued by Technip within joint ventures' contracts, according to the Group's percentage of ownership in these joint ventures, as of December 31, 2006.

| | Allocation as per % of Technip's Ownership in Joint Ventures | | | |
|---|---|---|---|---|
| **TOTAL** | Less or equal to 25% | Greater than 25% and less or equal to 40% | Greater than 40% and less or equal to 75% | Greater than 75% and less than 100% |
| | In millions of Euros | | | |
| **16,171.3** | 2,490.3 | 12,236.8 | 1,444.2 | — |

Other commitments given mainly relate to guarantees or counter-guarantees given by banks and insurance companies to various customers in connection with ongoing contracts, in order to secure due and proper performance of the contracts or following the payment of retention guarantees and advance billings.

Commitments received relate mainly to similar guarantees obtained from suppliers or subcontractors in connection with ongoing contracts.

*C. Contingencies: Exceptional Events and Litigation*

The Company is subject to various legal proceedings and claims arising in the normal course of its business. In the management opinion, the probable outcomes of these actions will not materially affect and have not materially affected in a recent past the consolidated financial position, results of operations, or the net assets of the Company and its subsidiaries.

Provisions related to any litigation are recorded, when necessary, under the "Contingencies related to Contracts" line item, disclosed in **Note 25 — Provisions** or in the costs of ongoing contracts.

The main current litigation consists in the following:

**ITP Litigation**

On December 21, 2001, a French company, Interpipe SA (ITP), filed a complaint with the Tribunal de Commerce (Commercial Court) of Versailles against Coflexip, Coflexip Stena Offshore Ltd. and Coflexip Stena Offshore International (respectively renamed Technip France, Technip UK Ltd. and Technip Offshore

# EXHIBIT C



LAWRENCE J. KUPFER
**President and Chief Operating Officer**

February 10, 2005

REPLY TO:
HOVENSA L.L.C.
1 Estate Hope
Christiansted VI 00820-5652

Technip S.A.
Paris, France

      Re:  <u>HOVENSA Low Sulfur Gasoline Hydrotreater Project</u>
             Construction (C) Agreement

Dear Sirs:

      This will indicate HOVENSA L.L.C.'s intent to enter into a contract with Technip Corporation (C Contractor) for construction work on the Low Sulfur Gasoline Hydrotreater Project.

      All work will be performed in accordance with the draft agreements negotiated by the parties and referenced in an emails dated February 10, 2005, from Mr. A. Karp to Mr. G. Sarigiannis.

      The award of these contracts is conditioned upon the parties agreeing, within thirty (30) days, on the final terms of the EP and C Agreements.  The parties will negotiate in good faith to resolve the open items in the draft agreements. Mechanical Completion is to be no later than November 10, 2006.

      If the parties fail to reach agreement within thirty (30) days, this Letter of Intent will be cancelled and there will be no money due Technip by HOVENSA under this Letter of Intent for Construction.

      If the parties reach agreement on the terms of the EP and C Agreements within thirty (30) days from the date of this Letter of Intent, the parties will sign the agreements in the form attached and as agreed on the open items.  The Agreements as signed by the parties will supersede the provisions of this Letter.

      If the Agreements are signed, the lump sum price for the C Work will be $50,000,000.

      If this Letter of Intent is terminated for any reason, C Contractor will if applicable turn over to HOVENSA all work product for which HOVENSA has paid.

      Please indicate your agreement to the terms of this Letter of Intent by signing and returning the enclosed copy of this Letter.

                                  Very truly yours,

                                    Lawrence J. Kupfer
                                    President and Chief
                                    Operating Officer

Agreed to:

TECHNIP Corporation

BY:_____
Name:__NICOLA GRECO__
Title:__C.E.O TECHNIP ITALY__
Date:__2/11/05__

TECHNIP Corporation

BY:_____
Name:__ETIENNE GORY__
Title:__C.E.O. LATIN AMERICA__
Date:__2/11/05__



LAWRENCE J. KUPFER
**President and Chief Operating Officer**

REPLY TO:
HOVENSA L.L.C.
1 Estate Hope
Christiansted VI 00820-5652

February 10, 2005

Technip S.A.
Paris, France

  Re: <u>HOVENSA Low Sulfur Gasoline Hydrotreater Project</u>
     Engineering and Procurement (E&P) Agreement

Dear Sirs:

   This will indicate HOVENSA L.L.C.'s intent to enter into a contract with Technip Corporation (EP Contractor) for engineering and procurement work on the Low Sulfur Gasoline Hydrotreater Project.

   EP Contractor will begin the Work immediately, subject to the limitations in this Letter of Intent. All work will be performed in accordance with the draft agreements negotiated by the parties and referenced in emails dated February 10, 2005, from Mr. A. Karp to Mr. G. Sarigiannis.

   The award of these contracts is conditioned upon the parties agreeing, within thirty (30) days, on the final terms of the EP and C Agreements. The parties will negotiate in good faith to resolve the open items in the draft agreements. Mechanical Completion is to be no later than November 10, 2006.

   If the parties fail to reach agreement within thirty (30) days, this Letter of Intent will be cancelled and EP Contractor will be paid for expenditures incurred for the work it has performed up to the following amounts:

Week 1: $190,000 USD
Week 2: $190,000 USD
Week 3: $190,000 USD
Week 4: $190,000 USD

   If the Agreement is signed within thirty (30) days, any of the above amounts that would have been paid, will be deducted from future payments to Contractor.

   If HOVENSA cancels the project within these thirty (30) days, HOVENSA will pay a cancellation fee (to cancel the Heater, Reactors... purchase orders) of up to $390,000 USD, based upon substantiation of costs to be provided by Technip.

   HOVENSA's maximum obligation under this Letter of Intent will be $1,150,000

   If the parties reach agreement on the terms of the EP and C Agreements within thirty (30) days from the date of this Letter of Intent, the parties will sign the agreements in the form attached and as agreed on the open items. The Agreements as signed by the parties will supersede the provisions of this Letter.

HOVENSA Low Sulfur Gasoline Hydrotreater Project
Engineering and Procurement (E&P) Agreement
Page 2 of 2
February 10, 2005

If the Agreements are signed, the lump sum price for the EP Work will be $77,000,000.

If this Letter of Intent is terminated for any reason, EP Contractor will turn over to HOVENSA all work product for which HOVENSA has paid.

Please indicate your agreement to the terms of this Letter of Intent by signing and returning the enclosed copy of this Letter.

Very truly yours,

Lawrence J. Kupfer
President and Chief
Operating Officer

Agreed to:

TECHNIP Corporation

BY: _____
Name: NICOLA GRECO
Title: C.E.O. TECHNIP ITALY
Date: 2/11/05

TECHNIP Corporation

BY: _____
Name: ETIENNE CORY
Title: C.E.O. LATIN AMERICA
Date: 2/4/05

# EXHIBIT D

# HOVENSA LSG PROJECT

## Letter of Intent: February 10th 2005
## Meeting February 21/22



**HOVENSA**

**LOW SULFUR GASOLINE PROJECT**
**USVI – SAINT CROIX**

**Technip**

# AGENDA

## GENERAL MEETING

**❶** Project execution by Technip Italy

**❷** Project Key personnel, Project Director

**❸** Project Activities for first month

**❹** Road Map to Contract Signature

**❺** Schedule option

## AFTERNOON MEETING

**❻** Kick-off Meeting Plan

**❼** Progress Measurement Procedure

**❽** Plan for soil investigation

**❾** Camp availability

**❿** Others





**LOW SULFUR GASOLINE PROJECT**
**USVI – SAINT CROIX**

2

# Project Execution by Technip Italy

■ BPU single point of responsibility for Latin America and Caribbean area

■ Selection of Operating Units according to:

- Workload situation

- Knowledge of the process technology

- Contract requirements

- Knowledge of the area and local constraints

- Capability to match Project targets

■ Technip Italy proposed as main Operating Center for LSG Project





LOW SULFUR GASOLINE PROJECT
USVI – SAINT CROIX

# Project Execution by Technip Italy

## Overall Organization Chart



LOW SULFUR GASOLINE PROJECT
USVI – SAINT CROIX

# Project Execution by Technip Italy

## Highlights on TPIT Project Execution Plan

- Project activities underway in Paris office with seamless transfer to Rome office

- FEED completion and early purchasing campaign in Rome

- Most of detailed engineering in Rome as well

- Procurement activities managed in Rome with TP USA support as needed

- Relocation of TPIT design specialists to field activities



**Technip**

LOW SULFUR GASOLINE PROJECT
USVI – SAINT CROIX



# Project Activities for first month

■ 90 days look ahead schedule

■ Finalization of long delivery items purchase orders, namely: Centrifugal Compressors, Reactors, Heater, Texas Tower

■ Project Specifications and Standards preparation

■ Kick-off Meeting

■ Project Progress Curves and Invoicing Procedure



**LOW SULFUR GASOLINE PROJECT**
**USVI – SAINT CROIX**



7

# Road Map to Contract Signature

■ Common check of points  of the Contract and Appendixes to be finalized

■ Action by    and    relevant schedule

■ Contract execution: where, when, by whom

**Technip**

**LOW SULFUR GASOLINE PROJECT**
**USVI – SAINT CROIX**

**HOVENSA**

8

# Schedule option

■ 21 months schedule or lower price 22 months option

■ Decision by HOVENSA within ?



**LOW SULFUR GASOLINE PROJECT**
**USVI – SAINT CROIX**



# EXHIBIT E

# LOW SULFUR GASOLINE PROJECT US VI – SAINT CROIX



9-7832 St. Croix- Refinery to E. End
Aerials Only Gallery 508-295-5551(c)

skypic.com



## KICK OFF MEETING
*Rome, March 9 ÷ 11 2005*

*Technip*
**TECHNIP ITALY**

HOVENSA

2

# WELCOME TO PARTICIPANTS AND SAFETY NOTES

*Vincenzo Laganà*

Technip

**TECHNIP ITALY**

# AGENDA

## 1st DAY (Wednesday, 9° March 2005)

- Welcome to participants and Safety notes
- Project Goal
- Introduction of Teams, Mobilization and Offices
- Technip Project Organization
- Hovensa Project Organization
- Contract Scope and Responsibilities
- Coordination Procedures and Communication Protocols
- Summary Project Schedule and 90 Days Schedule Presentation
- Project Execution Plan Guidelines:
  - *Project Strategy and key issues*
  - *Successful Design Execution*
  - *FEED Package Review Plan*
  - *Soil Investigation*
  - *Documentation Review and Acceptance*
  - *Drawings Management*
  - *It Technology and Data Integration*
  - *Document Control*



*Technip*
**TECHNIP ITALY**



3

# AGENDA

## 2nd DAY (Thursday, 10th March 2005)

- HSE Plan Guidelines
- Quality Plan Guidelines
- Construction Plan Guidelines
- Pre-commissioning Plan Guidelines
- Procurement Plan and Material Management:
  - ➔ *Procurement Principles*
  - ➔ *Major Equipment Purchasing Schedule*
  - ➔ *Inspection Activity Plan*
  - ➔ *Expediting Plan*
- Project Control
  - ➔ *Project Planning Presentation*
  - ➔ *WBS & Earned Value Matrix*
- Change Orders and Invoicing
  - ➔ *Change Order Procedure*
  - ➔ *Invoicing Procedure*
  - ➔ *HOVENSA Expenditure Curves*

*Technip*

**TECHNIP ITALY**



4

# AGENDA

## 3rd DAY (Friday, 11th March 2005)

- DD7 Project Review
- Technical Meetings:
    - ➔ Project Engineering Management
    - ➔ Process Review
    - ➔ Compressor and Rotating Equipment
    - ➔ PV&HE (Reactors and Texas Tower)
    - ➔ Heaters
    - ➔ Piping Design
    - ➔ LSG Metallurgy Plant Diagram
    - ➔ Instrumentation and Electrical
- Wrap-up and Close-out

HOVENSA

5

*Technip*

**TECHNIP ITALY**

## PROJECT GOAL

BUILD A GASOLINE HYDROTREATER UNIT AT THE EXISTING HOVENSA SAINT CROIX REFINERY, TO PRODUCE 50,000 BPSD OF LOW SULFUR (20 PPM MAX) GASOLINE, BASED ON EXXON MOBIL SCANFINING PROCESS TECHNOLOGY

HOVENSA

6

*Technip*
**TECHNIP ITALY**

# INTRODUCTION OF TEAMS, MOBILIZATION AND OFFICE

*Vincenzo Laganà*

HOVENSA

7

*Technip*
**TECHNIP ITALY**

# MOBILIZATION STATUS

● Mobilization of Technip resources has started and is in progress in the following areas:

**Project Group**
- Management
- Document Control

**Project Control**
- Overall Project and early activities planning

**Process Design**
- Check of process specifications for critical equipment

**Procurement**
- Requisitioning activities for inquiry for critical items

**Engineering**
- Discipline leaders mobilized

*Technip*
**TECHNIP ITALY**



8



# PROJECT OFFICE LAYOUT



1 – PROJECT DIRECTOR ENG. V. LAGANA'
2 – ENGINEERING MANAGER ENG. R.GIANNINI
3 – SECRETARY MRS. M.MUSCIA
4 – PROJECT ENGINEER ENG. C.SABELLI
4 – PROCUREMENT COORDINATOR MR. G.SELLERI
4 – COST CONTROL COORDINATOR MR. S.VIOLA
5 – PROJECT ENGINEER
6 – PIPING – STRESS – CIVIL
7 - ELECTRICAL

8 - INSTRUMENT
9 – P&I COORDINATOR MR. E.DE LEONIBUS
10 – PROCESS DESIGN
11 – PROCESS MANAGER ENG. G.FICOCCILLI
12 – PLANNING MR. I.JURKOVIC – MRS. V.CILIBERTI
13 – CLIENT OFFICE
14 – CLIENT OFFICE
15 – MEETING ROOM

Technip
TECHNIP ITALY

HOVENSA

10

HOVENSA

11

# TECHNIP PROJECT ORGANIZATION

## *Vincenzo Laganà*

*Technip*
**TECHNIP ITALY**

# TECHNIP PROJECT ORGANIZATION CHART



# CONTRACT SCOPE and RESPONSIBILITIES

## *Vincenzo Laganà*



16

*Technip*
**TECHNIP ITALY**

# CONTRACT SCOPE AND RESPONSIBILITIES

- **Scope of Work**
  Detail Engineering, Material Procurement and Construction of a FCC Gasoline Hydrotreater Unit, having a capacity of 50,000 BPSD

- **Type of contract**
  LSTK for the scope of work up to MC (precommissioning included) + commissioning and start-up services on reimbursable basis + performance tests (included in lumpsum portion)

- **Schedule**
  21 months from L.O.I. ⟶ M.C. within 10th Nov. '06



17

*Technip*
**TECHNIP ITALY**

# CONTRACT SCOPE AND RESPONSIBILITIES

## Scope of Work Highlights (Process and Engineering)

- "Rely upon" data as listed in chapter 10 of appendix A (Scope of Work), corresponding to documents of appendix F (FEED Package). In addition to these, soil data as per appendix N are "rely upon" information

- Maximization of modular approach (or shop assembly)

- Coordination with HOVENSA and with outside Battery Limits Contractor (battery limits, FAT, etc.)

- Permitting (expected local permits are listed in appendix A): Technip Italy to prepare necessary documentation to support HOVENSA to obtain all necessary construction, environmental and buildings permits



18

*Technip*
**TECHNIP ITALY**

## CONTRACT SCOPE AND RESPONSIBILITIES

- 3D CAD Model will be provided by Contractor. Three formal model reviews will be conducted as per point 3.0.6 of "Scope of Work"

- Documents for HOVENSA review listed in appendix A

- "As built" drawings list as fixed in appendix A

- Operating manual to be assembled by HOVENSA. Technip Italy to provide specific documentation for this purpose (see appendix B, point 8.4.7)

- Technip Italy's obligations per discipline to comply with contractual scope of work are listed in appendix A "Scope of Work" (to be reviewed during this kick off meeting)



19

*Technip*

**TECHNIP ITALY**



# CONTRACT SCOPE AND RESPONSIBILITIES

## Scope of Work Highlights (Procurement)

● Technip Italy will perform purchasing, expediting, inspection, shipping and site delivery works for the equipment and material necessary to build the unit

● Approved vendor list to be used for purchasing purposes

● Spare parts for construction/precommissioning/start-up in Technip Italy scope. Two years spare parts recommended list to be provided.

● RoRo dock in HOVENSA premises is available for large equipment off-loading from barge

*Technip*

**TECHNIP ITALY**



20

## CONTRACT SCOPE AND RESPONSIBILITIES

### Scope of Work Highlights (Construction and Precommissioning)

● Technip Italy will provide labor, supervision, construction equipment, TCF, consumable and other required tools to perform the work

● Item provided by HOVENSA are listed in appendix I

● Rigging regulated by lifting procedure as per appendix A

● Appendix X includes the check list to ensure Mechanical Completion achievement and to fix battery limits between Technip Italy precommissioning works and HOVENSA subsequent activities

● Mechanical Completion to be achieved on a "system by system" turnover basis. "System turnover package" to include documents as per point 6.1 of appendix A

*Technip*
**TECHNIP ITALY**



21

# CONTRACT SCOPE AND RESPONSIBILITIES

## Contract Highlights (Warranties and Performance tests)

- Mechanical warranties: 12 months from acceptance of performance tests or 18 months after M.C.

- 10 years warranty for "Structural Defects"

- Performance test to be performed within 60 days from M.C. or 90 days from commencement of operation (whichever comes earlier) for warranties and payment obligations purpose. Performance guarantees are deemed met for all purposes if tests are not performed within 240 days from M.C.



22

*Technip*

**TECHNIP ITALY**



# EXHIBIT F

TECHNIP C
AGREEMENT

HOVENSA LLC
LSG UNIT

9-24-04
Rev. 1

INVITATION TO BID
TABLE OF CONTENTS

| APPX | EXHIBIT | DESCRIPTION |
|---|---|---|
| | | **ENGINEERING & PROCUREMENT AGREEMENT** |
| | | **CONSTRUCTION AGREEMENT** |
| | | **AGREEMENT APPENDICES** |
| A | | SCOPE OF WORK Rev.6 3-01-05 |
| | 1 | General Refinery Plot Plan |
| | 2 | Preliminary LSG Unit Arrangement Plan - Removed - See Appx. F |
| | 3 | Preliminary Process Flow Diagrams - Removed - See Appx. F |
| | 4 | Preliminary LSG Unit Equipment List - Removed - See Appx. F |
| | 5 | EMRE/KBR Responsibility Matrix |
| | 6 | Site Laydown Areas |
| | 7 | Preliminary Major Equipment Data Sheets - Removed - See Appx. F |
| | 8 | Lifting Loads Permit Procedure #3582 |
| B | | COORDINATION PROCEDURES - Rev 5  2-25-05 |
| C | | ENGINEERING STANDARDS Rev 77 9-17-04 |
| D | | COMPENSATION & TERMS OF PAYMENT |
| | 1 | Terms Of Payment  3-03-05 |
| | 2 | Cash Flow Curves - Technip to provide |
| | 3 | EP&C Earned Value Matrices - Sample Formats |
| | 4 | Project Cost Breakdown - (EP Rev 4) - (C Rev 2) |
| | 5 | Letter Of Credit  "Hovensa Draft" Rev 2 March 1 2005 |
| | 6 | Contract Change Order Form Rev 1 |
| | 7 | Contractor Affidavit – Liens |
| | 8 | Hovensa Insurance Option |
| E | | PROJECT SCHEDULE |
| | 1 | Deleted |
| | 2 | Technip LSG Project Schedule  Feb 18 2005 |
| | 3 | Refinery Holiday Schedule |
| | 4 | Deleted |
| F | | FEED PACKAGE |
| | 1 | Process Description (including B/L Conditions & Utility Requirements) |
| | 2 | Process Interlocks & Compressor Controls Summary |
| | 3 | Equipment List - Revision of BDS Equipment List |
| | 4 | Material Selection Diagrams - Revision of BDS MOC Diagrams |
| | 5 | Reactor Specifications & Drawings - Revision of BDS Specs |
| | 6 | EMRE/KBR BDS Package (See Separate Two Volumes) |
| | 7 | EMRE/KBR DBS Package (See Separate Volume) |
| | 8 | EMRE Design  Notes (See Separate Volume) |
| | 9 | EMRE Design Review Milestones |
| | 10 | Piping & Instrumentation Diagrams (P&IDs) - Rev. of BDS P&IDs |
| | 11 | Auxiliary Equipment Datasheets |



HOVENSA LLC                                                                   9-24-04
LSG UNIT                                                                      Rev. 1

INVITATION TO BID
TABLE OF CONTENTS

|   |    | |
|---|----|-----------------------------------------------------------|
|   | 12 | Preliminary Electrical Load List |
|   | 13 | HVAC Pressurized Buildings Standard Requirements |
|   | 14 | Plot Plans & B.L. Piping Sketch |
|   | 15 | EMRE Process Simulations  (CD Rom Enclosed) |
| G |    | TECHNICAL QUESTIONS AND ANSWERS - Rev 6   Feb 25 2005 |
| H |    | COMMERCIAL QUESTIONS AND ANSWERS - Rev 10 |
| I |    | ITEMS PROVIDED BY HOVENSA - Rev 5 |
| J |    | PERFORMANCE GUARANTEES - Rev 4 |
| K |    | LIQUIDATED DAMAGES Rev 6 3-2-2005 |
| L |    | CONSTRUCTION WORKFORCE |
| M |    | OCEAN TRANSPORTATION INFORMATION |
|   | 1  | HOVENSA RO RO Dock Information and Drawing |
|   | 2  | Title to Materials |
|   | 3  | Ocean Shipping Support Design For Major Equipment |
|   | 4  | Freight Forwarders |
|   | 5  | Marine & Terminal Regulations |
| N |    | STATEMENT REGARDING SITE CONDITIONS |
|   | 1  | MEC Topographical Map |
|   | 2  | Preliminary Geotechnical Investigation Report - URS |
| O |    | RADIO INFORMATION - Issue later |
| P |    | USE OF NON-DOMESTIC MATERIALS |
| Q |    | PARENT GUARANTEE LETTER   Ver 2 Jan 30 05 |
| R |    | APPROVED VENDORS LIST - Rev r2 |
| S |    | EQUIPMENT AND INSTRUMENT DATASHEET FORMS |
| T |    | MECHANICAL INTEGRITY FORMS |
| U |    | INTENTIONALLY LEFT BLANK |
| V |    | ASD MANUAL TABLE OF CONTENTS |
| W |    | I&C RESPONSIBILITY MATRIX - Rev F1 |
|   | 1  | Control System Architecture Diagram - Rev 1 7/12/04 |
| X |    | MECHANICAL COMPLETION CHECKLIST |
| Y |    | PHA GUIDELINES / PROCEDURES |
|   | 1  | PHA Procedure - 35-0002 |
|   | 2  | PHA Procedure - 35-0014 |
|   | 3  | PHA Procedure - 35-0018 |
|   | 4  | PHA Procedure - 35-0019 |
|   | 5  | PHA Procedure - 35-0020 |
|   | 6  | PHA Procedure - 35-0021 |
|   | 7  | PHA Procedure - 35-0022 |
|   | 8  | PHA Procedure - 35-0023 |
|   | 9  | PHA Procedure - 35-0026 |
|   | 10 | PHA Procedure - 35-0027 |
| Z |    | BASIC ENGINEERING DESIGN DATASHEETS (BEDDs) - Rev r7 |



HOVENSA LLC                                              9-24-04
LSG UNIT                                                 Rev. 1

INVITATION TO BID
TABLE OF CONTENTS

| AA | | INTENTIONALLY LEFT BLANK |
|----|----|----|
| AB | | HOVENSA STANDARD CONTRACT ATTACHMENTS |
| | 1 | Equipment and Tools Verification |
| | 2 | Plant Rules and Procedures |
| | 3 | Fire Retardant Clothing |
| | 4 | Not Included |
| | 5 | Not Included |
| | 6 | Not Included |
| | 7 | Not Included |
| | 8 | OSHA - Right to Know Law Training |
| | 9 | Not Included |
| | 10 | Compliance with Owner Security and Timekeeping |
| | 11 | Substance Abuse Policy |
| | 12 | Safety Guidelines and Requirements |
| | 13 | Hiring Owner Employee Relatives |
| | 14 | Manpower Requisitioning |
| | 15 | Workplace Violence Policy |
| | 16 | Prohibited Conduct |
| | 17 | Not Included |
| | 18 | Not Included |
| | 19 | Customs Instructions for Contractors |
| | 20 | Code of Business Conduct and Ethics |
| | 21 | General Considerations for Contractors doing Business |
| | 22 | Contractor Traffic Safety Rules |
| | 23 | Refinery Foot Protection Policy |
| | 24 | Use of Portable Electronic Communication Equipment |
| | 25 | Contractor Safety Audits |
| | 26 | Independent Contractor Employees |
| | 27 | Conflict of Interest |
| | 28 | Wireless Network Policy |
| AC | | AGENCY AGREEMENT |
| AD | | ORGANIZATIONAL CHART & KEY PERSONNEL RESUMES |
| AE | | UNIT RATES FOR REIMBURSABLE WORK DUE TO VARIATION |
| | | Unit Rates to be actual Turner rates plus 4% |
| | | Unit Rates Exhibit 1 Rev 2 |
| | | Part D Unit Rates for Reimbursable or extra work |
| | | SCH B HARMONY EXTERNAL BARE RATES 2004.pdf |
| AF | | EQUIPMENT LEASE AGREEMENT |
| | 1 | Sample Equipment Lease |
| | 2 | General Procedures For Using Equipment Lease Agreement |
| AG | | INTENTIONALLY LEFT BLANK |
| AH | | FEDERAL CONTRACTOR CERTIFICATE OF COMPLIANCE |



# HOVENSA-TECHNIP EPC LSG PROJECT
# APPENDIX D EXHIBIT 8

## HOVENSA INSURANCE OPTION

**IF HOVENSA OPTS, BY APRIL 1, 2005, TO PROVIDE GENERAL LIABILITY AND CONSTRUCTION ALL-RISK INSURANCE**

| | |
|---|---|
| EPC CONTRACT TOTAL AMOUNT WILL BE REDUCED BY > | $4.679.000 |
| **FOR ALL-RISK INSURANCE SUPPLIED BY HOVENSA,** TECHNIP REMAINS RESPONSIBLE FOR THE FOLLOWING DEDUCTIBLE AMOUNTS PER OCCURRENCE: | |
| "LEG 3 type" losses (part directly affected by defective design / material / workmanship and access costs thereto): | 10% of loss, minimum $644,100 / maximum $1,288,200 |
| hot testing / commissioning: | $250.000 |
| cyclone, hurricane, tsunami, earthquake: | 5% of value at risk at time of loss, minimum $322,050 / maximum $966,150 |
| storm, tempest, water damage, subsidence, collapse: | $64.410 |
| all other losses | $32.205 |
| **FOR GENERAL LIABILITY INSURANCE SUPPLIED BY HOVENSA,** TECHNIP REMAINS RESPONSIBLE FOR THE FOLLOWING DEDUCTIBLE AMOUNTS PER OCCURRENCE: | $32,205 any one occurrence, except bodily injury which nil |





Appendix E -
Schedule

Exhibit 2

| Activity ID | Activity Description | Early Start | Early Finish |
|---|---|---|---|
| **KEY DATES** | | | |
| **CONTRACTUAL MILESTONES** | | | |
| M120 | Construction Permit Order by Purchaser | | 01JUN07 |
| M100 | Contract Effective Date | 10FEB05 | |
| M110 | Mechanical completion | | 10NOV06 |
| **MILESTONES** | | | |
| M1020 | Contract award | 10FEB05 | |
| M1148 | Texas Tower Requisition complete (E4902) | | 28FEB06 |
| M1026 | QA/QC Program | | 18MAR05 |
| M1040 | PFD's Issued For Design | | 30MAR06 |
| M1030 | Health & Safety Plan | | 13APR05 |
| M1000 | Labor Relations Plan | | 13APR05 |
| M1146 | Heater Requisition complete (H4901) | | 22APR05 |
| M1147 | Compressors Requi. complete (C4901A/B-C4902A/B) | | 22APR05 |
| M1147 | Reactors Requisition complete (R4901 / R4902) | | 22APR05 |
| M1150 | Heater PO Awarded (H4901) | | 22APR06 |
| M1151 | Compressors PO Awarded (C4901A/B-C4902A/B) | | 22APR05 |
| M1152 | Reactors PO Awarded (R4901 / R4902) | | 22APR05 |
| M1041 | Process & utility P&ID'S IFD | | 04MAY05 |
| M1010 | Material Control System | | 12MAY05 |
| M1153 | Texas Tower PO Awarded (E4902) | | 30MAY05 |
| M1050 | 3D Model 1st Review 30% | | 28JUN05 |
| M1042 | HAZOP & SIL Review completed | | 05JUL05 |
| M1060 | 3D Model 2nd Review 50% | | 31AUG05 |
| M1080 | Vendor Equipt Outly Book (Texas Tower E4902) | 15SEP05 | 31AUG05 |
| M1170 | Modules Construction Site | | |
| M1043 | Process PID's IFC | | 06OCT05 |
| M1140 | Detail Civil Work/ Struct. st. studies complete | | 18JAN06 |
| M1070 | 3D Model 3rd Review 90% | | 25JAN06 |
| M1090 | Concrete Foundations Complete | | 09FEB06 |
| M1142 | Detail Electrical/Instrum studies complete | | 20FEB06 |
| M1166 | Structural Steel Prefab Delivered Onsite | | 21FEB06 |
| P1140 | 90% Electr/Instrum Delivered Onsite | | 18MAR06 |
| M1090 | Certified Drawings | | 31MAR06 |
| M1141 | Detail Piping studies complete | | 31MAR06 |
| M1160 | 90% UG Piping Complete | | 31MAR06 |
| M1120 | Substation Bldg / MCC Delivered Onsite | | 12APR06 |



**Technip**

© Primavera Systems, Inc.

HOVENSA - USVI
LOW SULFUR GASOLINE UNIT
OVERALL PROJECT SCHEDULE LEVEL 2
Option # 1 = 21 Months

Sheet 1 of 7

| Date | Revision | Checked | Approved |
|---|---|---|---|
| 03DEC04 | Issue for Proposal | AAMO/GBR | JPH |
| 10FEB05 | Issue for Contract | AAMO/GBR | JPH |
| 18FEB05 | Issue for Contract | VC | FF |

4960Y 00 PLG 301 Rev.3

2229

| Activity ID | Activity Description | Early Start | Early Finish |
|---|---|---|---|
| M1155 | Compressors Delivered Onsite (C4601A/B-C4802A/B) | | 21-APR-06 |
| M1380 | Vendor Compres. Quality Book (C4601A/B-C4802A/B) | | 21-APR-06 |
| M1155 | Heater Delivered Onsite (H4901) | | 27-APR-06 |
| M1370 | Vendor Equip. Quality Book (Heater H4901) | | 27-APR-06 |
| M1320 | Main Steel Structure Erected | | 10-MAY-06 |
| M1110 | Satelite Bldg / DCS Delivered Onsite | | 24-MAY-06 |
| M1110 | Vendor Equip. Quality Book (React R4801/R4802) | | 23-MAY-06 |
| M1157 | Reactors Delivered Onsite (R4801/R4802) | | 23-MAY-06 |
| M1158 | Texas Tower Delivered Onsite (S4502) | | 23-MAY-06 |
| M1190 | Major Equipments Set | | 23-JUN-06 |
| M1165 | Piping Prefab Delivered Onsite | | 03-JUL-06 |
| M1240 | Power Cable & Wire Installation Complete | | 02-AUG-06 |
| M1210 | Large Bore Piping Installation Complete | | 10-AUG-06 |
| M1100 | Precommissioning Activities Begin | 16-AUG-06 | 24-AUG-06 |
| M1280 | Substation Bldg / MCC Energized | | 24-AUG-06 |
| M1180 | Control System FAT Complete | | 07-SEP-06 |
| M1250 | Instrument Control Wire Installation Complete | | 09-OCT-06 |
| M1280 | Instrument Hook-up & Loop Checks Complete | | 09-NOV-06 |
| M1220 | Small Bore Piping Installation Complete | | 10-NOV-06 |
| M1270 | Firepoofing/Painting Installation Complete | | 10-NOV-06 |
| M1290 | System Turnover Pack. (P&IDQC Forms) Complete | | 10-NOV-06 |
| M1310 | MCC Documentation Complete | | 10-NOV-06 |
| M1300 | Mechanical Completion | | 10-NOV-06 |
| M1350 | Completion Of Testing | | 10-NOV-06 |
| **PROJECT MILESTONES** | | | |
| J100 | Kick-off meeting | 07-MAR-06 | |
| J140 | Schedule 90 Days | 07-MAR-06 | 07-MAR-05 |
| J150 | Overall Project Schedule | | 18-APR-05 |
| J160 | QA/QC Program | | 18-APR-05 |
| J120 | Health & Safety Plan | | 18-APR-05 |
| J130 | Labor Relations Plan | | 13-APR-05 |
| J110 | Material Control System | | 12-MAY-05 |
| **REVIEW WITH HOVENSA/EM/RE** | | | |
| R200 | Constructability Review | 03-MAY-05 | 03-MAY-05 |
| R205 | HAZOP & SIL | 15-JUN-05 | 05-JUL-05 |
| R210 | 3D Model 1st Review 30% | 23-JUN-05 | 23-JUN-05 |

**Technip**

© Primavera Systems, Inc.

**HOVENSA - USVI**
**LOW SULFUR GASOLINE UNIT**
**OVERALL PROJECT SCHEDULE LEVEL 2**
Option # 1 = 21 Months

Sheet 2 of 7

| Date | Revision | Checked | Approved |
|---|---|---|---|
| 03DEC04 | Issue for Proposal | AMO/GBR | JPH |
| 19FEB05 | Issue for Contract | AMO/GBR | JPH |
| 19FEB05 | Issue for Contract | VC | FF |

4596Y'00 PLG 301 Rev. 3



| Activity ID | Activity Description | Early Start | Early Finish |
|---|---|---|---|
| **EPC PHASE** | | | |
| | 3D Model 2nd Review 50% | 25AUG05 | 31AUG05 |
| | 3D Model 3rd Review 90% | 19JAN06 | 25JAN06 |
| **DETAILED ENGINEERING** | | | |
| **PROCESS & TECHNOLOGIES** | | | |
| E100 | PFD's IFD Included HOVENSA Approval | 10FEB05 | 31MAR05 |
| E104 | Safety | 10FEB05 | 05OCT05 |
| E105 | Critical Equipt. Spec. Included HOVENSA Approval | | 10FEB05 |
| E115 | Proc. & Util. P&ID's IFD | 03MAR05 | 04MAY05 |
| E110 | Instrument Spec. Included HOVENSA Approval | 31MAR05 | 06JUN05 |
| E117 | HAZOP & SIL | 06JUN05 | 05JUL05 |
| E120 | Proc. & Util. P&ID's IFC Included HOV./ Approval | 25AUG05 | 05OCT05 |
| **EQUIPMENT/DESIGN** | | | |
| E160 | Owners Equipment Requisitions | 10FEB05 | 15JUN05 |
| E190 | Heater Requisition For Inquiry | 10FEB05 | 28FEB05 |
| E250 | Reactor Requisition For Inquiry | 10FEB05 | 28FEB05 |
| E310 | Compressor Requisition For Inquiry | 10FEB05 | 28FEB05 |
| E330 | Towas Tower Requisition For Inquiry | 10FEB05 | 28FEB05 |
| E220 | Column Requisition For Inquiry | 24FEB05 | 07MAR05 |
| **CIVIL ENGINEERING** | | | |
| E160 | Job Specifications Included HOV./ Approval | 10FEB05 | 11MAY05 |
| E170 | Soil Investigations Specification | 21FEB05 | 04MAR05 |
| E172 | Soil Investigations Studies | 25APR05 | 20MAY05 |
| E186 | Concrete Found. Cat.&Draw Included HOV./ Approval | 25APR05 | 29JUN05 |
| E208 | Main Steel Struct. Draw. Included HOV./ Approval | 12MAY05 | 09NOV05 |
| E198 | 3D modeling | 18MAY05 | 22FEB06 |
| E200 | UG Piping MTO 1st | 18MAY05 | 01JUN05 |
| E209 | Secondary Steel Structure Drawings | 16JUN05 | 19FEB06 |
| E195 | Main Steel Structure Drawings | 20JUN05 | 30NOV05 |
| E190 | Areas Drawings | 20JUN05 | 18JUN06 |
| E205 | UG Piping MTO 2nd | 05OCT05 | 19OCT05 |
| **PIPING & INSTALLATION** | | | |
| E210 | Unit Plot Plan IFR Included HOV./ Approval | 10FEB05 | 18MAR05 |
| E211 | Unit Plot Plan IFD Included HOV./ Approval | 31MAR05 | 02MAY05 |
| E221 | Piping Studies/Routing IFD | 31MAR05 | 03AUG05 |
| E280 | 1st piping MTO | 28APR05 | 23MAY05 |
| E222 | Piping Stress Analysis | 05MAY05 | 08MAR06 |
| E220 | 3D Modeling | 02JUN05 | 09MAR06 |

**Technip**

© Primavera Systems, Inc.

