SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CHRISTIE'S INC.,

                        Plaintiff,

         -against-

R. ESMERIAN INC. and RALPH ESMERIAN,

                   Defendants.

Index No. 600070/08
(Hon. Helen Freedman)

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

HUGHES HUBBARD & REED LLP
Michael E. Salzman
Daniel H. Weiner
Megan E. Canter
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Attorneys for Plaintiff

## TABLE OF CONTENTS

Page

Preliminary Statement .................................................................................................................1

Argument....................................................................................................................................1

I.      DEFENDANTS DO NOT CHALLENGE THE EXISTENCE OF
        CHRISTIE'S LOANS TO THEM OR THEIR DEFAULT ON THOSE
        LOANS.............................................................................................................................1

II.     DEFENDANTS' EXCUSES FOR THEIR DEFAULT ARE EITHER
        MISTAKEN OR IMMATERIAL, OR BOTH .................................................................2

        A.      Christie's Appraisal  Of Loan Collateral Is
                Irrelevant To Defendants' Liability On Christie's
                Loans....................................................................................................................2

        B.      The Need For Mathematical Calculation Of
                Defendants' Debt Does Not Defeat Defendants'
                Obligation To Repay Christie's Loans ...............................................................4

        C.      Defendants' Assertion That Sale Through Public
                Auction Is Not "Commercially Reasonable" Is
                Unsupported And Irrelevant To Their Liability On
                Christie's Loans ...................................................................................................5

        D.      Christie's Security Interest In The Collateral Is
                Irrelevant To This Motion....................................................................................7

        E.      The Specific Collateral In Christie's Possession Is
                Immaterial To Defendants' Obligation To Repay
                Their Debt.............................................................................................................8

        F.      Christie's Did Not Breach A Duty Of Good Faith
                And Fair Dealing...................................................................................................9

III.    DEFENDANTS ARE NOT ENTITLED TO ADDITIONAL DISCOVERY .........................12

IV.     CHRISTIE'S ATTACHES THE COMPLAINT TO ITS PAPERS...........................................14

Conclusion...................................................................................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson Clayton & Co. v. Alanthus Corp.*, 91 A.D.2d 985, 457 N.Y.S.2d 578 (2d
  Dep't 1983) ...................................................................................................4

*Bailey v. N.Y. City Transit Auth.*, 270 A.D.2d 156, 704 N.Y.S.2d 582 (1st Dep't 2000) ......................14

*Bank Leumi Trust Co. v. Sibthorp*, 116 A.D.2d 451, 496 N.Y.S.2d 439 (1st Dep't),
  *order recalled and resettled*, 118 A.D.2d 429, 506 N.Y.S.2d 557 (1st Dep't 1986),
  *aff'd*, 161 A.D.2d 325, 555 N.Y.S.2d 90 (1st Dep't 1990) ...................................13

*Bank of China v. Chan*, 937 F.2d 780 (2d Cir. 1991) ...........................................10

*Christie's Inc. v. Davis*, 247 F. Supp. 2d 414 (S.D.N.Y. 2002) ................................4

*Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*, 192 A.D.2d 1066, 596 N.Y.S.2d
  230 (4th Dep't 1993) .......................................................................................9

*Coan v. Estate of Chapin*, 156 A.D.2d 318, 549 N.Y.S.2d 16 (1st Dep't 1989).....................10

*Cmty. Capital Bank v. 'Til the Phat Lady Sings LLC*, 6 Misc. 3d 1009(A), 800 N.Y.S.2d
  344 (Sup. Ct. Kings Cty. 2005) .....................................................................4, 7

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 663 N.E.2d 289, 639 N.Y.S.2d 977
  (1995)...........................................................................................................10

*Delaney v. Good Samaritan Hosp.*, 204 A.D.2d 678, 612 N.Y.S.2d 433 (2d Dep't 1994) ......................13

*Desco Vitro Glaze of Schenectady, Inc. v. Mech. Constr. Corp.*, 159 A.D.2d 760, 552
  N.Y.S.2d 185 (3d Dep't 1990) ..........................................................................12

*Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 761 N.Y.S.2d 22 (1st
  Dep't 2003) ....................................................................................................9

*Fundex Capital v. Reichard*, 172 A.D.2d 420, 568 N.Y.S.2d 794 (1st Dep't 1991) ................8

*Gettinger Assocs. v. One Move Upward, Inc.*, No. 115645/06, 19 Misc.3d 1118(A),
  2008 WL 1724010 (Sup. Ct. N.Y. Cty. Apr. 2, 2008) ...................................... 12-13

*Gilson v. Met. Opera*, 15 A.D.3d 55, 788 N.Y.S.2d 342 (1st Dep't 2005) ......................2

*Grad v. Roberts*, 14 N.Y.2d 70, 198 N.E.2d 26, 248 N.Y.S.2d 633 (1964).............................10

*Just-Irv Sales, Inc. v. Air-Tite Bus. Ctr., LLC*, 237 A.D.2d 793, 655 N.Y.S.2d 131 (3d
  Dep't 1997) ...................................................................................................10