HOVENSA - USVI

LOW SULFUR GASOLINE UNIT
OVERALL PROJECT SCHEDULE LEVEL 2
Option # 1 = 21 Months

Sheet 3 of 7

49067 00 PLG 301 Rev 3

| Date | Revision | Drawn | Checked | Approved |
|---|---|---|---|---|
| 00DEC04 | Issue for Proposal | | AMO/GBR | JPF |
| 10FEB05 | Issue for Contract | | AMO/GBR | JPF |
| 19FEB05 | Issue for Contract | | VC | F.F. |



| Activity ID | Activity Description | Early Start | Early Finish |
|---|---|---|---|
| **PIPING & INSTALLATION** | | | |
| E251 | 3D Model 1st Review 30% | 23JUN05 | 23JUN05 |
| E240 | Main Vendors drawings Receipt & Approval | 14JUL05 | 31AUG05 |
| E270 | 2nd piping MTO | 22JUL05 | 22AUG05 |
| E213 | Unit Plot Plan IFC Included HOV / Approval | 28JUL05 | 14SEP05 |
| E235 | 3D Model 2nd Review 50% | 25AUG05 | 31AUG05 |
| E242 | Isom. Drawings IFC | 06OCT05 | 31MAR06 |
| E280 | 3rd piping MTO | 20OCT05 | 08MAR06 |
| E243 | Isometric Drawings IFC 50% | 22DEC05 | |
| E241 | 3D Model 3rd Review 90% | 19JAN06 | 25JAN06 |
| **ELECTRICAL** | | | |
| E301 | Job Specifications Included HOV / Approval | 10FEB05 | 14MAY05 |
| E302 | Elec. Instal. Guide draw. Indu. HOV / Approval | 10FEB05 | 05APR05 |
| E312 | Sub Bldg MCC Guide Draw Included HOV / Approval | 10FEB05 | 13JUL05 |
| E300 | Material Specifications Included HOV / Approval | 28MAY05 | 07SEP05 |
| **AUTOMATION SYSTEM** | | | |
| E401 | Job Specifications Included HOV / Approval | 10FEB05 | 13APR05 |
| E400 | Sat'l Bldg DCS Guide Draw Indu HOV / Approval | 14MAR05 | 04NOV05 |
| E350 | Instrum list Preliminary | 24MAR05 | 25MAY05 |
| E390 | Analyz Shelter Lay. typ Included HOV / Approval | 19APR05 | 05JUN05 |
| E380 | Material Spec. & Req.s Included HOV / Approval | 19MAR05 | 03AUG05 |
| E370 | General Routing Included HOV / Approval | 26MAY05 | 19OCT05 |
| E352 | Instrum list | 16JUN05 | 30NOV05 |
| E382 | Instrum install. guide dwgs Indu. HOV / Approval | 23AUG05 | 20FEB06 |
| E410 | Analyzer Shelter Completed | 19OCT05 | 25OCT06 |
| **PROCUREMENT & SUBCONTRACTING** | | | |
| **STEEL STRUCTURE** | | | |
| E611 | 80% Structural Steel Prefab Delivered Onsite | | 15JAN06 |
| **PIPING INSTALLATION** | | | |
| P500 | Piping Prefab 90% Delivered Onsite | | 15JAN06 |
| **CRITICAL EQUIPMENTS** | | | |
| P100 | Heater(1) Inq. & Purchas. Included HOV / Approval | 01MAR05 | 22APR05 |
| P180 | Compressor(4) Inq. &Purchas Included HOV / Approval | 01MAR05 | 22APR05 |
| P219 | Reactors(2) Inq.&Purchas Included HOV / Approv. | 01MAR05 | 22APR05 |
| P371 | Trees Tow(1) Inq.&Purchas Included HOV / Approval | 01MAR05 | 30MAY05 |
| P340 | Columns Inq. & Purchas. Included HOV / Approval | 08MAR05 | 08MAY05 |
| P110 | Heater(1) Manufacturing & transportation | 25APR05 | 27APR06 |
| P160 | Compressor / Turbine(4) Manuf & transportation | 25APR05 | 21APR06 |
| P220 | Reactors(2) manufacturing & transportation | 25APR05 | 23MAY06 |

**HOVENSA - USVI**

**LOW SULFUR GASOLINE UNIT**

**OVERALL PROJECT SCHEDULE LEVEL 2**

**Option # 1 = 21 Months**

Technip

© Primavera Systems, Inc.

| Date | Revision | Checked | Approved |
|---|---|---|---|
| 03DEC04 | Issue for Proposal | AMO/GBR | JPH |
| 10FEB05 | Issue for Contract | AMO/GBR | JPH |
| 18FEB05 | Issue for Contract | VC | FF |

Sheet 4 of 7

4065Y 00 PLG 301 Rev 3

2229



| Activity ID | Activity Description | Early Start | Early Finish |
|---|---|---|---|
| **CRITICAL EQUIPMENTS** | | | |
| P263 | Columns manufacturing & transportation | 09MAY05 | 10MAR06 |
| P272 | Texas Tower(1) manufacturing & transportation | 31MAY05 | 28MAY05 |
| P270 | Columns Delivered Onsite | | 10MAR06 |
| P200 | Compressor(4) Delivered Onsite | | 21APR06 |
| P120 | Heater(1) Delivered Onsite | | 27APR06 |
| P300 | Reactors(2) Delivered Onsite | | 28MAY06 |
| P273 | Texas Tower(1) Delivered Onsite | | 28MAY06 |
| **OTHER EQUIPMENTS** | | | |
| P220 | Air coolers Inq. & Purches Includ HOV / Approv | 17FEB05 | 28MAY05 |
| P260 | Heat exch. Inq. & Purches Includ HOV / Approv | 14MAR05 | 17JUN05 |
| P405 | Other Equip Inq. & Purch Includ HOV / Approv | 24MAR05 | 23JUN05 |
| P252 | Packages Inq. & Purches Includ HOV / Approval | 31MAR05 | 06JUL05 |
| P235 | Analy.&Shel Inq. & Purches Includ HOV / Approv | 12APR05 | 11JUL05 |
| P222 | Air Coolers Manufacturing & transportation | 28MAY05 | 18JUN06 |
| P290 | Heat exchanges manufacturing & transportation | 20JUN06 | 10FEB06 |
| P410 | Other Equipment manufacturing & transportation | 30JUN05 | 22FEB06 |
| P250 | Packages manufacturing & transportation | | 09FEB06 |
| P237 | Analyser & Shelter manufacturing & transportation | 12JUL05 | 17APR06 |
| P232 | Air Coolers Delivered Onsite | | 18JUN06 |
| P300 | Packages Delivered Onsite | | 09FEB06 |
| P400 | Heat Exchanges Delivered Onsite | | 10FEB06 |
| P238 | Analyser & Shelter Delivered Onsite | | 17APR06 |
| P298 | Equipments Delivered Onsite Complete | | 28MAY06 |
| P415 | 90% Equipments Delivered Onsite | | 28MAY06 |
| **ELECTRICAL** | | | |
| P266 | Substation Bldg / MCC Inquiry & Purchasing | 02JUN05 | 10AUG05 |
| P815 | Substation Bldg / MCC manufact. & transportation | 11AUG05 | 12APR06 |
| P866 | Substation Bldg / MCC Delivered Onsite | | 12APR06 |
| **AUTOMATION SYSTEM** | | | |
| P205 | Satellite Bldg / DCS Inquiry & Purchasing | 23MAY05 | 21OCT05 |
| P806 | Satellite Bldg / DCS manuf. & transport | 22SEP05 | 24MAY06 |
| P806 | Satellite Bldg / DCS Delivered Onsite | | 24MAY06 |
| **BULK MATERIAL** | | | |
| P480 | UG Piping Inquiry & Purchasing | 02JUN05 | 05OCT06 |
| P566 | Instrumentation Inquiry & Purchasing | 02JUN05 | 19OCT06 |
| P460 | AG Piping Inquiry & Purchasing | 07JUN05 | 06AUG06 |
| P550 | Electricity Inquiry & Purchasing | 27JUN06 | 11NOV06 |
| P556 | Electricity manufacturing & transportation | 01AUG06 | 07APR06 |
| P462 | AG Piping Manufacturing & transportation | 08AUG06 | 27JUL06 |

**HOVENSA - USVI**
**LOW SULFUR GASOLINE UNIT**
**OVERALL PROJECT SCHEDULE LEVEL 2**
Option # 1 = 21 Months

Technip

© Primavera Systems, Inc.

Sheet 5 of 7
49667.00 PLG 301 Rev 3

| Date | Revision | Checked | Approved |
|---|---|---|---|
| 03DEC04 | Issue for Proposal | AMOGBR | JPH |
| 10FEB05 | Issue for Contract | AMOGBR | JPH |
| 18FEB05 | Issue for Contract | VC | FF |





HOVENSA - USVI

LOW SULFUR GASOLINE UNIT
OVERALL PROJECT SCHEDULE LEVEL 2
Option # 1 = 21 Months

© Primavera Systems, Inc.

| Activity ID | Activity Description | Early Start | Early Finish |
|---|---|---|---|
| **CRITICAL EQUIPMENTS** | | | |
| C164 | Compressors(4) Craning & Erection | 24APR06 | 23JUN06 |
| C163 | Heater(1) Craning & Erection | 29APR06 | 23JUN06 |
| C165 | Reactors(2) Craning & Erection | 30MAY06 | 23JUN06 |
| C166 | Texas Tower(1) Craning & Erection | 30MAY06 | 19JUN06 |
| **OTHER EQUIPMENTS** | | | |
| C170 | Air Coolers(5) Craning & Erection | 28JAN06 | 24FEB06 |
| C173 | Heat Exchangers(10) Craning & Erection | 10FEB06 | 03MAR06 |
| C171 | Skids Packages Craning & Erection | 16FEB06 | 17MAR06 |
| C175 | Other Equipment Craning & Erection | 23FEB06 | 25MAY06 |
| C172 | Columns(2) Craning & Erection | 13MAR06 | 05MAY06 |
| **ELECTRICAL** | | | |
| C206 | Electrical Cable trays Installation | 11APR06 | 24JUL06 |
| C200 | Electrical Main Cables pulling | 02MAY06 | 30JUN06 |
| C20 | Electrical Lighting | 11MAY06 | 31OCT06 |
| C263 | Substation Bldg / MCC Erection & Connection | 18MAY06 | 14AUG06 |
| C202 | Electrical Connections & testings | 18MAY06 | 29AUG06 |
| C199 | Electrical Earth connections | 01JUN06 | 06OCT06 |
| C203 | Substation Bldg / MCC Energized | 19JUN06 | 24AUG06 |
| **AUTOMATION & SYSTEMS** | | | |
| C220 | Instrument Cable trays Installation | 23MAR06 | 22JUN06 |
| C212 | Instrument Main Cables pulling | 24MAY06 | 24JUL06 |
| C273 | Satellite Bldg / DCS Erection & Connection | 25MAY06 | 24AUG06 |
| C221 | Instrument Instal. Connect & Tests | 05JUL06 | 18OCT06 |
| C263 | Satellite Bldg / DCS Energized | 25AUG06 | 07SEP06 |
| C223 | Instrument loop checking | 21SEP06 | 09NOV06 |
| **PAINTING & INSULATION** | | | |
| C232 | Painting | 10FEB06 | 10NOV06 |
| C234 | Equipment Insulation | 22MAY06 | 10NOV06 |
| C236 | Piping Insulation | 29MAY06 | 10NOV06 |
| **COMMISSIONING** | | | |
| C240 | Precommissioning | 16AUG06 | 10NOV06 |
| C250 | Mechanical Completion | | 10NOV06 |

Technip

© Primavera Systems, Inc.

Z229   Sheet 7 of 7

HOVENSA - USVI
LOW SULFUR GASOLINE UNIT
OVERALL PROJECT SCHEDULE LEVEL 2
Option # 1 = 21 Months

49667.00 PLG 301 Rev 3

| Date | Revision | Checked | Approved |
|---|---|---|---|
| 003DEC04 | Issue for Proposal | AMO/GBR | JPH |
| 10FEB05 | Issue for Contract | AMO/GBR | JPH |
| 18FEB05 | Issue for Contract | VC | FF |

**Appendix G - Technical
Questions/Answers**

**Technical Question & Answers**
**Technip**
**February 25, 2005 Rev 6**

HT-T1   Is Technip's proposal based on the use of SIMSCI process simulation software, Primatech PHA software, and Microstation design/drawing software as required in Appendix A – Scope of Work?.

Technip Response: Technip can use SIMSCI which is available in the office.  Technip has not used Primatech but can supply if required.  Please clarify Microstation requirement

Hovensa Response: Noted.  PFD and PID to be cadded in Microstation

Technip Response 01/07/05: PFD and PID will be cadded in Microstation

**RESOLVED**

HT-T2   A. Has Technip based their proposal on a natural or forced draft heater and what type of burners are included to meet the guaranteed NOx limit of 0.02lb/MMBtu  (HHV) as required in Appendix J?

Technip Response: A natural draft heater with Ultra Low NOx burners (Callidus or John Zink) is included in the proposal.  The burner vendors can only guarantee 0.03lb/MMbtu (HHV) for the range of fuel gas supply.

HOVENSA Response: Not acceptable. Technip to re- evaluate with burner vendors the impact of the different fuel gas supply sources on the heater design.

Technip Response 01/07/05: without air pre-heater (efficiency 80%) and additional SCR but with next generation ultra low Nox burners, guaranteed NOx limit will be depending  on different fuel gas supply,:
-   Coker FG: 0.02 lb/MMBtu (HHV)
-   FCC FG: 0.02 lb/MMBtu (HHV)
-   LPG Propane: 0.028 lb/MMBtu (HHV)

**RESOLVED**

B. What equipment components has Technip included in the optional SCR pricing to meet 0.007lb/MMBtu (HHV) limit?

Technip Response: Will check details and respond.  Technip can guarantee 0.007lb/MMbtu (HHV) if a SCR unit is installed

Technip Response 01/07/05: in addition to the equipments and material shown on the attached PID TP has included in the optional SCR pricing to meet 0.007 lb/MMBtu (HHV)
-  an ammonia truck unloading facility
- a storage tank (capacity 8 m3)
- two ammonia (one in operation, one in stand-by) pumps



**RESOLVED. ALL REQUIRED EQUIPMENT TO ACHIEVE THE 0.007LB/mmBtu (HHV) ARE INCLUDED IN THE SCOPE.**

C. What heater efficiency is used in Technip's base proposal?

Technip Response: Considering process inlet temperature, a maximum of 80% efficiency is achievable without air preheat.

HOVENSA Response: HOVENSA will lower the 85% listed in the BEDD sheets to 80%.

**RESOLVED. 80% HEATER EFFICIENCY IS ACCEPTABLE.**

D. What tube metallurgy has Technip included in their base bid for the furnace radiant and convection sections?

Technip Response: Metallurgy for radiant and convection coils is 347 SS + 1/16" CA + thermal stabilization and heat treatment and tubes are schedule 40.

Hovensa Response: Noted

**RESOLVED, METALLUGY FOR HEATER TUBES LISTED ABOVE IS ACCPETABLE.**

HT-T3  Is Technip's proposal based on an LSG product with less than 0.1 wppm H2S as required in Appendix J?

Technip Response: Technip guarantee is <1wppm. During detailed engineering further investigation will be performed to check if lower content can be guaranteed. Technip has not received the simulations and will need to review , distillation efficiency, etc.

Hovensa Response: Not acceptable. Hovensa believes adequate data was provided in FEED package to ascertain. Technip to review, re-evaluate and advise.

Technip Response 01/07/05: On operation case 1S with preliminary informations provided by Hovensa, TP has simulated the stripper to meet the required guarantee of < 0.1 ppm H2S in the Gasoline.

This simulation shows that the original design performed by KBR could be revised as follows:

- duty of the reboiler increase by 20%

- consequential increase in the dimensions of the stripper and its internals, its condenser, its reflux drum and pumps



**Technical Question & Answers**
**Technip**
**February 25, 2005 Rev 6**

To validate this preliminary simulation and estimate the possible additional cost to meet the required guarantee, TP needs to received from Hovensa all the simulations performed previously by EMRE/KBR and that will be available only after contract award

Resolution:  Technip received all simulations on 1/19/05 and has confirmed the less than 0.1wppm H2S as required.

**RESOLVED.  TECHNIP GUARANTEES THE 0.1 wppm AND WILL MODIFY THE DESIGN OF THE STRIPPING SECTION AT NO ADDITIONAL COSTS.**

HT-T4   What tube metallurgy is included in base proposal for E-4901 and E-4906?

Technip Response:    E-4906 is KCS + PWHT and E-4901 is 2205 DSS

Hovensa Response:  For E-4901 - Noted as included in base bid.  Hovensa requires 2205 DSS tubes for E-4906 due to Chlorine content.

Technip Response 01/07/05: TP confirms that tube metallurgy for E-4906 is 2205 DSS

**RESOLVED**

HT-T5   What is the design flow rate for air coolers E-4908 and E-4910 which is included in Technip's base proposal?

Technip Response: Air Cooler E-4908 – Thermal design evaluated considers a design recycle flow rate equal to 50% of the maximum flow rate for the minimum hydrogen makeup purity case times 1.1 ( = 0.5 x (1.1 x 9,600 lb/hr))

Air Cooler E-4910 - Thermal design evaluated considers a design recycle flow rate equal to 50% of the maximum flow rate for the EOR-HHR case times 1.1 ( = 0.5 x (1.1 x 51,311 lb/hr))

Hovensa Response:  The exchangers will need to be designed for 110% of design rate due to startup conditions for E-4910 and blocked in conditions for E-4908.

Technip Response 01/07/05: TP confirms that air cooler E-4910 will be designed for 110% of design rate and blocked in conditions for E-4908.

**RESOLVED**

HT-T6   Does Technip's base proposal include providing all instrument datasheets for design and purchase as required in Appendix A?

Technip Response: Yes with the assumption that the simulations will be given to Technip at award of the contract.  At this time the simulation and heat and material balance are not available to prepare the datasheets.



**Technical Question & Answers**
**Technip**
**February 25, 2005 Rev 6**

Hovensa Resolution: Noted

**RESOLVED**

HT-T7   Is 347 weld overlay lining included in the base proposal for R-4902 reactor?

Technip Response: Yes.

Hovensa Resolution.    Noted.    347SS Weld Overlay is a Hovensa requirement taking
precedent over any conflicting information in EMRE standards.    Clad plating is not
acceptable.

**RESOLVED**

HT-T8   A. What heat transfer coefficient and heat flux for E-4906 is included in base proposal?

Technip Response: Will check details and respond.

Hovensa Response: It appears based upon heat flux guidelines the exchanger needs to be
50% larger (max flux of 10,000 btu/hr/ft2). Hovensa has checked the standards and
maximum heat flux is not specified.  Technip will have to guarantee the performance of the
heat exchanger and is responsible for the design.

B. Does proposal comply with HOVENSA Engineering Standard 610.1?

Technip Response: Will check details and respond.

Technip Response 19/07/05: As there is no temperature sensible fluids, maximum heat flux
limitation at 10,000 btu/hr/ft2. is not requires in TP's opinion. This is a deviation to
Engineering Standard 610.1. On this assumption TP confirms its design.

**RESOLVED.  HOVENSA will not accept max flux greater than 12,000 Btu/hr/ft$^2$.**

HT-T9   A. What soil bearing strength is Technip's proposal based on?

Technip Response: The soil bearing loadings are based upon the URS report included in the
ITB.

**RESOLVED.  SEE COMMERCIAL QUESTION HT-C15.**

B. Why does Technip propose additional soil investigation and what is included in the base
proposal?

Technip Response: Further investigation is required.  The cost of the additional investigation
is included in the base bid.



Technical Question & Answers
Technip
February 25, 2005 Rev 6

Hovensa Response:  Noted.  Would Technip provide Hovensa the cost they included in the bid for this and the scope of work should Hovensa elect to have done by third party.

Technip Response 01/07/05: Please refer to TP E-mail dated 12/23/04

**RESOLVED.  SEE COMMERCIAL QUESTION HT-C15.  ALL REQUIRED SOILS INVESTIGATION IS INCLUDED IN THE SCOPE OF WORK.**

HT-T10 Is Technip's proposal in compliance with all PSM procedures included in ITB?

Technip Response: Yes

Hovensa Response:  Noted

**RESOLVED**

HT-T11 Is Technip's proposal based on a one body machine for the recycle compressors?

Technip Response: Yes.  After receiving the simulation the hydraulics will be checked.  Quite confident that after review the compressor will require one body.

Hovensa Response:  Noted

**RESOLVED**

HT-T12 Has Technip included providing all temporary offices, trailers, and construction facilities in their base proposal?

Technip Response:  Yes

Hovensa Response:  Noted.  Hovensa will send a layout of the existing trailers located near the maintenance building and a furniture list.  Technip to provide a break out price for using these offices as applicable to their need.

Technip Response 01/07/05: Out of the 2 buildings layouts provided by Hovensa, TP plans to use the larger building to house its construction and supervision staff. Within this building the following rooms will not be used: N°18 to N°21

**RESOLVED.  SEE COMMECIAL QUESTION HT-C24.**

HT-T13 Has Technip provided Nomex and other required PPE for all site personnel in their base proposal?

Technip Response:  Yes.

**Technical Question & Answers**
**Technip**
**February 25, 2005 Rev 6**

<u>Hovensa Response:</u> Noted. NOMEX is required to be worn by all employees inside Hovensa refinery fence.

**RESOLVED**

HT-T14 Is Technip's base proposal in compliance with HOVENSA permitting requirements and safety procedures

<u>Technip Response</u>: Technip will expect to receive a blanket permit on a monthly basis for activities inside the fence. For activities outside the fenced areas Technip will comply(and has in base bid) with Hovensa permitting requirements.

<u>Hovensa Resolution:</u> A hot work permit will be required within 5 feet of the existing piperack.

**RESOLVED. SEE SECTION APPENDIX A SECTION 5.0.16.**

HT-T15 Is Technip's proposal in compliance with heavy lifting procedure included in ITB?

<u>Technip Response</u>: yes

<u>Hovensa Resolution:</u> Noted

**RESOLVED**

HT-T16 Is Technip's proposal based on on-island or off-island prefabrication of large bore piping?

<u>Technip Response</u>: Off Island.

<u>Hovensa Resolution:</u> Noted

**RESOLVED**

HT-T17 A. Is Technip's proposal based on aboveground or belowground routing of electrical feeders?

<u>Technip Response</u>: Belowground from the substation to near the equipment at the pipe rack

B. If both, please define limits/interface?

<u>Technip Response</u>: Technip will provide a sketch.

<u>Hovensa Response:</u> Noted

**RESOLVED SEE COMMERCIAL QUESTION HT-C41.**

HT-T18 A. Is Technip's proposal based on hot dip galvanizing or painting of pre-fabricated structural steel?



Technical Question & Answers
Technip
February 25, 2005 Rev 6

Technip Response: Structural steel is painted.  Where fireproofing is to be installed, the structural steel will be painted before applying fire proofing.

Hovensa Response: Hovensa will review specifications and make determination.

**RESOLVED.  TECHNIP WILL COMPLY WITH ALL HOVENSA STANDARDS.**

B. If both, please define limits/interface?

**RESOLVED.  TECHNIP WILL COMPLY WITH ALL HOVENSA STANDARDS.**

HT-T19 A. Does Technip's base proposal include any precast concrete foundations or structures?

Technip Response: yes.

B. If so, please define what precast structures are included in proposal?

Technip Response: The first level of the pipe rack.

**RESOLVED**

HT-T20 Explain the sizing basis for the air coolers in the base bid?

Technip Response: Fictive bundles were added to respect the 24' spacing requirements.

**RESOLVED**

HT-T21 What is the metallurgy for E-4902 in the base bid?

Technip Response: The metallurgy is 1 1/4Cr-1/2Mo with 1/8" CA for tube side.  Shell side is 1 1/4Cr-1/2Mo with 347SS WOL and PWHT.  Tube sheets match effluent side.  Double walled Bellows Expansion Joint – Inconel 625 LCF.  Tubes 304L SS.

Hovensa Response:: Noted

**RESOLVED**

HT-T22 Confirm what is included for the base bid for the instrument air package?

Technip Response: LSG instrument air package included in the base bid includes compressor and 100% spare, air receiver, separate instrument air receiver, and dual dryer receiver.  Please reference PID 4900-D-0044 through 0047, appendix F, exhibit 10.

Hovensa Response: Noted



**RESOLVED.  THE INSTRUMENT AIR PACKAGE IS NOT INCLUDED IN THE  SCOPE OF WORK.**

HT–T23 TP proposal Part B page 2/8 states Technip's project schedule was developed "taking no account about local conditions".  The ITB requires Technip to become fully aware of all local conditions and schedule the project accordingly.  Please confirm Technip's schedule has been prepared in compliance with the ITB requirements.

    <u>Technip Response</u>:  Confirmed.

    **RESOLVED**


HT– T25 TP proposal Part B page 2/8 states the following schedule general basis and assumptions:


    a.  "HOVENSA reviews, comments or approval will be in parallel with EPC activities…" Please confirm HOVENSA review and approval of engineering documents and Model will be in accordance with all the ITB requirements.  Any engineering or engineering rework and resulting installation cost required as a result of HOVENSA comments that are in accordance with the ITB will be to Technip's account.

    b.  Please confirm your proposed schedule includes a review and approval of 10 working days for all required documents.

    c.  "This project schedule propose 12% for engineering average progress and 11% for construction average progress."  Please elaborate on what this statement means. Please confirm your understanding that progress will be measured and invoiced based on an agreed upon earned value method

    <u>Technip Response 19/07/05:</u>

    a)  <u>TP confirms that HOVENSA review and approval of engineering documents and Model will be in accordance with all the ITB requirements</u>
    <u>TP confirms that any engineering or engineering rework and resulting installation cost required as a result of HOVENSA comments that are in accordance with the ITB will be to TP's account except for the cost impact for PHA compliance vis à vis Plot Plan (refer to HT-C37)</u>

    b)  <u>Confirm as stipulated in E&P Contract</u>
    c)  <u>Confirm</u>


**RESOLVED.  IF CONSTRUCTION QUANITY CHANGES ARE REQUIRED AS A RESULT OF CHANGES TO THE PLOT PLAN DURING THE PHA, QUANTITY CHANGES LESS THAN 5% WILL BE INCLUDED IN THE AGREEMENT PRICE.**


<u>HT-T26 TP proposal</u>Part B pager 1 of 7 on the Level II project schedule.  Please submit an updated schedule that  incorporates the following comments:

    a.  Activity M1090 "System Turnover Package for Review".  Please advise when the turnover packages will be available for HOVENSA review.



**Technical Question & Answers**
**Technip**
**February 25, 2005 Rev 6**

b.  Activity M160 "Control System FAT Complete".  Please confirm the timing of the FAT and it will be performed in accordance with Appendix A.

c.  Activities M1290 and M1310 are required before Mechanical Completion is attained per the ITB documents.  Please provide revised dates when both these items will be completed in compliance with the ITB.

d.  Activity M1340 "Performance Testing" is scheduled for Dec 28, 2006.  Please confirm your understanding, performance testing will be conducted in accordance with ITB requirements, specifically Appendix J.

e.  Activity C203 "Electrical Lighting"  completes on Nov 17, 2006.  Lighting systems are required for Mechanical Completion as per the ITB.  Please provide a revised completion date for the electrical lighting.

f.  Please provide date for completion of construction as defined by Appendix B, Section 11.

Technip Response 19/07/05:

a)  Definnition of the "System Turnover Packages" will be issued during the construction implementation and not later than 3 months before Mechanical Completion date and all related documentation will be issued to HOVENSA not later than 2 months before the Turnover date of each package.

b)  Maximum 15 working days / in accordance with Appendix A

c)  In TP's opinion, completion of M1290 and M 1310 will follow Mechanical Completion Date

d)  Performance Testing will be conducted in accordance with the ITB requirements. TP will assist HOVENSA for these 48 hours Performance Tests and exact scheduling of these tests will be agreed between involved Parties at a later stage.

e)  Completion data for electrical lighting will be in compliance with Mechanical Completion requirements as stipulated in the Contract

f)  Completion of Construction may follow Mechanical Completion but will be performed before Final Acceptance as detailed in the Contract due to "Punch List"


Resolved, item C will be completed as specified in Appendix A, X, and Y as required for Mechanical Completion.  Agreement schedule is included in Appendix E.



Appendix H –
Commercial Questions/
Answers

HOVENSA LSG PROJECT
TECHNIP COMMERCIAL QUESTIONS

## REVISION 10 – JANUARY 31, 2005

<u>HT-C1:</u>
a. Is the construction labor union or non-union?
**TECHNIP RESPONSE:**
**IN PRINCIPLE NON-UNION – TO BE CONFIRMED**
**TECHNIP RESPONSE 01/07/05**
**NON-UNION CONFIRMED**
**RESOLVED**

b. Clarify your intent to establish "dispute resolution" agreements with employees.
**TECHNIP RESPONSE:**
**WILL INVESTIGATE AND ADVISE ON ESTABLISHING SUCH AGREEMENTS,**
**USING BINDING ARBITRATION INSTEAD OF COURT LITIGATION, AND**
**NAMING HOVENSA AND SUBS AS THIRD PARTY BENEFICIARIES.**
**TECHNIP RESPONSE 01/07/05 :**
**DISPUTE RESOLUTION AGREEMENT (DRA) WILL BE ESTABLISHED,**
**NAMING HOVENSA AND ITS SUBCONTRACTORS AS THIRD PARTY**
**BENEFICIARIES.**
**RESOLVED**

<u>HT-C2</u>  REVISED<u>:</u>
a. Confirm that gross receipts taxes to be paid by Hovensa are ~ 4% on $38,611,000 of contracts?
**TECHNIP RESPONSE:**
**YES, BASED ON $42,564,000**
**RESOLVED**
**TECHNIP RESPONSE 01/07/05 :**
**$42,565,000 CONFIRMED AND ON THE ASSUMPTION THAT GRT OF 4%**
**WILL BE PAID ONCE.**
**RESOLVED**

b. Are all other GRT for subcontractors included in the $38,611,000?
**TECHNIP RESPONSE:**
**GRT FOR ALL SUBCONTRACTORS IS TO BE CALCULATED ON THE BASIS**
**OF $42,564,000**
**TECHNIP RESPONSE 01/07/05 :**
**$42,565,000 CONFIRMED AND ON THE ASSUMPTION THAT GRT OF 4%**
**WILL BE PAID  ONCE (ADD $1,702,600 TOC  LUMP SUM)**
**RESOLVED**
**HOVENSA FOLLOW UP QUESTION:**
**TO AVOID ANY MISUNDERSTANDING, PLEASE CONFIRM THAT**
**$42,564,000 INCLUDING CURRENT CONTINGENCY IS ALREADY**
**INCLUSIVE OF GRT THAT SUBS PAY FOR THEIR PURCHASES.**
**TECHNIP RESPONSE 01/07/05 :**
**QUOTATIONS OBTAINED FROM SUBCONTRACTORS ARE NOT INCLUSIVE**
**OF GRT.   ADD $234,360 TO C LUMP SUM.**
**RESOLVED**



1

c. How many contractors are expected within each category (civil, mechanical, refractory, electrical, etc.)?

**TECHNIP RESPONSE:**
**IN PRINCIPLE THREE CONTRACTORS: GENERAL, CIVIL, HEAVY LIFT. TO BE CONFIRMED LATER**
**RESOLVED**

d. Provide names of each major contractor.

**TECHNIP RESPONSE:**
**PRELIMINARY: HARMONY (GENERAL), MAMMOET (HEAVY LIFT). NO CHOSEN CIVIL CONTRACTOR YET.**
**IF NECESSARY TECHNIP IS READY TO MEET WITH ROCCO COLABELLA TO ENSURE THAT MAMMOET PRICING RATES ARE SIMILAR TO THOSE GIVEN BY ANTHONY CRANE TO HOVENSA.**
**HOVENSA FOLLOW UP QUESTION:**
**TECHNIP SHOULD ARRANGE THIS DISCUSSION TO ENSURE IT HAS USED THE MOST COMPETITIVE EQUIPMENT PRICING.**
**TECHNIP RESPONSE 01/07/05 :**
**TECHNIP CONFIRMS THAT THE RECENT EQUIPMENT PRICING RECEIVED FROM MAMMOET ARE QUITE SATISFACTORLY AND IN LINE WITH TECHNIP'S LUMP SUM.**
**RESOLVED**

e. Provide the dollar value of each major contractor, used in your lump sum price.