# TABLE OF AUTHORITIES

Page

*Justus Recycling Corp. v. A.F.C. Enters.*, 290 A.D.2d 279, 736 N.Y.S.2d 339 (1st Dep't 2002) ...................................................................................................................2

*Livolsi v. Batterson*, 164 A.D.2d 970, 559 N.Y.S.2d 416 (4th Dep't 1990).............................13

*Merrill Lynch Mortgage Capital v. Ralph Esmerian, et al.*, Index No. 600012/08 (Sup. Ct. N.Y. Cty. 2008)........................................................................................................3

*Nat'l Union Fire Ins. Co. v. Xerox Corp.*, 25 A.D.3d 309, 807 N.Y.S.2d 344 (1st Dep't 2006) ...................................................................................................................9

*O'Neill v. Warburg Pincus & Co.*, Index No. 116009/2003, 2005 N.Y. Misc. LEXIS 3608 (Sup. Ct. N.Y. Cty. Feb. 14, 2005) .....................................................................9, 11

*Pav-Co. Asphalt, Inc. v. Heartland Rental Props. P'ship*, 278 A.D.2d 395, 718 N.Y.S.2d 634 (2d Dep't 2000).........................................................................................4

*Serviss v. Hirsh*, 243 A.D. 782, 277 N.Y.S. 720 (2d Dep't 1935) ...........................................4

*Tepedino v. City of Long Beach*, 226 A.D.2d 446, 640 N.Y.S.2d 591 (2d Dep't 1996) ..........10

*Tiger Sec. Group, Inc. v. State*, 17 Misc. 3d 1129A, 851 N.Y.S.2d 74 (N.Y. Ct. Cl. 2007) ...................................................................................................................4

*Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 (1972) .......................................................................10

*Wilmington Trust Co. v. Strauss*, 13 Misc.3d 1231(A), 831 N.Y.S.2d 357 (Sup. Ct. N.Y. Cty. 2006)..................................................................................................11, 12

*Zuckerman v. City of New York*, 49 N.Y.2d 557, 404 N.E.2d 718, 427 N.Y.S.2d 595 (1980) ...................................................................................................................2

## STATUTES AND TREATISES

David D. Siegel, New York Practice § 237 (4th ed. 2005) ......................................................15

UCC § 9-203 (West 2008) ......................................................................................................8

UCC § 9-322 (West 2008) ......................................................................................................8

UCC § 9-601 (West 2008) ......................................................................................................7

### Preliminary Statement

Defendants nowhere contest the fact that they borrowed millions of dollars from Christie's, nor that they have defaulted on their obligation to repay those loans. Instead, desperately seeking any port in a storm, they let sail a raft of supposed excuses that are either wrong on their face or entirely immaterial to the only issue at hand on this motion — Christie's entitlement to a money judgment in the amount of the unpaid balance of defendants' loan.

The Court should reject defendants' attempts to disavow liability for their debt and grant Christie's motion for partial summary judgment.

### Argument

## I.    DEFENDANTS DO NOT CHALLENGE THE EXISTENCE OF CHRISTIE'S LOANS TO THEM OR THEIR DEFAULT ON THOSE LOANS.

Defendants do not challenge the existence of Christie's loans to REI, REI's failure to repay those loans when due, or Esmerian's failure to honor his guarantee to repay that debt. Nor can they — Esmerian himself acknowledges the existence of a "loan relationship . . . [whereby] Christie's would provide REI with money to purchase jewelry at auction from Christie's and for other purposes" (Esmerian Aff. ¶ 4),[1] and concedes the fact of "the debt" owed by defendants to Christie's. (*Id.* ¶ 2.) In fact, defendants admit that they owe "approximately $7 million" to Christie's. (*Id.* ¶ 17; *see id.* ¶ 25 ("the loan is now less than $7 million").)[2]

---

1.   References to "Esmerian Aff." are to Esmerian's affidavit in opposition to Christie's motion for partial summary judgment, sworn to July 1, 2008, previously submitted to the Court.

2.   When Christie's filed its motion last month, defendants owed $6,530,476.28 to Christie's. (Affidavit of Edward A. McGorry, sworn to June 2, 2008 ("McGorry Aff.") ¶ 22, previously submitted to the Court.) Not surprisingly, the exact amount defendants owe to Christie's changes as interest accumulates and proceeds from collateral sold by Christie's are received. The exact amount due and owing to Christie's can be determined by the Court or a Special Referee, on submission of a supplemental affidavit by Christie's at the Court's direction.

Christie's proof of defendants' loan obligation, and defendants' concession of their failure to honor that obligation, dooms defendants' attempt to avoid liability for their debt.