**TECHNIP RESPONSE:**

| | TECHNIP | | |
|---|---|---|---|
| SUBCONTRACT | COMPANY | LOCATION | CONTRACT $$ VALUE |
| **CONSTRUCTION SCOPE** | | | |
| CIVIL | | | $11,662,000 |
| MECHANICAL | | | $18,132,000 |
| REFRACTORY | | | INCLUDED |
| ELECTRICAL | | | $2,997,000 |
| INSTRUMENTATION | | | $4,356,000 |
| RIGGING / CRANES | | | INCLUDED |
| INSULATION | | | $1,464,000 |
| SCAFFOLDING | | | INCLUDED |
| OEM INSTALL/STARTUP REPS | | | |
| PAINTING | | | |
| | | | |
| | | | |
| | | | $38,611,000 |

**TECHNIP RESPONSE 01/07/05 :**
**CIVIL IS $11,662,000 + $3,954,000 = $15,616,000**
**TOTAL : $42,565,000**
**RESOLVED**

2



**HT-C3:**
a. Please clarify: Camp services are <u>included</u> in the Civil and Mechanical contract values, but in Part F, item 5, housing for craft personnel is <u>excluded</u> from lump sum price.
> **TECHNIP RESPONSE:**
> **YES, INCLUDED AT $36 PER MAN DAY....TECHNIP TO RECONFIRM THAT IS ADEQUATE FOR THEIR REQUIREMENTS, NO LATER THAN JAN 6 2005.**
> **TECHNIP RESPONSE 01/07/05 :**
> **CONFIRMED**
> **RESOLVED**

b. Clarify that you intend to use Hovensa's contractor ESS for all camp services, and that all such costs are included in your lump sum price.
> **TECHNIP RESPONSE:**
> **YES**
> **RESOLVED**

c. Confirm or clarify your understanding that Hovensa will provide the man-camp facility with two twin beds per room, sheets, closet, use of laundry machines, recreation hall with TV, pool table, internet hookup. Technip will take that facility as is and return them to as received condition less normal wear and tear.
> **TECHNIP RESPONSE:**
> **YES, AND TECHNIP WILL BE RESPONSIBLE FOR MAINTENANCE OF SERVICES AND FACILITIES DURING THE PROJECT.**
> **RESOLVED**

**HT-C4:**
a. Confirm that TIC price for NOx Reduction, etc. is $978,000.
> **TECHNIP RESPONSE:**
> **YES, SKID MOUNTED, IN EP PRICE.**
> **RESOLVED**

b. What, if anything, is NOT included in that total installed price for this system?
> **TECHNIP RESPONSE:**
> **ALL COSTS ARE INCLUDED IN EP AND C LUMP SUMS.**
> **RESOLVED**

c. Confirm that your price includes the catalyst.
> **TECHNIP RESPONSE:**
> **YES**
> **RESOLVED**

d. Section F, Item 2. Please identify the equipment that is included as components of the SCR system in the break-out price for the SCR.
> **TECHNIP RESPONSE:**
> **WILL PROVIDE BY JAN 6 2005**
> **TECHNIP RESPONSE 01/07/05 :**
> **PLEASE REFER TO TECHNICAL Q&A REV 1 OF THE 01/07/05**
> **RESOLVED**

3



**HT-C5:**
Clarify:
Earned value matrix does not indicate earned milestones. These will be required.
Earned value matrix for Construction subs must be developed for review.
> **TECHNIP RESPONSE:**
> PROVIDED BREAKDOWN BY **E, P AND C** AND WILL PROVIDE A COMPLETE
> EARNED VALUE MATRIX FOR HOVENSA APPROVAL WITHIN 30 DAYS
> AFTER CONTRACT AWARD, WHICH WILL BECOME APPENDIX D, EXHIBIT 3
> RESOLVED

**HT-C6 CANCELLED - SEE QUESTION HT-C32:**
Confirm that concrete is included in lump sum pricing.

**HT-C7:**
Confirm (Air Compressor Skid: $1,030,000) breakout pricing includes EP and C.
> **TECHNIP RESPONSE:**
> INCLUDED IN EP LUMP SUM. THE ERECTION COST IS INCLUDED WITHIN
> THE C LUMP SUM BUT TECHNIP IS NOT ABLE TO GIVE THE C BREAKOUT,
> FOR IT IS MARGINAL.
> RESOLVED

**HT-C8:**
Clarify $1,100,000 Mobilization Fee cancellation in Part F, Item 7.
> **TECHNIP RESPONSE:**
> THIS ISSUE HAS BEEN RESOLVED AND ADDRESSED IN FINAL FORMAT
> OF APPENDIX D
> RESOLVED

**HT-C9:**
What is cost for increasing Employers Liability Insurance to $1,000,000?
> **TECHNIP RESPONSE:**
> NO COST INCREASE WILL APPLY FOR THIS.
> RESOLVED

**HT-C10:  INTENTIONALLY LEFT BLANK**

**HT-C11:**
Confirm the price reduction from your lump sum, if Hovensa elects to provide the G.L,
Auto, All Risk and Marine Cargo insurance.
> **TECHNIP RESPONSE:**
> $4,776,000
> RESOLVED

**HT-C12:  INTENTIONALLY LEFT BLANK**

**HT-C13   INTENTIONALLY LEFT BLANK**

**HT-C14:  INTENTIONALLY LEFT BLANK**

**HT-C15: INTENTIONALLY LEFT BLANK**

**HT-C16: INTENTIONALLY LEFT BLANK**

**HT-C17: INTENTIONALLY LEFT BLANK**

**HT-C18: INTENTIONALLY LEFT BLANK**

**HT-C19: INTENTIONALLY LEFT BLANK**

**HT-C20:  INTENTIONALLY LEFT BLANK**

**HT-C21:  INTENTIONALLY LEFT BLANK**

**HT-C22: INTENTIONALLY LEFT BLANK**

**HT-C23:**
Clarify EP and C breakdown for Win Win options:
Air coolers $92,000
Texas Tower $101,000
Recycle Compressor: $3,000,000
> **TECHNIP RESPONSE:**
> **AIR COOLERS: COST IS NEGLIGIBLE.**
> **TEXAS TOWER AND RECYCLE COMPRESSOR: NO IMPACT ON**
> **CONSTRUCTION COST.**
> **RESOLVED**

**HT-C24 REVISED:**
Please provide description of the site offices to be provided by Hovensa.
**Attached is a sketch of the available trailers that Hovensa can provide for the site offices.**
**A. If included in your base price, advise of the deduct if Hovensa provides all site offices.** Furniture and all equipment remain in your scope at this time.
> **TECHNIP RESPONSE:**
> **TECHNIP WILL ADVISE BY DEC 23.**
> **TECHNIP RESPONSE 01/07/05 :**
> **AMOUNT TO BE DEDUCTED: $32,400**

**B. Please review and clarify if any additional offices are needed.**



LAYOUT OF FIVE
AND DIME.pdf (2...

> **TECHNIP RESPONSE:**
> **IF HOVENSA PROVIDES ONE OFFICE TRAILER WITH DESK AND CHAIR IN**
> **EACH ROOM, DEDUCT $32,400 FROM LUMP SUM**
> **RESOLVED**



**HT-C25:**
Please clarify where the $$dollars for pre-commissioning are included.
> **TECHNIP RESPONSE:**
> **INCLUDED IN LUMP SUMS FOR "SUPERVISION" IN EP AND C.**
> **TECHNIP AGREES THESE EFFORTS ARE REQUIRED FOR MECHANICAL**
> **COMPLETION.**
> **RESOLVED**


**HT-C26: INTENTIONALLY LEFT BLANK**

**HT-C27:**
a. Your unit rates include the use of Third County Nationals. Please confirm your understanding of the Appendix L......
Per Appendix L:  Workforce must consist of persons who are US citizens or authorized aliens.
> **TECHNIP RESPONSE:**
> **TECHNIP AGREES TO COMPLIANCE WITH APPENDIX L.**
> **ONLY SUPERVISORY/STAFF PERSONNEL MAY BE FROM FRANCE OR**
> **OUTSIDE USVI. TECHNIP UNDERSTANDS THAT <u>ALL</u> POSITIONS MUST BE**
> **POSTED LOCALLY IN ACCORDANCE WITH LOCAL REGULATIONS.**
> **RESOLVED**


b. Confirm that your pay scale is the same for all persons in the same title job.
> **TECHNIP RESPONSE:**
> **YES**
> **RESOLVED**


**HT-C28:**
Clarify where the cost of all modules is, and where the work is to be done.
> **TECHNIP RESPONSE:**
> **INCLUDED IN EP PRICE, FOR INSTRUMENT SATELLITE, COMPRESSOR,**
> **SUBSTATION AND FURNACE. ALL OF WHICH ARE ASSEMBLED OUTSIDE**
> **USVI.**
> **RESOLVED**


**HT-C29: INTENTIONALLY LEFT BLANK**

6



**HT-C30:**
Confirm your base bid is in strict accordance with HOVENSA's Approved Vendor's List and all exceptions are clarified in your proposal.
**TECHNIP RESPONSE:**
**THE ONLY EXCEPTION IS KTI, FOR THE HEATER.**
**RESOLVED**

**HT-C31:**
Section 2.3.8.7 of the PEP states "Field Procurement activity is necessary...".  Section 2.4.1.10.12 of the PEP states "SUBCONTRACTOR (electrical) may procure some bulk materials".
What is the estimated value of field procured and subcontractor procured material?
**TECHNIP RESPONSE:**
**TECHNIP HAS NO BREAKOUT FOR THESE ITEMS.**
**TECHNIP WILL CONFIRM WHETHER ALL CONSUMABLES ARE ALSO IN LUMP SUM BY JANUARY 6.**
**TECHNIP RESPONSE 01/07/05 :**
**TECHNIP  CONFIRMS THAT ALL CONSTRUCTION CONSUMABLES SUCH AS WELDING RODS, PAINT... ARE INCLUDED IN THE C LUMP SUM**
**RESOLVED**

**HT-C32:**
***Hovensa has decided to place the total responsibility for concrete with the Contractor.*** Please advise the impact on your cost and schedule for assuming total responsibility for your own concrete supply.
**TECHNIP RESPONSE:**
**ALL THESE COSTS ARE ALREADY INCLUDED IN THE LUMP SUM.**
**RESOLVED.**

**HT-C33:**
Section E of your Commercial Proposal indicates " Rigging/Cranes" are included.  Please clarify where the costs are included and how Technip intends to contract for these services.
**TECHNIP RESPONSE:**
**INCLUDED IN "MECHANICAL" SUBCONTRACT COST IN LUMP SUM.**
**RESOLVED**

**HT-C34:**
Section I of your proposal states " long lead items need to be purchased within the first 10 days following contract signature..."  Your project schedule indicates "critical equipment" purchases will not be made until April. Provide a listing of the equipment you intend to purchase with the first 10 days.
**TECHNIP RESPONSE:**
**LONG LEAD ITEMS ARE: REACTORS AND HEATER**
**CRITICAL EQUIPMENT IS: TEXAS TOWER, COMPRESSORS AND EXCHANGERS.**
**RESOLVED.**

7

### HT-C36: (UNIT RATES)

1.   Please confirm the rates provided in Part D of your proposal include gross receipts taxes for on-island labor?

2.   Construction rates stated in Part D pg 4/8:

    a.   Inclusive of small tools under what dollar value?  Provide a listing of small tools included in the construction rates.

    b.   Is there a shift differential to be applied to these rates?

    c.   Construction rates do not indicate local and non-local rates.  Since the rates are all-inclusive (including meals, lodging, transportation, etc), please provide the reduced rate for local hired craft personnel?

    d.   Provide rates for the following crafts: millwrights, firewatch/holewatch, painters, and laborers.

3.   Please confirm materials to be provided at cost with no additional markup

4.   Home Office rate is Part D pg 2/8

    a.   Please confirm home office expenses (reproduction, phone calls, CAD charges, etc)  are included in the your rates?

    b.   Provide rate for process engineer.

5.   Provide rates for equipment rental.

                     **TECHNIP RESPONSE 01/07/05 :**
1.   **INCLUDED FOR SUPERVISION PERSONNAL BUT EXCLUDED FOR CONSTRUCTION LABOR**
2.   **a- $ VALUE IS NOT AVAILABLE. LISTING IS DETAILED IN  TECHNICAL PROPOSAL CONTRUCTION EXECUTION PLAN**
    **b- RATES ARE BASED ON NORMAL WORKING HOURS**
    **c- CONSTRUCTION RATES ARE ALL LOCAL RATES**
    **d- MILLWRIGHTS SAME RATE AS MECHANIC 2, FIREWATCH/HOLEWATCH SAME AS GENERAL SEMISKILLED, PAINTER SAME AS GENERAL SKILLED, LABORERS SAME AS HELPER**
3.   **PLEASE CLARIFY "MATERIALS"**
4.   **a- CONFIRMED**
    **b- INCLUDED IN CAT 3 FOR LEAD PROCESS ENGINEER AND IN CAT 4 FOR PROCESS ENGINEER.**
5.   **WILL BE HANDLED DURING MEETING OF 10/01/05**
    **RESOLVED**



### HTC-37

a. **Confirm that all costs associated with the PHA review of the Technip proposed plot plan are included in your lump sum.**

**TECHNIP RESPONSE 01/07/05 :** YES
RESOLVED

b. **Confirm that the costs for any modifications to your proposed plot plan required during/after PHA are included in your lump sum.**

**TECHNIP RESPONSE 01/07/05 :** NO
RESOLVED

### HT-C38

Hovensa needs to make the following clarification and request pertaining to the Scope of Work Appendix A, General Requirements, paragraph 2.0.12 :
The intent of this requirement is to make one or both the listed DCS Integrators a Subcontractor (responsible for the engineering, procurement and installation of the DCS scope of work) to the successful Prime Contractor.

Confirm that your base bid is in compliance with Hovensa intent
**TECHNIP RESPONSE 01/07/05 :** YES
RESOLVED

### HT-C39

Refer to Scope of Work Appendix A, paragraph 3.2.2.1 Buildings and add Hovensa Engineering Standard for Electrical Substations No. 1081.1.0 (attached) to the Engineering Standards listed.
Advise if there is any cost or schedule impact.



Electrical Substations
Eng Std 1081.1.0.doc

**TECHNIP RESPONSE 01/07/05 :** NO IMPACT
**RESOLVED**



## HT-C40

Hovensa needs to make the following clarification to the Scope of Work Appendix A, paragraph 3.2.2.1 Buildings, paragraphs a. and b. Electrical Substation Building and Satellite Building. Hovensa prefers that these buildings be pre-fabricated. Above ground entry and exit of both power and instrument cable, routed via cable tray, is preferred. The bottom of the buildings may be elevated greater than 2 feet above grade to suit utilization of cable tray. The structural steel frame to support the prefabricated buildings should be hot dipped galvanized / bolted construction.
Advise if there is any cost or schedule impact.

**TECHNIP RESPONSE 01/07/05** :
**FOR SEALING (WATERPROOF AND AIR PRESSURIZATION) REASON WE DO NOT RECOMMEND ABOVE GROUND ENTRY AND EXIT OF BOTH POWER AND INSTRUMENT CABLES**
**FOR OTHER POINTS, WE CONFIRM OUR COMPLIANCE WITH YOUR REQUIREMENTS.**
**COST IMPACT: $328,000 IN C LUMP SUM. NO SCHEDULE IMPACT**
**RESOLVED**


## HT-C41

Hovensa needs to make the following clarification to the Scope of Work Appendix A, paragraph 3.2.6 Electrical. Hovensa prefers that all Electrical and Instrument cable be installed above ground.
Advise if there is any cost or schedule impact.

**TECHNIP RESPONSE 01/07/05** : **$600,000 AND NO SCHEDULE IMPACT**
**RESOLVED**


## HT-C42

Refer to the FEED Package Appendix F, and add Exhibit 15, Simplified Electrical One – Line Diagram, ELEC-001, Rev A (attached).
Advise if there is any cost or schedule impact..



LSG Electrical One
Line 1-03-2005.pdf

**TECHNIP RESPONSE 01/07/05** :
**COST  IMPACT:$132,000 IN EP LUMP SUM**
**SCHEDULE IMPACT: NONE**
**RESOLVED**



**HT-C43**
Refer to Appendix C, Engineering Standards, Engineering standard 596.1.3. Pages 8 through 12 were omitted from this standard. Replace in its entirety by the complete standard attached.
Advise of any cost/schedule impact of this document.



Hovensa Eng Std
596.1.03 -pg 1 thru 1

**TECHNIP RESPONSE 01/07/05 : NO IMPACT**
RESOLVED

**HT-C44**
Refer to Scope of Work Appendix A, paragraph 3.2.2 (e) – delete the last sentence...
~~CONTRACTOR will route sewer to a tie-in point from which the OSBL Contractor will route the line to the existing sewer.~~
Please advise of any cost or schedule impact of this change.
**RESOLVED AND INCLUDED IN C45**

**HT-C45**
Refer to Scope of Work Appendix A, paragraph  3.2.2 (d)  and add the following:
The contractor shall tie-in this service to the existing 24 inch sewer line running east / west on coordinate N8550. Outfall to drainage ditch.

Please advise of any cost or schedule impact of this change.
$165,000 IN C LUMP SUM AND NO SCHEDULE IMPACT
**RESOLVED**

**HT-C46**
Refer to Scope of Work Appendix A, paragraph 3.2.4 (h)  and  delete the second paragraph pertaining to Process Storm water in its entirety and replace with the following:
The Process Storm water System *SCH* shall tie-in to the existing 30 inch process sewer line running North / South on coordinate E13780.
Please advise of any cost or schedule impact of this change.
**RESOLVED AND INCLUDED IN C45**

### HT-C47

Hovensa needs to make the following clarification to the Scope of Work Appendix A, paragraph 3.2.2.1 (c) Compressor Shelter Bridge Crane:

> The Bridge Crane shall be designed so as to remove all compressor components (including the motor) and set on the Shelter Building deck for maintenance tear downs. Removable panels shall be provided in the Shelter Building roof so as to remove complete assemblies (i.e. motor and compressor) from outside the shelter Building with mobile lifting equipment.

Please advise of any cost or schedule impact of this change.

**TECHNIP RESPONSE:  NO COST OR SCHEDULE IMPACT**

RESOLVED


### HT-C48

**HOVENSA will not obtain the construction permit required until 6/8/2005, no later than 7/1/2005.**

    A. **Please advise of any costs and/or schedule impact.**
    B. **Please confirm you have included manhours associated with providing permit documentation in your bid as required in Appendix A.**

**TECHNIP RESPONSE: WITH PERMIT BY 6/8/2005, THERE IS NO COST OR SCHEDULE IMPACT.**

RESOLVED



12

Appendix AD -
Organization Chart

# Overall Project Organisation Chart



TECHNIP CORPORATE HSE&S MANAGER

TECHNIP HSE&S COORDINATOR

TECHNIP PLANNING ENGINEER

TECHNIP Executive Sponsor

TECHNIP IT MANAGER

TECHNIP COST CONTROL MANAGER

HOVENSA Project Director

TECHNIP Project Director

TECHNIP CONSTRUCTION & PRECOM MANAGER

TECHNIP CONTRACT MANAGER

TECHNIP CORPORATE QA MANAGER

TECHNIP QA MANAGER

TECHNIP ENGINEERING MANAGER

TECHNIP PROCUREMENT MANAGER

HOVENSA Licensor

TECHNIP PROCESS MANAGER

HOVENSA

LOW SULFUR GASOLINE PROJECT
USVI – SAINT CROIX

Technip

KEY PERSONNEL
RESUMES

<u>EXPERIENCE RESUME</u>

| | |
|---|---|
| **NAME:** | CASTAGNA Franco |
| **PRESENT POSITION:** | Construction Manager |
| Length of time in present position: | November 1978 |
| **FORMAL TRAINING:** | Technical Institute |
| College: | Rome, 1960 |
| **LANGUAGES:** | Italian, English, French, Spanish |
| **PREVIOUS EMPLOYERS:** | CTIP S.p.A<br>Rome, Italy<br>(1963 - 1969)<br><br>AMMONIA CASALE<br>Rome, Italy<br>(1961 - 1963) |
| **POSITION HELD AND PERIOD:** | Construction Manager<br>(Technip Italy, April 1995 to present)<br><br>Construction Manager<br>(TPL, November 1978 to March 1995)<br><br>Construction Superintendent<br>(TPL, July 1974 - October 1978)<br><br>Piping Group Leader - Piping Erection Supervisor<br>(TPL, March 1970 - June 1974) |

September 2004
*(0018)*

Experience Resume
Castagna Franco

POSITION HELD AND PERIOD:          Piping Design and Drafting Group Leader
                                   (C.T.I.P., 1968 - 1969)

                                   Piping Erection Supervisor
                                   (C.T.I.P., 1968)

                                   Piping Designer
                                   (C.T.I.P., 1965 - 1968)

                                   Piping Stress Analysis Specialist
                                   (C.T.I.P., 1964 - 1965)

                                   Piping Draftsman
                                   (C.T.I.P., 1963 - 1964)

                                   Piping Draftsman
                                   (Ammonia Casale, 1961 - 1963)

## EXPERIENCE RESUME

| | |
|---|---|
| NAME: | LAGANA' Vincenzo |
| PRESENT POSITION: | Project Director |
| FORMAL TRAINING: | Nuclear Engineer Graduate |
| College: | Rome University, 1988 |
| LANGUAGES: | Italian, English |
| PREVIOUS EMPLOYERS: | EIS SpA<br>Rome, Italy<br>(July 1990 - August 1992) |
| POSITION HELD AND PERIOD: | Head of Technical and Commercial Proposals Dpt.<br>(TPIT, March 2003 to present)<br><br>Project Manager<br>(TPIT, March 1997 – February 2003)<br><br>Engineering Manager<br>(TPIT, April 1994 – February 1997)<br><br>Project Engineer<br>(TPL, September 1992 – April 1994)<br><br>Computer Specialist<br>(EIS, July 1990 - August 1992) |

February 2005
*(0637)*

# EXHIBIT G

-----Original Message-----
From: egory@technip.com [mailto:egory@technip.com]
Sent: January 21, 2005 11:53 AM
To: Karp, Al
Cc: gsarigiannis@technip.com; smespoulhes@technip.com;
jphuard@technip.com; mdieudonne@technip.com; jmtajan@technip.com;
MFinnen@technip.com
Subject: HOVENSA/CONTRACTUAL MATTER

Following our discussion on Thursday January 20 please find hereunder
Technip proposed draft of the following Articles :

-Article 3.9.1. of EP Contract
(See attached file: Vendor Warrany.doc)
<<Vendor Warrany.doc>>

-Article 19.4 of the Coordination Procedure Appendix B
(See attached file: Hovensa 19.4 rev 21 01 05.doc)
<<Hovensa 19.4 rev 21 01 05.doc>>

-Parent Company Guarantee Appendix Q
(See attached file: Appx Q - Parent Guaranty rev 21 01
05.doc)
<<Appx Q - Parent Guaranty rev 21 01 05.doc>>

Etienne GORY
CEO LATIN AMERICA
TECHNIP
Tel : 0039 06 65 98 39 30
Fax :0039 06 65 98 37 60
Mail : egory@technip.com

# APPENDIX  Q
## PARENT GUARANTY AGREEMENT

### GUARANTY AGREEMENT

**GUARANTY AGREEMENT** (the "Guaranty") dated [Month, Date], 2004, by CONTRACTOR PARENT, a _____ corporation, with an office at _____, ("Guarantor"), for the benefit of HOVENSA L.L.C., a U.S. Virgin Islands limited liability company, with an office at #1 Estate Hope Christiansted, VI 00820 ("Owner").

### RECITALS:

A.    Guarantor is the parent company of _____ ("Contractor").

B.    Owner has entered into an agreement with Contractor dated _____ ("Agreement") for _____ at Owner's Refinery in St. Croix, USVI.

C.    As a condition to entering into the Agreement with Contractor, Owner requested Guarantor to provide a parent company guarantee of Contractor's performance under the Agreement.

D.    Guarantor is willing to enter into this Guaranty to satisfy Owner's request.

### THE PARTIES AGREE AS FOLLOWS:

1.  Guarantor unconditionally and irrevocably guarantees to Owner that if Contractor fails to perform or observe the terms of the Agreement, Guarantor will immediately upon first demand in writing by Owner notifying Guarantor of Contractor's breach under the Agreement perform or take such steps as are necessary to achieve performance or observance of these terms and will indemnify Owner against all losses, damages, claims and costs arising from the failure to the extent of Contractor's liability under the Agreement.

2.  The liability of Guarantor will not be reduced or discharged by any alteration in the relationship between Contractor and Owner which has been consented to by Contractor in writing (with or without the knowledge or consent of Guarantor), or by any forbearance or indulgence by Owner towards Contractor or Guarantor whether as to payment, time, performance or otherwise.

3. Guarantor will make any payment due hereunder on first written demand without set-off or counterclaim and without any legal formality such as protest or notice being necessary, and waives all privileges or rights which it may have as a guarantor, including any right to require Owner to claim payment or to exhaust remedies against Contractor or any other person but always to the extent Contractor has not cured its breach under the Agreement. Notwithstanding the above, the Guarantor shall have available to it, in any action or proceeding by Owner seeking performance of this Guaranty, or

| Deleted: justified |
| Deleted: as a condition to such payment by Guarantor under this Guaranty |
| Deleted: them |
| Deleted: APPX Q - PARENT GUARANTY REV 21 12 04 |
| Deleted: 22 December, 2004 |
| Deleted: C:\Documents and Settings\ndieudonne\My Documents\Travail.Doc\HOVENSA\Appx Q - Parent Guaranty rev 21 12 04.doc |

Based upon GEPS Master Form APPX Q - PARENT GUARANTY REV 21 01 05 (4)

Page 1 of 2

Rev 21 January, 2005

damages for its non-performance, all defences which Contractor would be able to raise in an action by Owner against Contractor seeking performance or damages for non-performance under the Agreement.

4.  The obligations of Guarantor will continue in effect after termination of the Agreement until all Contractor's obligations and liabilities under the Agreement have been discharged or have expired.

5.  This Guaranty will be binding on the successors and assigns of Guarantor and will extend to and inure for the benefit of the successors and permitted assignees of Owner.  Owner may assign or transfer all or any of its right, title and interest in this Guaranty upon such terms as Owner may think fit to any agent for any syndicate of banks and financial institutions providing credit and guaranty facilities to Owner in connection with the Agreement.  No person other than Owner or any permitted assignees is intended as a beneficiary of this Guaranty nor will any such person have any rights hereunder.  Guarantor may not otherwise assign or otherwise transfer any of its rights or obligations hereunder.

6.  If there is any claim under this Guaranty, Guarantor will be entitled to assert any defense, set-off or counterclaim that Contractor could assert had such claim been made directly against any person under the Agreement.

7.  This Guaranty will be governed and construed in accordance with the laws of the State of New York, United States of America.  Any dispute arising out of or in connection with the present Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules. **HOLD**

    **IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their respective authorized representatives as of the date first written above.

**Deleted:** APPX Q - PARENT GUARANTY REV 21 12 04

**Deleted:** 22 December, 2004

**Deleted:** C:\Documents and Settings\mdieudonne\My Documents\Travail.Doc\HOVENSA\App x Q - Parent Guaranty rev 21 12 04.doc

Based upon GEPS Master Form APPX Q - PARENT GUARANTY REV 21 01 05 (4)
Page 2 of 2
Rev 21 January, 2005

C:\Documents and Settings\jsmith\Local Settings\Temporary Internet Files\OLKA1\Appx Q - Parent Guaranty rev 21 01 05 (4).doc

# EXHIBIT H

**From:** smespoulhes@technip.com [mailto:smespoulhes@technip.com]
**Sent:** Monday, January 24, 2005 10:37 AM
**To:** Karp, Al
**Cc:** Friedman, Douglas; egory@technip.com; gsarigiannis@technip.com; Crovesi, Marco;
Dunphy, Kara (Hovensa); jphuard@technip.com; Marano, Martin; Otero, Pablo
**Subject:** Re: TECHNIP OPEN EP ISSUES RESPONSE: Parent Guarantee

We do agree with those modifications.

Stéphane

| | | |
|---|---|---|
| **"Karp, Al"** <AKarp@hess.com> | To: | <smespoulhes@technip.com>, <jphuard@technip.com>, <gsarigiannis@technip.com>, <egory@technip.com> |
| 24/01/2005 14:01 | cc: | "Marano, Martin" <mmarano@hess.com>, "Crovesi, Marco" <h001mc0@hovensa.com>, "Otero, Pablo" <POtero@hovensa.com>, "Dunphy, Kara (Hovensa)" <h053kd0@hovensa.com>, "Friedman, Douglas" <DFriedman@hess.com> |
| | Subject: | TECHNIP OPEN EP ISSUES RESPONSE: Parent Guarantee |

```
D Friedman comments below:

The guaranty is as discussed.  Dispute resolution was not resolved at
the
time.  I suggest the following: "Any dispute arising out of or in
connection
with this Guaranty will be settled in the same manner as in Article 24
(EP)/27 (C) of the _____ Agreement."

As cleanup matters, I suggest using the American spelling of "defenses"
in
Par. 3 and deleting the "the" in front of "Guarantor" in the same
paragraph.
```

# EXHIBIT I

# APPENDIX Q
# PARENT GUARANTY AGREEMENT

### GUARANTY AGREEMENT

**GUARANTY AGREEMENT** (the "Guaranty") dated [Month, Date], 2004, by CONTRACTOR PARENT, a _____ corporation, with an office at _____, ("Guarantor"), for the benefit of HOVENSA L.L.C., a U.S. Virgin Islands limited liability company, with an office at #1 Estate Hope Christiansted, VI 00820 ("Owner").

### RECITALS:

A.    Guarantor is the parent company of _____ ("Contractor").

B.    Owner has entered into an agreement with Contractor dated _____ ("Agreement") for _____ at Owner's Refinery in St. Croix, USVI.

C.    As a condition to entering into the Agreement with Contractor, Owner requested Guarantor to provide a parent company guarantee of Contractor's performance under the Agreement.

D.    Guarantor is willing to enter into this Guaranty to satisfy Owner's request.

### THE PARTIES AGREE AS FOLLOWS:

1. Guarantor unconditionally and irrevocably guarantees to Owner that if Contractor fails to perform or observe the terms of the Agreement, Guarantor will immediately upon first demand in writing by Owner notifying Guarantor of Contractor's breach under the Agreement, perform or take such steps as are necessary to achieve performance or observance of these terms and will indemnify Owner against all losses, damages, claims and costs arising from the failure to the extent of Contractor's liability under the Agreement.

2. The liability of Guarantor will not be reduced or discharged by any alteration in the relationship between Contractor and Owner which has been consented to by Contractor in writing (with or without the knowledge or consent of Guarantor), or by any forbearance or indulgence by Owner towards Contractor or Guarantor whether as to payment, time, performance or otherwise.

3. Guarantor will make any payment due hereunder on first written demand without set-off or counterclaim and without any legal formality such as protest or notice being necessary, and waives all privileges or rights which it may have as a guarantor, including any right to require Owner to claim payment or to exhaust remedies against Contractor or any other person, but always to the extent Contractor has not cured its breach under the Agreement. Notwithstanding the above, Guarantor will have available to it, in any action or proceeding by Owner seeking performance of this Guaranty, or


Based upon GEPS Master Form APPX Q - PARENT GUARANTEE VER 2 JAN 30-05.DOC
Page 1 of 2

Rev 31 January, 2005

C:\Documents and Settings\cpatterson\Local Settings\Temporary Internet Files\OLK17\Appx Q - Parent Guarantee Ver 2 Jan 30-05.doc



damages for its non-performance, all defenses that Contractor would be able to raise in any action by Owner against Contractor seeking performance or damages for non-performance under the Agreement..

4.  The obligations of Guarantor will continue in effect after termination of the Agreement until all Contractor's obligations and liabilities under the Agreement have been discharged or have expired.

5.  This Guaranty will be binding on the successors and assigns of Guarantor and will extend to and inure for the benefit of the successors and permitted assignees of Owner.  Owner may assign or transfer all or any of its right, title and interest in this Guaranty upon such terms as Owner may think fit to any agent for any syndicate of banks and financial institutions providing credit and guaranty facilities to Owner in connection with the Agreement.  No person other than Owner or any permitted assignees is intended as a beneficiary of this Guaranty nor will any such person have any rights hereunder.  Guarantor may not otherwise assign or otherwise transfer any of its rights or obligations hereunder.

6.  If there is any claim under this Guaranty, Guarantor will be entitled to assert any defense, set-off or counterclaim that Contractor could assert had such claim been made directly against any person under the Agreement.

7.  This Guaranty will be governed by and construed in accordance with the laws of the State of New York, U.S.A.  Any dispute arising out of or in connection with this Guaranty will be settled in the same manner as in Article 24 [EP]/27 [C] of the [EP/C] Agreement."

   **IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their respective authorized representatives as of the date first written above.

Based upon GEPS Master Form APPX Q - PARENT GUARANTEE VER 2 JAN 30-05.DOC
Page 2 of 2
Rev 31 January, 2005

C:\Documents and Settings\cpatterson\Local Settings\Temporary Internet Files\OLK17\Appx Q - Parent Guarantee Ver 2 Jan 30-05.doc

# EXHIBIT J

**TPVI Ltd.**

Rome,February 21, 2006

TLH-HVS-0664-0024

Messrs
*HOVENSA LLC*
*ST. CROIX REFINERY*
1 ESTATE HOPE
CHRISTIANSTED
V.I. – 00820 5652

Att.: Mr. John George
*Project Manager*

c.c..: Mr. Michael J. Fennessy
*Vice President & C.F.O.*

c.c.: Mr. M. Crovesi
*Vice President & Deputy C.O.O.*

c.c.:Att.: Mr. Pablo Otero
*Major Projects Program Managers/Project Director*

SUBJECT:   Proj. 2229 LOW SULFUR GASOLINE UNIT
           Contract n. HVS-0664
           TPVI 's response to Hovensa email message dated 10 February 2006
           and email message dated 09 February 2006

Dear Sirs,

We refer to the email message dated 9ᵗʰ February 2006 addressed by Mike Fennessy to Alfredo Primicerio, as well as to your subsequent letter dated 10ᵗʰ February 2005.

We continue to dispute Hovensa's assertion that Technip is in default as it"is not executing the project according to its plan". Any deviation from the project plan is attributable to the events of force majeure, the occurrence of which was duly noted by Technip to Hovensa many months ago. Notwithstanding empirical evidence to contrary, Hovensa continues to unreasonably deny such occurrence.

Hovensa is fully aware that, as a result of the consequences of the Force Majeure events, Technip encountered serious difficulties in performing the Contract in accordance with its original agreed terms. This fact required Technip:

TPVI LTD
PMD 115 - 4093 Diamond Ruby S.te 7
Christiansted - St Croix 00820 - USVI
License No.: 2-1001761-2005

**TPVI Ltd.**

- to substantially change the execution plan it relied upon at the time of signature of the Contract; and
- to put in place mitigation measures aimed at overcoming the difficulties encountered.

Both items could not be accomplished, without the full co-operation of Hovensa. Unfortunately, this did not occur, as Hovensa has been focused upon the *procedural aspects* rather than on the achievement of the main (common) goal, consisting of the delivery by Technip to Hovensa of a Plant complying with the contract specifications and in due time.

The attempts by Technip to perform its contractual obligations in the best possible way under the prevailing conditions, has been systematically frustrated by Hovensa's over-exacting and bureaucratic approach.

As an example of this approach, Hovensa's rejection of Technip's proposed subcontracts with RAM-FAB and Sun was not supported by any facts.   While Technip appreciates Hovensa's subsequent approval of these subcontracts, the delay wasted the parties' time and energy.  This conduct by Hovensa is, in our view, evidence of an unreasonable attitude.

Instead of legalistic and groundless complaints concerning Technip's conduct, Hovensa is once again requested to acknowledge the realities of the present situation. This would allow both Hovensa and Technip to share a plan of action aimed at establishing the terms and conditions of a new project execution plan which will make feasible the project under the present circumstances.

Furthermore a full co-operation between Hovensa and Technip aimed at implementing this plan of action will be requested to create a win-win situation for the benefit of both Hovensa and Technip.

We are confident to be in position to expand the above item on the occasion of the forthcoming meeting in St. Croix.

TPVI LTD.