## II.    DEFENDANTS' EXCUSES FOR THEIR DEFAULT ARE EITHER MISTAKEN OR IMMATERIAL, OR BOTH.

New York courts have repeatedly held that a party "opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim . . . mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient." *Zuckerman v. City of New York*, 49 N.Y.2d 557, 562, 404 N.E.2d 718, 720, 427 N.Y.S.2d 595, 598 (1980). Moreover, immaterial or collateral issues of fact do not preclude the Court's grant of summary judgment. Rather, "issues of fact only preclude summary judgment *when they are material to deciding the matter.*" *Gilson v. Met. Opera,* 15 A.D.3d 55, 57, 788 N.Y.S.2d 342, 344 (1st Dep't 2005) (granting summary judgment on negligence claim despite the defendant's attempt to raise factual issues regarding staff's awareness of presence of infirm patron; emphasis added); *Justus Recycling Corp. v. A.F.C. Enters.,* 290 A.D.2d 279, 280, 736 N.Y.S.2d 339, 340 (1st Dep't 2002) (collateral factual issue "d[id] not undermine plaintiff's claim" for summary judgment).

Here, defendants proffer a laundry list of purported excuses for their default. As detailed below, each excuse is either mistaken or immaterial, or both.

### A.    Christie's Appraisal Of Loan Collateral Is Irrelevant To Defendants' Liability On Christie's Loans.

Defendants assert for the first time that Christie's breached the parties' loan agreements by "consistently fail[ing] to provide defendants with an annual appraisal" of the loan collateral. (Defs.' Opp. Br. 6.) Of course, defendants provide no evidence that they ever once asked Christie's for such an appraisal, or ever once complained that they had not received an appraisal from Christie's. That is not surprising, since defendants' reading of the parties'

2

loan agreements is mistaken: those agreements *nowhere* require Christie's to provide

defendants with appraisals of the loan collateral.[3]

      Yet even if Christie's *had* been required to provide appraisal values to defendants

— which it was not — that has no bearing whatever on defendants' liability to pay their debt.

Can defendants seriously argue that Esmerian — who has claimed in this action (*see* Defs.' Resp.

to Pl.'s Statement of Material Facts, dated July 1, 2008, ¶ 3) and in a $180 million foreclosure

action brought against him by Merrill Lynch[4] that he is one of the world's pre-eminent dealers

of jewelry and precious gems — did not know the market value of the items he pledged to

Christie's? And of what relevance does the value of individual items of collateral have to the

simple, undisputed fact that Christie's loaned money to defendants and they failed to repay

those loans?[5] Christie's alleged failure to provide appraisal values to defendants could at *most*

be considered an immaterial breach, which would not excuse defendants' failure to perform

---

3. Defendants inform the Court that this purported obligation is to be found in Section 8.2 of the 1998 Loan Agreement. (Defs.' Opp. Br. 5, 6.) Yet that provision, which requires Christie's to update its appraisal of loan collateral *if* REI enters into Christie's standard appraisal agreement (*see* § 7.2(q) of the 1998 Loan Agreement, McGorry Aff. Exh. A, at 13), contains no requirement that any appraisals be provided to defendants: "Subject to Article 7.2(q) above, Christie's covenants with [REI] that Christie's will cause Christie's Appraisals to update on an annual basis, or more frequently, if required by the terms hereof, its fair market value appraisal of the Pledged Property, and Christie's will advise [REI] on matters of condition and conservation thereof." (McGorry Aff. Exh. A § 8.2, at 13.) Christie's obligation to advise REI on "matters of condition and conservation" of the loan collateral has nothing to do with providing defendants with appraised values of the collateral.

4. *Merrill Lynch Mortgage Capital v. Ralph Esmerian, et al.*, Index No. 600012/08, removed on April 15, 2008 by Esmerian and his defendant companies to the United States Bankruptcy Court for the Southern District of New York (the "Merrill Lynch Action").

5. Defendants argue that they were entitled to receive annual appraisals "to assure defendants that Christie's is not holding more Pledged Property than it is entitled to hold under the Loan Agreement." (Defs.' Opp. Br. 1.) Yet how much or how little collateral Christie's holds, versus how much or how little collateral is held by defendants or third parties, has *nothing* to do with the fact of defendants' unpaid debt.

their obligations to repay their loans when due.[6]  Defendant's appraisal argument is a pure red herring.

B.    The Need For Mathematical Calculation Of Defendants' Debt Does Not Defeat Defendants' Obligation To Repay Christie's Loans.

As noted *supra* at note 2, the exact amount of defendants' debt changes as interest on the loan principal accrues and payments for collateral items successfully sold by Christie's at auction are received.  The Court should reject defendants' assertion that variations over time in the amount they owe excuse them from repaying what they themselves acknowledge to be approximately $7 million of debt owed to Christie's.  (Esmerian Aff. ¶ 17.)