Etienne GORY
CEO Latin America

# EXHIBIT K

CIVIL COURT OF ROME

Petition pursuant to art. 700 of the Italian Civil Procedure Code

for:

**TECHNIP ITALY S.p.A.**, with registered office in Rome, viale Castello della Magliana 68, P. IVA 01874901004, in the person of Dott. Marco Villa, CFO and Ing. Arturo Grimaldi, General Director, Legal Representatives *pro-tempore*, as well as

**TPVI LTD**, a company incorporated under the laws of US Virgin Islands, with registered office in 1, Hibiscus Alley, Charlotte Amalie, St. Thomas, US Virgin Islands, in the person of Mr. Etienne Gory, in his capacity as legal representative *pro-tempore*,

both represented and defended, also disjointly, by Daniela Jouvenal Long and Sergio Calderara, of the Rome bar, and domiciled at their firm in Rome, Piazza di Pietra, 26, pursuant of a power of attorney at the end of the present petition

WHEREAS

1. TECHNIP ITALY S.p.A. (hereinafter, "**Technip**") and TPVI LTD (hereinafter, "**TPVI**") are both companies of the multinational group Technip, headed by Technip S.A., a company incorporated under French law;

2. Technip and TPVI Ltd. Have enetered into on 10 March 2005 with HOVENSA L.L.C., a company with registered office in 1 Estate Hope, Cristiansted (VI) 00820-5652, US Virgin Islands (hereinafter, "**Hovensa**"), agreements for the "turn key" construction of hydrotreatment plants for sulphur low-content petrol, in Saint Croix, US Virgin Islands, at Hovensa's petrol refinery;

3. Such agreements provide for works that are defined as "Engineering & Procurement" and "Construction", and include a series of complex activities for the project, supply and construction, as well as the consequential stipulation of all contracts necessary in order to realize the plant and the supervision of the project;

4. In particular, following a precise request from Hovensa, the work was distributed among into two different contracts, independent one from the other; therefore: Technip, on 10 March 2005 entered into the "Engineering & Procurement" contract for an global agreed amount of, originally, US$ 77.000.000= and identified with n. HVS-0663 (hereinafter the "**Technip Contract**"), while TPVI on the same date entered into the "Construction" agreement for a global agreed amount of, originally, US$ 50.000.000= and identified with n. HVS-0664 (hereinafter the "**TPVI Contract**"); such contracts are structured in such a fashion that they are independent from each other, although referring to the same project;

5. both contracts – ruled by the laws of the State of New York – provided that Hovensa would receive a bank guarantee as a guarantee – indeed – of the obligations taken in the relevant contract and thus equal to 10% of the value of each of them;

6. such guarantee has been – for each contract – regularly issued by UniCredit Banca d'Impresa (hereinafter, "**Unicredit**"), for an amount which originally was, as agreed, progressively increased in parallel with the development of the works and the issuing of the relevant invoices;

7. As a consequence Unicredit issued in favour of Hovensa:

a) an "*Irrevocable Stand-By Letter of Credit*" dated 22 March 2005 "by order of Technip", for an amount of US dollars 30.800,00 (thirtythousandeighthundred/00), that, following a series of letters, was increased up to the current amount of US dollars 7.080.683,88 (sevenmillioneightythousandsixhundredeightythree/88), as indicated in the Unicredit letter dated 24 April 2007 (**doc. n. 1**); and

b) an "*Irrevocable Stand-By Letter of Credit*" dated 22 August 2005 "by order of TPVI" for an amount of US dollars 48.125,00 (fourtyeightthousandonehundredeightyfive/00), that, following a series of letters, was increased up to the current amount of US dollars 6.074.490,00 (sixmillionseventyfourthousandfourhundredandninety/00), as indicated in the

2

Unicredit letter dated 14 March 2007 (doc. n. 2);

both guarantees are subject to the *"Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce Publication n° 500"* rules (hereinafter, **"UCP"**) and, for the possible items not provided therein, to the laws of the State of New York;

8. both guarantees provide that Hovensa may draw down the guarantee – having in this case to receive the payment of the amount requested within 7 working days from the request - provided that the following is produced: (i) signed request for payment for draw down of the *stand-by letter of credit* n. 460830345935 and n. 460830854774 respectively, and (ii) statement from an Hovensa Officer with the following wording: "Technip is in breach in respect of the terms of the Agreement n. HVS-0663 of 10 March 2005 between Hovensa L.L.C. and Technip (the "Agreement") and we request hereby the payment of the amount of (*in letters*) ($) pursuant to your Standby Letter of Credit n. [.....]". In both guarantees the text is identical, except for the number of the letter of credit and of the agreement (respectively): contract n. 0663 – Letter of Credit 460830345935 and contract n. 0664 and Letter of Credit 460830854774);

9. both guarantees have been issued by request of Technip, presented respectively with letter of 21 2005 (sic!) with regards to Technip's own guarantee (**doc. n. 3**) , anc with letter of 10 August 2005 with reference to the TPVI's guarantee (**doc. n. 4**). In both cases, as mentioned, the subject requesting the issuing of the guarantee is Technip which, in both cases, undertook to reimburse to Unicredit the sums that the latter may pay to Hovensa pursuant to the guarantees, with an additional interest for each day of delay in respect of the request and in addition to any expenses or sots that Unicredit may incur. Each of the letters requesting the issuing of the guarantee expressly states "the present waiver is subject and shall be interpreted according to Italian laws. Any dispute or claim deriving from the present agreement shall be regulated solely by Italian laws – Tribunal of Rome";

3

10. after the execution of the two contracts, a series of events have occurred, partially related to the request of further and new works by Hovensa, partially related to specific situations that occurred with the sub-contractors, also - but not only – as a consequence of the extraordinary events that occurred in the area in the period August-September 2005, known as "Katrina Hurricane" and "Rita Hurricane", so that, following reserves by Technip and TPVI, and subsequent discussions with the customer Hovensa, a settlement agreement dated 31 March 2006 was executed among Technip, TPVI and Hovensa (hereinafter the "Settlement" doc n. 5);

11. pursuant to the alla Settlement, all TPVI obligations in relation to the Mechanical Completion referred to in the Counstruction Contract should have been completed before 20 November 2006;

12. however, for a series of circumstances that have been and are argued among the parties, the Mechanical Completion has not been completed within such date; but a series of onerous activities have remained that must be carried out in order to complete the project, activities which have been carried out, until tody, and continue to be carried out, by TPVI with Hovensa's full consent;

13. Technip and TPVI deem that Hovensa is responsible for such delay, to the extent that on 15 December they sent to Hovensa a letter where they detail the terms of the matter, indicating Hovensa's liabilities, and they ask an economical refund, although reserving to specify more in details their claim ("Claims") (doc. n. 6), a letter to which Hovensa replied on 18 January 2007  generically rejecting the economic requests stated by Technip and TPVI and requesting at the same time details in support of the Claims;

14. in the meantime Hovensa  issued and sent respectively to Technip and TPVI invoices payable within 30 days with which it asked for the payment for the delay penalties provided by the agreement for the period up to 31 December 2006, and subsequently every month,

4

up to reaching the amounts equivalent in practice to the ones of the *Letter of Credits* (doc. n.

7 e doc. n. 8);

**15.** Technip and TPVI have each rejected the invoices, returning the same each time to

Hovensa, with the motivation that the amounts to which the invoices refer where not

deemed to be due, because they considered the delay attributable to Hovensa itself, as

already well known by Hovensa (**doc. n. 9 e doc. n. 10**);

**16.** in the period from January to date, as said, notwithstanding the issuing of penalty

invoices by Hovensa, TPVI continued to carry out it work and there have been no

objections of any other kind, so that all seemed to lead to think that it was barely a

"normal" discussion aimed at renegotiating the final price. Indeed, in the meantime,

Hovensa, was paying additional costs for contracts with sub-contractors executed in its

name and on its account by TPVI in accordance with the clause 23.2 of the TPVI Contract,

which provides that Hovensa may avial itself of such power (mainly for fiscal reasons)

having in this case to pay directly such sub-contractors, detracting the relevant cost form

the amounts to be paid to TPVI on the basis of the relevant contract. This has actually

occurred and Hovensa paid the relevant amounts, although it tried to request the refund

from TPVI of the huge amount derivino therefrom, as indicated ultimately in the objection

letter (cfr. doc. 12 b, *infra*). As said, since such sums were increasing, the request for

penalties seemed to fall within a design aimed at finding reciprocal claims, in order to find a

settlement at the end of the works, to which Hovensa had – and evidently still has – a great

interest.

**17.** however, unexpectedly, Technip and TPVI received each from Hovensa a letter dated

29 March 2007, containing a formal warning pursuant to articles 11.3 of the Technip

Contract and 14.3 of the TPVI Contract, and a letter addressed to Technip dated 1 June

2007, where Hovensa attributes to Technip that it has not cured its breaches, and reserves

to act pursuant to the TPVI Contract clauses (docc. n. 12 a), 12 b) e 12 c), respectively);

18. contextually, as found out subsequently by Technip, Hovensa drew down on both guarantees for the maximum amount for which the *Letters of Credit* were issued, with a consequent inevitable draw down of the counter-guarantees of Technip by Unicredit (docc. n. 13 a) e 13 b));

19. even before being informed of the draw down by Hovensa, both Technip and TPVI had replied to the objection letters (docc. n. 14 a) e 14 b));

20. therefore Technip realized that Hovensa wants to cash, in the meantime, the maximum amount of the guarantees, amounting to over 13 million dollars, and then, presumably, discuss with the strength of having cashed such amounts, and however Technip believes that such draw down is taking place illegitimately, but also that its interests and those of TPVI would not be sufficiently protected if it recurred only to ordinary proceedings, in consideration of the time requested: the negative assessment of the obligation of Unicredit to pay what Hovensa requested in respect of the *Letter of Credit* would have a very limited impact if, in the meantime, the payment had been made. In addition, the agreements among Technip, TPVI and Hovensa provide for a amicable dispute resolution procedure and, in any case, for the exclusive jurisdiction of the New York Courts (unless the parties agree to resort to Arbitration), and from such decision also the decision of the possible proceedings in the merit, to be started by the current parties, would depend;

21. the Technip and TPVI positions are different, because each has executed with Hovensa an autonomous contract, while the objections concern the non delivery of works which are not part of the Technip Contract; however, considering that at least part of the documents are substantially identical, and that both contracts are to be seen within a single project, the petitioners have decided to file a single petition in order to minimize judicial activity;

6

Now therefore, Technip and TPVI believe that they are entitled to file this petition in front of this Honourable Court, as they do, so that the same may order, as an interim measure, to Unicredit, not to pay the amounts requested for the following reasons in

## LAW

**Draw down in breach of the *bona fide* obligation.**

The draw down of the guarantees buy Hovensa is not in good faith.

From the aforementioned description of the facts, such fact appears to be obvious. Indeed, while on one side Hovensa was keeping close contacts with Technip and TPVI; through the persons in charge of the project, and was arguing at length and since a lot of time on the circumstances that brought to the non delivery of the works within the terms provided by the agreement, on the other side it did not hesitate to issue invoices for the delay penalties, and subsequently – when reaching a number of invoices sufficient to cover the full amount of both guarantees – to draw dons the same.

It should not be underestimated the fact that Technip and TPVI have ever since July 2006 communicated that the situation was critical and requested Hovensa cooperation in order to complete the project with mutual satisfaction, or at least in such a fashion that they shall not bear alone all additional costs and burdens (and, *summa iniuria*, also the delay penalties) which derived from choices and settings of Hovensa, which on the contrary, was not entitled thereto according to the agreements.

Even within the narrow limits of the summary proceedings with reference to the merits, which occurs in the proceedings such as this one, it should nevertheless be pointed that contractually Hovensa cannot impose no subcontractor, even if it can approve or disapprove the single subcontractor chosen by Technip/TPVI (see on this point clause n. 20.1 of Technip Contract (**docc. n. 15 a) e 15 b)** and n. 23.1 of TPVI Contract (**docc. n. 16 a) e 16 b)**). However, Hovensa insisted at length with TPVI so that the latter would

7

TRANSLATION

choose Tiger St. Croix Construction Inc. of the Turner group (hereinafter, "**Tiger**", in the documents sometimes referred to with the name of the mother company "**Turner**") for construction works, granting that the same held the necessary skills, contrary to TPVI's belief, which on the contrary would have preferred to avail itself of another company (Sun) which in Hovensa's view did not have the skills to carry out Mechanical works (but that, subsequently, at least in another project, was used by Hovensa for Mechanical works).

Among other things, Tiger had originally accepted an agreement which provided for a unit-based payment (forfait), whicle subsequently it requested a contract which provide for reimbursement; Sun, on the contrary, had accepted an agreement based of unit payments (forfait) for the amount of work carried out and did not request a modification thereof (these circumstances, which have not only been formally objected, but may also be confirmed by acquiring summary witness information). TPVI has decided to bend itself to Hovensa's insistence, as resulting from the wording of art. 2 of the Settelement (doc. 5, cit.), which expressly makes the provisions contained therein subject to the execution by TPVI of the agreement with Tiger: if this had not happened, the Settlement would have not been executed and TPVI would have not even been recognized the payment of the amount of three million dollars, that Hovensa had accepted to pay as a settlement for the construction agreement, in addition to the amount originally provided, in consideration of the numerous and proved additional costs suffered. Obviously, TPVI deemed that the agreements reached with Tiger – due to Hovensa's specific requests – would have, on one side, lead Tiger to follow scrupulously the terms and in particular the timing of the agreement, and on the other side would have implied that Hovensa would have covered the possible additional costs.

Unfortunately, this did not happen. Tiger did not carry out the work within the given deadlines and has therefore made it necessary for the current petitioners to take the burden

8

to carry out, make others carry out and supervise some specific additional works: also a summary of the letter from Tiger of 21 October 2006 (**doc. n. 17**) makes it immediately possible to understand that the later was fully aware – 20 days from the agreed expiry date of 10 November 2006! – of the huge delay that had been gained, considering that it guarantees the undertaking to bring on the island in the future more workers, promising bonuses to workers reaching certain targets of productivity, and consider that the work may continue at least for all November and December (to the extent that it addresses the issue of holidays).

Hovensa did not minimally take into account of Tiger's liability for delays, to the extent that it deemed it to be absolutely normal to draw down on the guarantees, notwithstanding during the monthly checks on the status of progression of works, it was on several occasions informed of the situation (this happened at least on four verifications, from August to November 2006: as an example the email with the relevant presentation of 25 August 2006 is enclosed - **doc. n. 18** – and the presentation of 16 November 2006 - **doc. n. 19** – in particular see page 14 of the presentation of 25 August evidencing the total lack of human resources made available by Tiger, as well as page 12 of the presentation of 16 November where the delay piled up by Tiger over the time is shown, as well as the consequential additional man/hour due): thus obviously breaching the sinnalagmatic principle, and of duty of *bona fide*.

In addition, Hovensa was of no help in facing the problems that arose, asking even to re-make some specific works on the basis of a wrong interpretation of some construction standards, which originally had not been criticized or objected by Hovensa itself. Finally, Hovensa, during the operation of the industrial structure where the referenced plant is being built, omitted to adopt the relevant cautiousness, to the extent that it caused gas exhalations during work shifts, even at night, which caused the site to be evacuated, with

9

the consequent delays. Such facts have all been the object of detailed objections and reserves by TPVI, in particular with the letters of 21 and 26 September and 1 October 2006 (docc. n. 20 a), 20 b) and 20 c)).

The petitioners are well aware that such circumstances in the facts may not and should not be subject to the examination of this Court, both in consideration of the limitations which characterize the present proceedings, and because the contractual relationships between the parties are subject to the exclusive jurisdiction of the Courts of New York: what we would like to point out here, however, is that Hovensa has always been informed, at least since August 2006, of how critical the project was, and that the relevant causes that, according to the petitioners, were to the same exclusively attributable. But Hovensa did not hesitate to avail itself of the draw down on guarantees in order to (make an attempt to) obtain a lager contractual strength, but it did so illegitimately and, for sure, not in *bona fide*.

Indeed, as mentioned, the two contracts, respectively for "Engineering and Procurement" and "Construction", have two separate objects and have always been different and autonomous one from the other, also as a consequence of Hovensa's express request. Now, it is obvious that a possible delay in the delivery of the mechanical construction works, is totally independent from the "Engineering and Procurement" contract. And, as a matter of fact, Hovensa itself in its objection letters, refers to delays in the delivery, of a Mechanical Construction nature: even in the case, which we do not believe to be true, that such delay was deemed to be attributable to TPVI, the possible penalties would need to be borne by TPVI.

The objections raised again Technip on the delays of the works for mechanical construction are therefore totally illegitimate and against bona fide, as well as the consequential draw down of the guarantees issued pursuant to the "Engineering and Procurement" contract. There have never been an objection or a complaint from Hovensa

10

in respect of Technip, with reference to the mechanical construction works, except at the moment of the draw down on guarantees.

While in the case of TPVI there is the possibility that a formal logic may abstractly exist (notwithstanding all the aforementioned comments), in the case of Technip the request of draw down by Hovensa does not appear to bear at least those minimum necessari requirements of logical connection which constitute the ground for a *bona fide* draw down. The draw down of the guarantees according to both contracts constitutes an *escamotage* which is, certainly, convenient to obtain, in fact, the doubling of the amount abstractly due, but just the same way illegitimate.

The attitude of the customer, at this point, is clear: it formed in advance some documents (the invoices), on the grounds of which it could state that there is a breach of the petitioners and thus legitimate the draw down of the guarantee.

It is obvious that the parties – in front of the appropriate Court – shall solve the dispute pending between them: but it is just as obvious that Hovensa plans to do it after having cashed the maximum amounts that it may manage to cash on the grounds of the guarantees. And since the agreed dispute resolution mechanism provides for a first extra judicial phases, which aims at facilitating the reaching of a settlement, it is just as obvious that whoever will hold the cash (i.e. has cashed as much money as possible) will be in a better negotiating position.

We are therefore in front of an obvious case of Hovensa abusino its own right, which can only be legally qualified as a wilful mis-exercise of the same right. And this both under the profile by itself (issuing invoices for penalties in connection to facts which are debated by both parties) and under the profile of duplication of the same guarantees because, as said, in the worst case scenario – the actual liability for the delay – this may only be attributed to who had the duty to comply with the terms for that work, i.e. TPVI.

11

This is obvious not only from reading the agreements but also form reading the Settlement, where it is always and solely made reference to TPVI in relation to the expiry of the date for the delivery of the mechanical construction works.

This legitimated the *exceptio doli* by the petitioners, and their subsequent request for an interim injunction preventing the draw down of the guarantees and/or Unicredit to retrieve the sums, in general and at least in relation to the guarantee concerning the "Engineering and Procurement" contract.

**Invalidity of the draw down.**

Even if we were not to take into consideration – but we wouldn's know how – the aforementioned breach of the obligation to behave in *bona fide*, the draw down shall be prevented because carried out in beach of the procedure.

Indeed, Hovensa has issued the invoices for the penalties without any notice, calculating the same pursuant to Enclosure "K" to Technip Contract and TPVI Contract, identical for both contracts (**doc. n. 21**).

However, the same enclosure provides, under item 2.4, that *"Except for the amounts disputed, all other payments due to Hovensa by the Contractor (including payments due to Hovensa as a guarantee or based on the terms contained in the present agreement) shall be paid to Hovensa within 30 day from the date of receipt by the contractor of Hovensa's invoice"*.

Now, it is undisputable that the amounts that Hovensa believes to be entitled to, and in relation to which it drew down the guarantees which are being disputed are *"disputed amounts"*. Not only because the petitioners hereby challenge that such sums are due, but also because for several months TPVI has indicated that because of Tiger's fault, sub-contractor warmly recommended by Hovensa, it would not be able to comply with the terms of delivery, in such a way qualifying ever since then the penalties which are requested today as "disputed amounts", if ever they were requested.

One could ask when, at this point, the disputed amounts are due. The agreements only state that all payments that Technip/TPVI should have made to Hovensa would have become due within 30 days, but exclude that such obligation applies to "disputed amounts": this means that also for the "disputed amounts" Hovensa is not authorised to issue an invoice and thus to request and obtain (even through the draw down of guarantees) an immediate payment. If there are "disputed amounts", the procedure for the disputes shall be followed, as provided, respectively, by art. 24.2 of Technip Contract and 27.2 of TPVI Contract. And thus the amicable settlement attempt should be made, in order, in case of a negative outcome, resort to the Courts of the State of New York, except if the parties decide to recur to Arbitration.

We can anticipate the objection of which sums are due by TPVI to Hovensa, apart from those disputed: the TPVI Contract is structured in such a fashion that there may be various sums due by the contractor to Hovensa, for contracts that the latter executes directly, pursuant to a right which derives from the agreement (cfr. art. 23.2 TPVI Contract, doc. n. 16 a), cit.) obviously detracting such amounts from the global amount of the contract. Such hypothesis, however, is provided uniquely in the TPVI Contract, which, being the Construction Contract, provides for the use of sub.contractors. On the contrary, it is obvious that the "Engineering and Procurement" contract – thus the one substanzially regulating planning and the supply of the entire project – may not, because of its nature, provide for the use of any subcontractor: and indeed, the clause equivalent to art. 23 of the TPVI Contract, i.e. art. 20 of Technip Contract cfr. doc. 15 a), cit., does not contain the aforementioned provision of art. 23.2. Since it is a general and udisputed interpretation principle that clauses should be interpreted in such a way that they make sense, rather than so that they don't, we wonder which would be.the "disputed amounts" and when the same would be due, if amounts such as the referenced ones were not included in the "disputed

13

amounts".

All this having been said, it must be note that also in the non believed event that Hovensa be deemed entitled to issue invoice payable after thirty days even for the "disputed amounts", as apparently Hovensa has held, it has however breached clause 2.1, para. 4, last sentence, of Appendix D exhibit 1 to the Technip Contract and the TPVI Contract (doc. n. 22), which provides that *"before any draw down on the letter of credit [simply so defined]" Hovensa must give the notice provided for by art. 11.3 of the EP Contract [Technip Contract] or art. 14.3 of the construction contract [the TPVI Contract], respectively"*.

In the case under exam, Hovensa has given the notice pursuant to said article suimultaneously with the draw down on the guarantees. But the contractual provision has the aim of permitting ti cure the breach – as read expressly the clause – or, logically, to permit objection. In this case, instead, Hovensa's hurry is not legitimate, and can be explained only with the intent – partially concealed – of drawing down – i.e., cashing – before that the other party can discuss or start the dispute resolution procedure. Which is an implicit confirmation of the plaintiffs' thesis. In fact, by not actually permitting Technip and TPVI to answer to the objections letters before drawing on the guarantees, Hovensa is implicitly admitting that said answer affects (rather, prevents) its right to draw down, in the sense that no draw down is permitted while the procedure for dispute resolution is in place. Therefore, the procedure contractually provided for has not been complied with, if not in a formalistic way and therefore Hovensa does not have the right to draw down on the guarantees: and if it does so, it does it breaching the duties of good faith.

At any rate, attached is the letter by which Mr. Paparella, with offices in New York, in today's date (5th June 2007) has started – in the name and on behalf of Technip and TPVI – the dispute resolution procedure, which provides for a first phase of direct negotiation between the parties, further to a formalisation in that sense, pursuant to the provision of

14

art. 27.2 of the TPVI Contract and art. 24.2 of the Technip Contract (doc. n. 23).

Non independence of the guarantees

The above would be sufficient to ground the request for an order to Unicredit not to pay if the guarantee were independent, as the mentioned circumstances (lack of good faith in the draw down itself and in the relevant modalities) make the draw down a fraudulent one, that is typically objected to by the application for an interim measure.

But the guarantees under discussion are not independent at all.

It is true that they are ruled by the UCP and ultimately by the laws of New York, which seem to give to the Standby Lettres of Credit tha characteristics of independent guarantees, but it is also true that they have both been issued in Italy upon request of the ordering party, that in both cases is the same company, Technip Italy – incorporated under the laws of Italy.

That we are discussing a guarantee is undoubted, the doubts concern the kind of guarantee, and therefore on the possible objections.

The limits of this case do not permit a thorough discussion on the nature of the independent guarantees with respect to non independent ones [*fideiussione*], and on the relevant functions and characteristics.

It is therefore sufficient to recall that the case law that has led to acknowledge the existence on non typical guarantee contracts, that have a specific degree of independence has not been able to exceed, because the "independent" contract must still have a cause, which is the guarantee, and therefore cannot be totally free from any link to an (other) contract and therefore completely unrelated to *fideiussione*, the typical contract that becomes the parameter for reference. In other words, the independence cannot be transformed into abstractness.

In the case at issue, para. 2.1 of Appendix D exhibit 1 of the Technip Contract and the

15

TPVI Contract (doc. n. 22, mentioned), clearly provides that the letters of credit be issued to guarantee the payment of penalties for late delivery: but whether said penalties are due can be ascertained only with reference to the relevant contract.

On the other hand, the guarantees are those typically used for documentary credits, i.e. those drawn upon by submission of certain documents, basically, the documents representing the claim: in fact, the publication of the ICC to which reference is made to define the rules to be applied to the guarantees includes a detailed list of the "requisites for acceptability for each category of transport documents". This mentioned in the foreword, and appears clearly in examining the index of the publication (doc. n. 24).

But there is no documentation – within the meaning used with respect to documentary credits – than can take the place of an ascertainment of the fact that penalties are due, as provided for in the contracts of Technip and TPVI.

In fact, in this case the "documents" are a self issued certificate of the guaranteed creditor. But this kind of guarantee is clearly not suited for the use (instrumental, in the plaintiffs' view) that Hovensa makes of them. In fact, the documents to be produced are a simple statement of the creditor, stating that the other party is in breach. This appears *ictu oculi* as an excessive freedom in particular with respect to assessment, granted to the creditor, so that it influences, in our view the validity itself of the guarantee. The document, *per se* necessary for the existence of a documentary credit, must appear weak to the beneficiary itself, given that t5he same has deemed it necessary to create for its benefit an additional document – the invoice – based on which then be able to issue the document requested for the draw down of the guarantee.

But such not straight forward mechanism simply proves that the guarantee is not an independent one, but is strictly linked to the underlying contract.

It is known that the use of the standby letters of credit in the practice of international trade

16

derives from the specific US and Canadian rules *"as in the US and in Canada the law prohibits the banks to issue guarantees, said prohibitions has been substantially circumvented by the issuance of <standby letters of credit> that utilise the mechanism of documentary credit for the purposed of guarantee"* (Franco Bonelli, *Le garanzie bancarie a prima domanda*, Giuffrè, 1991, p. 7). Inevitably, being it impossible to simply apply one system to another, there are consequences. There from derives the need to asses to which kind of guarantee – and therefore which kind of rules – are to be referred to in the case at issue.

Case law has often examined whether a guarantee was independent or not, and has always stated that the actual will of the parties must be looked for, even in presence of clauses such as "at simple request", or "on demand" that can be inserted even into a contract that maintains the characteristics of non independence typical of *fideiussione*, even if the parties have provided that payment must occur within a short period of time upon simple notice to the debtor and without the need for the latter's consent, and without the latter's possibility to object (Cass., sez. III, 3rd October 2005, n. 19300).

But in the case under exam the are not even said expressions: Unicredit undertakes to pay within 7 working days, upon presentation of "documents", but there is no other undertaking, such as – for example – the one of not raising objections pertaining to the underlying contract. Said argument on wording is sufficient; case law has in fact held that *"the lack of the element of non independence, which characterises the independent guarantee contract (performance bond) and differentiates the same from fideiussione must necessarily be stated in the contract by using a specific clause apt to indicate that the guarantor cannot raise vis-à-vis the creditor the objections to which the main debtor is entitled …"* (Cass, sez. III, 7th January 2004, n. 52 [*emphasised*] and that *"as the payment on demand clause is not incompatible with the application of the mentioned rule of the civil code [art. 1957], it is for the judge to ascertain, on a case-by-case basis, the actual will expressed by the parties by negotiating the said clause"* (Cass. Sez. I, 4th July 2003, n. 10574).

17

And in fact, clearly because aware of the fact that the draw down can under certain circumstances occur in a completely instrumental way, the Tribunal of Milan on 19th July 2002 stated that *"the demand guarantee for performance of obligations of the contractor does not include all of the obligations deriving from the contract, but only the obligation to perform works"* and *"for the purposes of drawing on a demand guarantee it is necessary to prove the serious breach of the contractor"* (in rep. Foro It. 2003, v. *"Appalto"*, n. 37).

And still another judge on the merits of a case states that *"the clause included into a contract providing payment upon written request of the guaranteed party within the time limit of thirty days (term to be considered in favour of the guarantor, giving the latter the time to decide how to proceed before being considered in breach) does not show the independence of the guarantee with respect to the main obligation, as it is not provided, for the guaranteed party, the possibility of claiming the immediate payment upon simple request, or without exceptions; therefore, to said contract the rules on fideiussione must be applied"* (A. Genova, 6th April 2000, in Rep. Foro It. 2002, v. *"Fideiussione e mandato di credito"* n. 26).

In the case under exam, we repeat, the facts evolved in an instrumental way: TPVI mentioned since a long time the impossibility of delivering within the time limit established, specifying the reasons thereof and saying that they are due to Hovensa; as a matter of fact, the plaintiffs not only require that Hovensa do not debit them the penalties for delay, but also that it undertakes to refund the damages that they have suffered and are still suffering (see doc. 6, mentioned): this is very different from guaranteeing the good performance of a plant, which is the reason fore which guarantees are normally issued.

In conclusion, the guarantees drawn by Hovensa are not at all independent, but rather strictly linked to the contract that provides for their issuance. Therefore, the plaintiffs are entitled to oppose to the guarantor all the objections that they can oppose to the guaranteed entity, first of all the fraudulent draw down of the guarantees, based un an alleged breach that however does not exist – with respect to Technip – or – with respect

18

to TPVI – is not due to the same.

**Capacity of the plaintiffs to stand in Court and jurisdiction of the Court.**

There should be no doubts as to the capacity of the plaintiffs to stand in Court and on the jurisdiction of the Court. In fact, the guarantees under discussion have been issued by Unicredit Banca d'Impresa Spa, Branch of Roma centro – via Sardegna 44 – Rome, and the text of the guarantee reads that the beneficiary is authorised to draw down on them at said branch.

Furthermore, the guarantees have been issued further to a request in that sense of the ordering party, which in both cases is Technip: they have therefore been issued implementing a mandate given by an Italian company to an Italian bank, in Italy, and that, as provided in the request of issuance of the guarantees itself, is expressly ruled by Italian law and submitted to the jurisdiction of the Tribunal of Rome.

It is true that the contracts with Hovensa, beneficiary of the guarantees, are rules by the laws of the State of New York, and that any dispute related to said contracts are submitted – in the absence of an amicable solution reached pursuant to a specified procedure, contractually agreed upon – to the US District Court, Souther District of New York (USA), but this would not prevent the jurisdiction of Italian Courts for the granting of interim measures, as expressly provided by art. 10 of Law 218/1995 on international private law.

As regards the applicable law, it has been said that Technip, in requesting the bank to issue the guarantees has expressly provided that said order (mandate) be regulated by Italian law: besides, even pursuant to international private law rules there would not be any doubt that the same would be the regulating law, as Italy is the country with which the obligation (to fulfil the guarantee) has the strictest link, this depending on where the bank is located (Rome), being the bank the entity that must provide the specific activity (see art. 57 of L.

218/1995, which refers to the Rome convention on contractual obligations).

Case law and commentators plainly admit the capacity of the party ordering the guarantee to request the order of refraining from both paying the guarantees (and possible counterguarantees) and from debiting the relevant amount to the said party (see, out of a number: Tr. Rome, 6th novembre 1998, in Giust. Civ. 1999, II, 3457; Tr. Udine, 22nd June 1995, in Giur. It. 1996, I, 2, 428; Tr. Rome, 26th May 1995, in Foro it. 1996, I, 1091; Tr. Milan 20th March1991, in B.B.T.C. 1992, II, 741). Some decisions have also held that said capacity is grounded in the mandate relationship itself, that binds the ordering party to the guaranteeing bank, insofar as the mandating has the right to request a diligent and proper fulfilment of the guarantee contract, based on the principles ruling the mandate and the rules on good faith (see: Tr. Rome, 6th Novembre 1998, in Giust. Civ. 1999, II, 3457; Tr. Modena, 24th March 1998, in Giur. It. 1999, 50).

It is constant case law, repeated even recently: *"the application for an interim measure filed by an Italian entrepreneur vis-à-vis an Italian bank, to which it had been ordered the issuance of an international demand guarantee, and aiming at obtaining an order of suspending payment of the guarantee or, in a subordinated way, a statement as to the inefficacity of the debiting action to which the bank in entitled vis-à-vis the applicant based on the payment of the guarantee falls under the jurisdiction of the Italian courts because the juridical relationship between the plaintiff and the bank – on which the application is based – must be regarded as falling within the definition of mandate"* (tr. Verona, 20th May 2001, in Rep. Foro it. 2002, v. "provvedimenti di urgenza", n. 23); and in addition *"The entity ordering demand counter guarantees … has the capacity to apply for interim measures against the bank who is a counter-guarantor in order to obtain an order not to pay to the guaranteeing bank … because the ordering entity, once the counter guaranteeing bank, in the absence of a request for an order not to pay, has paid the counter guarantees, could not avoid being debited the relevant amount"* (Tr. Genova, 24th September 2001, in Rep. Foro it. 2002, v. "provvedimenti di urgenza", n. 76).

20

TRANSLATION

**Requisites for the interim measure**

As regards the existence of the specific requisites for the granting of the interim measure, namely the *fumus boni iuris* and the *periculum in mora*, the plaintiffs mention the following.

As regards, the *fumus*, the various arguments and reasoning above demonstrate clearly that the draw down on the guarabntees by Hovensa occurs with fraud, under a twofold aspect: on the one side, because it deems in breach also Technip, which is instead not a party to the contract concerning Mechanical Construction (and the relevant timing), and on the other side because Hovensa exercised a right for purposes which are different to the ones pertaining to it. This is deemed to apply in any circumstance under which there is not a genuine objection by the beneficiary: "*this is a standard that can easily be applied which has actually been expressly or implicitly been adopted in the almost totality of the decisions pronounced in the subject matter*" (F. Bonelli, mentioned, p. 109, footnote 70).

As regards the *periculum*, it should be considered that given the situation and the discussion presently going on between the parties, it is clear that Hovensa plans to discuss of the merits of the case from a strong standpoint, i.e., after having cashed a material amount, and precisely more than 13,000,000.00 dollars. Said amount, although Technip is a solid company with a good *portfolio* of clients, could not be paid without having serious consequences both on the financial situation of Technip, and on its image, as it would be mentioned as having suffered a draw down, circumstance that – at least! – will make it more expensive for Technip to obtain the next guarantee: but its activity cannot be carried out without bank guarantees.

This substantially changes the respective parties' position, affecting the equilibrium between them: the guarantee aimed at ensuring the correct performing of the works (in fact, it is provided that the relevant amount be cut down by 50% at the issuance of the acceptance certificate of the works by Hovensa) is in fact used to cut down – in practice –

21

the relevant compensation. But to this it should be added that the plaintiffs will obtain a much lower amount than expected anyways, considering that the discussions between the parties indeed concern a growth in costs that according to Hovensa must be borne entirely by the plaintiffs, who, in turn, deem that the situation is the latter's responsibility. And pursuant to the contract, if there is at least a co-responsibility of Hovensa, the penalties for late delivery are not due.

It is true that at least theoretically the plaintiffs could exercise an action to recover the amounts unduly paid, but this would oblige Technip (as having ordered the guarantees, and sole destinee of the debiting action of Unicredit) to start an action in the US Virgin Islands, register office of Hovensa. With regards to the difficulties of such an action, deriving form the location of the applicable law, it is not necessary to make a lengthy discussion, and the same applies to the difficulties concerning possible enforcement proceedings. The guarantee in fact provides that payment be made directly to Hovensa, which has only had to send a letter, while Technip should start a complex lawsuit, with the relevant risks and in particular, the relevant timing.

In balancing the different interests, the non granting of the interim measure applied for would certainly be more detrimental to the plaintiffs than to the resistant. On the other hand, if the measure applied for were granted, they would not be too much in advantage with respect to Hovensa.

<p align="center">For the abovementioned reasons</p>

The plaintiff companies ask that your Honour, *inaudita altera parte*,

- <u>as a principal request</u>, orders Unicredit Banca d'Affari, with offices in Rome, via Sardegna, 44, not to make the payment requested by Hovensa on the basis of the Letters of Credit issued by the same, and having n. 460830345935 and n. 460830854774 (or, at least, order not to pay the amounts requested on the basis of the Letter of Credit n.

<p align="center">22</p>

460830345935 guaranteeing the obligations of Technip Italy), that have been drawn upon not in good faith;

- as a subordinated request, orders Unicredit Banca d'Affari with offices in Rome, via Sardegna, 44 not to debit to technip Italy S.p.A. the amounts paid to Hovensa and all the cost borne by said Unicredit on the basis of the mentioned Letters of Credit, and having n. 460830345935 and n. 460830854774 (or, at least, order not to debit the amounts paid to Hovensa on the basis of the Letter of Credit n. 460830345935 guaranteeing the obligations of Technip Italy);

- as an even subordinated request, in the event that Your Honour deems it impossible to proceed without summoning the parties in order to make a decision, it is requested that Your Honour orders that meanwhile Unicredit temporarily stops the payment of the mentioned guarantees.

With the award of expenses and fees.

For the purposes of the payment of Court duties, it is mentioned that the amount of this case exceeds € 520,000.00 and therefore the amount due is the highest divided by 50%, and therefore corr4esponds to € 550.00.