Defendants assert that Christie's committed "mathematical errors" in calculating their debt.  (Defs.' Opp. Br. 6.)  That is insufficient to defeat summary judgment.  *See Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 425 (S.D.N.Y. 2002) (granting summary judgment to the plaintiff and noting that "[t]he exact amount of the outstanding debt, beyond the judgment awarded today, remains in dispute.  If necessary, the Court will order discovery, but it is apparent . . . that determining the remaining amount . . . is simply a matter of calculating the accrual of interest and deducting any payments that the [defendants] have made."); *Cmty Capital Bank v. 'Til the Phat Lady Sings LLC* ("*Cmty Capital*"), 6 Misc. 3d 1009(A), 800 N.Y.S.2d 344 (Sup. Ct. Kings Cty. 2005) (granting summary judgment to the plaintiff seeking money

---

6.    A breach is immaterial if, as here, the "primary purpose of the contract was fulfilled" and the non-breaching party "received that for which they bargained."  *Anderson Clayton & Co. v. Alanthus Corp.*, 91 A.D.2d 985, 985, 457 N.Y.S.2d 578, 579 (2d Dep't 1983) (granting the plaintiff partial summary judgment in breach of contract action); *Pav-Co. Asphalt, Inc. v. Heartland Rental Props. P'ship*, 278 A.D.2d 395, 396, 718 N.Y.S.2d 634, 634 (2d Dep't 2000) (affirming judgment for the plaintiff in breach of contract action).  *See also Tiger Sec. Group, Inc. v. State*, 17 Misc. 3d 1129(A), 851 N.Y.S.2d 74 (N.Y. Ct. Cl. 2007) (awarding money judgment to the plaintiff who substantially performed contract; noting that the defaulting party's substantial performance does not excuse the other party, and that the "law continues to abhor a forfeiture") (citation omitted); *Serviss v. Hirsh*, 243 A.D. 782, 782, 277 N.Y.S. 720, 721-22 (2d Dep't 1935) (reversing judgment for the defendant and noting that, in action by the plaintiff to recover balance due on contract, the plaintiff's failure to make new lease provided for in contract was immaterial and did not constitute breach).

judgment for nonpayment of promissory notes, stating that "any purported dispute as to the exact amount remaining due under the notes has no bearing on the plaintiff's prima facie case as verification of [the plaintiff]'s damages could take place during an inquest . . . irrespective of this court's judgment on liability"). Moreover, the only mistake that defendants identify — Christie's application several years ago (well prior to defendants' default) of payments to reduce loan principal rather than interest (Defs.' Opp. Br. 6) — would serve only to artificially *decrease* the amount owed by defendants, since under the parties' loan agreements interest is calculated not on interest but on the remaining principal balance: as the principal balance declines, so does the amount of interest charged. (*See* McGorry Aff. Exh. A at 1 ("The principal amount of this Note shall bear interest . . . .").)[7]

C.     Defendants' Assertion That Sale Through Public Auction Is Not "Commercially Reasonable" Is Unsupported And Irrelevant To Their Liability On Christie's Loans.

Defendants now complain that, "[o]ver the years covered by the Loan Agreement," Christie's sale of collateral through public auctions was not commercially reasonable. (Defs.' Opp. Br. 8, 13.) That is nonsense.

First, in the ten years from the parties' execution of the 1998 Loan Agreement to Christie's commencement of this action on January 9, 2008, defendants *never* objected that items consigned by them to Christie's were sold at public auction. *Not once* did defendants challenge Christie's sale at public auction of these objects, and Esmerian in fact directed that such auction sales take place in order to reduce REI's debt.

Second, after Christie's filed its complaint in this action, defendants continued to urge Christie's to sell collateral and other consigned objects at public auction to reduce REI's

---

7.     Examination of the document cited by defendants reveals that Christie's recognized that its mistake incorrectly credited defendants to Christie's detriment, and years ago ended that practice. (Esmerian Aff. Exh. 1 (CHRIS 0008990).)

indebtedness. Thus, for example, defendants' lead counsel (Ms. Chaitman) wrote to Christie's on January 28, 2008, responding to Christie's announced plan to include three items (a sapphire-and-diamond ring, a Tiffany brooch, and a ruby-and-cultured-pearl necklace) as additional collateral to secure Christie's loan to REI:

> "On behalf of R. Esmerian, Inc. I am writing to demand that you put up for auction the three items of jewelry that are listed in your letter of today's date [sic].[8] These items were delivered to you solely for purposes of your selling them at auction . . . We have no objection to your applying the auction proceeds to Mr. Esmerian's outstanding debt . . ."

(Weiner Reply Aff. ¶ 2 and Exh. 2.) That is hardly an expression that Christie's auction sales are commercially unreasonable.[9]

Third, defendants had full opportunity to object to the only auctions after this action began at which Christie's sold collateral to reduce defendants' debt. Christie's duly provided to defendants the required UCC notice of auction sales it planned to conduct on April 16, 2008 and June 11, 2008. (Weiner Reply Aff. ¶¶ 4-5 and Exhs. 5, 7.) Defendants received these notices and did not object in any way to those planned auctions, including their time, place or manner. (*Id.*)

Finally, defendants attempted to dance this same dance with the Court before, and the Court properly rejected them. In the Merrill Lynch Action, defendants sought to stay, as commercially unreasonable, Christie's public auction of jewelry and precious gems pledged

---

8. Ms. Chaitman's letter was actually replying to Christie's counsel's letter dated January 25, 2008. (Reply Affirmation of Daniel H. Weiner, sworn to July 9, 2008 ("Weiner Reply Aff.") and submitted herewith, ¶ 2 and Exh. 1.)