The following are filed:

1. Letter from Unicredit dated 24th April 2007 increasing the amount of the Irrevocable Stand by letter of Credit guaranteeing the obligations of Technip;

2. Letter from Unicredit dated 14th March 2007 increasing the amount of the Irrevocable Stand by letter of Credit guaranteeing the obligations of TPVI;

3. request by Technip to Unicredit to issue the Irrevocable Stand By Letter of Credit in the interest of Technip itself, and undertaking of the obligation to counter guarantee the bank;

4. request by Technip to Unicredit to issue the Irrevocable Stand By Letter of Credit in the interest of TPVI, and undertaking of the obligation to counter guarantee the bank;

23

5. Settlement Agreement 31st march 2006;

6. letter from technip and TPVI to Hovensa dated 15th December 2006;

7. invoices issued by Hovensa to Technip for penalties for delay and relevant documentation;

8. invoices issued by Hovensa to TPVI for penalties for delay and relevant documentation;

9. rejection of invoices by Technip;

10. rejection of invoices by Technip;

11. [missing]

12 a), 12 b) and 12 c). Letters by Hovensa to Technip dated 29th may 2007; letter by Hovensa to TPVI dated 29th May 2007; letter by Hovensa to Technip dated 1st June 2007;

13 a) and 13 b). draw down 0on the guarantees by Hovensa, draw down of the counter guaranteed by Unicredit;

14 a) e 14 b). Technip's answer to Hovensa's objections; TPVI's answer to Hovensa's objections;

15 a) e 15 b). Translation of part of the Technip contract; complete text of the Technip contract;

16 a) e 16 b). Translation of part of the TPéVI contract; complete text of the TPVI contract;

17. letter by Tiger dated 21st October 2006;

18. e.mail and related slides dated 25 August 2006

19. slides of 16th November 2006;

20 a), 20 b) e 20 c). TPVI's letters dated 21st and 26th September, and 1st October 2006;

21. Appendix "K" to Technip contract and TPVI contract;

22. Appendix "D" to Technip contract and TPVI contract;

23. letter sent on dated 5th June 2007 by M. paparella to Hovensa;

24

TRANSLATION

24. index of CCI publication n. 500.

Persons informed on the facts are Messrs. Ing. Vincenzo Laganà; ing. Raoul Luciani; ing. Andrea Margaglio.

Rome, 5th June 2007

[*signed*]

Avv. Daniela Jouvenal Long


Avv. Sergio Calderara

25

TRANSLATION

Power of Attorney

The undersigned Dr. Marco Villa, Financial Director, and ing. Arturo Grimaldi, CEO, legal representatives *pro-tempore* of Technip Italy s.p.a., with registered offices in Rome, viale Castello della Magliana 68, appoint Ms. Daniela Jouvenal Long and Mr. Sergio Calderara, of the Bar of Rome, even severally, so that they may represent, assist and defend the same in the present case and in all its phases and grades, granting them the widest powers permitted by the law, including those of having substitutes, summoning third parties, settle, find a conciliation, waive the case and accept waivers, and elect domicile at their offices in Rome, piazza di Pietra. 26

Rome, 5th June 2007

[*signed*]                                               [*signed*]

—————                                           ———

The signatures are true:

*Signed* Daniela Jouvenal Long

Power of Attorney

The undersigned Etienne Gory, in his capacity as legal representative *pro-tempore* of TPVI LTD, having registered offices in 1, Hibiscus Alley, Charlotte Amalie, St. Thomas, US Virgin Islands, appoints Ms. Daniela Jouvenal Long and Mr. Sergio Calderara, of the Bar of Rome, even severally, so that they may represent, assist and defend the same in the present case and in all its phases and grades, granting them the widest powers permitted by the law, including those of having substitutes, summoning third parties, settle, find a conciliation, waive the case and accept waivers, and elect domicile at their offices in Rome, piazza di Pietra. 26

Rome, 5th June 2007

[*signed*]

26

TRANSLATION

---

The signature is true:

*Signed* Daniela Jouvenal Long

[*stamps*]

27

TRANSLATION

Tribunal of Rome

The designated Judge, in the person of Ms. Paola Agresti;

Having read the application;

Deeming it preferable to hear the defendant on the reasons for the application,

For the abovementioned reasons, having seen art. 669 sexies of the code of civil procedure

a) establishes the hearing of 20th June 2007 at 12.40 for the parties to attend;

b) grants time until 14th June 2007 for serving the application and the decree to the defendant, authorising as of now that the urgent service occurs by fax.

Rome, 7th June 2007

The Judge Paola Agresti

[*signed*]

[*stamps*]

28

TRANSLATION

This is a true copy of the original issued upon request of avv. Jouvenal

Rome, 11th June 2007

[signed]

[stamps]

29

# EXHIBIT L



IL  GIUDICE

a scioglimento della  propria riserva e decidendo sul ricorso ex art. 700 cpc proposto dalle Società Technip Italy Spa e TPVI LTD ,in persona dei rispettivi  legali rapp.ti pro – tempore , nei confronti  della Società Unicredit  Banca d'Impresa Spa , in persona del Presidente e legale rapp.te pro – tempore ,  e nei confronti di Hovensa L.L.C., in persona del legale rapp.te pro – tempore ;

letti gli atti ed  esaminati i documenti prodotti;

premesso :

che le ricorrenti Technip Italy Spa e TPVI LTD  hanno adito il Giudice ,perché sia  inibito alla Unicredit  Banca d'Impresa Spa di effettuare il pagamento  richiesto da Hovensa , sulla base delle Lettere  di  credito    da  questa  emesse ,  ed  aventi  nn. 460830345935 e n. 460830854774 ( o quantomeno  inibire il pagamento  richiesto  sulla base della   Lettera  di credito n. 460830345935 a garanzia delle obbligazioni Technip Italy  ) , ovvero , in via subordinata , inibire alla Unicredit di addebitare a Technip Italia spa gli importi pagati ad Hovensa e tutti i costi sopportati in base alle  predette lettere di credito ( o quantomeno sulla base della  Lettera di credito n. 460830345935 a garanzia delle obbligazioni Technip Italy   ), assumendo, fra l'altro , l'abusività e l'invalidità dell'escussione stessa  ;

che presupposto della domanda   è , infatti , l'avvenuta escussione delle garanzie , con lettera del 29\5\07, per l'importo massimo per cui   sono state rilasciate le Letters of Credit , con conseguente  inevitabile escussione delle controgaranzie  di Technip da parte di Unicredit , sulla base di una richiesta di pagamento di fatture avanzata da Hovensa di cui si contesta integralmente  la legittimità;

che , infatti , le ricorrenti deducono, in primo luogo, l'abusiva escussione delle garanzie , in violazione dell'obbligo di buona fede , in quanto i ritardi nella consegna dei lavori appaltati sarebbero stati determinati    dal comportamento del sub-

appaltatore Tiger , scelto su pressanti insistenze della stessa
Hovensa , e che Hovensa era ben a conoscenza delle criticità del
progetto e delle relative cause non certo addebitabili
esclusivamente alle ricorrenti ed atteso , altresì, che , poiché i
lamentati ritardi fanno riferimento solo alla consegna di
Costruzione Meccanica , essi riguardano. solo il contratto "
Construction " stipulato da TPVI , e , pertanto, doveva
eventualmente essere escussa solo la garanzia relativa a tale
contratto e non anche la garanzia relativa al contratto "
Engineering e Procurement " ;

che , inoltre , le ricorrenti eccepiscono l'invalidità dell'escussione
della garanzia , in primo luogo , in quanto trattasi di " somme
contestate " , per le quali , ai sensi dell'all.to "K" punto 2.4 ( doc.
22 fasc. ric.) non poteva emettersi fattura , ma vi era l'onere di
seguire la procedura per le contestazioni prevista dall'art. 24.2
del Contratto Technip e 27.2 del Contratto TPVI , ed , inoltre , in
quanto Hovensa ha violato l'art. 2.1 quarto paragrafo , ultima
frase dell'allegato D exhibit 1 ( doc. 22 fasc. ric. ) dando la
comunicazione , ai sensi degli artt. 11.3 Accordo EP ( Contratto
Technip ) e dell'art. 14.3 Accordo di costruzione ( Contratto
TPVI ) contemporaneamente all'escussione delle garanzie :

che , infine ,le ricorrenti eccepiscono la natura accessoria e non
autonoma della garanzia escussa , con la conseguente
legittimazione per le ricorrenti medesime di opporre al garante le
eccezioni opponibili al garantito , ribadendo , quindi, il fumus ed
il periculum dell'invocato provvedimento cautelare ;


verificato :


che la resistente Unicredit Banca d'Impresa Spa ,costituitasi nel
presente procedimento , ha confermato l'avvenuta concessione
delle garanzie , riaffermandone la natura autonoma , precisando
di non aver ancora effettuato alcun versamento di somme in
esecuzione della stessa , rimettendosi alle determinazioni del
Tribunale con riguardo alla domanda principale , chiedendo ,
tuttavia , il rigetto della domanda subordinata tesa ad inibire alla
medesima Banca di escutere le controgaranzie prestate da
Technip;

che si è , altresì, costituita Hovensa L.L.C. , ribadendo la natura autonoma della garanzia , l'insussistenza della violazione della buona fede , la ritualità dell'escussione , l'unicità del rapporto d'appalto e , quindi, dei due contratti , per cui legittima doveva ritenersi l'escussione delle due garanzie , ed ,in definitiva, l'insussistenza dei presupposti richiesti dall'art. 700 cpc per l'adozione di un provvedimento d'urgenza e l'infondatezza delle pretese della ricorrente ;

<div align="center">osserva quanto segue:</div>

Il ricorso proposto deve ritenersi inammissibile per difetto dei presupposti richiesti dall'art. 700 cpc .
Deve innanzi tutto premettersi che le garanzie in questione sono certamente autonome e non consentono all'obbligato di opporre eccezioni di sorta fondate sul rapporto sottostante a garanzia del quale esse sono state prestate .
In particolare con le due lettere denominate " Irrevocable Stand – by Letter of Credit " , la Banca Unicredit si è obbligata a pagare a Hovensa , entro sette giorni lavorativi una certa somma , dietro presentazione di due documenti , e cioè una richiesta di pagamento , quale escussione della garanzia , ed una dichiarazione di un funzionario della Hovensa , il cui fac – simile è riportato nel testo della garanzia . E' pacifico che le parti hanno concordato ( Appendix D , Exhibit 5 ) che il diritto di escutere le garanzie sarebbe stato regolato dalle "Uniforms Customs and Practice for Documentary Credits ( doc. 7 fasc. Unicredit ) che stabiliscono espressamente che le lettere di credito per loro natura " ..sono transazioni separate dalle vendite o dagli altri contratti sui quali sono basate .." e che  "..Conseguentemente , la promessa di una banca di pagare ..negoziare e\o adempiere ad alcuna obbligazione prevista nella lettera di credito , non è soggetta a contestazioni del cliente con riguardo alle sue relazioni con la Banca ordinante ed il Beneficiario .." .
Peraltro la chiara astrattezza dei crediti documentari prevista dal predetto art. 3 , applicabile alle garanzie in questione , è circostanza non validamente contraddetta dalle deduzioni di parte ricorrente , che si limita a generiche considerazioni circa la necessità di raccordare i principi italiani alla normativa internazionale , ma non può revocarsi in dubbio che le parti abbiano inteso creare una obbligazione contrattuale indipendente della Banca emittente in favore del beneficiario e, ai sensi della

legge regolatrice del rapporto , ogni questione relativa all'andamento ed all'esecuzione del rapporto sottostante non può giustificare il mancato pagamento .

Ancora deve ritenersi che le deduzioni di parte ricorrente , secondo cui i due menzionati contratti sarebbero autonomi e distinti e che , pertanto , l'escussione della garanzia dovrebbe limitarsi al solo contratto " Construction ( " Construction Agreement " ) è anch'essa infondata .

L'unitarietà del rapporto in questione è stata ribadita da parte resistente Hovensa e confermata da vari elementi documentali , non validamente contraddetti dal dato fromale invocato dalle ricorrenti .

In primo luogo , infatti , le lettere di intenti per i contratti " Engineering e Procurement " e " Construction " sono state sottoscritte dai medesimi due rapp.ti di Technip , l'emissione di entrambe le garanzie è stata richiesta alla Banca Unicredit dalla sola Technip , TPVI ( firmataria del contratto " Construction " )è stata costituita da Technip appositamente per l'operazione otto giorni prima della data di sottoscrizione dei contratti .

Inoltre l'Appendix D , prevede che le responsabilità , le obbligazioni ed i requisiti applicabili all'appaltatore saranno riferiti ad entrambi gli appaltatori dei rispettivi contratti , e quindi , sia Technip che TPVI , l'Appendix K , identica nei due contratti e firmata da tutte le parti , prevede che l'appaltatore paghi le penali ( " Schedule Liquidated Damages ") per ciascun giorno successivo al novembre 2006 ,qualora non sia stato raggiunto il completamento meccanico del progetto e tale Appendix è rimasta invariata anche dopo che le penali sono state modificate nel marzo 2006 con il " Settlement Agreement ".

Tale Appendice prevede , quindi , che anche la Technip fosse direttamente obbligata al completamento meccanico dell' appalto e che anche la Technip fosse direttamente obbligata al pagamento delle penali entro i limiti del 10% del prezzo totale .

Ancora , a riprova dell'unicità del rapporto l'Appendix E , che fissa le fasi dell'intero progetto , dalla progettazione alla realizzazione , fissando il termine della data del completamento meccanico è preparata esclusivamente da Technip , e all'art. 6.2 del contratto " Engineering e Procurement ", sottoscritto da Technip si precisa che il ruolo di gestione del progetto esecutivo sarebbe stato svolto da una società " affiliata " ( cioè TPVI ) e che la stessa Technip non avrebbe cercato di esonerarsi dalla propria responsabilità derivante dalla mancata esecuzione del progetto , inclusa quella di eventuali ritardi nella consegna , allegando o opponendo che la responsabilità fosse della società affiliata esecutrice del progetto.

Infine anche nel "Settlement Agreement " la responsabilità per i ritardi nella consegna dei lavori è sempre attribuita indistintamente al " Contractor " , vale a dire sia a Technip che a TPVI .

Quanto detto , in ordine alla natura delle garanzie in questione e alla sostanziale unitarietà dei contratti , vale ad escludere , con riguardo al "fumus boni iuris", la sussistenza della cd. "prova liquida" idonea a fondare l'exceptio doli sollevata dalle ricorrenti .

In primo luogo , infatti , attesa la natura automa delle garanzie prestate , nessuna eccezione relativa all'inadeguatezza del sub -- appaltatore ( Tiger ) ed alla complessiva criticità della situazione di cui Hovensa sarebbe stata edotta , può essere esaminata per bloccare il pagamento , né alcuna deduzione afferente il rapporto sottostante può consentire alla Banca obbligata , né all'ordinante di rifiutare il pagamento .

Inoltre , le considerazioni sull'unitarietà dei rapporti intercorsi fra le parti escludono che possa ritenersi effettuata in violazione della buona fede l'escussione di entrambe le lettere di garanzia .

Ancora devono ritenersi infondate , sempre in ordine al " fumus " le affermazioni delle ricorrenti circa l'irritualità dell'escussione delle garanzie .

In primo luogo , infatti , è smentita " per tabulas " l'affermazione che la comunicazione prevista dagli artt. 11.3 Accordo EP ( Contratto Technip ) e 14.3 Accordo di costruzione ( Contratto TPVI ) sia stata fatta contemporaneamente all'escussione delle garanzie , in quanto le comunicazioni in questione sono del 29\5\07 ( docc. 6 e 7 ) , in mancanza di riscontro Hovensa ha, poi, trasmesso una seconda comunicazione ( docc. 8 e 9 ) e , quindi, in data 4\6\07 ( cfr. data e firma di ricezione della Banca ) ha consegnato alla Banca Unicredit la documentazione utile all'escussione , richiedendo il pagamento a termine di garanzie ( docc. 10 e 11 ) .

Inoltre del tutto infondata è l'affermazione secondo cui l'escussione delle garanzie sarebbe avvenuta per fatture che non potevano essere emesse perché relative a "somme contestate " e ciò ai sensi del punto 2.4 dell'all.to K ai due contratti ( doc. 21 fasc. ric. ). Invero la norma tradotta in italiano recita : " Salvo che per gli importi in contestazione , tutti gli altri pagamenti da effettuarsi dall'appaltatore in favore di Hovensa ( compresi quelli dovuti a Hovensa a titolo di garanzia o comunque a termini del presente Contratto ) saranno dovuti entro trenta giorni dal ricevimento da parte dell'appaltatore delle fatture di Hovensa " limitandosi , quindi, la norma a stabilire un termine entro cui effettuare i pagamenti ( 30 gg dal ricevimento delle fatture ) , termine che non vale , per le "somme contestate" ( " salvo che per gli importi in

contestazione " ) per le quali , come evidenziato dalle stesse ricorrenti , deve seguirsi la procedura per le contestazioni prevista dagli artt. 24.2 del Contratto Technip e 27.2 del Contratto TPVI . E' evidente , che da tale norma non può certo evincersi il divieto ad emettere fatture per "somme contestate", né esiste norma nei contratti di appalto in questione che limiti la possibilità di escutere le garanzie in pendenza di una procedura negoziale di soluzione della controversia per le somme in contestazione .

Riguardo ,poi, all'ulteriore requisito del periculum in mora si deve rilevare che la ricorrente non ha in alcun modo provato la concreta sussistenza del " periculum " paventato e del tutto genericamente dedotto , né " a parte creditoris " , né " parte debitoris ".

Dovendosi provvedere in ordine alle spese del presente giudizio, non può che seguirsi il criterio della soccombenza .

### PQM

Visto l'art. 700 cpc ;

respinge ogni istanza per l'adozione di un provvedimento di urgenza ;

condanna le ricorrenti Technip Italy Spa e TPVI LTD a rimborsare alla parte resistente Unicredit Banca d'Impresa Spa le spese di giudizio che liquida in complessive Euro 6.375,00 ,di cui Euro 1.375,00 per competenze , Euro 5.000,00 per onorari, oltre spese generali Iva e Cpa come per legge ;

condanna, ancora , le ricorrenti Technip Italy Spa e TPVI LTD a rimborsare alla parte resistente Hovensa L.L.C. le spese di giudizio che liquida in complessive Euro 8.485,00 ,di cui Euro 1.485,00 per competenze Euro 7.000,00 per onorari, oltre spese generali Iva e Cpa come per legge .

Così deciso in Roma il 2\7\07

Si comunichi           Il Giudice

                       d.ssa Paola Agresti

Depositato in Cancelleria
Roma, li ....... 2 LUG 2007
IL CANCELLIERE C1
Silvana RENZI



THE JUDGE

delivering a decision on the Petition pursuant to Article 700 Code of Civil Procedure, at the instance of the companies Technip Italy Spa and TPVI LTD, in the person of their respective legal representatives *pro tempore*, against Unicredit Banca d'Impresa Spa, in the person of its legal representative *pro tempore* and against Hovensa L.L.C., in the person of the legal representative *pro tempore*;

having read the deeds and examined the documents exhibited;

Whereas:

the Petitioners, Technip Italy Spa and TPVI LTD, applied to the Judge, for an order enjoining Unicredit Banca d'Impresa Spa from making the payment requested by Hovensa, on the basis of the Letters of Credit issued by same, no. 460830345935 and no. 460830854774 (or at least enjoining the payment requested on the basis of Letter of Credit No. 460830345935 in guarante of the obligations of Technip Italy) or, as an alternative plea, to enjoin Unicredit from charging to Technip Italia SpA the amounts paid to Hovensa and all costs sustained on the basis of the aforementioned Letters of Credit (or at least on the basis of Letter of Credit No. 460830345935 in guarantee of the obligations of Technip Italy), alleging *inter alia* the wrongful and invalid nature of the draw down itself;

the basis for the claim is, in fact, the draw down of the guarantee, by letter of May 29, 2007 for the maximum amount for which the Letters of Credit were issued, with consequent inevitable draw down by Unicredit of Technip's counter guarantees, on the basis of a request for payment of invoices made by Hovensa of which the entire legitimacy is contested;

in actual fact, the petitioners sustain, firstly, the wrongful nature of the draw down, in breach of the obligation of good faith, insofar as the delays in delivery of the works were caused by the conduct of the subcontractor Tiger, chosen at the pressing insistence of Hovensa itself, and that Hovensa was well aware of the problems with the project and the relative causes which were certainly not exclusively attributable to the petitioners and, given also that since the delays complained of referred only to the delivery of the Mechanical Construction, said delays relate only to the "Construction" contract, concluded by TPVI , and therefore only

the guarantee relative to that contract should have been drawn down and not also the guarantee relative to the "Engineering & Procurement" contract;

furthermore, the petitioners object to the invalidity of the draw down of the guarantees, firstly, because these are "disputed amounts" in relation to which, pursuant to Appendix K, point 2.4, (Exhibit 22, petitioners' file) invoices could not be issued, as there was the obligation to follow the procedure for contestations provided by Article 24.2 of the Technip Contract and 27.2 of the TPVI Contract and, furthermore, because Hovensa had breached Article 2.1 fourth paragraph, last sentence of Appendix D, Exhibit 1 (Exhibit 22 petitioners' file) giving the communication, pursuant to Articles 11.3 E&P Agreement (Technip Contract) and Article 14.3 Construction Agreement (TPVI Contract) simultaneously with the draw down of the guarantees;

finally, the petitioners challenge the accessory and non-autonomous nature of the guarantees drawn down, consequently legitimizing the petitioners to bring against the guarantor the objections which can be brought against the guaranteed party, reiterating therefore *fumus* [strong presumption of its rights] and the *periculum* [real danger in delay] for the interim measure applied for;

Having verified:

that the respondent Unicredit Banca d'Impresa Spa had entered appearance in these proceedings, confirmed the granting of the guarantees, reaffirming their autonomous nature, specifying that the bank had not yet made any payment of sums in execution of the same, awaiting determination by the Court with reference to the principal claim, requesting, however, the refusal of the alternative plea to enjoin said Bank from drawing down the counter-guarantees granted by Technip;

that Hovensa L.L.C. had also entered appearance, reiterating the autonomous nature of the guarantee, the non-existence of breach of good faith, the procedural correctness of the draw down, the unitary nature of the contracting relationship and therefore of the two contracts, so that the draw down of the two guarantees must be considered legitimate, and, definitively the non-existence of the presumptions required by Article



700 Code of Civil Procedure for the adoption of interim measures and groundless nature of the petitioner's party claims;

comments as follows:

The petition brought must be held inadmissible due to lack of the conditions required by Article 700 of the Code of Civil Procedure.

Firstly, it must be stated as a premise that the guarantees in question are certainly autonomous and do not allow the obliged party to bring any objections of any kind on the basis of the relationship underlying the guarantee for which it was granted.

In particular, in terms of the two letters entitled."Irrevocable Stand-by Letter of Credit", Unicredit is obliged to pay to Hovensa, within seven business days, a certain sum on presentation of two documents, that is a request for payment, such as draw down of the guarantee, and a declaration by an official of Hovensa, the facsimile of said declaration being set forth in the text of the guarantee. It is not in dispute that the parties agreed (Appendix D, Exhibit 5) that the right to draw down the guarantees would be governed by the "Uniform Customs and Practice for Documentary Credits" (Exhibit 7 Unicredit file) which expressly establishes that letters of credit by their very nature" ..are separate transactions from the sales or other contracts on which they are based .." and that "..Consequently, the promise by a bank to pay.... ..negotiate and/or fulfill any obligation provided in the letter of credit, is not subject to objections by the customer with regard to its relations with the ordering Bank and the Beneficiary .." .

Moreover the clearly abstract nature of documentary credits provided by the aforementioned Article 3, applicable to the guarantees in question, is a circumstance which is not validly disproven by the submissions made by the petitioner party, which are limited to generic considerations regarding the necessity to link the Italian principles with the international rules, but there is no doubt that the parties intended to create an independent contractual obligation for the issuing bank in favor of the beneficiary and, pursuant to the law governing the relationship, any matter relative to the performance and execution of the underlying relationship cannot justify failure to pay.

Once again it must be held that the arguments put forward by the petitioner party, according to which the two aforementioned contracts are autonomous and distinct and that, therefore



the draw down of the guarantees should be limited only to the "Construction Agreement")
are also unfounded. The unitary nature of the relationship in question has been reiterated
by the respondent Hovensa and confirmed by various documentary elements, not validly
refuted by the formal aspect relied on by the petitioners.

Firstly, in actual fact, the Letters of Intent for the "Engineering & Procurement
Agreement" and "Construction Agreement" were signed by the same two
representatives of Technip, the issue of both the guarantees was requested of Unicredit
bank by Technip alone, TPVI (signatory of the "Construction" Agreement) was a company
incorporated by Technip specifically for the transaction, eight days prior to the date of
signing of the Agreements. Furthermore Appendix D, provides that the liability, obligations
and the requisites applicable to the contactor refer to both contractors in their respective
Agreements, and therefore, both Technip and TPVI. Appendix K, identical in the two
contracts and signed by all the parties, provides that the contractor shall pay the penalties
("Schedule Liquidated Damages") for each day following November 2006, should the
mechanical completion of the project not have been achieved and that Appendix remains
unchanged even following the amendment of the penalties in March 2006 by the "Settlement
Agreement".

That Appendix provides, therefore, that also Technip was directly obliged as regards the
mechanical completion of the contract, and that also Technip was directly obliged to pay the
penalties within the limits of 10% of the total price. Again, in confirmation of the unitary
nature of the relationship, Appendix E, which establishes the stages of the entire project, from
planning to the production, fixing the date of the time limit for mechanical completion was
prepared exclusively by Technip, and Article 6.2 of the Contract "Engineering &
Procurement", signed by Technip specifies that the role of management of the executive
project would be performed by an "affiliate" company (that is TPVI) and that the said
Technip would not attempt to extricate itself from its responsibilities arising out the failure to
perform the project, including any delays in delivery, alleging or objecting that the liability was
that of the affiliated company, which was carrying out the project.

Finally, also in the "Settlement Agreement" the liability for delays in the delivery of the
works is always attributed indistinctly to the "Contractor", that is to say both to Technip and
to TPVI. Having said that, as regards the nature of the guarantees in question and the
substantial unitary nature of the contract, it is worth excluding, with regard to the *fumus*

*bonis iuris*", the subsistence of any so-called "immediate proof" suitable to ground *exceptio doli* [a plea of fraud] raised by the petitioners.

Firstly, in fact, given the autonomous nature of the guarantees granted, no objection relative to the unsuitability of the sub-contractor (Tiger) and the overall problematical situation of which Hovensa was aware, can be taken into consideration in order to block the payment, nor can any submission relating to the underlying relationship allow the obliged Bank, nor the orderer to refuse payment.

Furthermore, the considerations regarding the unitary nature of the relationships between the parties exclude any consideration that the draw down of both letters of guarantee was in breach of good faith.

Again as regards" fumus" the petitioners' affirmations regarding the procedural irregularity of the draw down of the guarantee must also be regarded as groundless.

Firstly, the affirmation that the communication provided by Articles 11.3 of the E&P Agreement (Technip Contract) and 14.3 Construction Agreement (TPVI Contract) was made simultaneously with the draw down of the guarantees is disproven by the documentary evidence, insofar as the communications in question are dated May 29, 2007 (Exhibits 6 and 7). Receiving no response Hovensa then transmitted a second communication (Exhibits 8 and 9) and therefore on June 4, 2007 (see date and signature of receipt by the Bank) delivered to Unicredit Bank the documentation required for the draw down, requesting payment according to the terms of the guarantees (Exhibits 10 and 11).

Furthermore, completely unfounded is the affirmation according to which the draw down of the guarantees was based on invoices which could not be issued because they related to "disputed sums", and that is pursuant to point 2.4 of Appendix K to the two contracts (Exhibit 21 petitioners' file). Indeed, the rule translated into Italian states: ["Except for the disputed amounts, all other payments to be made by the contractor to Hovensa (including those due to Hovensa in respect of guarantees or in any event in terms of this Contract) shall be due within thirty days from receipt by the contractor of Hovensa's invoice"]: the rule limiting itself, therefore, to establishing a time limit within which to make the payments (30 days from the receipt of the invoices), time limit which does not apply to the "disputed sums" ("Except for the disputed amounts") for which, as emphasized by the said petitioners, must follow the procedure for contestations provided by Article 24.2 of the Technip Contract and 27.2 of the TPVI Contract.

It is clear that there cannot be inferred from that rule any prohibition on issuing invoices for "disputed sums" nor does there exist any provision in the relevant contracts which limits the possibility to draw down guarantees while a negotiating procedure is pending for a solution to the dispute about the sums contested.

Regarding, then, the further requirement of *periculum in mora* it must be pointed out that the petition has not in any way proven the real subsistence of the "*periculum*" feared and argued in a completely generic manner, whether "*parte creditoris*" or "*parte debitoris*".

As regards an award of costs in these proceedings, they can only be awarded against the losing party.

<div align="center">FOR THESE REASONS</div>

Given Article 700 Code of Civil Procedure;

Refuses all pleas for the adoption of an Order for Interim Measures;

Orders the petitioners Technip Italy Spa and TPVI Ltd to reimburse the respondent Unicredit Banca d'Impresa Spa the expenses of these proceedings which are awarded in a total of Euro 6,375.00 of which Euro 1,375.00 for charges, Euro 5,000.00 for fees, in addition to general expenses, VAT and CPA [Italian Lawyers' Pension and Welfare Fund] as required by law;

Orders the petitioners Technip Italy Spa and TPVI LTD to reimburse the respondent Hovensa L.L.C. the expenses of these proceedings which are awarded in a total of Euro 8,485.00 of which Euro 1,485.00 for charges, Euro 7,000.00 for fees, in addition to general expenses, VAT and CPA [Italian Lawyers' Pension and Welfare Fund] as required by law;

Thus decided in Rome on 2 July 2007

Let it be known                    The Judge
                                   Ms. Paola Agresti        [Stamp: Deposited in the
                                                            Clerk's office on 2 July 2007.
                                                            The Clerk: Silvana Renzi ]



# TRIBUNALE ORDINARIO DI ROMA

### Ufficio Asseveramento Perizie e Traduzioni

### VERBALE DI GIURAMENTO

CRONOLOGICO

N. 4738

Roma, li 2 MAG. 2008

IL COLLABORATORE

Addì *2-5-08* avanti al sottoscritto Cancelliere è presente

_____ Signor *VITTORIA CAMPANA* _____

traduttore della lingua *INGLESE* _____

(iscritto / non iscritto, all'Albo dei Consulenti Tecnici del Tribunale di

_____ dal _____ ) identificato con documento

*CI*

N. *AU1432640* rilasciato da *Comune di Chiosia*

il *16-3-06* il quale chiede di asseverare con giuramento la

traduzione del documento: *Provvedimento*

*Tribunale* _____

unito in: ~~originale / copia conforme all'originale~~ / fotocopia semplice / altro:

_____ . Il Cancelliere, previa ammonizione

sulla responsabilità penale (art.483 c.p.) derivante da dichiarazioni mendaci,

invita il comparente al giuramento, che egli presta ripetendo:  **"Giuro di**

**avere bene e fedelmente adempiuto all'incarico affidatomi al solo scopo di**

**far conoscere la verità".**

Letto, confermato e sottoscritto.

IL CANCELLIERE C1

Anna Rita Guastatore

# EXHIBIT M

TURNER IND                                                              ☑002

 **Turner Industries Group, L.L.C.**

October 17, 2005

TECHNIP ITALY S.p.A.
Viale Castello della Magliana, 68
00148 ROMA

Attention: Mr. Vincenzo Lagana'

RE:    **Technip Italy S.p.A. - Project No. 2229**
       **STEEL STRUCTURE, PIPING ERECT, & EQUIPMENT ERECT – 1399**
       **Hovenza – Low Sulfur Gasoline Unit – St. Croix, USVI**

Gentlemen:

Turner Industries Group, LLC regrets to inform you that we will NOT submit a proposal for your above referenced RFQ for Mechanical Work. Please refer to the attached email sent to Mr. Margaglio on October 5, 2005.

As we previously stated, Turner is not in a position to commit to firm labor pricing under the present market conditions. Our previously submitted Unit Prices would increase for the known escalation in labor cost. The Gulf Coast demand is continuing to increase, therefore, so is the labor cost. Escalation is predicted to be felt across the USA and certainly in St. Croix. Our contract would have to include a clause for labor wage/travel/incentive fluctuations as necessary to attract manpower to the St. Croix jobsite.

Should you wish, Turner can provide you with a Fixed Fee proposal based on our previously submitted proposal. At this time, we cannot quote on firm unit prices or lump sum. We understand the decisions Technip are facing with a contract with Hovensa already in place. We hope in some form we will be able to assist you on this project.

If you have any further questions regarding this, please contact Randy Rebowe at (225) 922-5050, extension 2557.

For Turner,

Donald L. McCollister
President

8687 United Plaza Blvd
Baton Rouge, LA 70809
Phone: (800) 288-8503
www.turner-industries.com

# EXHIBIT N



"James H. Wheeler"
<JWheeler@jvpiping.c
om>

17/11/2005 15.47

To: <amargaglio@technip.com>, "Frank J. Rusich"
<FRusich@jvpiping.com>

cc:

Subject: RE: Proj. 2229 - LSG Unit - Hovensa - St. Croix - USVI - Call for Bid
1399.06 - Mechanical Site Works

Gentlemen,

Based on the quantities and complexities of work transmitted to us and
the construction duration desired, our pricing is reflective of current
and expected conditions in this area. The estimated manhours could be
reduced if the projected weld counts were reduced, especially for the
large bore stainless steel and PWHT piping. Our all-in direct manhour
cost of ~$74.00 is a competitive rate for St. Croix based on our past
experience. Quality craft and equipment resources are getting severely
strained by the volume of activity due to planned expenditures and
unexpected hurricane repairs.

JVVI is definitely interested in assisting Technip with a successful
project We would be happy to visit with you to review the details of our
estimate, if you think this would be beneficial.

Jim Wheeler
JV Industrial Companies
281-842-9353 x1108
281-842-3673 Fax
832-865-9968 Cell

-----Original Message-----
From: amargaglio@technip.com [mailto:amargaglio@technip.com]
Sent: Tuesday, November 15, 2005 5:45 AM
To: James H. Wheeler; Frank J. Rusich
Subject: Proj. 2229 - LSG Unit - Hovensa - St. Croix - USVI - Call for
Bid 1399.06 - Mechanical Site Works


JV Industrial Companies

att. Franck Rusich - Managing Director
att. Jim Wheeler    - Manager of Estimating

Dear Sirs,

we acknowledge receipt of your proposal Q-102678 dated November 12, 2005
for the Steel Structures/Piping/Equipment Erection work at St. Croix
site.

The response we have received to our Call for Bid is very astonishing:
your
quoted price of US$ 52,141,200 is even higher than our Contract price
with
Hovensa for the whole Plant.

We wonder whether this fact depends on the real understanding of our
documents or represents the JV's actual level of prices.

Kindly revert.

Yours very truly,

Andrea Margaglio

Area Construction Coordinator
Construction Department
Technip Italy

Viale Castello della Magliana, 68
00148 Roma - Italy

phone: +39.06.65981
        +39.06.6598.3879 direct line
fax:    +39.06.6598.3810
e-mail:  amargaglio@technip.com

# EXHIBIT O



**Technip**

| | Project N°<br>2229 | Unit<br>0000 | Document Code<br>RR    164 | Serial N° | Rev. | Page<br>1/16 |
|---|---|---|---|---|---|---|

**TECHNIP ITALY S.p.A.**

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.

# PROJECT EXECUTION SUMMARY

# AS OF APRIL 28th, 06

HOVENSA Contract No.: HVS 0663

# APRIL 28 2006

| 0 | MAY 5TH, 06 | ISSUED FOR INFORMATION | SABELLI | GIANNINI | GIANNINI/LAGANA' |
|---|---|---|---|---|---|
| REV. | DATE | STATUS | WRITTEN BY<br>(name & visa) | CHECKED BY<br>(name & visa) | APPROVED/AUTHORIZED BY<br>(name & visa) |
| | | DOCUMENT REVISIONS | | | |

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68

**HOVENSA**  *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 164 | | | 2/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

## INDEX

Page

1.  PROJECT HIGHLIGHTS ........................................... 3

2.  ENGINEERING ..................................................... 4
    2.1.  Activities performed up to APRIL 28TH, 06 2.2 Activities planned for the next reporting period ..... 4

3.  PROCUREMENT .................................................... 8
    3.1.  Activities Performed up to APRIL 28TH, 06 ..... 8
    3.2.  Activities Planned for the Next Reporting Period ..... 8

4.  CONSTRUCTION SUMMARY ...................................... 9
    4.1.  Home Office Activities ..... 9
    4.2.  Site Activities performed up to APRIL 28TH, 06 ..... 9

5.  INVOICING/PAYMENT STATUS OF APRIL 28TH, 06 ..... 13
    5.1.  E/P Contract ..... 13
    5.2.  C Contract ..... 13

6.  CHANGE ORDER STATUS ........................................ 14

7.  TWO YEARS SPARE PARTS STATUS .......................... 15

8.  AREAS OF CONCERN ............................................. 16

ATTACHMENTS:

- Project Schedule (Level 1)

- Overall Project Curves:
    - Overall Contract
    - E&P Contract
    - C Contract
    - Material Procurement
    - Major Equipment
    - Bulk Materials
    - H/O Services

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68

**HOVENSA**    *Technip*

| | | Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|---|---|
| | | 2229 | 0000 | RR | 164 | | | 3/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

1.    **PROJECT HIGHLIGHTS**

Design activities are in progress for all the disciplines.