9. Despite now decrying Christie's purported practice of setting "unconscionably low reserves on magnificent pieces of defendants' jewelry" (Defs.' Opp. Br. 9), defendants did not bother to inform Christie's of the reserves they wished set for these three pieces. That failure shows the hollowness of defendants' claim. Moreover, as the Court is well aware from testimony in the Merrill Lynch Action, auction reserves are not disclosed to the public, and therefore can have no effect on public bids at auction.

to Merrill Lynch by defendants and affiliated entities to secure loans on which they had

subsequently defaulted. The Court heard several hours of testimony on that claim and rejected

defendants' position, allowing the auction to proceed; the Appellate Division upheld that

decision.[10]

      D.    <u>Christie's Security Interest In The Collateral Is Irrelevant To This Motion.</u>

        The Court can properly ignore defendants' challenge to Christie's security

interest in certain items of collateral. (Defs.' Opp. Br. 14-16.) On this motion, Christie's seeks a

money judgment in the amount of defendants' outstanding indebtedness, based on REI's

undisputed breach of its loan agreements and Esmerian's undisputed failure to honor his

personal guarantee. That is entirely different from relief sought in a foreclosure action or

replevin claim; the issue of Christie's security interest is irrelevant to its motion. Thus,

defendants' argument that "it is absurd for Christie's to seek summary judgment of possession

of collateral . . ." (Defs.' Opp. Br. 14) is misplaced: Christie's seeks no such possession on this

motion. *See generally Cmty Capital*, 6 Misc. 3d at 1009(A), 800 N.Y.S.2d at 344 (rejecting the

defendant's argument pertaining to security interest, and noting that "a plaintiff has the right to

collect on a secured note . . . without resorting to any security"); UCC § 9-601 cmt. 6 (West 2008)

(noting that a creditor may "reduce its claim to judgment or foreclose its interest by any

available procedure outside this Article under applicable law").

        Even if Christie's security interest in particular items of loan collateral *were*

relevant to its motion — which it is not — defendants' assertion that "Christie's admits that it

does not have a valid security interest in" the loan collateral (Defs.' Opp. Br. 14) is false on its

face. Christie's makes no such admission, and defendants cite no source for that purported

---

10. Order by Justice Freedman, New York State Supreme Court, Commercial Division, April 15, 2008,
    denying preliminary injunction sought by defendants staying auction; Order by Appellate Division,
    First Department, April 15, 2008, affirming denial of stay of auction.

admission, pointing only to internal Christie's communications discussing physical possession of Christie's collateral. *(Id.)* Defendants also fail to distinguish between an *invalid* security interest and an *unperfected* security interest. Whether Christie's failed to file or renew filings with respect to its liens on certain items of collateral cannot change the fact that defendants borrowed money from Christie's and promised collateral in exchange for those funds, pursuant to a signed security agreement executed by both parties. A security interest in the loan collateral thus attaches. *See* UCC § 9-203 (West 2008); *Fundex Capital v. Reichard,* 172 A.D.2d 420, 568 N.Y.S.2d 794, 795 (1st Dep't 1991) (recognizing attachment of enforceable security interest as a result of "debtors' signed security agreement" and "their receipt of value (a $120,000 loan)"; also recognizing creditor's right to "reduce his claim to judgment"). The issue of perfection relates only to *priority* as between different creditors, and does not affect the *validity* of Christie's security interest itself. *See* UCC § 9-322 (West 2008) (providing rules of priority as between perfected and unperfected security interests).

Finally, defendants' assertion that "Christie's was required to release [collateral] many years ago" (Defs.' Opp. Br. 14) misses the mark. Even assuming that Christie's was obligated to release some collateral, Christie's motion simply seeks a money judgment in the amount of defendants' outstanding indebtedness — nothing more and nothing less.[11]

E.  The Specific Collateral In Christie's Possession Is Immaterial To Defendants' Obligation To Repay Their Debt.

Defendants argue that, because Christie's purportedly holds collateral "equal to 120% of the low estimate auction value" of the collateral (Defs.' Opp. Br. 1), defendants are excused from repaying their debt. That is ludicrous.

---

11. While the parties' loan agreements provide a mechanism for Christie's to release items of collateral on REI's application *(see* McGorry Aff. Exh. A at §§ 5.1-5.2), defendants provide no evidence that REI ever made the required application.

As pointed out *supra* at note 5, how much collateral Christie's holds at any one time is irrelevant to the fact of defendants' unpaid debt. If defendants suddenly delivered additional collateral to Christie's — as Christie's has requested — it would not magically extinguish defendants' loan obligation. Christie's has the right on this motion to obtain a money judgment in the amount owed to it by defendants. With that judgment in hand, Christie's can then seek to execute on defendants' property, including items of collateral wherever they are located.