In particular, it is worth to mention the final issue of Isometric Sketches, final issue of Plot Plans and Piping Layouts, final issue of Instrument Interlock Logic Diagrams, final issue of Electrical Wiring Diagrams, Vendor drawings review and approval activities for all PV&HE, Machinery/Packages, Electrical, Instrumentation and Piping Material Requisitions.

Regular (weekly) conference calls are carried out to keep HOVENSA informed about the progress of TPIT activities and to review the project Action Items.

The physical progress achieved for the Engineering Services as of APRIL 28ST, 2006 is 97.0% versus a scheduled figure of 99.2%.

Main activities related to Procurement covered the issue of Purchase Orders for Thermoucoples & Thermowell, Instruments Supports & Accessories and Insulating Sets.

The physical progress achieved for Material Procurement as of APRIL 28ST, 2006 is 70.1% versus a scheduled figure of 91.9%.

The corresponding physical progress for the total E/P Contract is 75.5% versus a scheduled figure of 93.3%.

Main activities related to Construction covered the completion of excavations for all foundations, for underground piping, seal boxes and catch basin, completion of backfilling almost up to final elevation for the majority of the site extension. All the deep foundations have been completed and all the rebar cages have been prefabricated.

Carbon steel piping prefabrication at SUN prefabrication subcontractor (RamFab workshop) is completed and all material was received at site. Installation at site is almost completed on the eastern half.

HDPE erection covered all the north and west side of the plant. Ductile iron piping material for PSW is completed unless the west header.

Installation for electrical u/g material for cathodic protection and earthing is mostly completed unless south of the existing pipe rack.

Completed the unloading and inventory of all the steel structures received at site.

Prefabrication of spools and painting of straight run for pipe rack is ongoing at SHAW.

The corresponding physical progress for the total C Contract is 30.9% versus a scheduled figure of 40.3%.

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**HOVENSA**    *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 164 | | | 4/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.**

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

## 2.    ENGINEERING

The following two columns list the activities carried out during the current period (i.e.: up to APRIL 28TH, 06) and those expected in the next reporting period (i.e.: up to MAY 26TH, 06) respectively.

**2.1.    Activities performed up to APRIL 28TH, 06**

**2.1.1.    Process / P&ID**

- Final issue of P&IDs and Mechanical Line List
- Issue for Construction of Cause & Effect Diagrams
- Fire Fighting Equipment Main Vendor drawings (VDW4)
- Follow-up

**2.1.2.    Plant Design and Piping**

- Final issue of Isometric Drawings
- Final issue Plot Plans
- Final issue Piping Layouts
- 5th Piping Material Take Off
- CAD 3D Activities on-going
- Issue for Construction Stress Analysis Calculation

**2.1.3.    Piping Material & Technology**

- Update of requisitioning with 5th material Take Off quantities
- Piping Material Vendor drawings review

**2.2    Activities planned for the next reporting period**

**2.2.1    Process / P&ID**

- Final issue of HAZOP Follow-up report
- Follow-up

**2.2.2    Plant Design and Piping**

- Follow-up

**2.2.3    Piping Material & Technology**

- Update of requisitioning with 5th material Take Off quantities
- Piping Material Vendor drawings review

---

**HOVENSA**

*Technip*

| Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|---|---|---|---|---|---|
| 2229 | 0000 | RR    164 | | | 5/16 |

## TECHNIP ITALY S.p.A.

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or unidirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**2.1.4.     Electrical**

- Grounding & Lightening Materials, Electrical Cables, Cable Trays, Packaged Electrical Substation, AC & DC UPS, Transformers and Cathodic Protection and Lighting Panels & Transformers detailed Vendor drawings(VDW4)
- Power Materials and Lighting Materials Main Vendor drawings (VDW2/VDW4)
- Final Issue of Detailed Wiring/Schematic Diagrams
- CAD 3D Activities on-going

**2.2.4     Electrical**

- Grounding & Lightening Materials, Power Materials, Electrical Cables, Cable Trays, Lighting Materials, Lighting Panels & Transformers, Cathodic Protection, Packaged Electrical Substation, AC & DC UPS and Transformers detailed Vendor drawings (VDW4)
- Follow-up

**2.1.5.     Instrument, Automation & Communication**

- Issue for Purchase Material Requisition for Thermocouples and Thermowell, Thermometers, Fiber Optic Cables and Instrument Support & Accessories
- Pressure Gauges, Thermometers, Thermocouples and Thermowell Main Vendor Drawings (VDW1)
- DCS, CCTV System, Control Valves, Pneumatic On-Off Valves, Electric Operated Valves, Safety Relief Valves, Differential Pressure Elements, Displacement Level Transmitters, Ultrasonic Level Instruments, Electronic Transmitters, Level Glass, CEMS, RVP and Total Sulphur, O2 Analyzer, H2S Analyzer, Gas Chromatograph and Fire & Gas System Detailed Vendor Drawings (VDW4)
- Issue for Review Loop Wiring Drawings (Two Wire)
- Final issue Interlock Logic Diagrams
- CAD 3D activities on-going

**2.2.5     Instrument, Automation & Communication**

- Technical Tabulation of Mounting Accessories
- Issue for Purchase Material Requisition for Mounting Accessories
- DCS, CCTV System, Control Valves, Pneumatic On-Off Valves, Electric Operated Valves, Safety Relief Valves, Displacement Level Transmitters, Ultrasonic Level Instruments, Differential Pressure Elements, Electronic Transmitters, Pressure Gauges, Thermometers, Thermocouples and Thermowell, Level Glass, CEMS, RVP and Total Sulphur, O2 Analyzer, H2S Analyzer, Gas Chromatograph and Fire & Gas System Detailed Vendor Drawings (VDW4)
- Final issue of Loop Wiring Drawings (Two Wire)
- Final issue Graphic Displays

---

**HOVENSA**    *Technip*

### TECHNIP ITALY S.p.A.

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

**2.1.6.** **Civil/Structural Buildings + H.V.A.C.**

CIVIL/STRUCTURAL
- Structural Steel Main Vendor Drawings (VDW1)
- CAD 3D activities on-going
- Follow-up

BUILDINGS
- Satellite Buildings detailed Vendor Drawings (VDW4)
- Substation detailed Vendor Drawings (VDW4)
- CAD 3D activities on-going

H.V.A.C.
- Satellite Buildings HVAC detailed Vendor Drawings (VDW4)
- Substation HVAC detailed Vendor Drawings (VDW4)

**2.1.7.** **Machinery & Packages**

- Ejector & Silencers detailed Vendor Drawings (VDW4/VDW5)
- Filters Main Vendor Drawings (VDW4/VDW5)
- Centrifugal Pumps Detailed Vendor Drawings (VDW4/VDW5)
- High Speed Pump detailed Vendor Drawings (VDW4/VDW5)
- Pneumatic Diaphragm Pumps Main Vendor Drawings (VDW5)
- Controlled Volume Pumps detailed Vendor Drawings (VDW4/VDW5)
- Reciprocating Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Centrifugal Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Oil Mist Lubrication detailed Vendor Drawings (VDW4/VDW5)
- Bridge Crane Main Vendor Drawings (VDW4/VDW5)

**2.2.6** **Civil/Structural Buildings + H.V.A.C.**

CIVIL/STRUCTURAL
- Follow-up

BUILDINGS
- Follow-up

H.V.A.C.
- Follow-up

**2.2.7** **Machinery & Packages**

- Ejector & Silencers detailed Vendor Drawings (VDW5)
- Filters Main Vendor Drawings (VDW5)
- Centrifugal Pumps Detailed Vendor Drawings (VDW4/VDW5)
- High Speed Pump detailed Vendor Drawings (VDW4/VDW5)
- Pneumatic Diaphragm Pumps Main Vendor Drawings (VDW5)
- Controlled Volume Pumps detailed Vendor Drawings (VDW4/VDW5)
- Reciprocating Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Centrifugal Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Oil Mist Lubrication detailed Vendor Drawings (VDW5)
- Bridge Crane Main Vendor Drawings (VDW4/VDW5)

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---





| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 164 | | | 7/16 |

**TECHNIP ITALY S.p.A.**

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

**2.1.8.    PV & HE**

- Reactors detailed Vendor Drawings (VDW4/VDW5)
- Columns detailed Vendor Drawings (VDW5)
- Columns Trays & Internals Main Vendor Drawings (VDW5)
- Texas Tower Detailed Vendor Drawings (VDW5)
- Shell & Tube Heat Exchangers Detailed Vendor Drawings (VDW5)
- Air Coolers Detailed Vendor Drawings (VDW4/VDW5)
- Pressure Vessels Detailed Vendor Drawings (VDW4/VDW5)

**2.2.8    PV & HE**

- Reactors detailed Vendor Drawings (VDW4/VDW5)
- Columns detailed Vendor Drawings (VDW5)
- Columns Trays & Internals Main Vendor Drawings (VDW5)
- Texas Tower Detailed Vendor Drawings (VDW5)
- Shell & Tube Heat Exchangers Detailed Vendor Drawings (VDW5)
- Air Coolers Detailed Vendor Drawings (VDW4/VDW5)
- Pressure Vessels Detailed Vendor Drawings (VDW5)

**2.1.9.    Heaters & Boilers**

- Detailed Vendor Drawings (VDW4)

**2.2.9    Heaters & Boilers**

- Detailed Vendor Drawings (VDW4/VDW5)

**2.1.10.    Information Technology**

- Follow-up

**2.2.10    Information Technology**

- Follow-up

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68

**HOVENSA**    *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 164 | | | 8/16 |

**TECHNIP ITALY S.p.A.**

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

3.        **PROCUREMENT**

3.1.      **Activities Performed up to APRIL 28TH, 06**

- Negotiation with Vendors

The following technical and commercial negotiations have been completed:

- Insulating Sets                      MR 1399.02
- Thermoucoples & Thermowell           MR 1554.01
- Instruments Supports                 MR 1572.04

- Requisitioning

The following Material Requisitions have been issued for inquiry:

None.

- Purchase orders

The following P.O.s have been awarded:

- Insulating Sets                      MR 1399.02
- Thermoucoples & Thermowell           MR 1554.01
- Instruments Supports                 MR 1572.04

3.2.      **Activities Planned for the Next Reporting Period**

The following Material Requisitions are expected to be issued for inquiry:

- Chain Wheel and Padlocks             MR 1397.01

The following technical and commercial negotiations are expected to be carried out:

- Fiberglass Piping                    MR 1300.01
- Mounting Accessories                 MR 1572.01

The following P.O.s are expected to be awarded:

- Fiberglass Piping                    MR 1300.01
- Mounting Accessories                 MR 1572.01

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**HOVENSA**     *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 164 | | | 9/16 |

## TECHNIP ITALY S.p.A.

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

4.     **CONSTRUCTION SUMMARY**

4.1.     **Home Office Activities**

4.1.1.    <u>Home Office activities performed up to APRIL 28TH, 06</u>

Bid inquiry for Instrumentation and Electrical Work Packages has been issued for inquiry and tabulation of offers is on going.

4.1.2.    <u>Home Office activities planned for the next reporting period</u>

-    Negotiation of Instrumentation and Electrical Work Packages

4.2.     **Site Activities performed up to APRIL 28TH, 06**

**GENERAL NOTES**

Weather: rain only during night, no impact on construction activities this month.
Construction works also on every and all Saturdays and April 2nd, April 30th,(Sunday) and April 14th, (Good Friday)
April 6th, to April 10th the site has been closed and all works hold due to a large spillage occurred during start up of closeby V3 unit

**TEMPORARY INSTALLATIONS**

Warehouse for Project material is in operation. Lay down area outside the Refinery is in operation. Additional area setup for Mechanical Subcontractor.

**QUALITY**

<u>Concrete:</u>
Cast to date about 3500 cu.yd.
Taken 103 samples.
Average results (psi)

| MONTH | 5 days | 7 days | 28 days |
|---|---|---|---|
| October | 1,892 | 2,691 | 3,126 |
| November | 1,949 | 2,403 | 3,126 |
| December | | 2,584 | 3,353 |
| January | | 3,229 | 3,923 |
| February | | 2854 | 3855 |
| March | | 2985 | 3915 |
| April | | 3716 | 3830 |

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**HOVENSA**    *Technip*

**TECHNIP ITALY S.p.A.**

<div style="text-align:center; writing-mode: vertical;">
The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purposes and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.
</div>

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

Piping:

Welding Procedures

| Sub contractor | Status | | |
|---|---|---|---|
| | Approved | To qualify | In progress |
| RAM-FAB | 10 | 10 | 0 |
| SHAW- GROUP | 22 | 22 | 0 |
| SUN (SITE) | 0 | 0 | 0 |

Welders

| Subcontractor | Status | | | | | |
|---|---|---|---|---|---|---|
| | Approved | To qualify | In progress | Retired | Disqualified | In force |
| RAM-FAB | 15 | 12 | 0 | 3 | 0 | 12 |
| SHAW-GROUP | 3 | 3 | 0 | 0 | 0 | 3 |
| SUN (SITE) | 0 | 0 | 0 | 0 | 0 | 0 |

Welding & RT Status:

| Sub contractor | Welded | | | Status RT | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Date | Welds | Inches | Category | Welded Nr of joints | Checked Nr of joints | Good Nr of joints | % | Repair Nr of joints | % | Penalty |
| RAM FAB | From 8/02 to 25/02 | 350 | 2200 | 100% | 300 | 300 | 297 | | 3 | | 6 |
| | | | | 5% | 50 | 3 | 3 | | 0 | | |
| | | | | | | | | | | | |
| SHAW GROUP | / | / | / | | | | | | | | |
| SUN (SITE) | / | 282 | / | | 282 | 72 | 63 | | 9 | | |

**CIVIL WORKS**

**Civil works, on site (SUN)**

General

Concern on progress achieved to date; after establishing an acceleration plan with the Subcontractor the works have accelerated during April, but with delay respect to the scheduled because of 1 week lost for the V3 spillage. Direct manpower slightly increased at about 45 units.

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

Excavation

Excavation for all foundations has been completed. Excavation for underground piping, seal boxes and catch basin has been almost completed.

Soil hauling

Ongoing.

Backfilling

Backfilling has been completed almost up to final elevation for the majority of the site extension.

Concrete supply

Concrete supply: the availability of concrete has been sufficient during April unless some days in between April 21st to 28th.

Prefabrication activities (off-island)

Completed

Foundation works:

All the deep foundations have been completed last month. For the remainder all the rebar cages have been prefabricated.

Structure A Prefabricated Frames Installation

The last 4 frames relevant to structure A are at lay-down area ready for transportation to the erection site and installation onto relevant foundations.

Underground Piping and Electrical Works

Carbon steel piping prefabrication at SUN prefabrication subcontractor (RamFab workshop) is completed. All material was received at site. Installation at site is almost completed on the eastern half of the site.

HDPE erection covered all the north and west side of the plant. Ductile iron piping material for PSW is completed unless the west header; for FW installation covered the east, north and most of the west side of the plant.

Installation for electrical u/g material for cathodic protection and earthing is mostly completed unless south of the existing pipe rack.

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

HOVENSA

**Technip**

| Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|---|---|---|---|---|---|
| 2229 | 0000 | RR  164 | | | 12/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.**

---

Concern on progress: see civil works section. Direct manpower increased at about 20 units.

Steel structures

Completed the unloading and inventory of all the steel structures received at site.

Mobilized the 350 ton crane for erection of steel pipe rack. Started transport to site of PS4917 and PS4918 (cable bridge)

Electrical material

Material receipt ongoing.

Piping prefabrication and painting application (Shaw Workshop)

Prefabrication of spools and painting of straight run for pipe rack is ongoing.

---

 

| | | | Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|---|---|---|
| | | | 2229 | 0000 | RR | 164 | | | 13/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

5.    **INVOICING/PAYMENT STATUS OF APRIL 28TH, 06**

5.1.    **E/P Contract**

Total Contract Price: USD 77.000.000

| Inv. Number | Issue Date | Due Date | Invoiced | Paid | Balance | Receipt | Rec. Date | Rec. Code |
|---|---|---|---|---|---|---|---|---|
| 2005LBV00002 | 23/03/05 | 29/04/05 | 308.000,00 | 308.000,00 | 0,00 | 308.000,00 | 15/04/05 | 2005/I26421 |
| 2005LBV00004 | 26/04/05 | 02/06/05 | 770.000,00 | 770.000,00 | 0,00 | 770.000,00 | 20/05/05 | 2005/I26990 |
| 2005LBV00005 | 18/05/05 | 24/06/05 | 2.926.000,00 | 2.926.000,00 | 0,00 | 2.926.000,00 | 20/06/05 | 2005/I27558 |
| 2005LBV00006 | 20/06/05 | 27/07/05 | 2.849.000,00 | 2.849.000,00 | 0,00 | 2.849.000,00 | 19/07/05 | 2005/I28165 |
| 2005LBV00007 | 11/07/05 | 17/08/05 | 3.080.000,00 | 3.080.000,00 | 0,00 | 3.080.000,00 | 10/08/05 | 2005/I28605 |
| 2005LBV00009 | 18/08/05 | 24/08/05 | 4.235.000,00 | 4.235.000,00 | 0,00 | 4.235.000,00 | 19/09/05 | 2005/I29238 |
| 2005LBV00010 | 29/09/05 | 05/11/05 | 6.776.000,00 | 6.776.000,00 | 0,00 | 6.776.000,00 | 28/10/05 | 2005/I29845 |
| 2005LBV00011 | 26/10/05 | 02/12/05 | 5.467.000,00 | 5.467.000,00 | 0,00 | 5.467.000,00 | 24/11/05 | 2005/I30247 |
| 2005LBV00012 | 17/11/05 | 24/12/05 | 4.928.000,00 | 4.928.000,00 | 0,00 | 4.928.000,00 | 15/12/05 | 2005/I30662 |
| 2005LBV00013 | 13/12/05 | 19/01/06 | 3.080.000,00 | 3.080.000,00 | 0,00 | 3.080.000,00 | 12/01/06 | 2006/I31130 |
| 2006LBV00001 | 17/01/06 | 23/02/06 | 1.925.000,00 | 1.925.000,00 | 0,00 | 1.925.000,00 | 17/02/06 | 2006/I32006 |
| 2006LBV00002 | 20/02/06 | 29/03/06 | 1.540.000,00 | 1.540.000,00 | 0,00 | 1.540.000,00 | 21/03/06 | 2006/I32613 |
| 2006LBV00003 | 27/03/06 | 03/05/06 | 3.157.000,00 | 0,00 | 3.157.000,00 | 0,00 | | |
| 2006LBV00004 | 26/04/06 | 02/06/06 | 3.696.000,00 | 0,00 | 3.696.000,00 | 0,00 | | |

5.2.    **C Contract**

Total Contract Price: USD 50.000.000

| Inv. Number | Issue Date | Due Date | Invoiced | Paid | Balance | Receipt | Rec. Date | Rec. Code |
|---|---|---|---|---|---|---|---|---|
| 20050001 | 30/08/05 | 30/09/05 | 481.250,00 | 481.250,00 | 0,00 | 481.250,00 | 30/09/05 | |
| 20050002 | 21/11/05 | 21/12/05 | 596.750,00 | 596.750,00 | 0,00 | 596.750,00 | 20/12/05 | |
| 20050003 | 13/12/05 | 14/01/06 | 517.000,00 | 517.000,00 | 0,00 | 517.000,00 | 14/01/06 | |
| 20050004 | 26/01/06 | 25/02/06 | 704.000,00 | 704.000,00 | 0,00 | 704.000,00 | 28/02/06 | |
| 20050005 | 21/02/06 | 23/03/06 | 570.625,00 | 570.625,00 | 0,00 | 570.625,00 | 31/03/06 | |
| 20050006 | 11/04/06 | 12/05/06 | 624.250,00 | | 624.250,00 | 0,00 | | |
| 20050007 | 29/04/06 | 29/05/06 | 609.125,00 | | 609.125,00 | 0,00 | | |

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than has that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**HOVENSA**  *Technip*

| Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|---|---|---|---|---|---|
| 2229 | 0000 | RR   164 | | | 14/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

6.        **CHANGE ORDER STATUS**

Refer to attached Change Order Log 2229-0000-NM-130

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**HOVENSA**

*Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 164 | | | 15/16 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

7.    **TWO YEARS SPARE PARTS STATUS**

Refer to attached Two Years Spare Parts Recommendation Status 2229-0000-NM-611.

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**TECHNIP ITALY S.p.A.**

---

LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.

---

8.    **AREAS OF CONCERN**

TP has expressed concern for the following issues:

- **HOVENSA approval of engineering / Vendors documentation**

  Delays in the review of TPIT / Vendor documents appear to exceed the contractual review time. TPIT also identified that comments pertaining to specific documents are actually received in connection with other documents normally issued at a later stage.

  TPIT is still available to minimize Vendor documents to be submitted to HOVENSA for review.

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

# HOVENSA

## Technip

| | | Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|---|---|
| | | 2229 | 0000 | RR | 165 | | | 1/17 |

**TECHNIP ITALY S.p.A.**

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.

---

# PROJECT EXECUTION SUMMARY

# AS OF MAY 26th, 06

HOVENSA Contract No.: HVS 0663

# MAY 26 2006

| 0 | JUNE 1 5TH, 06 | ISSUED FOR INFORMATION | SABELLI | GIANNINI | GIANNINI/LAGANA' |
|---|---|---|---|---|---|
| REV. | DATE | STATUS | WRITTEN BY (name & visa) | CHECKED BY (name & visa) | APPROVED/AUTHORIZED BY (name & visa) |
| | | DOCUMENT REVISIONS | | | |

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68

**HOVENSA**    *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 165 | | | 2/17 |

## TECHNIP ITALY S.p.A.

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

### INDEX

Page

1.    PROJECT HIGHLIGHTS                                          3

2.    ENGINEERING                                                 4
  2.1.   Activities performed up to MAY 26TH, 06            
  2.2    Activities planned for the next reporting period        4

3.    PROCUREMENT                                                 8
  3.1.   Activities Performed up to MAY 26TH, 06            8
  3.2.   Activities Planned for the Next Reporting Period         8

4.    CONSTRUCTION SUMMARY                                        9
  4.1.   Home Office Activities                                   9
  4.2.   Site Activities performed up to MAY 26TH, 06       9

5.    INVOICING/PAYMENT STATUS OF MAY 26TH, 06             14
  5.1.   E/P Contract                                             14
  5.2.   C Contract                                               14

6.    CHANGE ORDER STATUS                                        15

7.    TWO YEARS SPARE PARTS STATUS                               16

8.    AREAS OF CONCERN                                           17

ATTACHMENTS:

- Project Schedule (LEVEL 1)

- Overall Project Curves:
    - Overall Contract
    - E&P Contract
    - C Contract
    - Material Procurement
    - Major Equipment
    - Bulk Materials
    - H/O Services

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**HOVENSA**    *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 165 | | | 3/17 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

## 1.    PROJECT HIGHLIGHTS

Design activities are in progress for all the disciplines.

In particular, it is worth to mention the Vendor drawings review and approval activities for all PV&HE, Machinery/Packages, Electrical, Instrumentation and Piping Material Requisitions.

Regular (weekly) conference calls are carried out to keep HOVENSA informed about the progress of TPIT activities and to review the project Action Items.

The physical progress achieved for the Engineering Services as of MAY 26ST, 2006 is 98.1% versus a scheduled figure of 99.6%.

Main activities related to Procurement covered the issue of Purchase Orders for Fiberglass Piping and Mounting Accessories.

The physical progress achieved for Material Procurement as of MAY 26ST, 2006 is 87.6% versus a scheduled figure of 99.2%.

The corresponding physical progress for the total E/P Contract is 89.7% versus a scheduled figure of 99.3%.

Main activities related to Construction covered the completion of backfilling almost up to final elevation for the majority of the site extension. Completion of pre-fabrication activities (off-island) (RamFab). Paving has been completed in the east area of the plant. Paving at north-west location started.

Installation at site of carbon steel pipes is almost completed. HDPE erection covered all the north and west side of the plant. South side is almost completed. Ductile iron piping material for PSW is completed; FW installation is completed at north of existing piperack; at south is almost completed.

Installation for electrical u/g material for cathodic protection and earthing is mostly completed. Erection of pipe-rack is on going. Tiger installed the structure supporting the substation. The structure for Battery Room, RIB and for cable trays started. Also started the activities relevant to structure A.

Tiger installed two exchangers E-4904 in area 6 and vessels in area 4 (sump). Equipment in area 3 (exchangers) are underway. Tiger started the fabrication at ground of pipe rack piping.

Prefabrication of large bore spools and painting of straight run for pipe rack is ongoing at SHAW workshop. About 50% of the work has been already completed.

The corresponding physical progress for the total C Contract is 40.3% versus a scheduled figure of 50.9%.

---

 

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 165 | | | 4/17 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

2.　　**ENGINEERING**

The following two columns list the activities carried out during the current period (i.e.: up to MAY 26TH, 06) and those expected in the next reporting period (i.e.: up to JUNE 30TH, 06) respectively.

2.1.　　**Activities performed up to MAY 26TH, 06**

2.1.1.　　**Process / P&ID**

- Follow-up

2.1.2.　　**Plant Design and Piping**

- Follow-up

2.1.3.　　**Piping Material & Technology**

- Update of requisitioning with 5th material Take Off quantities
- Piping Material Vendor drawings review

2.1.4.　　**Electrical**

- Grounding & Lightening Materials, Power Materials, Electrical Cables, Cable Trays, Lighting Materials, Lighting Panels & Transformers, Cathodic Protection, Packaged Electrical Substation, AC & DC UPS and Transformers detailed Vendor drawings (VDW4)
- Follow-up

**2.2　Activities planned for the next reporting period**

**2.2.1　Process / P&ID**

- Final issue of HAZOP Follow-up report
- Follow-up

**2.2.2　Plant Design and Piping**

- Follow-up

**2.2.3　Piping Material & Technology**

- Update of requisitioning with 5th material Take Off quantities
- Piping Material Vendor drawings review

**2.2.4　Electrical**

- Grounding & Lightening Materials, Power Materials, Electrical Cables, Cable Trays, Lighting Materials, Lighting Panels & Transformers, Cathodic Protection, Packaged Electrical Substation, AC & DC UPS and Transformers detailed Vendor drawings (VDW4/VDW5)
- Follow-up

---

**HOVENSA**

*Technip*

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

| 2.1.5. | **Instrument, Automation & Communication** | 2.2.5 | **Instrument, Automation & Communication** |

| | | | |
| 2.1.5. | **Instrument, Automation & Communication** | 2.2.5 | **Instrument, Automation & Communication** |

- Technical Tabulation of Mounting Accessories
- DCS, CCTV System, Control Valves, Pneumatic On-Off Valves, Electric Operated Valves, Safety Relief Valves, Displacement Level Transmitters, Ultrasonic Level Instruments, Differential Pressure Elements, Electronic Transmitters, Pressure Gauges, Thermometers, Thermocouples and Thermowell, Level Glass, CEMS, RVP and Total Sulphur, O2 Analyzer, H2S Analyzer, Gas Chromatograph and Fire & Gas System Detailed Vendor Drawings (VDW4)

- Issue for Purchase Material Requisition for Mounting Accessories
- DCS, CCTV System, Control Valves, Pneumatic On-Off Valves, Electric Operated Valves, Safety Relief Valves, Displacement Level Transmitters, Ultrasonic Level Instruments, Differential Pressure Elements, Electronic Transmitters, Pressure Gauges, Thermometers, Thermocouples and Thermowell, Level Glass, CEMS, RVP and Total Sulphur, O2 Analyzer, H2S Analyzer, Gas Chromatograph and Fire & Gas System Detailed Vendor Drawings (VDW4)
- Final issue of Loop Wiring Drawings (Two Wire)
- Final issue Graphic Displays

| 2.1.6. | **Civil/Structural Buildings + H.V.A.C.** | 2.2.6 | **Civil/Structural Buildings + H.V.A.C.** |

CIVIL/STRUCTURAL
- Follow-up

BUILDINGS
- Follow-up

H.V.A.C.
- Follow-up

CIVIL/STRUCTURAL
- Follow-up

BUILDINGS
- Follow-up

H.V.A.C.
- Follow-up

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**HOVENSA**    *Technip*

| Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|---|---|---|---|---|---|
| 2229 | 0000 | RR   165 | | | 6/17 |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

| 2.1.7. | **Machinery & Packages** | 2.2.7 **Machinery & Packages** |
|---|---|---|

**2.1.7.    Machinery & Packages**

- Ejector & Silencers detailed Vendor Drawings (VDW5)
- Filters Main Vendor Drawings (VDW5)
- Centrifugal Pumps Detailed Vendor Drawings (VDW4/VDW5)
- High Speed Pump detailed Vendor Drawings (VDW4/VDW5)
- Pneumatic Diaphragm Pumps Main Vendor Drawings (VDW5)
- Controlled Volume Pumps detailed Vendor Drawings (VDW4/VDW5)
- Reciprocating Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Centrifugal Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Oil Mist Lubrication detailed Vendor Drawings (VDW5)
- Bridge Crane Main Vendor Drawings (VDW4/VDW5)

**2.2.7    Machinery & Packages**

- Centrifugal Pumps Detailed Vendor Drawings (VDW4/VDW5)
- High Speed Pump detailed Vendor Drawings (VDW4/VDW5)
- Controlled Volume Pumps detailed Vendor Drawings (VDW4/VDW5)
- Reciprocating Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Centrifugal Compressor Detailed Vendor Drawings (VDW4/VDW5)
- Oil Mist Lubrication detailed Vendor Drawings (VDW5)
- Bridge Crane Main Vendor Drawings (VDW5)

**2.1.8.    PV & HE**

- Reactors detailed Vendor Drawings (VDW4/VDW5)
- Columns detailed Vendor Drawings (VDW5)
- Columns Trays & Internals Main Vendor Drawings (VDW5)
- Texas Tower Detailed Vendor Drawings (VDW5)
- Shell & Tube Heat Exchangers Detailed Vendor Drawings (VDW5)
- Air Coolers Detailed Vendor Drawings (VDW4/VDW5)
- Pressure Vessels Detailed Vendor Drawings (VDW5)

**2.2.8    PV & HE**

- Reactors detailed Vendor Drawings (VDW5)
- Columns detailed Vendor Drawings (VDW5)
- Columns Trays & Internals Main Vendor Drawings (VDW5)
- Texas Tower Detailed Vendor Drawings (VDW5)
- Shell & Tube Heat Exchangers Detailed Vendor Drawings (VDW5)
- Air Coolers Detailed Vendor Drawings (VDW5)
- Pressure Vessels Detailed Vendor Drawings (VDW5)

**2.1.9.    Heaters & Boilers**

- Detailed Vendor Drawings (VDW4/VDW5)

**2.2.9    Heaters & Boilers**

- Detailed Vendor Drawings (VDW4/VDW5)

---

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68





| | Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| | **2229** | **0000** | **RR    165** | | | **7/17** |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

2.1.10.    **Information Technology**

- Follow-up

2.2.10  **Information Technology**

- Follow-up

---

**HOVENSA**    *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| **2229** | **0000** | **RR** | **165** | | | **8/17** |

**TECHNIP ITALY S.p.A.**

---

**LOW SULFUR GASOLINE UNIT**
**HOVENSA L.L.C.**

---

3.          **PROCUREMENT**

3.1.        **Activities Performed up to MAY 26TH, 06**

- Negotiation with Vendors

The following technical and commercial negotiations have been completed:

- Fiberglass Piping                        MR 1300.01
- Mounting Accessories                MR 1572.01

- Requisitioning

The following Material Requisitions have been issued for inquiry:

None.

- Purchase orders

The following P.O.s have been awarded:

- Fiberglass Piping                        MR 1300.01
- Mounting Accessories                MR 1572.01

3.2.        **Activities Planned for the Next Reporting Period**

The following Material Requisitions are expected to be issued for inquiry:

- Chain Wheel and Padlocks          MR 1397.01

The following technical and commercial negotiations are expected to be carried out:

- Chain Wheel and Padlocks          MR 1397.01

The following P.O.s are expected to be awarded:

- Chain Wheel and Padlocks          MR 1397.01

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**TECHNIP ITALY S.p.A.**

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

4.       **CONSTRUCTION SUMMARY**

4.1.    **Home Office Activities**

4.1.1.   <u>Home Office activities performed up to MAY 26TH, 06</u>

Bid inquiry for Instrumentation and Electrical Work Packages has been issued for inquiry and tabulation of offers is on going.

4.1.2.   <u>Home Office activities planned for the next reporting period</u>

-       Negotiation of Instrumentation and Electrical Work Packages

4.2.    **Site Activities performed up to MAY 26TH, 06**

**GENERAL NOTES**

Weather: rain only during night, no impact on construction activities this month. Construction works also on every and all Saturdays and Sundays

**TEMPORARY INSTALLATIONS**

Areas for Civil and Mechanical Subcontractors are in operation

**QUALITY**

<u>Concrete:</u>

Cast to date about 4200 cu.yd.
Taken 114 samples.
Average results (psi)

| MONTH | 5 days | 7 days | 28 days |
|-----------|--------|--------|---------|
| October | 1,892 | 2,691 | 3,126 |
| November | 1,949 | 2,403 | 3,126 |
| December | | 2,584 | 3,353 |
| January | | 3,229 | 3,923 |
| February | | 2854 | 3855 |
| March | | 2985 | 3915 |
| April | | 3716 | 3830 |
| May | | 3887 | 4286 |

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**HOVENSA**        *Technip*

| | | Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|---|---|
| | | 2229 | 0000 | RR | 165 | | | 10/17 |

## TECHNIP ITALY S.p.A.

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

Piping:

Welding Procedures

| Sub contractor | Status | |
|---|---|---|
| | To Qualify | Approved |
| RAM-FAB | 10 | 10 |
| SHAW- GROUP | 22 | 22 |
| SUN (SITE) | 2 | 2 |
| TIGER | 2 | 2 |

Welders

| Subcontractor | Status | | | | |
|---|---|---|---|---|---|
| | To Qualify | Approved | Disqualified | Retired | In force |
| RAM-FAB | 15 | 12 | 0 | 3 | 12 |
| SHAW- GROUP | 3 | 3 | 0 | 0 | 3 |
| SUN (SITE) | 2 | 2 | 0 | 0 | 2 |
| TIGER | 2 | 2 | | | |

Welding & RT Status

| Sub contractor | Welded | | | | Status RT | | | | | Status PWHT | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Date | Welds | Inches | Category | Welded | Checked | Good | Repair | Penalty | To be done | Done |
| | | | | | Nr of joints | Nr of joints | Nr of joints | Nr of joints | | | |
| RAM FAB | From 8/02 to 17/05 | 350 | 2200 | 100% | 300 | 300 | 297 | 3 | | | 6 |
| | | | | 5% | 50 | 3 | 3 | 0 | | | |
| SHAW GROUP | / | 7000 | 30000 | 100% | 2500 | 200 | 189 | 11 | 22 | 400 | 60 |
| | | | | 5% | | | | | | | |
| SUN (SITE) | / | 282 | / | 100% | 112 | 90 | 80 | 10 | | 81 | 30 |
| TIGER | / | 3000 | 14000 | 100% | 10 | 0 | 0 | 0 | | 0 | 0 |
| | | | | 5% | | | | | | | |

Test packages

| Subcontractor | Test packages | | |
|---|---|---|---|
| | To be done | Done | Remaining |
| RAM-FAB | 0 | 0 | 0 |
| SHAW-GROUP | 0 | 0 | 0 |
| SUN (SITE) | 40 | 26 | 14 |
| TIGER | | | |

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**HOVENSA**            *Technip*

| Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|------------|------|---------------|-----------|------|------|
| 2229 | 0000 | RR    165 | | | 11/17 |

## TECHNIP ITALY S.p.A.

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

### CIVIL WORKS

#### Civil works, on site (SUN)

#### General

No major concern on progress achieved to date; acceleration plan agreed with the Subcontractor is effective and acceleration happened during May. Direct manpower slightly increased at about 45 units.