F.     Christie's Did Not Breach A Duty Of Good Faith And Fair Dealing.

Undaunted by his own lack of good faith — and pressured by a multitude of creditors, including members of his own family — Esmerian now seeks to excuse defendants' default by claiming that Christie's breached its duty of good faith and fair dealing. That argument cannot stand. The "covenant of good faith and fair dealing cannot be construed so broadly as to . . . create independent contractual rights." *Nat'l Union Fire Ins. Co. v. Xerox Corp.*, 25 A.D.3d 309, 310, 807 N.Y.S.2d 344, 346 (1st Dep't 2006) (affirming dismissal of claim for breach of duty of good faith and fair dealing); *see Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268, 268, 761 N.Y.S.2d 22, 23 (1st Dep't 2003) (same). In particular, where a creditor "exercises its contractual right to terminate financing" and sues a debtor for default on a loan, "affirmative defenses and counterclaims based on breach of an implied duty of good faith and fair dealing are meritless." *Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*, 192 A.D.2d 1066, 1067-68, 596 N.Y.S.2d 230, 232 (4th Dep't 1993).

Thus, for example, in *O'Neill v. Warburg Pincus & Co.* ("*O'Neill*"), Index No. 116009/2003, 2005 N.Y. Misc. LEXIS 3608, at *22 (Sup. Ct. N.Y. Cty. Feb. 14, 2005), the Court properly rejected a claim for breach of the implied covenant of good faith relating to loan agreements where the party asserting breach "neither established that [it] performed [its]

obligations under the contracts, nor identified the specific obligations breached by [its opponent]." Here, defendants admit their failure to perform their obligations under the parties' loan agreements, and do not demonstrate any material obligation breached by Christie's.

The bulk of cases cited by defendants on this point are inapposite because they identify claims for breach of the covenant of good faith and fair dealing that defendants do not here assert.[12] The remaining decisions that that defendants cite have no discernible application to this action.[13] Although defendants correctly note that "whether a party to a contract has failed to act in good faith is generally a fact question for the jury," *Tepedino*, 226 A.D.2d at 446, no such examination is necessary where, as here, the party opposing summary judgment fails to proffer any substantive evidence of bad faith.

---

12. For example, *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 (1972), concerned an author's allegation that its publisher breached the covenant of good faith by secretly promoting another author's books. In *Grad v. Roberts*, the plaintiff, a sole stockholder of a corporation, "caused [the corporation's] property to be transferred to himself in derogation of the rights of [the corporation's] creditors," 14 N.Y.2d 70, 76, 198 N.E.2d 26, 29, 248 N.Y.S.2d 633, 637 (1964). The court found that the plaintiff "manifestly aimed himself to benefit by the sale of assets of the corporation without deduction for the payment of its just debt," and that this action constituted the "opposite" of fair dealing. *Id.* *Bank of China v. Chan* involved an allegation of bad faith concerning the plaintiff Bank's provision of financial help to a Bank officer's daughter and the Bank's alleged interference in the financial relationship between the guarantor and another bank, as well as the general allegation that the Bank "deliberately destroy[ed] the [defendant's] commercial viability, and thus its ability to repay its loans." 937 F.2d 780, 789 (2d Cir. 1991). Here, defendants do not and cannot show that Christie's promoted another debtor's collateral instead of defendants' collateral, that Christie's sought out a cheaper replacement for property provided by defendants, that Christie's attempted to sell defendants' assets without deduction for payment on defendants' debt, or that Christie's engaged in any interference in relationships between defendants and other creditors.

13. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 663 N.E.2d 289, 639 N.Y.S.2d 977 (1995), involved an allegation that the defendant's failure to investigate evidence (presented by the plaintiff test-taker to support his argument that he did not cheat on a test) constituted a breach of the covenant of good faith and fair dealing. *Coan v. Estate of Chapin*, 156 A.D.2d 318, 549 N.Y.S.2d 16 (1st Dep't 1989), involved an estate's interference in a contract between an author and a publisher by means of threatening the publisher with a lawsuit, alleging that the estate had a claim to the subject of the author's book. *Just-Irv Sales, Inc. v. Air-Tite Bus. Ctr., LLC*, 237 A.D.2d 793, 655 N.Y.S.2d 131 (3d Dep't 1997), involved an allegation of bad faith arising from the defendant landlord's failure to attempt to obtain a variance for a new sign before removing an old sign on which the plaintiff tenant wished to advertise. *Tepedino v. City of Long Beach*, 226 A.D.2d 446, 640 N.Y.S.2d 591 (2d Dep't 1996), was an action to rescind a real estate contract based on unfavorable zoning changes implemented after negotiation of the contract there at issue.