#### Excavation

Excavation for underground piping, seal boxes and catch basin has been almost completed.

#### Soil hauling

Ongoing.

#### Backfilling

Backfilling has been completed almost up to final elevation for the majority of the site extension.

#### Concrete supply

Concrete supply: the availability of concrete has been sufficient during the month.

#### Prefabrication activities (off-island) (RamFab)

Completed

#### Foundation works:

The remaining "on paving" foundations are being poured together with relevant area paving.

#### Paving work

Paving has been completed in the east area of the plant. Paving at north west location started.

#### Structure A Prefabricated Frames Installation

The last 4 concrete bents (relevant to structure A) have been installed.

---

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.





| | Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|---|
| | 2229 | 0000 | RR | 165 | | | 12/17 |

**TECHNIP ITALY S.p.A.**

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstance, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

<u>Underground Piping and Electrical Works</u>

Installation at site of carbon steel pipes is almost completed. HDPE erection covered all the north and west side of the plant. South side is almost completed. Ductile iron piping material for PSW is completed; FW installation is completed at north of existing piperack; at south is almost completed.
Installation for electrical u/g material for cathodic protection and earthing is mostly completed. Direct manpower increased at about 20 units.

<u>Steel structures</u>

<u>SUN</u>

Erection of pipe rack on going. No major concern on progress achieved to date.

<u>TIGER</u>

Tiger installed the structure supporting the substation. The structure for Battery Room, RIB and for cable trays started. Also started the activities relevant to structure A.

<u>Heavy Equipment</u>

Material receipt is ongoing.
MAMMOET installed the two towers T-4901 and T-4902, the two heavy drums D-4901 and D-4902, the Substation 23 building.

<u>Equipment</u>

Material receipt is ongoing.
Tiger installed two exchangers E-4904 in area 6 and vessels in area 4 (sump). Equipment in area 3 (exchangers) are underway

<u>Piping erection</u>

Tiger started the fabrication at ground of pipe rack piping.

An average of 20 direct workers have been present at site in May

<u>Electrical and instrumentation material</u>

Material receipt is ongoing.
Construction activities expected to start in June.

<u>Piping prefabrication and painting application (Shaw Workshop)</u>

Prefabrication of large bore spools and painting of straight run for pipe rack is ongoing. About 50% of the work has been already completed. Some loads of straight run

---





| | | Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|---|---|
| | | **2229** | **0000** | **RR** | **165** | | | **13/17** |

**TECHNIP ITALY S.p.A.**

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.**

painted pipes already received at site. First load of prefabricated pipes is ready to be shipped to the site. Material delivery to SHAW for prefabrication of small bore piping is ongoing .

**TECHNIP ITALY S.p.A.** - 00148 ROMA - Viale Castello della Magliana, 68

**HOVENSA**          *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 165 | | | 14/17 |

## TECHNIP ITALY S.p.A.

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

5.    **INVOICING/PAYMENT STATUS OF MAY 26TH, 06**

5.1.    **E/P Contract**

Total Contract Price: USD 77.000.000

| Inv. Number | Issue Date | Due Date | Invoiced | Paid | Balance | Receipt | Rec. Date | Rec. Code |
|---|---|---|---|---|---|---|---|---|
| 2005LBV00002 | 23/03/05 | 29/04/05 | 308.000,00 | 308.000,00 | 0,00 | 308.000,00 | 15/04/05 | 2005/I26421 |
| 2005LBV00004 | 26/04/05 | 02/06/05 | 770.000,00 | 770.000,00 | 0,00 | 770.000,00 | 20/05/05 | 2005/I26990 |
| 2005LBV00005 | 18/05/05 | 24/06/05 | 2.926.000,00 | 2.926.000,00 | 0,00 | 2.926.000,00 | 20/06/05 | 2005/I27558 |
| 2005LBV00006 | 20/06/05 | 27/07/05 | 2.849.000,00 | 2.849.000,00 | 0,00 | 2.849.000,00 | 19/07/05 | 2005/I28165 |
| 2005LBV00007 | 11/07/05 | 17/08/05 | 3.080.000,00 | 3.080.000,00 | 0,00 | 3.080.000,00 | 10/08/05 | 2005/I28605 |
| 2005LBV00009 | 18/08/05 | 24/09/05 | 4.235.000,00 | 4.235.000,00 | 0,00 | 4.235.000,00 | 19/09/05 | 2005/I29238 |
| 2005LBV00010 | 29/09/05 | 05/11/05 | 6.776.000,00 | 6.776.000,00 | 0,00 | 6.776.000,00 | 28/10/05 | 2005/I29845 |
| 2005LBV00011 | 26/10/05 | 02/12/05 | 5.467.000,00 | 5.467.000,00 | 0,00 | 5.467.000,00 | 24/11/05 | 2005/I30247 |
| 2005LBV00012 | 17/11/05 | 24/12/05 | 4.928.000,00 | 4.928.000,00 | 0,00 | 4.928.000,00 | 15/12/05 | 2005/I30662 |
| 2005LBV00013 | 13/12/05 | 19/01/06 | 3.080.000,00 | 3.080.000,00 | 0,00 | 3.080.000,00 | 12/01/06 | 2005/I31130 |
| 2006LBV00001 | 17/01/06 | 23/02/06 | 1.925.000,00 | 1.925.000,00 | 0,00 | 1.925.000,00 | 17/02/06 | 2006/I32006 |
| 2006LBV00002 | 20/02/06 | 29/03/06 | 1.540.000,00 | 1.540.000,00 | 0,00 | 1.540.000,00 | 21/03/06 | 2006/I32613 |
| 2006LBV00003 | 27/03/06 | 03/05/06 | 3.157.000,00 | 3.157.000,00 | 0,00 | 3.157.000,00 | 28/04/06 | 2006/I33432 |
| 2006LBV00004 | 26/04/06 | 02/06/06 | 3.696.000,00 | 0,00 | 3.696.000,00 | 0,00 | | |
| 2006LBV00005 | 17/05/06 | 23/06/06 | 13.398.000,00 | 0,00 | 13.398.000,00 | 0,00 | | |

5.2.    **C Contract**

Total Contract Price: USD 50.000.000

| Inv. Number | Issue Date | Due Date | Invoiced | Paid | Balance | Receipt | Rec. Date | Rec. Code |
|---|---|---|---|---|---|---|---|---|
| 20050001 | 30/08/05 | 30/09/05 | 481.250,00 | 481.250,00 | 0,00 | 481.250,00 | 30/09/05 | |
| 20050002 | 21/11/05 | 21/12/05 | 596.750,00 | 596.750,00 | 0,00 | 596.750,00 | 20/12/05 | |
| 20050003 | 13/12/05 | 14/01/06 | 517.000,00 | 517.000,00 | 0,00 | 517.000,00 | 14/01/06 | |
| 20050004 | 26/01/06 | 25/02/06 | 704.000,00 | 704.000,00 | 0,00 | 704.000,00 | 28/02/06 | |
| 20050005 | 21/02/06 | 23/03/06 | 570.625,00 | 570.625,00 | 0,00 | 570.625,00 | 31/03/06 | |
| 20050006 | 11/04/06 | 12/05/06 | 624.250,00 | 624.250,00 | 0,00 | 624.250,00 | 10/05/06 | |
| 20050007 | 29/04/06 | 29/05/06 | 609.125,00 | | 609.125,00 | 0,00 | | |
| 20050008 | 17/05/06 | 16/06/06 | 478.500,00 | | 478.500,00 | 0,00 | | |

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than the one for which is specifically furnished or outside the extent of the agreed upon right of use.

---

**HOVENSA**  *Technip*

| Project N° | Unit | Document Code | Serial N° | Rev. | Page |
|---|---|---|---|---|---|
| 2229 | 0000 | RR    165 | | | 15/17 |

**TECHNIP ITALY S.p.A.**

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

6.        **CHANGE ORDER STATUS**

Refer to attached Change Order Log 2229-0000-NM-130

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or undirectly, transferred, reproduced, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

**HOVENSA**  *Technip*

| Project N° | Unit | Document Code | | Serial N° | Rev. | Page |
|---|---|---|---|---|---|---|
| 2229 | 0000 | RR | 165 | | | 16/17 |

**TECHNIP ITALY S.p.A.**

---

### LOW SULFUR GASOLINE UNIT
### HOVENSA L.L.C.

---

7.    **TWO YEARS SPARE PARTS STATUS**

Refer to attached Two Years Spare Parts Recommendation Status 2229-0000-NM-611.

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

**HOVENSA**    *Technip*

**TECHNIP ITALY S.p.A.**

---

LOW SULFUR GASOLINE UNIT
HOVENSA L.L.C.

---

8.    **AREAS OF CONCERN**

TP has expressed concern for the following issues:

- **HOVENSA approval of engineering / Vendors documentation**

  Delays in the review of TPIT / Vendor documents appear to exceed the contractual review time. TPIT also identified that comments pertaining to specific documents are actually received in connection with other documents normally issued at a later stage.

  TPIT is still available to minimize Vendor documents to be submitted to HOVENSA for review.

The present document or drawing is property of TECHNIP ITALY S.p.A. and shall not, under any circumstances, be totally or partially, directly or indirectly, transferred, reproduced, copied, disclosed or used, without its prior written consent, for any purpose and in any way other than that for which it is specifically furnished or outside the extent of the agreed upon right of use.

---

# EXHIBIT P

*Technip*

**TECHNIP ITALY**

**LOW SULFUR GASOLINE UNIT – ST. CROIX, USVI**

**PROJECT REVIEW MEETING**



**St. Croix, August 25th, 2006**



**HOVENSA**

**AGENDA**

- Safety
- Progress Status
- E+P Status
- Construction Status
  - ➡ Where we are
  - ➡ Why we are there
  - ➡ What to do
- Main Issues

*Technip*

**TECHNIP ITALY**

HOVENSA

2

# SAFETY

## HSE STATUS

### Event Breakdown for Construction



**TECHNIP ITALY**

| | | AUG 2006 | Rolling Project | This Month | To Date |
|---|---|---|---|---|---|
| 0 | Lost Time Incidents | 0 | 0 | 0 | 0 |
| 1 | Medical treatment Cases | 1 | 1 | 1 | 1 |
| 3 | Near Misses | 0 | 3 | 0 | 3 |

| Total Project Team & Subcontractor | This Month | To Date |
|---|---|---|
| First aid cases | 2 | 10 |
| Total Recordable cases | 1 | 1 |
| Lost workday cases | 0 | 0 |
| Lost workdays | 0 | 0 |
| Fatal cases | 0 | 0 |

| Total Project Team & Subcontractor | This Month | To Date |
|---|---|---|
| Man-hours worked | 57,737 | 303,324 |
| Recordable injury rate | 3,46 | 0,66 |
| Lost workdays frequency rate | 0 | 0 |
| Severity rate | 0 | 0 |



3

PROGRESS STATUS

# PROGRESS AS OF AUGUST 18th

*Technip*
**TECHNIP ITALY**

| | E | P | E+P | C | EPC |
|---|---|---|---|---|---|
| PLANNED | 100 | 100 | 100 | 83,5 | 93,5 |
| RESCH. | 100 | 100 | 100 | 76,2 | **90,71** |
| ACTUAL | 99,8 | 99,0 | 99,2 | 69,4 | **87,58** |
| Delta (Actual. vs. Resch.) | | | | 6,8 | -3,13 |



4

# E+P STATUS

- Engineering
  - ➜ Instrument "two wires" loop diagrams issued. No other engineering deliverables are foreseen.
  - ➜ Final data books status
    - Following collections have been recently issued:
      - – Facility Data Books, Structural Design Books, Electrical Data Books and Data Sheets Record Books
    - To be issued yet:
      - – Vendors Equipment Book and Building Data Book

- Procurement
  - ➜ New E4905 bundle arrived at site after re-fabrication.
  - ➜ The only significant item still to arrive is the analyzer shelter (E.T.A. Sept. 10th).
  - ➜ Some Instrumentation material is still under shipment.



*Technip*
TECHNIP ITALY



HOVENSA

5

# CONSTRUCTION – WHERE WE ARE



- Civil works completed (minor finishing works will continue as needed).

- Steel structures almost completed. Completion within three weeks.

- Heavy lifting works completed.

- **Piping Fabrication**
  - ➔ **Large bore:** 100% fabricated and arrived at site. Total number of spools: 1459
  - ➔ **Small bore:** acceleration plan agreed with subcontractor for a works completion deadline on Sept.15th. 50% of spools arrived at site

**Technip**
TECHNIP ITALY



6

# CONSTRUCTION – WHERE WE ARE

- **Piping Erection**
  - ➜ **Piperack: 75%**
  - ➜ **Large bore: 20%**
  - ➜ **Small bore: just started**

- **E/I works:** under execution. Late start of cable pulling caused by delay in steel structural works

- **Insulation Works:** Subcon mobilized at site. Equipment insulation to start in the very next days

- **MC notification for nine systems (SS48 and ancillaries)** have been issued to HOVENSA. Expected date for MC Aug 31st

- **Test pack preparation completed:** 360 test pack have been identified. Hydraulic tests will start in the coming week.

- **Loop folders** preparation started. **800 loop checks** are expected.

*Technip*
**TECHNIP ITALY**



**HOVENSA**

7



CONSTRUCTION - WHERE WE ARE

Low Sulphur Gasoline
HOVENSA L.L.C.
Overall Progress of Works

PROGRESS CURVE

TPVI Ltd.

% Progress

*Technip*
TECHNIP ITALY

HOVENSA

8

# CONSTRUCTION – WHERE WE ARE

## Progress Details as of Aug. 18th



| | Resch. | Actual |
|---|---|---|
| Civil | 99,9 | 97,9 |
| Mechanical | 78,8 | 70,9 |
| Electrical | 64,8 | 24,3 |
| Instrumentation | 5,0 | 8,5 |
| Insulation | 27,0 | 0,0 |
| Painting | 82,8 | 89,8 |

| | Resch. | Actual |
|---|---|---|
| St. Structures | 93,3 | 88,5 |
| Heavy Lifting | 100,0 | 100,0 |
| Piping Fabrication | 95,9 | 97,2 |
| Piping Erection | 49,1 | 26,5 |
| Equipment Erection | 88,8 | 78,6 |

*Technip*
TECHNIP ITALY

HOVENSA

9

# CONSTRUCTION – WHERE WE ARE

## LSG Project - Direct Manpower Presence





# CONSTRUCTION – WHY WE ARE THERE



- Overall progress in July and August was expected to be in the range of 28%. Actual expected one is in the range of 20%, corresponding to approx. 3 weeks of delay.

- This delay is mainly concentrated on mechanical works impacting also subsequent activities (e/i works, insulation works).

*Technip*
**TECHNIP ITALY**



HOVENSA

12

# CONSTRUCTION – WHY WE ARE THERE



**Welding production:**
**Actual (14,000 in) vs. Planned**
**(26,000 in)**

**L.B. fabricated spools erection:**
**Actual (250) vs. Planned (500)**

TECHNIP ITALY

*Technip*

HOVENSA

13



# CONSTRUCTION – WHY WE ARE THERE

Cumulated turnover: 25%, i.e. 65 people out of 265 left the site

Manpower originally required vs actual: almost 400 manweeks (out of 1900) have been lost

## CONSTRUCTION – WHAT TO DO

- Night Shift Plan Feasibility analysis under evaluation
  - ➡ involved disciplines
  - ➡ extent
  - ➡ duration

- Introduction of TPVI supervision in Mechanical Subcontractor field organization

- Early detailed evaluation on how to optimize overlap between pre-commissioning works (TPVI scope) and commissioning works (HOVENSA scope)



**TECHNIP ITALY**



15

# MAIN ISSUES

- Mechanical Subcontractor performance to be necessarily improved

- Piping Clamps supports replacement with welded shoes

- Impulse lines required for loop checking?

- Potential overlap of commissioning works with holidays period

- Consciousness of type of Contract between HOVENSA and TPVI to be better spreaded over supervision and inspection teams





END OF PRESENTATION

_Technip_

**TECHNIP ITALY**



HOVENSA

16

# EXHIBIT Q

OFFICE COPY

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840 (REV 1/2000)

For Clerk Only

SUPREME COURT
COUNTY OF NEW YORK

Index No. 601158/08
DATE PURCHASED: April 17, 2008

PLAINTIFF(S):

## TPVI LIMITED and TECHNIP ITALY S.P.A.,

IAS entry date

Judge Assigned

DEFENDANT(S):

RJI Date     JUN 1 2 2008

## HOVENSA, L.L.C.

Date issue joined: _____     Bill of Particulars served (Y/N): ☐ Yes ☒ No

### NATURE OF JUDICIAL INTERVENTION (check ONE box only and enter information)

☐ Request for preliminary conference

☐ Note of issue and/or certificate of Readiness

☒ Notice of motion (return date: _____ )
Relief sought Dismissal _____

☐ Order to show cause
(clerk enter return date _____ )
Relief sought _____

☐ Other ex parte application (specify _____ )

☐ Notice of Petition (return date _____ )
Relief sought _____

☐ Notice of medical or dental malpractice action
(specify _____ )

☐ Statement of net worth

☐ Writ of habeas corpus

☐ Other (specify _____ _____ )

## NATURE OF ACTION OR PROCEEDING   (check ONE box only)

**MATRIMONIAL**

| | | |
|---|---|---|
| ☐ | Contested | - CM |
| ☐ | Uncontested | - UM |

**COMMERCIAL**

| | | |
|---|---|---|
| ☒ | Contract | - CONT |
| ☐ | Corporate | - CORP |
| ☐ | Insurance (where insurer is a party, except arbitration) | - INS |
| ☐ | UCC (including sales, negotiable instruments) | - UCC |
| ☐ | *Other Commercial | - OC |

**REAL PROPERTY**

| | | |
|---|---|---|
| ☐ | Tax Certiorari | - TAX |
| ☐ | Foreclosure | - FOR |
| ☐ | Condemnation | - COND |
| ☐ | Landlord/Tenant | - LT |
| ☐ | *Other Real Property _____ | - ORP |

**OTHER MATTERS**

| | | |
|---|---|---|
| ☐ | * _____ | - OTH |

**TORTS**
Malpractice

| | | |
|---|---|---|
| ☐ | Medical/Podiatric | - MM |
| ☐ | Dental | - DM |
| ☐ | *Other Professional | - OPM |
| ☐ | Motor Vehicle | - MOREOVER |
| ☐ | *Products Liability | - PL |
| ☐ | Environmental | - EN |
| ☐ | Asbestos | - ASB |
| ☐ | Breast Implant | - BI |
| ☐ | *Other Negligence | - OTN |
| ☐ | * Other Tort (including intentional) | - TO |

**SPECIAL PROCEEDINGS**

| | | |
|---|---|---|
| ☐ | Art. 75 (Arbitration) | - ART 75 |
| ☐ | Art. 77 (Trusts) | - ART 77 |
| ☐ | Article 78 | - ART 78 |
| ☐ | Election Law | - ELEC |
| ☐ | Guardianship (MHL Art. 81) | - GUARD81 |
| ☐ | *Other Mental Hygiene | - MHYG |
| ☐ | *Other Special Proceeding | - OSP |

"Check "YES" or "NO" for each of the following questions.  Is this action/proceeding against a:

[ ] YES [X] NO  Municipality: (Specify)                    [ ] YES [X] NO Pubic Authority: (Specify)

[X] YES [ ] NO  Does this action/proceeding seek equitable relief?
[ ] YES [X] NO  Does this action/proceeding seek recovery for personal injury?
[ ] YES [X] NO  Does this action/proceeding seek recovery for property damage?

**Pre-Note Time frames:**
**(This applies to all cases except contested matrimonial and tax certiorari cases)**

Estimated time period for case to be ready for trial (from filing of RJI to filing Note of Issue)
    [ ] Expedited: 0-8 months    [ ] Standard:  9-12 months    [X] Complex:  13-15 months

**Contested Matrimonial Cases Only:** (Check and give date)
    Has summons been served? [ ] NO  [ ] YES,  Date: _____
    Was a Notice of No Necessity filed? [ ] NO  [ ] YES,  Date: _____

**ATTORNEY(S) FOR PLAINTIFF(S):**

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| [ ] | Hughes Hubbard & Reed, LLP, Christopher Paparella, Esq. | One Battery Park Plaza New York, New York 10022 | 212-837-6000 |
| [ ] | | | |

**ATTORNEYS FOR DEFENDANT(S):**

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| [ ] | Law Offices of Gabriel Del Virginia | 641 Lexington Avenue-21st Flr. New York, New York 10022. | 212-37135478 |
| [ ] | Shipley Snell Montgomery, LLP | 4600 First City Tower, 1001 Fannin Houston, Texas 77002 | 713-652-5920 |

*Self Represented: parties representing themselves, without an attorney should check the "Self Rep" box and enter their name, address, and phone # in the space provided above for attorneys.

**INSURANCE CARRIERS:**

**RELATED CASES:  (IF NONE, write "NONE" below)**
Title                          Index#              Court                Nature of Relationship

None

   I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.
Dated: June 8, 2008
       New York, New York 10022
Gabriel Del Virginia, Esq.
       (Print or type name)

By Gabriel Del Virginia
(Attorneys for Defendant )

**ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION.**

**SUPREME COURT OF STATE OF NEW YORK**
**COUNTY OF NEW YORK**

TPVI LIMITED and TECHNIP ITALY S.p.A.,

<table>
<tr><td></td><td>Plaintiffs,</td><td>Index No. 601158/08</td></tr>
<tr><td>-against-</td><td></td><td>**NOTICE OF MOTION**<br>**FOR DISMISSAL OF**</td></tr>
<tr><td>HOVENSA L.L.C.,</td><td></td><td>**COMPLAINT OR**<br>**STAY.**</td></tr>
<tr><td></td><td>Defendant.</td><td></td></tr>
</table>

**PLEASE TAKE NOTICE** that, upon the Affidavit by Michael J. Fennessy, dated and sworn to on June 6, 2008, and the exhibits annexed thereto and supporting legal brief, with exhibits, Defendant, Hovensa, L.L.C. will move this Court in Motion Support Part, Room 130, 60 Centre Street, New York, New York, on July 7, 2008, at 9:30 a.m., for an order dismissing complaint of Plaintiffs, TPVI Limited and Technip Italy, S.p.A., for lack of jurisdiction pursuant to CPLR 3211(a)(2); 3211(a)(4); 3211(a)(8); and (or in the alternative, a stay under 3211(a)(4)), and for such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR 2214(b), answering papers are required to be served upon the undersigned in such manner that the papers will be received not less than seven (7) days prior to the return date of this motion.

Dated: New York, New York
      June 11, 2008

**LAW OFFICES OF**
**GABRIEL DEL VIRGINIA.**
*Attorneys for Defendant*

By: _____
     Gabriel Del Virginia, Esq.
    641 Lexington Avenue-21st Floor
    New York, New York 10022
    (212) 371-5478-Telephone
    (212) 371-0460-Facsimile

1

## RULE 130-1.1 CERTIFICATION

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: New York, New York
      June 11, 2008

Signature: _____

2

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    :
                        : SS.:
COUNTY OF NEW YORK  :

The undersigned, being duly sworn, deposes and says:

1.     I am over 18 years of age and not a party to this action.

2.     On June 12, 2008, I served a true and accurate copy of the within Notice of Motion to Dismiss Complaint, Affidavit in Support, and supporting Legal Brief upon the person(s) and/or entity(ies) on the annexed list, by:

[_X_]  **HAND DELIVERY,** by sending via messenger, a true copy of the attached papers, enclosed and properly sealed in an envelope.

[_X_]  **FIRST CLASS MAIL,** by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid envelope, which I deposited in an official depository under the exclusive care and custody of the United States Postal Services within the State of New York;

[__]  **FEDERAL EXPRESS,** by depositing a true copy thereof enclosed in a Federal Express wrapper and made proper arrangements for delivery of same;

[__]  **EXPRESS MAIL,** by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid Express Mail envelope, which I deposited in an official depository for same under the exclusive care and custody of the United States Postal Services;

[__]  **ELECTRONIC MEANS,** by facsimile, email or other electronic means as set forth on the annexed list.

Signature: _/s/_

Sworn to before me on
the 12 day of June, 2008.

_____
Notary Public

STEVEN IRA SUPER
Notary Public, State of New York  3
No. 02SU6008737
Qualified In New York County
Commission Expires June 15, 20__

To:     Chris M. Paparella, Esq.,
        HUGHES HUBBARD & REED, LLP,
        One Battery Park Plaza,
        New York, New York 10004.

        *Attorneys for Plaintiffs*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

OFFICE COPY

JUN 12 2008

TPVI LTD. and                          §
TECHNIP ITALY S.P.A.,                  §
                    Plaintiffs,        §          Index No. 601158/08
                                       §
        -against-                      §
                                       §          **MEMORANDUM OF LAW**
HOVENSA L.L.C.,                        §
                    Defendant.         §


**MEMORANDUM OF LAW IN SUPPORT OF HOVENSA L.L.C.'S
MOTION TO DISMISS PURSUANT TO RULE 3211(a)**

TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   STATEMENT OF FACTS.................................................................... 1

      A.    Technip Italy contracts to provide engineering,
            procurement, and construction services for a LSG
            Unit at HOVENSA's refinery. ........................................................ 1

      B.    The LSG project is delayed and over budget. ................................... 3

      C.    Technip unsuccessfully tries to avoid liability relating to
            the Construction Agreement. ........................................................ 5

      D.    HOVENSA files suit in the parties' agreed-upon forum and, in
            total disregard of the parties' agreement, Technip Italy responds by
            filing this largely duplicative lawsuit. ........................................... 6

III.  ARGUMENT AND AUTHORITIES ....................................................... 7

      A.    The Court lacks personal jurisdiction over HOVENSA. ................... 8

            1.    HOVENSA does not do business in New York. ................... 8

            2.    HOVENSA has not invoked the jurisdiction of the courts
                  of the State of New York and, thus, CPLR § 303
                  does not apply. ...................................................... 9

      B.    This suit should be dismissed pursuant to CPLR 3211(a)(2)
            for lack of subject matter jurisdiction. ....................................... 13

      C.    Technip's suit should be dismissed or, in the alternative,
            stayed, in favor of the previously filed action
            pending in federal court. ........................................................ 17

IV.   CONCLUSION ............................................................................... 20

## I. PRELIMINARY STATEMENT

In February 2008, pursuant to an exclusive forum selection clause in a $127 million contract, Defendant HOVENSA L.L.C. ("HOVENSA") filed suit against Plaintiff Technip Italy S.p.A. ("Technip Italy") in the United States District Court for the Southern District of New York.   HOVENSA's claims arise from Technip Italy's breaches of contract in the engineering, procurement and construction of a Low Sulfur Gasoline ("LSG") Hydrotreater Unit at HOVENSA's oil refinery in St. Croix, United States Virgin Islands ("U.S.V.I."). Technip Italy failed to mechanically complete the LSG unit until almost one year after the promised date, forced HOVENSA to pay over $30 million above the agreed-upon lump sum price, and delivered a facility with significant defects in critical components that, to date, have prevented the successful operation of the Unit.

On April 17, 2008, Technip Italy responded by filing the present, largely duplicative lawsuit in a forum that lacks personal jurisdiction over HOVENSA and, as a result of the parties' exclusive forum selection clause, lacks subject matter jurisdiction over the dispute. As set forth below, Technip Italy's jurisdictional gamesmanship should be rejected and the present suit dismissed pursuant to CPLR 3211(a)(8), (a)(2), and (a)(4).   In the alternative, proceedings in this suit should be stayed pending resolution of the current federal court action between the parties.

## II. STATEMENT OF FACTS

**A.    Technip Italy contracts to provide engineering, procurement, and construction services for a LSG Unit at HOVENSA's refinery.**

HOVENSA owns and operates an oil refinery in St. Croix, U.S.V.I.  In June 2004, HOVENSA invited contractors to bid on a lump-sum basis to provide the engineering, procurement, and construction services for a LSG Unit at the refinery.  One of the contractors

responding to HOVENSA's invitation was Technip Italy. After months of negotiations between HOVENSA and Technip Italy, as well as its French affiliate, Technip France S.A.,[1] the parties signed Letters of Intent for the project in February 2005. A project kick-off meeting was then scheduled for March 9-11, 2005 in Rome for the formal execution of the contract.

As contemplated from the bidding stage, the contract was divided into an Engineering and Procurement Agreement ("E&P Agreement") and a Construction Agreement (collectively "the Agreements") in order to distinguish, for local tax purposes, between the engineering and procurement work performed outside of the U.S.V.I. and the construction work performed within the U.S.V.I. Each Agreement contains over 25 virtually identical Appendices setting out Technip Italy's scope of work, its project schedule, coordination procedures, and other obligations of the parties. The total lump-sum price for the project was $127 million; Technip Italy initially allocated $77 million for the E&P Agreement and $50 million for the Construction Agreement.

While in Rome for execution of the Agreements, Technip Italy informed HOVENSA that an entity registered to conduct business in the U.S.V.I.—which Technip Italy referred to as "T.P.I.V." during a PowerPoint presentation on the project—would actually sign the Construction Agreement, which would permit Technip Italy to legally perform construction services in the U.S.V.I. Despite using another corporate entity to sign one of the Agreements on its behalf, Technip Italy confirmed its responsibility for all aspects of the project, including all construction obligations, stating in its PowerPoint presentation under "Scope of Work Highlights (Construction and Precommissioning)" that "Technip Italy will provide labor, supervision, construction equipment, TCF, consumable and other required tools to perform the work." (Ex.

---

[1]    Technip Italy and Technip France are part of the multinational engineering and construction group of companies known as the Technip Group and headed by the parent company, Technip S.A.

2

2.)[2]  Accordingly, while "TPVI" is listed in the introductory paragraph as the nominal party to the Construction Agreement, the voluminous Appendices to each Agreement refer only to Technip Italy as the party responsible for performing all obligations under the Agreements, including providing the personnel for all phases of the project.

On or about March 10, 2005, the same Technip Italy representatives who had signed the Letters of Intent back in February signed the executed Agreements.  As part of the extensive negotiations over this $127 million contract, the parties explicitly agreed that the United States District Court for the Southern District of New York would be the exclusive forum for resolution of any and all contractual disputes.  Specifically, the Agreements each contain the following, identical forum selection clause:

> If the Parties are unable to resolve the dispute to their satisfactions within ten (10) business days after the nomination, either Party has the right to commence litigation on the dispute.  Any such litigation *must be brought exclusively* in the U.S. District Court, Southern District of New York, United States of America and the parties hereby submit to the jurisdiction of such courts and waive any objection to venue or jurisdiction in such courts.  The dispute resolution procedures set forth in this Section will be *the sole and exclusive* dispute resolution procedures available to the Parties under this Agreement.

(*See* E&P Agreement § 24.2 and Construction Agreement § 27.2, Ex. A to the Affidavit of Michael J. Fennessy, which is attached hereto as Ex. 1.)

**B.     The LSG project is delayed and over budget.**

As set forth in Technip Italy's "Overall Project Schedule," which is attached as Appendix E to each Agreement, "Mechanical Completion" of the LSG project was to be achieved no later than November 10, 2006.  As compensation for damages resulting from

---

[2]     Upon information and belief, Technip Italy created this entity—actually named "TPVI Ltd."—on or about March 2, 2005, a few days before the formal execution of the Agreements.  According to public

Technip Italy's failure to deliver Mechanical Completion by that date, the parties agreed to a set amount of liquidated damages ("Schedule Liquidated Damages"), and Technip Italy contracted with an Italian bank to provide Letters of Credit ("LOCs") to insure payment of any Scheduled Liquidated Damages, among other financial obligations.

Unfortunately, problems with Technip Italy's performance began early in the project with its engineering and procurement deliverables and extended to its construction management. In the fall of 2005, Technip Italy claimed *force majeure* on the project, which ultimately resulted in a March 2006 Settlement Agreement. In exchange for an additional payment of $3 million and deferring the commencement of Scheduled Liquidated Damages by 28 days, Technip Italy and TPVI signed the Settlement Agreement, which released HOVENSA from any claims under the Agreement, including claims relating to "force majeure events, that have occurred, issues that have arisen or for Work that has been performed as of the date of this Settlement Agreement, including any 'impacts' or 'ripple' effects."

Even after the Settlement Agreement, however, Technip Italy proved unable to manage the costs of construction. As a result, Technip Italy "shifted" $7 million from the price allocated to the E&P Agreement to the price allocated to the Construction Agreement. Along with the escalating project costs, Technip Italy failed to manage the project schedule and Mechanical Completion was not achieved until late fall of 2007, almost one year after the promised November 2006 date.

**C.    Technip unsuccessfully tries to avoid liability relating to the Construction Agreement.**

By the end of May 2007—with Mechanical Completion still ultimately several months away—the Scheduled Liquidated Damages owed to HOVENSA alone exceeded $13

---

filings by Technip Italy's parent company, TPVI was "created to support" the contract with HOVENSA.

million.  Accordingly, HOVENSA exercised its right to draw on the LOCs posted by Technip

Italy.  As with the Agreements, the LOCs had been divided into one corresponding to the E&P

Agreement (approximately $7 million) and one corresponding to the Construction Agreement

(approximately $6 million).  In response, Technip Italy filed suit against its Italian bank in Rome

to enjoin payment on the LOCs.  (*See* Ex. 4.)

In the Italian proceeding, Technip Italy repeatedly argued that HOVENSA's

claim related to delays caused by construction activities and, thus, only TPVI, the signatory of

the Construction Agreement, could be liable for any damages.  Technip Italy argued that the

Agreements are completely independent and autonomous, and further, that HOVENSA could

draw only on the LOC that Technip Italy had posted in the name of TPVI for the Construction

Agreement.  (*See* Ex. 4 at p. 2, 10-11.) Rejecting Technip's fanciful separation of the two

Agreements, the Italian court recognized the indisputable "unitary nature" of the Agreements as

follows:

> Once again it must be held that the arguments put forward by [Technip
> Italy], according to which the two aforementioned contracts are
> autonomous and distinct and that, therefore the draw down of the
> guarantees should be limited only to the "Construction Agreement"[] are
> also unfounded.  The *unitary nature of the relationship in question* has
> been reiterated by the respondent Hovensa *and confirmed by various
> documentary elements*, not validly refuted by the formal aspect relied on
> by the petitioners . . .

(Ex. 5 at 3-4 (emphasis added).)  Accordingly, the Italian court refused to enjoin payment on the

LOCs.  Despite overcoming Technip Italy's interference with the LOCs, however, HOVENSA's

damages from Technip Italy's failure to perform under the Agreements still exceed $31 million,

a number that will continue to increase in light of apparent defects in the design and/or

fabrication of critical component parts of the LSG Unit.

---

(Ex. 3 at 17.)

5

**D.**     **HOVENSA files suit in the parties' agreed-upon forum and, in total disregard of the parties' agreement, Technip Italy responds by filing this largely duplicative lawsuit.**

On February 6, 2008, after unsuccessful discussions between the parties in St. Croix, HOVENSA filed suit against Technip Italy and its parent company, Technip S.A., in the United States District Court for the Southern District of New York.[3]  (*See generally* Ex. 6, copies of papers from federal court action).  HOVENSA's complaint was properly served on Technip Italy pursuant to the Hague Convention on February 28, 2008.  In response, counsel for Technip Italy agreed to accept service on behalf of Technip S.A. provided that HOVENSA would agree to a 30-day extension of Technip Italy's deadline to respond to the HOVENSA's complaint.  HOVENSA agreed, and Technip Italy was allowed until April 18, 2008 to file a response.