Defendants baldly assert that Christie's internal communications are "replete with admissions demonstrating breaches of its duty of good faith and fair dealing, thus depriving defendants of the fruits of their bargain," and that Christie's "retained, and refused to sell" jewelry whose value "is more than sufficient to satisfy the debt." (Defs.' Opp. Br. 17.) That is demonstrably false: *none* of the documents on which defendants rely show Christie's breach of good faith or fair dealing:

- CHRIS 0001123 refers to Christie's agreement, at defendants' request, to pay off defendants' loans from another creditor;

- CHRIS 0002251 is a discussion of the then-current interest rate on defendants' loans and of Christie's negotiations with defendants about that interest rate;

- CHRIS 0010124 notes defendants' reluctance to agree to "reasonable" reserves on collateral to be sold at auction;

- CHRIS 0001054 accurately notes that the "more [defendants are] indebted to [Christie's, the] more chances [Christie's has] of selling" defendants' property; and

- CHRIS 0008990 discusses accounting errors Christie's inadvertently made and later resolved.

Courts have repeatedly rejected debtors' claims for breach of the covenant of good faith and fair dealing made by a party that has *itself* breached a loan agreement, finding that such a party cannot assert that it has been "deprived . . . of the benefits of [its] bargain." *See O'Neill*, 2005 N.Y. Misc. LEXIS 3608, at *22-24 (dismissing defense of breach of covenant of good faith and fair dealing, noting that, in three prior actions in which the defendants asserted breach of covenant as defense to their defaults on a loan, court found defense "unavailing"); *Wilmington Trust Co. v. Strauss*, 13 Misc.3d 1231(A), 831 N.Y.S.2d 357 (Sup. Ct. N.Y. Cty. 2006) (the plaintiff trust sought judgment directing the defendant's repayment of obligations due and owing under personal guarantees; court noted that "record [did] not support [defendant's] allegation that it was deprived of its benefits under the [agreement]" and that plaintiff's accounting and debt repayment procedures were "consistent with [its] contractual rights").

Here, there is no question that defendants themselves breached the parties' loan agreements by failing to repay their debt. In order to defeat a motion for summary judgment, the opposing party must "produce evidentiary support in admissible form sufficient to establish the existence of material issues of fact." *Wilmington Trust*, 13 Misc.3d at 1231(A), 831 N.Y.S.2d at 357 (dismissing counterclaim for breach of duty of good faith and fair dealing and granting the plaintiff's motion for summary judgment on breach of guaranty claim); *see Desco Vitro Glaze of Schenectady, Inc. v. Mech. Constr. Corp.*, 159 A.D.2d 760, 763, 552 N.Y.S.2d 185, 188 (3d Dep't 1990) ("we disagree with [the] contention that a question of fact exists as to . . . breach[ of] implied covenant of good faith and fair dealing . . . [n]ot a scintilla of evidence was submitted . . . suggesting . . . bad faith"). Defendants fail to raise any issue of material fact as to Christie's good faith in the performance of its contractual obligations.[14]

## III.    DEFENDANTS ARE NOT ENTITLED TO ADDITIONAL DISCOVERY.

The Court's grant of summary judgment is not precluded by defendants' suddenly professed desire to take additional discovery on irrelevant or immaterial issues. Rather, in order to defeat summary judgment, a party must make "a showing that, because of lack of disclosure, *material* facts not presented are unavailable." *Gettinger Assocs. v. One Move Upward, Inc.*, No. 115645/06, 19 Misc.3d 1118(A), 2008 WL 1724010, at *3 (Sup. Ct. N.Y. Cty.

---

14. In addition to grossly mischaracterizing the plain meaning of Christie's internal documents, defendants also repeatedly resort to name-calling, a strategic tactic to which plaintiff objects and to which the Court should pay no attention, since it is irrelevant to the substance of this motion for the reasons set forth in the text. One of many disturbing examples is Esmerian's assertion that Christie's Francois Curiel was dishonest in financing the purchase of the Fabergé "Winter Egg." (Esmerian Aff. ¶¶ 39-42.) The exact opposite is true: far from being dishonest, Mr. Curiel assisted Esmerian to once again extricate himself from difficult financial circumstances when Esmerian was about to lose his substantial deposit on the Egg because he could not afford his next payment. Christie's made up the difference with Esmerian's creditor and then sold the Egg, splitting the profit with Mr. Esmerian, an action for which Esmerian thanked Christie's profusely at the time.

Apr. 2, 2008) (granting partial summary judgment to landlord on holdover counts; emphasis added).

Thus, in *Bank Leumi Trust Co. v. Sibthorp*, the Appellate Division affirmed the trial court's grant of summary judgment despite the defendant loan guarantor's assertion that additional discovery was required to support her allegations that "collateral held by plaintiff was not properly accounted for or fully applied to reduce the amount owing," where those allegations were "entirely conclusory" and thus "insufficient to raise a triable issue." 116 A.D.2d 451, 452-53, 496 N.Y.S.2d 439, 441 (1st Dep't), *order recalled and resettled*, 118 A.D.2d 429, 506 N.Y.S.2d 557 (1st Dep't 1986) (adding restraint on the defendant), *aff'd* as *res judicata*, 161 A.D.2d 325, 555 N.Y.S.2d 90 (1st Dep't 1990). *See also Delaney v. Good Samaritan Hosp.*, 204 A.D.2d 678, 679, 612 N.Y.S.2d 433, 434 (2d Dep't 1994) (reversing denial of summary judgment where the opposing party sought additional discovery on an issue "collateral to" the claim on which the movant sought summary judgment); *Livolsi v. Batterson*, 164 A.D.2d 970, 970, 559 N.Y.S.2d 416, 416 (4th Dep't 1990) (reversing stay of summary judgment motion pending opposing party's motion for discovery, finding such discovery was not "material and necessary") (citation omitted).