On April 17, 2008—one day before its response to the federal court suit was due—Technip filed the present suit in this Court, including as a plaintiff its U.S.V.I. affiliate, TPVI.  In the Complaint, Technip Italy and TPVI seek a declaratory judgment—in transparent response to HOVENSA's claims in the federal lawsuit filed over two months earlier—that they did not breach the Agreements.  (*See* Compl. ¶¶ 61-66.)  In addition, the Complaint sets forth two claims for damages: (1) recovery of the amounts paid to HOVENSA from the LOCs that Technip Italy posted, (*id.* ¶¶ 49-60), and (2) damages sustained as a result of project delays that were allegedly caused by HOVENSA, (*id.* ¶¶ 38-48.)  Meanwhile, Technip Italy has moved to dismiss the federal court suit on the ground that TPVI, a short-term and apparently asset-free entity created at the last minute by Technip Italy to sign the Construction Agreement on  its

---

[3]     HOVENSA sued Technip S.A. under a "Parent Guaranty Agreement" that is attached to, and incorporated into, each of the Agreements.  Even though correspondence confirms that the parties had reached agreement on the terms of parent guaranty a month before formal execution of the Agreements, and the guaranty is explicitly made a part of those Agreements, Technip S.A. has taken the position in the federal court action that Technip Italy's failure to fill in certain blanks in the Parent Guaranty Agreement renders it unenforceable as a matter of law.

6

behalf, is an indispensable party that cannot be joined without destroying the diversity jurisdiction of the federal court.

As set forth below, this lawsuit is a transparent attempt by Technip Italy to nullify its agreement to the exclusive forum clause in the Agreements and to further interfere with HOVENSA's contractual rights.    Because the Court lacks both personal and subject matter jurisdiction over the dispute, and because the dispute is already pending before the United States District Court for the Southern District of New York, the lawsuit must be dismissed.

### III. ARGUMENT AND AUTHORITIES

There are at least three independent grounds warranting dismissal of this suit: (1) the lack of personal jurisdiction over HOVENSA, CPLR 3211(a)(8); (2) the lack of subject matter jurisdiction over the dispute as a result of the exclusive forum selection clause, CPLR 3211(a)(2); and (3) the previously filed suit between HOVENSA and Technip Italy currently pending in the United States District Court for the Southern District of New York, CPLR 3211(a)(4).  In the alternative, HOVENSA respectfully requests that the Court stay proceedings in this suit until conclusion of the suit pending in federal court. *See* CPLR 3211(a)(4); CPLR § 2201.

### A.    The Court lacks personal jurisdiction over HOVENSA.

As the party asserting jurisdiction, Technip Italy bears the burden of proving the existence of personal jurisdiction over nonresident HOVENSA.  *See Brinkmann v. Adrian Carriers, Inc.*, 815 N.Y.S.2d 196, 198 (2d Dep't 2006); *Preferred Elec. & Wire Corp. v. Duracraft Prods., Inc.*, 494 N.Y.S.2d 131, 132 (2d Dep't 1985).  To satisfy this burden, Technip Italy proffers two equally insupportable grounds: (1) a conclusory, and demonstrably false, contention that HOVENSA is "doing business" in New York for purposes of CPLR § 301, and (2) an unprecedented and unconstitutional application of CPLR § 303 to subject HOVENSA to

7

jurisdiction based on its filing of the federal court lawsuit as required by the exclusive forum selection clause in the Agreements.[4]

1. **HOVENSA does not do business in New York.**

Technip Italy first contends that general personal jurisdiction over HOVENSA exists, pursuant to CPLR § 301, because "Hovensa does business in New York on [sic] regular basis." (Compl. ¶ 10.) When jurisdiction in New York is premised upon Section 301, the plaintiff must show that the defendant "has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33-34, 563 N.Y.S.2d 739, 741 (1990) (explaining further that "[t]he court must be able to say from the facts that the corporation is 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity'"). In other words, Section 301's "essential factual inquiry is whether the defendant has a permanent and continuous presence in the state, as opposed to merely occasional or casual contact with the state." *Holness v. Maritime Overseas Corp.*, 676 N.Y.S.2d 540, 543 (1st Dep't 1998).

Technip's complaint is devoid of factual allegations suggesting that HOVENSA conducts any business in New York, much less allegations showing a "continuous and systematic course" of business in the State. *Landoil Res. Corp.*, 77 N.Y.2d at 33-34. As acknowledged by Technip, HOVENSA is a limited liability company organized under the laws of the U.S.V.I. with its principal place of business in St. Croix, U.S.V.I. (Compl. ¶ 9.) The two members of HOVENSA are also U.S.V.I. corporations with their principal place of business in St. Croix. Moreover, the refinery owned and operated by HOVENSA is located in St. Croix.

---

[4]     Technip does not assert, nor could it credibly do so, that the Court has specific jurisdiction over HOVENSA under New York's long-arm statute, CPLR § 302.

8

HOVENSA has no physical presence in the State of New York: no offices, employees, real estate, telephone listing, mailing address, etc. (*See* Affidavit of Michael J. Fennessy ¶¶ 7-9, attached hereto as Ex. 1.) Equally unsurprising, HOVENSA does not conduct business operations within New York or solicit customers in New York, nor does it maintain any agents within the State to do so. (*Id.* ¶ 6.) Simply put, HOVENSA is a Virgin Islands entity with no "permanent and continuous presence in [New York]." *Holness*, 676 N.Y.S.2d at 543.

Consequently, there is no basis for the assertion of general jurisdiction over HOVENSA under CPLR § 301. Technip's suit should be dismissed. *See* CPLR 3211(a)(8).

### 2.    HOVENSA has not invoked the jurisdiction of the courts of the State of New York and, thus, CPLR § 303 does not apply.

Technip alternatively contends that HOVENSA has become subject to the jurisdiction of the state courts of New York pursuant to CPLR § 303. Under Section 303, a plaintiff who files suit in the State of New York is subject to the personal jurisdiction of the Supreme Court of New York, and designates his attorney-of-record as agent for service of process, in any separate action brought against the plaintiff by another party from the initial suit, provided that "such separate action would been permitted as a counterclaim had the action been brought in the supreme court." CPLR § 303.

This provision was enacted under the principle of *Adam v. Saenger*, 303 U.S. 59 (1938), in which the Supreme Court held that a state court may constitutionally exercise personal jurisdiction in a cross-action against a nonresident plaintiff who had filed the initial action in state court. *See id.* at 67-68. The Supreme Court explained the basis for its unremarkable holding as follows: "There is nothing in the Fourteenth Amendment to prevent a state from adopting a procedure by which a judgment in personam may be rendered in a cross-action against a plaintiff in its courts . . . It is the price which the state may exact as the condition of

opening *its* courts to the plaintiff." *Id.* (emphasis added). Simply put, a plaintiff who invokes the authority of a state court to award it relief cannot simultaneously deprive that court of jurisdiction over related claims asserted by the defendant.

The rationale underlying the decision in *Adam v. Saenger* and the subsequent enactment of CPLR §303 does not apply, however, when the party against whom jurisdiction is asserted did not invoke the jurisdiction of the state courts, i.e., when the initial action is filed in a United States District Court. Accordingly, the only New York court to address the potential application of Section 303 when the initial action is filed in federal court actions concluded that the New York Legislature did *not* intend to include federal court actions with the scope of the statute. *See Rockwood Nat'l Corp. v. Peat, Marwick, Mitchell & Co.*, 406 N.Y.S.2d 106, 107 (2d Dep't 1978). In doing so, the Appellate Division explicitly held that CPLR § 303 "is inapplicable where the pending action is commenced in Federal court." *Id.* Notably, in the 30 years since the Appellate Division expressed this view of Section 303, the New York Legislature has not amended the statute to modify or supersede that holding. *Cf. Engle v. Talarico*, 33 N.Y.2d 237, 242, 351 N.Y.S.2d 677, 680-81 (N.Y. 1973) (reasoning that the Legislature's failure to redefine a statutory term in light of a state agency's opinion letter interpreting of term constitutes evidence that the agency's interpretation correctly implemented legislative intent).[5]

---

[5]    Similarly, no New York court has reached a contrary holding, although one federal district court has questioned in *dicta* the scope of the holding. Unlike the situation presented here, the facts of that case involved an attempt to apply Section 303 to a defendant in a *federal* court suit based on its involvement in another federal court suit. *See Evergreen Sys., Inc. v. Geotech Lizenz AG*, 697 F. Supp. 1254 (E.D.N.Y. 1988). Acknowledging the Appellate Division's broad statement of its holding in *Rockwood Nat'l Corp.*, the district court construed that holding narrowly to situations in which the nonresident defendant was also a defendant in the initial federal court suit. *See id.* at 1256 (concluding, as a result, that it could find "no absolute bar to the application of Section 303 in a federal forum"); *see also Coutts Bank Ltd. v. Anatian*, 713 N.Y.S.2d 45, 48 (1st Dep't 2000) (concurring opinion). Regardless of this *dictum*, the district court concluded that Section 303 was otherwise inapplicable to the facts of that case and, notably, commented that even if it had been applicable, "the exercise of jurisdiction in this case would raise serious constitutional questions." *See id.* at 1257.

10

Furthermore, even if it were somehow proper to expand Section 303 to apply to the facts of this case, the exercise of jurisdiction over HOVENSA nonetheless would be unconstitutionally improper under "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 113 (1987) (explaining that the Due Process Clause requires that the exercise of jurisdiction be reasonable, which necessitates the consideration of various equitable and policy factors, including the burden on the defendant and the interest of the forum state). As set forth above, HOVENSA is not subject to the general jurisdiction of New York courts, and HOVENSA has not invoked the power of the state courts in New York to resolve the present dispute. In fact, if HOVENSA *had* filed suit in this Court, or in the courts of the U.S.V.I, or any other forum besides the agreed-upon federal forum, Technip Italy could have had the suit dismissed based on the parties' exclusive forum selection clause.

Technip Italy, however, now asks the Court to permit it to proceed against HOVENSA in this Court, arguing that HOVENSA's reliance upon the parties' explicit agreement to file any legal action in a *federal* court located in New York has created jurisdiction over HOVENSA in this Court where it otherwise would not exist. Not only does Technip's argument result in rewarding the type of gamesmanship and *post hoc* forum shopping Technip has exhibited to date, it imposes an arbitrary and unfair restraint on the right of a nonresident such as HOVENSA to access the federal courts. Moreover, while no policy of New York would be offended by the dismissal of this lawsuit between Italian and Virgin Island entities, the exercise of jurisdiction would contravene the strong public policy of New York in favor of the strictly enforcing forum selection clauses in business contracts, particularly in international transactions. *See infra* Part III.B.

11

Thus, even if Section 303 were accorded an unprecedented interpretation to apply to actions filed in federal court, the Court should nevertheless decline to exercise personal jurisdiction over HOVENSA as unfair and unreasonable under the Due Process Clause. *See Met. Life Ins. Co. v. Robertson-CECO Corp.,* 84 F.3d 560, 575 (2d Cir. 1996) (holding that, even though the requisite "minimum contacts" existed between the defendant and the forum, the exercise of personal jurisdiction "would be decidedly unreasonable" under the Due Process Clause); *cf. Evergreen Sys.. Inc.,* 697 F. Supp. at 1257 ("As a final matter the Court notes that even if the requirements of Section 303 were met, the exercise of jurisdiction in this case would raise serious constitutional questions."); *Rockwood Nat'l Corp.,* 406 N.Y.S.2d at 107 (noting, but not addressing, the potential for constitutional problems if Section 303 were read to apply to an action filed in federal court).[6]

**B.    This suit should be dismissed pursuant to CPLR 3211(a)(2) for lack of subject matter jurisdiction.**

The Agreements on which the claims in this suit are based designate the United States District Court for the Southern District of New York as the exclusive forum for litigating any dispute. (*See* E&P Agreement § 24.2 and Construction Agreement § 27.2 ("Any . . . litigation must be brought exclusively in the U.S. District Court, Southern District of New York, United States of America and the parties hereby submit to the jurisdiction of such courts and waive any objection to venue or jurisdiction in such courts.  The dispute resolution procedures set forth in this Section will be the sole and exclusive dispute resolution procedures available to

---

[6]    Erroneously relying upon the service provision in CPLR § 303, Technip attempted to serve HOVENSA's counsel with the complaint in this suit on April 18, 2008.  HOVENSA's counsel properly declined to accept service.  Subsequently, Technip again improperly attempted to effect service by mailing a copy of the complaint to HOVENSA's counsel who, in turn, returned the complaint to Technip's counsel, explaining that CPLR § 303 was not applicable.  Finally, tacitly acknowledging the inapplicability of Section 303, Technip properly served HOVENSA with process in St. Croix on May 6, 2008.

the Parties under this Agreement.")) There is no dispute about the validity of the parties' agreement on the forum selection, nor is there any doubt that the claims asserted in this suit squarely fall within the scope of the forum selection clause. Indeed, *after* the contractual disputes arose in this case, Technip Italy acknowledged in its Italian proceeding to enjoin payment of the LOCs that the proper forum for resolution of the underlying contractual disputes with HOVENSA was the "US District Court, Southern District of New York." (Ex. 4 at 19.)

New York law is clear: the existence of an exclusive forum selection clause divests this Court of subject matter jurisdiction. *See Boss v. Am. Express Fin. Advisors, Inc.*, 6 N.Y.3d 232, 247, 811 N.Y.S.2d 620, 622-23 (2006) (affirming dismissal based on mandatory clause selecting Minnesota courts as exclusive forum to resolve any controversy); *LSPA Enterprise, Inc. v. Jani-King of N.Y., Inc.*, 817 N.Y.S.2d 657, 658-59 (2d Dep't 2006) (affirming dismissal for lack of subject matter jurisdiction based on exclusive forum selection clause in franchise agreement); *Fleet Capital Leasing/Global Vendor Fin. v. Angiuli Motors, Inc.*, 790 N.Y.S.2d 684, 685-86 (2d Dep't 2005) (reversing denial of motion to dismiss and holding that exclusive forum selection clause in contract required dismissal for lack of subject matter jurisdiction).[7] Equally clear is the public policy of both New York and the United States favoring strict enforcement of freely negotiated forum selection clauses in international business contracts, which provide "'certainty and predictability in the resolution of disputes.'" *Hur v. Carvel Corp.*, 2001 WL 1568413 (N.Y. Sup. Ct. Sept. 4, 2001) (quoting *Brooke Group Ltd. v.*

---

[7]    *See also Dogmoch Int'l Corp. v. Dresdner Bank AG*, 757 N.Y.S.2d 557, 558 (1st Dep't 2003) (holding that trial court properly dismissed complaint pursuant to forum selection clause in bank deposit agreements); *British W. Indies Guar. Trust Co. v. Banque Internationale Luxembourg*, 567 N.Y.S.2d 731, 732 (1st Dep't 1991) (affirming dismissal of complaint based on contractual provision designating Luxembourg as exclusive forum); *Gio, Buton & C., S.p.A v. Mediterranean Importing Co.*, 510 N.Y.S.2d 171, 638 (2d Dep't 1986) (affirming dismissal of lawsuit based on clause in agreements that the only competent court to adjudicate any controversy arising under the agreements was the Court of Bologna, Italy).

13

*JCH Syndicate 488*, 87 N.Y.2d 530, 534, 640 N.Y.S.2d 479, 482 (1996)); *see also Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, No. 118057/05, 2006 WL 3393259, at *5 (N.Y. Sup. Ct. Nov. 24, 2006) (stating that "'[i]t is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation'"); *accord Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) ("[T]he [Supreme] Court has noted that contracts entered into freely generally should be enforced because the financial effect of forum selection and choice of law clauses likely will be reflected in the value of the contract as a whole.") (citation and internal marks omitted).

When Technip Italy filed this lawsuit, it did not inform the Court of the exclusive forum selection clause in the Agreements. (*See generally* Complaint.)  Instead, Technip Italy chose a strategy of using the U.S.V.I. incorporation of TPVI—Technip Italy's last minute, short-term creation with no apparent assets, business activities, or even employees distinct from those of Technip Italy—to attempt to nullify the exclusive forum selection clause of the Agreements based on the lack of diversity between HOVENSA and TPVI.   In addition to filing the present suit, Technip Italy has moved to dismiss the federal court action on the ground that TPVI is an indispensable party to the litigation.

The undisputed facts in this case, however, demonstrate that TPVI merely acted as an agent in the U.S.V.I. for Technip Italy, the real party in interest that negotiated the Agreements, created and managed the entire project schedule, and controlled all aspects of project execution.  For example, as construction costs continued to escalate, Technip Italy shifted $7 million from the price allocated to its E&P Agreement to the price it had allocated to the Construction Agreement.  What is more, in the Italian proceeding, Technip Italy itself dismissed the significance of TPVI to the dispute over the LOCs, urging that court to apply Italian legal

14

principles to enjoin payment of the LOCs as they "have both been issued in Italy upon request of the ordering party, *that in both cases is the same company, Technip Italy* – incorporated under the laws of Italy." (Ex. 4 at 15 (emphasis added); *see also id.* at 3 (representing that Technip Italy, not TPVI, assumed the contractual obligation to reimburse the bank for any payments it might make on the LOCs).)[8]

Consequently, the inability to include TPVI, a nominal party to the Construction Agreement, in a federal court suit does not prevent the parties from litigating the issues presented in this case. *See, e.g., Teevee Toons, Inc. v. Gerhard Schubert GmbH*, 2002 WL 498627, at *5 (S.D.N.Y. Mar. 29, 2002) (concluding that complete relief could be afforded the parties even though the alleged corporate agent and nominal party to the underlying contract was not included in lawsuit, when no independent wrongdoing was alleged on part of the agent); *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 413-415 (S.D.N.Y. 1996) (same). Moreover, Technip Italy's complaint that TPVI cannot be made a party to the federal court action is one of its own making, having unilaterally created a nondiverse entity at the last minute to sign the Construction Agreement on its behalf. Technip Italy should not be able to agree upon an exclusive forum as part of a $127 million contract, then use another entity to sign one of the agreements to void the exclusive forum selection clause to which it just agreed. The exclusive forum selection clause should be enforced in full and this lawsuit dismissed in its entirety for lack of subject matter jurisdiction. [9]

In the event, however, that the Court is unwilling to dismiss the claims asserted on behalf of TPVI, dismissal of Technip Italy is still required. Technip Italy agreed to an exclusive

---

[8]    Contradicting its representations to the Italian court, Technip Italy now alleges in this Court that TPVI "posted" the $6 million LOC corresponding to the Construction Agreement. (*See* Compl. ¶¶ 4, 17.)

15

provision requiring it to litigate in federal court.  Technip Italy is amenable to federal court jurisdiction, and it can have its day in court there.  The exclusive forum selection clause is mandatory.  *Hur*, 2001 WL 1568413  (holding that forum selection clauses at issue were "clear in their scope and import" and that such clear language was "mandatory in its application") Accordingly, even if TPVI's purported claims are not dismissed for lack of subject matter jurisdiction, Technip Italy's claims must be.  In that event, as discussed below, TPVI's claims should be dismissed or stayed under CPLR 3211(a)(4).

**C.    Technip's suit should be dismissed or, in the alternative, stayed, in favor of the previously filed action pending in federal court.**

Finally, HOVENSA moves for dismissal under CPLR 3211(a)(4).  That section provides for dismissal of an action when "there is another action pending between the same parties for the same cause of action in a court of any state or the United States."  CPLR 3211(a)(4).  Case law under CPLR 3211(a)(4) gives the Court broad discretion to dismiss the current action in favor of the federal court action, which was filed by HOVENSA over two months before Technip Italy filed the present suit.  *See, e.g.*, *Simonetti v. Larson*, 845 N.Y.S.2d 369, 370 (2d Dep't 2007) (noting court's broad discretion as to the disposition of an action when another action is pending).

Both the present action and the federal court action involve substantially the same cause of action, as required by CPLR 3211(a)(4).  "It is not necessary that the precise legal theories presented in the first proceeding also be presented in the second proceeding," but only "that 'both suits arise out of the same subject matter or series of alleged wrongs.'"  *Simonetti*, 845 N.Y.S.2d at 371.  HOVENSA's federal court suit and Technip's state court suit both arise

---

9      Indeed, the fact that TPVI could not be brought into the exclusive forum chosen after extensive negotiations by sophisticated corporate parties indicates that neither Technip Italy nor HOVENSA considered TPVI as a  necessary or real party to any contractual dispute.

out of, and involve alleged breaches of, the Agreements.  The essential subject of each action is which party, HOVENSA or Technip Italy, failed to perform under those agreements.  Although the claims for damages for delays allegedly caused by HOVENSA—claims that are foreclosed by the parties' March 2006 Settlement Agreement—and the claims for the allegedly wrongful draw on the LOCs are not currently asserted in the federal court action HOVENSA does not object to them being asserted in that action as counterclaims.[10]  *See Goodridge v. Fernandez*, 505 N.Y.S.2d 144, 146 (1st Dep't 1986) (holding that although federal action did not involve claim on guaranty that was asserted in state action, federal action could be amended to assert that claim).  Thus, because the claims asserted in both suits arise out of the same subject matter, the requirement of substantial similarity of the causes of action is met.

In addition, both the present action and the federal action involve substantially the same parties.  The parties do not have to be identical, but only substantially the same.  *See Koren-DiResta Constr. Co. v. Albert B. Ashforth Inc.*, 474 N.Y.S.2d 30, 31 (1st Dep't 1984) ("Substantial, not complete, identity of parties is all that is required to invoke CPLR 3211." (citation and internal marks omitted).)  The presence of additional parties in the second suit does not defeat a motion pursuant to CPLR 3211(a)(4), as long as both suits arise out of the same subject matter or series of wrongs.  *See White Light Prods., Inc. v. On The Scene Prods., Inc.*, 660 N.Y.S.2d 568, 571 (1st Dep't 1997); *Koren-DiResta Constr. Co.*, 474 N.Y.S.2d at 31.  HOVENSA and Technip Italy are parties to both suits.  While TPVI is a party only to the present suit,[11] any claims involving TPVI not only arise out of the same subject matter as the remaining

---

[10]    Although some of the claims are asserted by TPVI in the present lawsuit, as previously discussed, Technip Italy, which negotiated the contract and carried out the project, is the real party in interest to both Agreements.  Accordingly, HOVENSA does not object to Technip Italy asserting those claims in federal court.

[11]    Technip S.A. currently is a party only to the federal court suit.

17

claims, but also are actually at issue in the federal court suit. This is because HOVENSA has alleged, as supported by the undisputed facts surrounding the negotiation and execution of the Agreements, that TPVI was created to serve as Technip Italy's agent in the transaction. Accordingly, substantial similarity of parties exists under CPLR 3211(a)(4), and the current lawsuit should be dismissed in favor of the federal court lawsuit, which was filed over two months prior to this one and is pending in the forum specifically selected by the parties.

Alternatively, in the event that the Court does not agree that the case should be dismissed, it should at least issue a stay. CPLR 3211(a)(4) provides that "the court need not dismiss upon this ground but may make such order as justice requires." CPLR 3211(a)(4). New York courts have interpreted this provision to allow a court to issue a stay. *Safecard Servs., Inc. v. Am. Express Travel Related Servs. Co.*, 610 N.Y.S.2d 23, 23 (1st Dep't 1994). Moreover, the Court has broad power to issue a stay under CPLR 2201 "upon such terms as may be just." CPLR 2201. New York courts, for example, have held that a stay is appropriate simply because some of the issues that may be decided in the prior action may "overlap" or otherwise affect the issues to be decided in the subsequent action. *See Buzzell v. Mills*, 301 N.Y.S.2d 645, 645-46 (1st Dept. 1969) (discussing the "well-settled rule that a subsequent action may be stayed pending the trial of a prior action between the same parties where there are overlapping issues and the determination of the prior action may dispose of or limit issues which are involved in the subsequent action"); *Goldstein v. Goldstein*, 178 N.Y.S.2d 555, 558 (Sup. Ct. 1958) (stating that stay is appropriate even if issues and parties are not identical; granting stay of personal injury action pending resolution of action filed by insurer regarding its duty to defend, even though insurer was not party to personal injury action and determination of issues in duty-to-defend action would not require dismissal of personal injury action, but only affect whether insurer was

18

real party in interest to that action); *see also El Greco Inc. v. Cohn*, 527 N.Y.S.2d 256, 257 (2d

Dept't1988) (holding that Supreme Court properly granted stay when, *inter alia*, the issues to be

resolved "overlap[ped]").

Here, resolution of the pending federal court action may well dispose of any need

for further litigation between the parties. Moreover, there is no practical prejudice to any party

by requiring the parties to litigate their dispute first—and likely conclusively—in the parties'

agreed-upon forum. Thus, even if the Court believes that dismissal is not warranted, a stay is

appropriate pending resolution of the federal court action. *See, e.g., Goodridge*, 505 N.Y.S.2d at

147 (holding that stay avoided, among other things, "unnecessary risk of inconsistent

adjudications as to the defenses asserted by [two of the parties] in the federal and state actions").

#### IV. CONCLUSION

For all of the foregoing reasons, Defendant HOVENSA respectfully requests that

the Court dismiss Plaintiffs' Complaint with prejudice pursuant to CPLR 3211(a)(8) and (a)(2),

and without prejudice pursuant to CPLR (a)(4). Alternatively, HOVENSA respectfully requests

that the Court stay proceedings in the present suit until conclusion of the action between

Defendant HOVENSA and Plaintiff Technip Italy pending in the United States District Court for

the Southern District of New York, Case No. 08-CV-12211. HOVENSA respectfully requests

such other and further relief as this Court deems appropriate.

Dated:    New York, New York    Respectfully submitted,

June 5, 2008

By: _____

Gabriel Del Virginia

LAW OFFICES OF GABRIEL DEL VIRGINIA

641 Lexington Avenue, 21st Floor

New York, NY 10022

19

Telephone: (212) 371-5478
Facsimile (212) 371-0460

ATTORNEYS FOR DEFENDANT
HOVENSA L.L.C.

OF COUNSEL:

George T. Shipley
Texas Bar No. 18267100
Federal I.D. No. 2118
Jonathan B. Smith
Texas Bar No. 24013528
SHIPLEY SNELL MONTGOMERY LLP
4600 First City Tower
1001 Fannin
Houston, TX 77002
Telephone:  (713) 652-5920
Facsimile:   (713) 652-3057

To:    Christopher Paparella
       John Fellas
       Hagit Elul
       HUGHES HUBBARD & REED LLP
       One Battery Park Plaza
       New York, NY 10004-1482
       (212) 837-6000

       *Attorneys for Plaintiffs*
       *Technip Italy S.p.A. and TPVI, Ltd.*

20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |  |
|---|---|---|
| TPVI LTD. and | § § | |
| TECHNIP ITALY S.P.A., | § | Index No. 601158/08 |
| Plaintiffs, | § § | |
| -against- | § § | **AFFIDAVIT** |
| HOVENSA L.L.C., | § § | |
| Defendant. | § | |

### AFFIDAVIT OF GABRIEL DEL VIRGINIA IN SUPPORT OF HOVENSA L.L.C.'S MOTION TO DISMISS PURSUANT TO RULE 3211(a)

Gabriel Del Virginia, being duly sworn, deposes and says:

1.     I am attorney of record for Defendant HOVENSA L.L.C.

2.     I submit this Affidavit in support of HOVENSA L.L.C.'s Motion to Dismiss Pursuant to Rule 3211(a).

3.     Attached as Exhibit 2 to the Memorandum of Law in Support of HOVENSA L.L.C.'s Motion to Dismiss Pursuant to Rule 3211(a) (hereafter "HOVENSA's Memorandum") are true and correct copies of selected slides from a PowerPoint presentation entitled "Low Sulfur Gasoline Project US VI — Saint Croix" provided to representatives of HOVENSA.

4.     Attached as Exhibit 3 to HOVENSA's Memorandum are true and correct copies of selected pages from Technip's "Annual and Sustainable Development Report 2005," which is available on Technip's website, www.technip.com.

5.     Attached as Exhibit 4 to HOVENSA's Memorandum is a true and correct copy of a Petition Pursuant to Article 700 of the Italian Civil Procedure Code in the Civil Court of Rome that Technip Italy served on HOVENSA.

6.    Attached as Exhibit 5 to HOVENSA's Memorandum is a certified English translation of the decision dated July 2, 2007 and rendered by the Civil Court of Rome, Judge Ms. Paola Agresti, on the Petition Pursuant to Article 700 of the Italian Civil Procedure Code filed by Technip Italy.

7.    Attached as Exhibit 6 to HOVENSA's Memorandum are true and correct copies of the following papers filed in the action pending in the United States District Court for the Southern District of New York:

6.1.    Original Complaint filed by HOVENSA

6.2.    Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint for Failure to Join an Indispensable Party, Failure to State a Claim and Lack of Personal Jurisdiction filed by Technip Italy and Technip S.A.

6.3.    Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint for Failure to Join an Indispensable Party, Failure to State a Claim and Lack of Personal Jurisdiction filed by HOVENSA

6.4.    First Amended Complaint filed by HOVENSA

6.5    Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's First Amended Complaint for Failure to Join an Indispensable Party, Failure to State a Claim and Lack of Personal Jurisdiction filed by Technip Italy and Technip S.A.

Gabriel Del Virginia

Sworn to before me this
12TH day of June, 2008

Notary Public

**STEVEN IRA SUPER**
**Notary Public, State of New York**
No. 02SU6008737
Qualified in New York County
Commission Expires June 15, 20 16

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |  |
|---|---|---|
| TPVI LTD. and | § § § | |
| TECHNIP ITALY S.P.A., | § | Index No. 601158/08 |
| Plaintiffs, | § § | |
| -against- | § § | **AFFIDAVIT** |
| HOVENSA L.L.C., | § § | |
| Defendant. | § | |

**AFFIDAVIT OF <u>MICHAEL J. FENNESSY</u> IN SUPPORT OF HOVENSA L.L.C.'S MOTION TO DISMISS PURSUANT TO RULE 3211(a)**

**Michael J. Fennessy**, being duly sworn, deposes and says:

1.     My name is Michael J. Fennessy.  I am over twenty-one years old, and I am fully competent to make this declaration.  The facts set forth in this declaration are based on my personal knowledge, and these facts are true and correct.

2.     I am the Vice President & Chief Financial Officer of Defendant HOVENSA L.L.C. ("HOVENSA").

3.     HOVENSA is a United States Virgin Islands ("U.S.V.I.") limited liability company with its principal place of business in Christiansted, St. Croix, U.S.V.I.

4.     HOVENSA consists of two members: Hess Oil Virgin Islands Corp. ("HOVIC") and PDVSA, V.I., Inc. ("PDVSA").  HOVIC is a U.S.V.I. corporation with its principal place of business in the U.S.V.I.   PDVSA is also a U.S.V.I. corporation with its principal place of business in the U.S.V.I.

5.    HOVENSA owns and operates an oil refinery in St. Croix, U.S.V.I.

6.    HOVENSA does not have a registered agent for service of process in the State of New York (hereafter "New York"). HOVENSA does not conduct business operations or solicit customers in New York, nor does it maintain any agents within the State by which to do so.

7.    HOVENSA does not have any offices or employees in New York.

8.    HOVENSA does not own or lease any real property or other assets located within New York.

9.    HOVENSA does not have a telephone listing or mailing address in New York.

10.    The claims asserted in Plaintiffs' complaint relate to and arise from contracts for the engineering, procurement and construction of a Low Sulfur Gas Hydrotreater unit at HOVENSA's refinery in St. Croix, U.S.V.I.

11.    The contracts contain forum selection clause through the parties agreed to litigate any and all contractual disputes exclusively in the United States District Court for the Southern District of New York. A true and correct copy of the forum selection clauses are attached hereto as Exhibit A. The exclusive form selection clause further states as follows: "The dispute resolution procedures set forth in this Section will be the sole and exclusive dispute resolution procedures available to the Parties under this Agreement."

12.    Pursuant to this exclusive forum selection clause, HOVENSA filed suit on February 6, 2008 against Plaintiff Technip Italy S.p.A. in the United States District Court for the Southern District of New York (Case No. 08-CV-12211).

13.    The claims and issues raised in Plaintiff's complaint in this Court are largely duplicative of those present in the previously filed federal court action.

14.    HOVENSA has not consented, and does not consent, to litigating the dispute in the Supreme Court of the State of New York.  Plaintiffs' filing of the complaint in this suit violates the parties' explicit agreement to litigate any and all disputes in the United States District Court for the Southern District of New York.

[Name] Michael J. Fennessy
[Title] Vice President & CFO

Sworn to before me this
6th day of June, 2008

Patricia M. C. Moore
Notary Public N P-06005



# EXHIBIT R

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | | |
|---|---|---|
| HOVENSA L.L.C., | § § § | CIVIL ACTION NO. 08-CV-12211 |
| VS. | § § | |
| TECHNIP ITALY S.P.A. and | § | **DECLARATION OF** |
| TECHNIP S.A. | § § | **JONATHAN B. SMITH** |

Jonathan B. Smith declares under penalty of perjury as follows:

1.      I am an attorney at Shipley Snell Montgomery LLP and represent Plaintiff HOVENSA L.L.C. in an "of counsel" capacity in this action.

2.      I submit this Declaration in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to Join a Required Party, Failure to State a Claim and Lack of Personal Jurisdiction (hereafter "Plaintiff's Memorandum").

3.      Attached as Exhibit A to Plaintiff's Memorandum are true and correct copies of selected pages from Technip's "Annual and Sustainable Development Report 2005," which is available on Technip's website, www.technip.com.

4.      Attached as Exhibit B to Plaintiff's Memorandum are true and correct copies of selected pages from Technip's Form 20-F filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2006, which is available on Technip's website, www.technip.com.

5.      Attached as Exhibit C to Plaintiff's Memorandum are true and correct copies of the signed letters of intent dated February 10, 2005 concerning the HOVENSA Low Sulfur Gasoline Hydrotreater Project.

6.      Attached as Exhibit D to Plaintiff's Memorandum are slides from a PowerPoint Presentation entitled "HOVENSA LSG Project" provided to representatives of Plaintiff.

7.      Attached as Exhibit E to Plaintiff's Memorandum are true and correct copies of selected slides from a PowerPoint presentation entitled "Low Sulfur Gasoline Project US VI — Saint Croix" provided to representatives of Plaintiff.

8.      Attached as Exhibit I to Plaintiff's Memorandum is a true and correct copy of Appendix Q to the Construction Agreement.

9.      Attached as Exhibit G to Plaintiff's Memorandum is a true and correct copy of a printout of an e-mail dated January 21, 2005 and attachment from the e-mail account assigned to Al Karp.

10.      Attached as Exhibit H to Plaintiff's Memorandum is a true and correct copy of a printout of an e-mail dated January 24, 2005 from the e-mail account assigned to Al Karp.

11.      Attached as Exhibit K to Plaintiff's Memorandum is a true and correct copy of a Petition Pursuant to Article 700 of the Italian Civil Procedure Code in the Civil Court of Rome that Technip Italy served on Plaintiff.

12.      Attached as Exhibit L to Plaintiff's Memorandum is a certified English translation of the decision dated July 2, 2007 and rendered by the Civil Court of Rome,

Judge Ms. Paola Agresti, on the Petition Pursuant to Article 700 of the Italian Civil Procedure Code filed by Technip Italy.

13.     Attached as Exhibit P to Plaintiff's Memorandum is a true and correct copy of a PowerPoint Presentation entitled "Project Review Meeting" dated August 26, 2006, and provided to representatives of Plaintiff.

14.     Attached as Exhibit Q to Plaintiff's Memorandum is a true and correct copy of the Memorandum of Law in Support of HOVENSA L.L.C.'s Motion to Dismiss Pursuant to Rule 3211(a) filed in the case styled No. 601158/08, *TPVI Ltd. et al. v. HOVENSA L.L.C.*, In the Supreme Court of the State of New York, County of New York.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 1, 2008
      Houston, Texas

Jonathan B. Smith