In this action, Christie's produced more than 10,000 pages of documents in response to defendants' discovery demands. (Weiner Reply Aff. ¶ 6.) Defendants obviously had sufficient time to review and analyze these documents: they had the bulk of them for more than a month (Turkle Aff. ¶ 10),[15] and indeed attach many of those documents to their

---

15. References to "Turkle Aff." are to the affidavit of defense counsel Bruce J. Turkle, sworn to June 30, 2008, previously submitted to the Court.

13

opposition papers.[16] Defendants' assertion that they have not yet had a chance to depose "several critical Christie's employees" (Defs.' Opp. Br. 17-18) — is also demonstrably false: it was *defendants* who in March 2008 postponed depositions of the only two Christie's personnel they had previously noticed, and then made no effort in the ensuing months to take those or any other depositions in this action. (Weiner Reply Aff. ¶ 3 and Exhs. 3, 4.)

Even if Christie's *had* delayed production of its document production or postponed depositions — which it did not — those actions would not have created a genuine issue of material fact as to whether defendants borrowed money from Christie's and then defaulted on their loans. Indeed, defendants do not even assert that Christie's documents contain any facts to the contrary; rather, they voice only a vague desire to "delve more deeply into issues raised by the documents." (Defs.' Opp. Br. 17.) "A grant of summary judgment cannot be avoided by a claimed need for discovery unless some evidentiary basis is offered to suggest that discovery may lead to relevant evidence." *Bailey v. N.Y. City Transit Auth.*, 270 A.D.2d 156, 157, 704 N.Y.S.2d 582, 583 (1st Dep't 2000) (reversing denial of summary judgment). Here, defendants provide no such evidence.

## IV.    CHRISTIE'S ATTACHES THE COMPLAINT TO ITS PAPERS.

To respond to the technical objection defendants raise on the last page of their brief, Christie's has now provided the Court with a third copy of the complaint in this action. (Weiner Reply Aff. Exh. 8.)[17] Defendants do not assert "some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided"

---

16. Defendants complain that Christie's designation of some internal documents as "confidential" has "severely limit[ed] defendants' ability to utilize the documents." (Turkle Aff. ¶12.) That is pure nonsense: defendants are not prevented from using "confidential" documents in filing with the Court, and proved as much by attaching and citing in their opposition papers several documents Christie's has designated "confidential."

17. In addition to the one Christie's filed in January 2008, defendants themselves provided the Court with a second copy of the complaint. (Esmerian Aff. Exh. 4.)

had Christie's attached the complaint as an exhibit to its opening papers.  David D. Siegel, New York Practice § 237, at 397 (4th ed. 2005).  Certainly the contents of the complaint contain no surprises, since defendants have had that document since January 2008.  Defendants suffered no prejudice and the record is now complete.

<u>Conclusion</u>

For the foregoing reasons, the Court should grant Christie's motion for partial summary judgment and award Christie's its attorneys' fees and expenses incurred in enforcing the parties' loan agreements and in collecting on its loans to defendants.

Dated:   New York, New York
         July 10, 2008

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:  _____
     Michael E. Salzman
     Daniel H. Weiner
     Megan E. Canter
     One Battery Park Plaza
     New York, New York  10004-1482
     (212) 837-6000

Attorneys for Plaintiff

60335342_2

15

<u>CERTIFICATE OF SERVICE</u>

          I, Beatriz Biscardi, am over the age of eighteen (18) years, not a party to

this action, caused a true and correct copy of the foregoing Defendant's Reply

Memorandum of Law in Support of Their Motion to Dismiss the Complaint for Failure to

Join an Indispensable Party, Failure to State a Claim and Lack of Personal, dated July 15,

2008, and Declaration of Christopher Paparella, dated July 15, 2008, to be served on this

15th day of July, 2008, to the following:

               VIA ELECTRONIC FILING & FEDEX
               Gabriel Del Virginia
               Law Offices of Gabriel Del Virginia
               641 Lexington Avenue, 21st floor
               New York, NY 10022

               VIA E-MAIL
               George T. Shipley
               Jonathan Smith
               Shipley Snell Montgomery LLP
               4600 First City Tower
               1001 Fannin
               Houston, TX 77002

               ATTORNEYS FOR PLAINTIFF HOVENSA

               I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 15, 2008
      New York, New York

                                _/s/ Beatriz Biscardi
                                  Beatriz Biscardi